UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JUDITH K. ROGAN | ) | |
| | ) | |
| Plaintiff | ) | Civil Number: 2:07 CV 403PS |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | Judge Joseph Van Bokkelen |
| AND DEXIA CRÉDIT LOCAL, f/k/a | ) | |
| DEXIA PUBLIC FINANCE and CREDIT | ) | |
| BANK and CREDIT LOCAL DE FRANCE | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**DEXIA CRÉDIT LOCAL'S SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER: RESPONSE TO PLAINTIFF'S POSITION THAT A JUDGMENT CREDITOR CANNOT EXECUTE UPON THE ASSETS OF A JUDGMENT DEBTOR'S RELATIVE UNLESS THE JUDGMENT CREDITOR OBTAINS A JUDGMENT PERMITTING SUCH <u>EXECUTION</u>**

Scott Mendeloff
Gabriel Aizenberg
Eric S. Pruitt
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendant Dexia Crédit Local*

In support of her motion for a temporary restraining order, Mrs. Rogan claims that defendants have impermissibly placed liens on the Wexford property without first obtaining judgments against Mrs. Rogan or the trust that allegedly holds the property. (TRO Mem. at 4) This assertion misreads the law. As it is defendants' position that Mrs. Rogan merely serves as a nominee, constructive or resulting trustee, and/or alter ego of her husband, a judgment debtor, in holding this property, defendants may first place liens on the subject property and thereafter prove-up the basis for those liens.

**A.     Applicable Theories Permitting Placement of Liens Upon Property a Person Holds for the Beneficial Interest of a Judgment Debtor.**

There are several related theories that are available to a judgment creditor to execute upon a judgment debtor's assets held in the name of a spouse or other family member: (a) nominee; (b) alter ego; (c) resulting trust; and (d) constructive truss. These theories stem from equitable principles and an assessment of the relationship between the debtor and relative and the facts underlying the acquisition, use, and maintenance of the property at issue.

<u>Nominee Theory</u>. The government may collect debts from the assets of a debtor's nominee, instrumentality, or alter ego. *See G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350-51 (1977) (sanctioning levy upon property held in name of corporation that was found to be an alter ego of taxpayer because the assets of the corporation, in effect, were those of the taxpayer). By filing a "nominee lien" against a third party, the government seeks to recover from the debtor under the theory that they have "engaged in a sort of legal fiction . . . by placing legal title to property in the hands of another . . . while, in actuality, retaining all or some of the benefits of being the true owners." *Richards v. U.S.,* 231 B.R. 571, 578 (E.D. Pa. 1999). With regard to such liens, courts generally conduct a multi-factor analysis, which includes but is not limited to the following: (a) whether the record title holder (*i.e.*, the nominee) paid any

consideration for the property or whether the consideration paid was inadequate; (b) whether the property was placed in the name of the nominee in anticipation of a suit or a liability; (c) whether the debtor exercises dominion or control over, or has possession of the property at issue after its purchase or transfer; (c) whether there is a family or other close relationship between the debtor and the nominee; (d) whether the debtor uses or enjoys the benefits of the property after its purchase or transfer; and (e) whether the debtor pays the expenses directly, or is the source of the funds for payment of the expenses to maintain the property after title is placed in the name of the nominee. *See U.S. v. Reed*, 168 F. Supp. 2d 1266 (D. Utah 2001) (finding that delinquent taxpayer's mother held property as nominee of taxpayer and his wife); *In re Richards*, 231 B.R. 571, 579 (E D. Pa. 1999) ("[T]hese factors should not be applied rigidly or mechanically, as no one factor is determinative. Rather, the critical consideration is whether the taxpayer exercised active or substantial control over the property."). These factors have been applied in numerous cases to hold that a third party holds property as a nominee of the debtor..[1]

---

[1] *See Lemaster v. U.S.,* 891 F.2d 115, 116-120 (6th Cir. 1989) (government properly seized trucking business listed in name of debtor's son since, although business was conducted in son's name, debtor controlled all aspects of the business's day-to-day operations and debtor regarded checking account of business as his own personal account); *May v. A Parcel of Land*, 458 F.Supp.2d 1324, 1339-40 (S.D. Ala. 2006) (upholding government's nominee theory to reach property held in name of judgment debtor's wife, where, *inter alia*, judgment debtor paid mortgage, paid for renovations on the house, and was "actively involved in major decisions concerning the Property."); *Veglia v. U.S.*, 1997 WL 720781, at *14 (N.D. Ill. 1997) (wife held to be nominee or alter ego of her debtor husband for one-half of the beneficial interest in the residence that was held in her name because: (a) the home was purchased in part with the proceeds from the sale of the couple's previous home (which was beneficially owned by them jointly), which was purchased with their joint funds; (b) husband at various times contributed his income to pay the mortgage on the home; (c) husband lived in the home from the time it was purchased in 1969 until the time it was sold in 1994; and (d) when the home was sold in 1994, the proceeds remaining after payment of all liens were paid to both the husband and wife); *U.S. v. Dusterberg,* 1997 WL 327395 (S.D. Ohio 1997) (where complaint alleged that debtor never relinquished possession of property after transferring it to his wife for no consideration and that debtor continued to pay the property's taxes, utilities and other expenses after the transfer, government had alleged sufficient facts to support a claim that wife held property as debtor's nominee); *Floyd v. U.S.,* 1996 WL 157284, at *1, *12 (D. Kan. 1996) (where debtor paid to purchase, insure, furnish and maintain house, federal tax liens attached to house even though legal title to house was held by third party); *Simpson v. U.S.,* 1989 WL 73212, at *5-*7 (M.D. Fla.1989) (concluding that ex-wife held real property as nominee since property was purchased with debtor's assets,

<u>Alter Ego Theory</u>.  Similar to the nominee theory, the alter ego theory permits a creditor to satisfy its judgment by executing upon assets held in the name of the debtor's alter ego.  This theory is most commonly applied when a creditor alleges that an entity is an alter ego of an individual debtor.  Nonetheless, courts have not hesitated to apply the alter ego theory in various circumstances where a relative is found to be an alter ego of the debtor.[2]

<u>Resulting trust</u>.  "A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of." Restatement (3d) of Trusts § 7.[3]  *See also* IC 30-1-9-8 (codifying circumstances under which a resulting trust arises).  A purchase money resulting trust must arise at the time of the execution of the conveyance or the passage of title of the property to be held in trust, and its existence must be determined from the facts present at the time of the conveyance.  *See Ferguson v. Mix*, 125 Ind. App. 251, 123 N.E.2d 909 (1955); *Kemp v. Elder*, 91 Ind. App. 65, 170 N.E. 90 (1930); *Rickes v.*

---

debtor lived in the property after it was purchased, debtor caused the title to be placed in his the wife's name to avoid an anticipated federal tax lien); *U.S. v. Williams,* 581 F.Supp. 756 (N.D. Ga. 1982) (where debtor's mother held title to property as his nominee, federal tax liens attached to property).

[2] *See Central States, Southeast & Southwest Areas Pension Fund v. Sloan*, 902 F.2d 593, 597-98 (7th Cir. 1990) (wife's unincorporated entity held to be alter ego of husband's unincorporated entity); *In re MacDonald*, 114 B.R. 326 (D. Mass 1990) (corporate veil pierced to establish bankruptcy debtor as equitable owner of corporate stock which was ostensibly owned by debtor's father); *In re Grieshop*, 63 B.R. 657, 661 (N.D. Ind. 1986) (wife held to be husband's alter ego); *In re Topper*, 85 B.R. 167 (Bkrtcy. S.D. Fla. 1988) (debtor found to be beneficial owner of 50 percent of stock of corporation held in his wife's name).  *See also FTC v. National Business Consultants, Inc.*, 376 F.3d 317 (5th Cir. 2004) (affirming order under the FDCPA joining three corporations as judgment debtors after a finding that the corporations were alter egos of the individual judgment debtor); *NLRB v. E.D.P. Medical Computer Systems, Inc. & E.D.P. Hospital Computer Systems, Inc.*, 6 F.3d 951 (2nd Cir. 1993) (upheld garnishment order where under the FDCPA, the NLRB garnished funds owed to the judgment debtor's alter ego)

[3] Indiana courts have cited the Restatement's summary of the law of resulting trusts with approval.  *See, e.g., Chosnek v. Rolley*, 688 N.E.2d 202, 211 (Ind. App. Ct. 1997); *In re Marriage of Mulvihill*, 471 N.E.2d 10, 14 (Ind. App. Ct. 1984); *Indianapolis Machinery Co., Inc. v. Bollman*, 347 N.E.2d 518, 522 (Ind. App. Ct. 1976)

*Rickes*, 81 Ind. App. 533, 141 N.E. 486 (Div. 1 1923). Thus, the existence of a resulting trust depends entirely upon the transaction as it occurred up to the time of the acquisition of title, and it cannot be changed by any subsequent transaction except as such subsequent transaction may throw light upon the original agreement. *See Criss v. Bitzegaio*, 420 N.E.2d 1221 (Ind. 1981).

Where "the transferee is a spouse, descendant, or other natural object of the bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property." Restatement (3d) of Trusts § 9. The key is "the payor's intention at the time of the transfer and not at some subsequent time that determines whether a resulting trust arises." *Id*. Post-transfer conduct, however, of the payor and the transferee can be used "to show that at the time of the transfer the payor did not intend to make a gift to the transferee." Thus, "the fact that the payor manages the property or directs its management, collects rents, pays taxes and insurance premiums, pays for repairs and improvements, or otherwise acts as an owner would act, especially with the transferee's acquiescence, is evidence that tends to rebut a presumption that the payor intended to make a gift to the transferee." *Id*.

In *Resolution Trust Corp. v. Ruggiero*, 994 F. 2d 1221 (7th Cir. 1993), the Seventh Circuit applied these principles in approving the imposition of a resulting trust in circumstances closely analogous to those here. Angelo Ruggiero had borrowed money from a savings and loan association that went broke and was taken over by the Resolution Trust Corporation. *Id*. at 1223. He failed to repay the loan and the RTC, as receiver of the failed S & L, suit in federal district court and obtained judgments against Ruggerio for about $300,000. *Id*. The RTC then initiated a post-judgment proceeding. *Id*. Ruggiero claimed that his wife actually owned the extensive real estate that the RTC believed he owned. *Id*. at 1224. So the RTC

4

conducted a citation examination of her. *Id*. After it completed the wife's examination, the RTC filed a petition asking the court to impose a resulting trust in favor of Ruggerio on the real estate purportedly owned by his wife (or to order his wife to turn over the real estate to the RTC). *Id*. In an opinion Judge Posner authored, the Seventh Circuit upheld the imposition of the resulting trust because: (a) the record showed that all of the real estate nominally owned by the wife had been purchased by Ruggerio with his money, was managed by the debtor, that the properties' maintenance and other expenses were paid by him; and (b) the wife had no profession or career, no business activity or experience, and no income or wealth out of which she might have purchased the properties. *Id*. at 1227. Even though most of the properties were bought and placed in wife's name before the RTC obtained the judgments, it was clear from the record that from the Ruggerio had placed the properties in his wife's name "in order to insulate himself from creditors" and that "from the outset [the wife] had only a bare legal title in the properties." *Id*.

Similarly, in *In re Szabo*, 353 B.R. 554, 560 (Bkrtcy. N.D. Ill. 2006), a Chapter 7 trustee moved to enforce a judgment entered in adversary proceeding against debtor's father via the imposition of resulting trust on assets held by the father's former wife and limited liability company (LLC). The court imposed a resulting trust because, *inter alia*: (a) husband signed the purchase contract and agreed to pay for the property; (b) within a month of the adversary proceeding being filed against husband, he transferred the property to wife; (c) wife paid no consideration when husband conveyed the property, (d) husband orchestrated and paid for the creation of LLC; (e) title was then transferred to LLC, five days after judgment was entered against debtor in the matter; (f) husband or his companies paid the taxes on the property; (g) debtor or his companies occupied the property before foreclosure; and (h) husband or his companies continually occupied the property after the conveyance. *Id*. at 563. To determine the

origination of funds used to purchase the property at issue, the court traced back a series of transactions to find that husband had contributed 50% of the funds used to acquire it. Thus, a resulting trust in one-half of the property arose in favor of husband.[4]  *Id.*

Constructive Trust.  A constructive trust arises in cases where the underlying transaction involved is tainted by fraud, whether actual or constructive, and a court will construct a trust as required by equity and good conscience in order to do justice to the parties affected by the fraudulent transaction.  *See Criss v. Bitzegaio,* 420 N.E.2d 1221 (Ind. 1981); *Brown v. Brown,* 135 N.E.2d 614, 616-17 (Ind. 1956).  A constructive trust may be imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.  *See Strong v. Jackson,* 777 N.E.2d 1141, 1151 (Ind. App. Ct. 2002), *aff'd on rehearing,* 781 N.E.2d 770 (Ind. App. Ct. 2003).  A duty to convey the property may arise if it was acquired through fraud, duress, undue influence or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property.  *Id.*  Actual intent to defraud is not necessary for the creation of a constructive trust.  *Brown,* 135 N.E.2d at 616; *Kalwitz v. Estate of Kalwitz,* 822 N.E.2d 274, 280 (Ind. App. Ct. 2005).

These principles have been applied in circumstances similar to those here.  In *Goya Foods, Inc. v. Unanue*, 233 F.3d 38 (1st Cir. 2000), debtor husband and wife took joint title

---

[4] *See also In re Valente*, 360 F.3d 256, 263 (1st Cir. 2004) (imposing a resulting trust where father-debtor and son "had an 'understanding' that Valente [father] was going to live in the house, and he continued to treat the property as his own by, inter alia, paying all of the bills, managing the lease and sale of the property, running a business on the premises, and not paying rent"); *Kaibab Industries, Inc. v. Family Ready Homes, Inc.*, 444 N.E.2d 1119, 1126 (Ill. App. Ct. 1983) (residential real estate, title to which was not in judgment debtor's name, but rather in debtor's mother-in-law, son, and friend's names, should have been applied in satisfaction of judgment where the facts surrounding the conveyance of the property and the use of the same by the judgment debtor, who in all respects exercised dominion over it, established an inference, not rebutted, that the transferor intended that the judgment debtor and not the party holding title to the property was to enjoy the beneficial interest in the same and that a resulting trust was thus created.)

to an apartment in San Juan, Puerto Rico, and during the earlier round of litigation between husband and creditor, the title to the apartment was transferred to Emperor Equities, Inc., a Delaware corporation wholly owned by wife.  Wife and Emperor Equities then developed a pattern of real estate acquisitions in which they obtained title to other luxury residences in Puerto Rico, New York, France, and Spain.  The First Circuit upheld the finding that the properties in question had been purchased by husband because he "used and enjoyed all of the residences and in many occasions referred to them as his own in letters to third parties." *Id*. at 44.  The court explained that "the circumstantial evidence of an implicit understanding is strong.  The timing of the transactions in relation to prospective litigation, [debtor's] continued treatment of the properties as his own, the parallels to the deceptive operation of Kalif Trading, and the inferences to be drawn from [wife]'s baseless claim that the properties were paid for with family funds all contribute to the conclusion that the real estate in question was [husband's] and not [wife's]." *Id*. at 45.  The court thus ruled:  "It does not make Liliane [wife] personally liable for her husband's debts; but it does mean that the property which he beneficially owns but which happens to be held in her name can be reached through the constructive trust doctrine for the benefit of his creditors." *Id*. at 45.[5]

---

[5] *See also In re Kaiser*, 722 F. 2d 1574 (2d Cir. 1983) (court looked to the following evidence in finding that denial of discharge was proper and that the real property could be impressed with a constructive trust: (1) debtor, while insolvent, purchased two homes with his own money but had title to both placed in the name of his wife who provided no consideration for those transfers, (2) debtor continued to retain possession, benefit and use of the properties and treated them as his own, (3) debtor claimed deductions for real estate taxes paid in computing taxable income on his individual federal income tax returns, (4) debtor listed the property among his assets on a personal financial statement given to a bank when he sought to obtain a loan, and (5) debtor created dummy corporations in order to hide his assets and concealed those assets in his petition for bankruptcy.)

**B.    There is No Requirement that Liens Must be Reduced to Judgment Before They Can be Filed.**

Mrs. Rogan contends that the liens of defendants against the Wexford property are defective because defendants do not have a court order establishing that she holds the Wexford property as nominee, alter ego, or constructive trustee for Mr. Rogan or that the Wexford property is actually the property of Peter Rogan. Lack of such a judgment, however, does not defeat defendants' liens.

A lien gives potential purchasers of a property notice that title to that land is encumbered. *See Arend v. Etsler*, 737 N.E.2d 1173, 1175 (Ind. App. Ct. 2000) (stating that "anyone buying property to which a lien has attached and who has actual or constructive notice of the lien takes the property subject to the lien.") The validity of a judgment lien, however, may be challenged after it is filed, and, in fact, numerous Indiana courts have adjudicated the validity of judgment liens on a variety of grounds. *See, e.g., Krilich v. Soltesz/Brandt Development Co.*, 771 N.E.2d 1169 (Ind. App. Ct. 2002) (entertaining lawsuit contending that Florida judgment did not create Indiana lien); *Arend*, 737 N.E.2d at 1173 (upholding lien after considering whether lien holder complied with the relevant statute of limitations); *Borgman v. Aikens*, 681 N.E.2d 213 (Ind. Ct. App. 1997) (determining whether judgment credited created valid lien from federal bankruptcy court judgment); *see also* IC § 34-54-11-2 (allowing judgment debtor to object to enforcement of a foreign judgment and stating that such judgments do not become liens until the court rules on the objections).

*Krilich* aprtly illustrates the principle that one can file a lien <u>before</u> it is established that the lien is valid. In that action, judgment creditor sought to domesticate a Florida state-court money judgment and use that domesticated judgment to create a lien on judgment debtor's Indiana real property. 771 N.E.2d at 1170. The trial court held that although

8

the judgment creditor had a valid Florida judgment, he did not have a judgment lien in Florida and thus he did not have a valid lien in Indiana. *Id*. The appellate court reversed, holding that whether the judgment creditor had a valid lien in Florida was irrelevant. *Id*. at 1173. Because he had a valid Florida judgment, the judgment creditor could pursue a lien in Indiana. *Id*. This action, like *Krilich*, involves a dispute regarding whether a party (namely, defendants) has taken its foreign judgment and created a valid lien in Indiana.

Of course, as demonstrated by *Krilich*, *Arend, and Borgman*, and contrary to Mrs. Rogan's contention, the lack of a judgment holding a lien valid does not automatically invalidate the lien. *See also, supra*, cases cited regarding prejudgment nominee liens. Rather, Mrs. Rogan is entitled to challenge, and has now challenged, the validity of the liens filed against her, just like the judgment debtors in *Krilich*, *Arend, and Borgman* did. And this Court, just like those courts, has the power to determine whether the liens are valid.

## CONCLUSION

For the reasons herein and in Dexia's initial opposition brief, Dexia respectfully urges this honorable Court to deny Plaintiff's motion for a temporary restraining order.

Dated: **November 15, 2007**                         DEXIA CRÉDIT LOCAL

/s/     Gabriel Aizenberg
Scott Mendeloff
Gabriel Aizenberg
Eric S. Pruitt
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Dexia Crédit Local*