UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JUDITH K. ROGAN                               ) | |
|                Plaintiff          ) | Civil Number: 2:07 CV 403PS |
| v.                                            ) | |
| THE UNITED STATES OF AMERICA                  ) | Judge Joseph Van Bokkelen |
| AND DEXIA CRÉDIT LOCAL, f/k/a                 ) | |
| DEXIA PUBLIC FINANCE and CREDIT               ) | |
| BANK and CREDIT LOCAL DE FRANCE               ) | |
| Defendants                                    ) | |

**DEXIA CRÉDIT LOCAL'S REPLY IN SUPPORT
OF ITS MOTION TO TRANSFER VENUE**

 

Scott Mendeloff
Gabriel Aizenberg
Eric S. Pruitt
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendant Dexia Crédit Local*

Defendant Dexia Crédit Local ("Dexia") submits the following reply in support of its motion to transfer venue. It is indeed ironic that in the first sentence of her opposition brief, Mrs. Rogan alleges that Dexia's motion is a "thinly veiled attempt to bypass the legal process." For it is Mrs. Rogan, not Dexia, that has attempted to bypass the legal process by suing in Indiana in order to avoid litigation in the Northern District of Illinois ("NDIL"). The courts in NDIL already have intimate knowledge gained after four years of hotly-contested litigation of her husband's frauds and of his efforts to put assets out of his creditors' reach and in the names of his family members. The courts in NDIL have entered substantial judgments against Mr. Rogan, resulting from his misdeeds. The courts in NDIL already have issued and defendants have served Citations to Discover Assets to adjudicate the core issue at play in her later-filed Indiana action – namely, does Mrs. Rogan hold assets, including the former Indiana residence, for Mr. Rogan's beneficial interest? Accordingly, NDIL is the proper forum in which this core issue should be litigated and thus this Court should transfer this case to NDIL.

**I.    THE FIRST-TO-FILE RULE MANDATES A TRANSFER HERE.**

    **A.    Element 1: The Citation Action Is A Valid First-Filed Action.**

Mrs. Rogan argues that Dexia cannot satisfy the first element of the first-to-file rule because there is no valid, first-filed action subject to the rule as: (1) Dexia's citation action is not an "action"; and (2) NDIL lacks subject matter jurisdiction over Dexia's citation action and personal jurisdiction over Mrs. Rogan. (Opp. at 16). Not so.

        **1.    A Citation Proceeding Is An "Action".**

Mrs. Rogan contends that there is no first-filed action because Dexia's citation proceeding is not an "action." The core issue in the case upon which Mrs. Rogan primarily relies – *Meggison v. Stevens* – was the right to a trial in the context of a third-party citation proceeding.

1

316 N.E.2d 297 (Ill. App. Ct. 1974). Mrs. Rogan cites the case because the court suggested that, as to third-parties, "a subsequent petition for relief," rather than the citation, "would constitute the initial pleading in the nature of the complaint." *Id*. at 299. In doing so, Mrs. Rogan ignores the subsequent case law that Dexia cited, which establishes that if this dictum in *Meggison* ever was correct, it no longer is correct.

A citation, which under Illinois law is issued by the court and served by the judgment creditor, 735 ILCS 5/2-1402(a), (b), *initiates* a proceeding analogous to filing a complaint. As the cases Dexia cited establish therefore, a citation initiates an action to enforce a judgment much like filing a complaint initiates a lawsuit. (Dexia Br. at 17-18, citing *Elmhurst Auto, Textile Bank*; *Pollack*; *see also Meyer v. ERJ, Inc.*, 2000 WL 521481, at *1 (N.D. Ill. 2000) (same)).

In her opposition brief, Mrs. Rogan does not even address *Textile Bank* and its progeny (*Meyer* and *Pollack*). Mrs. Rogan does try to distinguish *Elmhurst Auto* by asserting that it "does not stand for the proposition that a citation proceeding is an action for purposes of the first to file rule." (Opp. Br. at 21). Just like *Meggison*, *Elmhurst Auto* is not a case about the first-to-file rule. Unlike *Meggison*, however, the core issue in *Elmhurst Auto* was whether a citation proceeding is an "action," and the court unequivocally said it is an "action."

Relying further upon *Meggison*, Mrs. Rogan also contends that a citation proceeding is not an "action" because NDIL will not be able to order relief in the citation action unless Dexia files a petition for relief. (Opp. Br. at 18-20). Although the *Meggison* creditor filed a petition for relief, the opinion does not say – or even suggest – such a petition is required. Mrs. Rogan acknowledges as much, asserting that "assets titled in the name of a third-party may be obtained by a judgment creditor in a supplemental proceeding to satisfy a judgment against the

2

actual debtor . . . ." (*Id*. at 18)  In fact, Illinois law provides that a citation action is "a versatile proceeding in which a judgment creditor may not only discover assets but also may obtain orders from the circuit court . . . to turn over property."  *Elmhurst Auto Parts, Inc. v. Fencl-Tufo Chevrolet, Inc.*, 600 N.E.2d 1229, 1232 (Ill. App. Ct. 1992).  (*See also* Dexia Br. at 19).  The citation procedure is similar to the procedure in regular, civil litigation:  the citation is filed and served, which initiates the action just like a complaint initiates civil litigation; then, as in civil litigation, discovery proceeds; based upon the results of discovery, like in civil litigation, the citation plaintiff seeks a final disposition – namely, an order to obtain the assets discovered by establishing that the assets are those of the judgment debtor.

        **2.**      **Dexia's Citation Action Is A Valid, First-Filed Action Over Which NDIL Has Personal And Subject Matter Jurisdiction.**

            **a.**      **Jurisdiction In The Transferee Court Is Irrelevant.**

Mrs. Rogan cites no case supporting the proposition that jurisdiction in the transferee court is relevant to the first-to-file rule.  In fact, jurisdiction is irrelevant.

Personal jurisdiction.  The issue of personal jurisdiction in the first-filed action is irrelevant to the first-to-file rule.  *See Tiber Labs., LLC v. Cyprus Pharm.*, 2007 WL 3216625, at *3 (N.D. Ga. 2007) (rejecting objection to application of first-to-file rule based upon a lack of personal jurisdiction because "[t]he [transferee] court is better suited to determine the bounds of its own personal jurisdiction.").  Mrs. Rogan's reliance upon *Salvator* to support of her position that a personal jurisdiction analysis is relevant here is misplaced.  In *Salvator*, 530 N.E.2d at 641-44, the appellate court held that the trial court lacked personal jurisdiction to impose contempt upon an out-of-state employee of the judgment-debtor because "a contempt proceeding is an original proceeding independent of the case from which the contempt arises."  *Id.* at 641.  The appellate court did not hold that the citation action itself was invalid.  More importantly,

*Salvator* said nothing about the first-to-file rule, and is distinguishable from this case because: (a) no "separate proceeding" like a contempt proceeding is at play in Dexia's citation action; and (b) as explained below, NDIL has personal jurisdiction over Mrs. Rogan.

Subject matter jurisdiction. Although "the likelihood of a jurisdictional dispute in the first-filed court may be a factor to consider in applying the rule, resolving the dispute in favor that court's jurisdiction is never a condition precedent to applying" the first-to-file rule. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605 (5th Cir. 1999) (no error in ruling that second-filed action should not proceed, despite failure to address argument that first-filed action court lacked subject matter jurisdiction).

        **b.**        <u>**NDIL Has Personal Jurisdiction Over Mrs. Rogan**</u>.

                **i.**        <u>**Mrs. Rogan Waived Any Objection to Personal Jurisdiction in Dexia's Citation Action**</u>.

"Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982). Participation in a legal proceeding without contesting personal jurisdiction waives it. *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296-97 (7th Cir. 1993); *Sullivan v. Porter*, 210 F.3d 376, 376 (7th Cir. 2000).

Here, from the start of the citation action, Mrs. Rogan raised no objection to, and participated in, Dexia's citation action, knowing that the object of the proceeding is to obtain assets she holds for Mr. Rogan's beneficial interest. Dexia served its citation. Mrs. Rogan did not object to service. Then, Mrs. Rogan responded in writing to the document requests in Dexia's citation. (Ex. A) While this response contained several objections to the document requests, it raised no personal jurisdiction objection. (*Id.*) In response to Dexia's citation, Mrs. Rogan produced documents in several batches. The parties also have exchanged multiple

4

correspondence and participated in at least one telephonic discovery conference to address Mrs. Rogan's objections and the deficiencies in her document production. (Ex. B) The first time Mrs. Rogan objected to personal jurisdiction in NDIL was in her brief opposing transfer from NDIN. Even after she raised this objection, however, Mrs. Rogan produced additional documents in response to Dexia's citation. (Ex. B) As a result of her failure to object to personal jurisdiction and active participation in Dexia's citation action, Mrs. Rogan has waived that objection.

### ii.    NDIL Has Personal Jurisdiction.

**General Jurisdiction.** General jurisdiction looks to *any* contacts defendant has with the forum state, regardless of their connection to the underlying action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16, n.9 (1984). When the cumulative contacts are "continuous and systematic," general jurisdiction is proper. *Id.* at 415-16.[1]

Here, Mrs. Rogan presents the textbook case for general jurisdiction. In its opening brief, Dexia set forth in detail Mrs. Rogan's continuous and systematic contacts with Illinois. (Dexia Br. at 10-15, 22, 25). In response, Mrs. Rogan did not even attempt to address the substantial proof Dexia cited and attached to its brief regarding these contacts. Instead, to justify keeping this case in Indiana, Mrs. Rogan submitted an affidavit with her opposition brief that seeks to emphasize her links to Indiana and to deemphasize her links to Illinois. Notably, Mrs. Rogan has not submitted a single shred of documentary support for any statement in the affidavit. Below, Dexia summarizes Mrs. Rogan's extensive and continuous contacts with Illinois, and in Exhibit C demonstrates in detail that several statements in her affidavit are demonstrably false.

---

[1] *See also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986) (general jurisdiction found where defendant (i) attended college, (ii) had been employed, (iii) owned a condominium, (iv) transacted business, and (v) traveled numerous times in the forum state.

5

Mrs. Rogan no longer resides in Indiana, but rather resides in Vancouver, British Columbia. (Dexia Br. at 23-24; *see also* Ex. D) While she has a bank account in Indiana, the vast bulk of her funds are located outside of Indiana. (Dexia Br. at 24-25) In recent years she has carried on two businesses in Illinois: (a) Decorative Services, Inc. ("DSI"), an Illinois corporation she incorporated in December 2006 (Ex. E); and JKR Business ("JKRB") (Dexia Br. 10-11). Mrs. Rogan also has had significant contacts with Mr. Rogan's Illinois businesses: (a) Edgewater Property Company ("EPC") – JKRB was EPC's contract manager for the EPC-Edgewater Medical Center lease from May 1996-April 2001 (Dexia Br. 10), and in its 2006 federal tax return, filed in the first quarter of 2007, EPC identifies Mrs. Rogan as its contact person – the return is filed on behalf of EPC "c/o Judith K. Rogan" (Ex. F); and (b) PGR Properties, Inc. ("PGR") – in June 2004, Mrs. Rogan "borrowed" $550,000 from PGR (Ex. G). Since 2004, Mrs. Rogan has held title to a condominium at 55 E. Erie in Chicago (the "Erie Condo"). (Ex. H) Mrs. Rogan has paid condominium fees and property taxes related to the Erie Condo (Exs. I, J), and she and her husband have used 55 E. Erie as the address for two Illinois corporations – DSI and BFB, Ltd. (Ex. K) In addition, Mrs. Rogan has transacted business with numerous Illinois entities: (a) legal fees for her and her husband's benefit to at least five Chicago law firms; (b) club fees; (c) fees to a real estate developer; and (d) assorted other payments for business/personal reasons. (Ex. J).

**Specific Jurisdiction.** The specific jurisdiction inquiry has three elements: (a) minimum contacts with the forum state such that defendant should reasonably anticipate being haled into court there; (b) whether the action "arises out of" or is "related to" the contacts with the forum state; and (c) whether it is fair and just to require defendant to litigate in the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Hyatt Int'l Corp. v. Coco*,

302 F.3d 707, 713 (7th Cir. 2002); *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992).

In *Textile Banking Co., Inc. v. Rentschler*, 657 F.2d 844 (7th Cir. 1981), the judgment creditor properly served a citation upon the judgment debtor's daughter in New York (where she resided), aimed at determining whether the judgment-debtor was the "true owner" of property held in the daughter's name in Illinois. *Id*. at 846-47, 852. The daughter challenged personal jurisdiction. *Id*. at 850-51. "Since the property was located within the judicial district," the Seventh Circuit held that "the district court had jurisdiction over Sarah, the property's titleholder of record." *Id*. at 852. *See also* 735 ILCS 5/2-209(3) (Illinois long-arm statute, which extends personal jurisdiction to individuals when a cause of action arises out of their "ownership, use, or possession of any real estate situation within this State."); *Keats v. Cates*, 241 N.E.2d 645, 649 (Ill. App. Ct. 1968) ("There can be no question that the Illinois courts have jurisdiction over Chicago real estate.")

Here, as in *Textile Banking*, Dexia has proof establishing that Mrs. Rogan holds many assets for the beneficial interest of the judgment debtor – her husband. These assets include real property titled in Mrs. Rogan's name in Chicago – the Erie Condo. As such, Dexia properly served a citation upon Mrs. Rogan.[2] Since there is real property located within NDIL (Erie Condo), *Textile Banking* dictates that NDIL has personal jurisdiction over Mrs. Rogan, the property's titleholder of record. Indeed, the fact that Mrs. Rogan holds title to real property in Illinois (as well as her myriad other contacts with Illinois) establishes the necessary minimum

---

[2] On June 8, 2007, Dexia served the citations upon Mrs. Rogan at the Rogans' two residences in the U.S., by leaving the citations with a member of the Rogan household in Indiana and with the doorman at the Erie Condo. (Ex. L) Moreover, because Dexia understood that the Rogans may then have been residing in Canada, Dexia moved for and obtained from NDIL a Fed. R. Civ. P. 4(f)(3) order permitting service upon individuals in foreign countries as directed by the court. That order permitted Dexia to serve Mrs. Rogan by serving Chicago lawyers – Pat Deady (Mr. Rogan's lawyer in *U.S. v. Rogan*) and Mr. O'Rourke (her counsel in this case). (Ex. M)

7

contacts with Illinois such that she should reasonably anticipate being haled into court there. In addition, because the citation action seeks to establish, *inter alia*, that she holds Illinois real property for Mr. Rogan's beneficial interest establishes that the action "arises out of" or is "related to" Mrs. Rogan's contacts with Illinois. Finally, is it fair and just to require Mrs. Rogan to litigate in Illinois for the same reasons that the "interests of justice" mandate transfer to NDIL under § 1404(a). (Dexia Br. at 21-23; *see also infra* at 14-15)

### c. NDIL Has Subject Matter Jurisdiction.

Relying primarily upon four cases (*Peacock*, *Hudson*, *U.S.I. Prop.*, and *Sandlin*), Mrs. Rogan contends that NDIL lacks subject matter jurisdiction because NDIL lacks ancillary jurisdiction over the citation action. She errs.

First, NDIL has ancillary jurisdiction over Dexia's citation action. When a "postjudgment proceeding presents a new substantive theory to ***establish liability directly on the part of a new party***, some independent ground is necessary to assume federal jurisdiction over the claim, since such a claim is no longer a mere continuation of the original action." *U.S.I. Prop.*, 230 F.3d 489, 498 (1st Cir. 2000).[3] However, when a "postjudgment proceeding presents ***an attempt simply to collect a judgment*** duly rendered by a federal court, ***even if chasing after the assets of the judgment debtor now in the hands of a third party***, the residual jurisdiction stemming from the court's authority to render that judgment is sufficient to provide for federal jurisdiction over the postjudgment claim." *Id.* at 498. *See also Epperson v. Entm't Express, Inc.*,

---

[3] Thus, in the cases Mrs. Rogan cites, the courts declined to assert ancillary jurisdiction because the plaintiffs sought a ruling that a third-party was individually liable for the judgment. *See Peacock*, 516 U.S. at 351-52 (subsequent lawsuit sought to hold additional party individually liable for judgment rendered in first lawsuit); *Hudson*, 347 F.3d at 140 (subsequent lawsuit sought to hold City of Flint liable under indemnification agreement with police officers); *U.S.I. Prop.*, 230 F.3d at 492 (plaintiff sought to hold Commonwealth of Puerto Rico liable as alter ego of judgment creditor); *Sandlin*, 972 F.2d at 1217 (plaintiff did not seek recovery of debtor's assets held by third-party but rather sought "to adjudicate claims against newly added nondiverse parties prejudgment actions allegedly caused the insolvency of a judgment debtor.").

8

242 F.3d 100, 107 (2d Cir. 2001) (ancillary jurisdiction was proper when plaintiff sought to require third-parties to set aside fraudulent conveyance, but not to hold the third-parties "liable for the existing judgment," because such a claim did "not present a substantive theory seeking to establish liability on the part of a new party not otherwise liable.").

Here, in its citation action, Dexia does not seek to hold Mrs. Rogan individually liable for Dexia's judgment against her husband. Instead, Dexia seeks a ruling that Mrs. Rogan holds property of Mr. Rogan via several theories (*e.g.*, alter ego/nominee, constructive/resulting trustee, fraudulent transferee, *etc.*). Thus, NDIL has ancillary jurisdiction over Dexia's citation action. *See Epperson*, 242 F.3d at 107 (holding ancillary jurisdiction proper where seeking assets of judgment debtor from third-party rather than seeking to hold third-party individually liable for judgment); *Eclipse Mfg. Co. v. U.S. Compliance Co.*, 2006 WL 42395, *2-3 (N.D. Ill. 2006) ("Rule 69 proceedings that fall within the ancillary jurisdiction of the district court include citations to discover assets under incorporated Illinois Rule of Civil Procedure 2-1402.").

Nonetheless, Mrs. Rogan contends that ancillary jurisdiction is lacking here because the underlying theories of liability that led to the judgments against Mr. Rogan are different than the theories at issue in the citation action. (Opp. Br. at 14) Given that nearly every supplemental proceeding against a third-party will involve theories of liability that are at least somewhat different than those relied upon in the underlying lawsuit against the judgment debtor, it is no surprise that courts do not hold that this bars the imposition of ancillary jurisdiction over a post-judgment, supplementary proceeding. *See IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 312 (3d Cir. 2006) (holding ancillary jurisdiction existed over plaintiff's effort, pursuant to Rule 69, to require a third-party to indemnify defendants in

9

underlying lawsuit, and stating that third-party supplementary garnishment proceedings will "always be based on a new, contractual theory of liability.").

In any event, Mrs. Rogan is wrong in alleging that the theories in the citation action differ from those in Dexia's underlying suit. From day one, a prominent theme in Dexia's case was that Mr. Rogan had fraudulently siphoned funds out of EMC, *inter alia*, to various members of his family, including Mrs. Rogan. As a result, Dexia focused much of its discovery efforts upon tracing these funds and obtaining proof that Mr. Rogan has placed his assets in the names of his family. Dexia's very first set of discovery requests, served in January 2004 upon Mr. Rogan, reflected that very concern.[4] The discovery requests that followed in January 2004-August 2004 were similarly replete with issues relating to Mrs. Rogan as an illusory "owner" of Mr. Rogan's property.[5] Upon defendants' noncompliance with these discovery requests, Dexia's May 2004 motion to compel even highlighted the issue of Mrs. Rogan as a shield for Mr. Rogan. As Dexia argued, "<u>First</u>, defendants refuse to provide discovery sufficient to permit a full accounting of defendants' ***assets*** . . . including discovery *inter alia* of the location and identity of

---

[4] Dexia's 1st Interrog. to Rogan, Interrog. 2 ("List all of Your assets and liabilities . . . including . . . any asset held in the name of a member of the Rogan Family; any asset held in another person's name for which You possess any interest."), 4, & 7; *Id.*, Doc. Req. 5, 7, 9, 12, 13. (Ex. N)

[5] Dexia's 1st Request For Prod. to Bainbridge, Definitions/Entities, Nos. 23, 35; *Id*., Doc. Req. 5 ("All Documents relating to JKR Business."); *Id.* at 16-18 (requesting documents relating to transfer of funds/assets between defendants and, among others, Mrs. Rogan and JKRB); *Id.* at 19-22; *Id.* at 28 ("All Documents concerning Your assets and liabilities, including . . . any asset held in another person's name for which You possess any interest); *Id.* at 30; Dexia's 1st Interrog. to Bainbridge, Interrog. 2-3; Dexia's 1st Req. for Prod. to EPC/PGR, Definitions: Persons/Entities Nos. 24, 36; *Id*., Doc. Req. 6-9 (requesting documents relating to transfer of funds/assets between defendants and, among others, Mrs. Rogan and JKRB); *Id.* at 10 ("All Documents relating to any direct or indirect ownership interest held by You in . . . any other entities associated with . . . [Mrs.] Rogan"); *Id.* at 12, 27 ("All Documents concerning JKR Business."); Dexia's 1st Interrogs. to EPC/PGR, Interrog. 1-3; Dexia's Doc. Req., Interrogs., and Req. to Admit to Braddock, Interrog. 9 (inquiring about services provided by JKRB); Dexia's 3rd Req. for Prod. 5-6 (requesting documents relating to Mrs. Rogan's direct/indirect control over various entities). (Ex. O)

defendants' bank accounts, records of real property and other assets <u>held in the name of Rogan, Rogan's family, and the other defendants</u>."[6]

As Dexia explained in its opening brief, in connection with its discovery efforts, Dexia's also sought documents from Mrs. Rogan and JKRB. The correspondence between Dexia's attorneys and Mrs. Rogan's attorneys makes clear that Mrs. Rogan knew that her illusory ownership of Mr. Rogan's property was at issue. In her counsel's words, "To the extent that you are seeking the location of assets to satisfy a judgment against a defendant in this matter, discovery, to the limited extent allowed against third parties, is obtainable under [Rule 69]."[7]

<u>Second</u>, ancillary jurisdiction to enforce a judgment is necessary <u>only</u> if there is no independent basis for subject matter jurisdiction over the enforcement proceeding. Ancillary enforcement jurisdiction is "that portion of ancillary jurisdiction based in the inherent power of federal courts to exercise jurisdiction in order to enforce their judgments in certain situations *where jurisdiction would otherwise be lacking*." *U.S.I. Prop.*, 230 F.3d at 496 n.5.[8] Here, diversity jurisdiction provides an independent basis for jurisdiction in Dexia's citation action.[9] Mrs. Rogan alleges she is a citizen of Indiana,[10] Dexia is foreign corporation,[11] and the amount

---

[6] Dexia's Mem. in Supp. of Mot. to Compel at 1. Unless indicated otherwise, all emphases in this brief have been added. (Ex P)

[7] 11/18/04 Letter From Cherian to Pruitt. *See also* 12/9/04 E-mail from Pruitt to Cherian (discussing subpoenas to Mrs. Rogan and JKRB); 1/12/05 E-mail from Cherian to Aizenberg (same); 1/13/05 Letter from Pruitt to Cherian Re: Subpoenas (discussing requests for transfers made by Mrs. Rogan of $5000 or more); 4/7/05 Letter from Pruitt to Cherian Re: Subpoenas to JKRB; 5/20/04 Letter to S. Daley, at 7 (correspondence with defendants' counsel requesting confirmation regarding production of documents relating to JKRB). (Ex Q)

[8] *See also U.S. v. Vitek Supply Corp.*, 151 F.3d 580, 586 (7th Cir. 1998) (whether *Peacock* permitted ancillary jurisdiction was "by the by" in action by the U.S. to collect a debt because "[a]ny effort to collect a debt due to the [U.S.] presents a claim under federal law."); *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 133 (4th Cir. 2002) ("*Peacock* does not prohibit a federal court from taking jurisdiction over a post-judgment alter ego claim where an *independent* basis for jurisdiction exists.")

[9] In the U.S.' citation action, there is federal question jurisdiction. *See Vitek Supply*, 151 F.3d at 586.

[10] Cplt. ¶ 1.

[11] Opp. Br. at Ex. B.

11

in controversy exceeds $75,000 (*e.g.*, the value of the funds Mrs. Rogan holds in bank accounts for Mr. Rogan's beneficial interest far exceeds this amount (Dexia Br. at 24-25)).

### B. Element 2: The Citation Action And This Action Are Parallel.

Mrs. Rogan asserts that Dexia cannot satisfy the second element of the first-to-file rule, *i.e.*, that the two actions are parallel, because "the immediate matter and the pending citation proceedings are factually distinct claims involving different issues." (Opp. at 21). In the citation action, NDIL necessarily will determine whether any and all assets titled in Mrs. Rogan's name – including her former Indiana residence – belong to Mr. Rogan, and if it finds she does, will be able to order her to turnover such assets. (Dexia Br. at 19) Although Mrs. Rogan's brief focuses solely upon the portion of her complaint that pertains to her former Indiana residence, it clearly is not limited only to that issue. Her complaint seeks the exact opposite of what will be adjudicated in the citation action: a declaration "confirming [her] title and right to free and unfettered possession of Judith K. Rogan's real and personal property assets and those in the name of The Rogan Revocable Trust." (Cplt. at 12 ¶ (i)); *Id.* ¶¶ 29, 34, 35, 53).

Mrs. Rogan also contends the actions are not parallel because Dexia's filing of a lien in Indiana constituted "tortious conduct [slander of title]" that "forms the basis of the" NDIN action. (Opp. Br. at 22; Cplt. ¶ 65). As a predicate to establishing slander of title, Mrs. Rogan must prove, *inter alia*, that Dexia made false statements regarding her ownership of the real property. *See Hossler v. Hammel*, 587 N.E.2d 133, 133-34 (Ind. App. Ct. 1992). Thus, if NDIL finds that Mr. Rogan rather than Mrs. Rogan was the Wexford Property's true owner (*i.e.*, that there was no false statement regarding ownership), an issue NDIL necessarily will address as

part of the citation action, her slander of title claim will be moot.[12] Accordingly, the citation action and the instant action both involve litigation regarding the true ownership of <u>all</u> property titled in Mrs. Rogan's name and are parallel actions under the first-to-file rule.

## II.   **THIS ACTION SHOULD BE TRANSFERRED UNDER § 1404(A)**.

### A.   <u>Venue Is Proper In The Northern District Of Illinois</u>.[13]

**Section 1391(e)**.  Contrary to Mrs. Rogan's contention that 28 U.S.C. § 1391(b) is the only applicable venue provision, 28 U.S.C. § 1391(e) governs venue over the U.S. and thus applies here.  However, the relevant subsections, (b)(2) and (e)(2), are the same, providing that venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

Here, Mrs. Rogan claims that venue only is proper in NDIN because she has "*alleged* conduct on the part of both defendants that took place **exclusively** in [NDIN], including both defendants' tortious actions in placing unlawful judgment liens on Mrs. Rogan's real property." (Opp. at 25) (first emphasis added; second emphasis in original).  While Mrs. Rogan does allege conduct that occurred in Indiana, *i.e.*, the filing of liens she alleges are improper, her complaint is not limited to this alleged conduct.  To the contrary, Mrs. Rogan's complaint alleges conduct that occurred in Illinois:  (a) the underlying litigation out of which defendants' judgments arose; (b) the post-judgment citation actions defendants initiated.  (Cplt. ¶¶ 7, 8, 11)

---

[12] If this case is transferred there will be no obstacle to NDIL deciding Mrs. Rogan's slander of title claims because a federal court in one state properly can adjudicate alleged slander of title in another state.  *See*, *e.g.*, *Markowitz v. Republic Nat. Bank of N.Y.*, 651 F.2d 825, 827-28 (2d Cir. 1981) (affirming SDNY's denial on the merits of a slander of title claim, pursuant to New Jersey law, where dispute regarded a lien filed in New Jersey against New Jersey property).

[13] Mrs. Rogan's argument that NDIL would lack personal jurisdiction over her <u>in this case</u> cannot prevent a transfer under § 1404(a) because she is the plaintiff in this case and a court never lacks personal jurisdiction over a plaintiff. *See Viron Int'l Corp. v David Boland, Incorp.*, 237 F. Supp. 2d 812 (W.D. Mich. 2002) ("A court may lack personal jurisdiction over a defendant, but never over a plaintiff, who consents to such jurisdiction by filing suit . . . Plaintiff confuses the analysis by stating that *defendants* could not have sued plaintiff in Florida [the transferee court].  The issue, however, is whether *plaintiff* not *defendant* could initially have filed suit in Florida.")

13

Indeed, a substantial part of the events giving rise to Mrs. Rogan's case occurred in Illinois. As described in Dexia's opening brief, the judgment Dexia seeks to enforce arose from a massive fraud directed and largely carried out in Illinois, and essentially all of the underlying events giving rise to this litigation, including extensive pre-judgment discovery regarding the Rogan family's finances, occurred in Illinois. (Dexia Br. at 7-12) In addition, Exhibit D to the complaint, which is a letter from Dexia's Chicago counsel to counsel for the purchaser of the Indiana property regarding Dexia's judgment lien against Mr. Rogan, establishes that some of the alleged tortious conduct originated in Illinois. Moreover, Mrs. Rogan's complaint seeks an adjudication regarding all property in her name <u>wherever it is located</u>, including her condominium <u>in Chicago</u>. In her words, a declaration "that ***all*** personal property held by plaintiff and/or her trust is the lawful property of plaintiff," and an adjudication as to "the rights of the Rogan Revocable Trust and Judith K. Rogan as owner of real and personal property in her name and that of the Rogan Revocable Trust." (Cplt. ¶¶ 51, 53). Because one of the two real properties at issue here is located in Illinois, venue is proper in NDIL.[14]

**Section 1391(d)**. Mrs. Rogan alleges that 28 U.S.C. § 1391(d) does not apply because Dexia is not an alien. (Opp. at 25 n.7). Dexia is an alien,[15] and Mrs. Rogan cites no proof to the contrary. Because § 1391(d) provides that "[a]n alien may be sued in any district," venue is proper in NDIL.

    **B.**    <u>**The Interests of Justice Strongly Favor Transfer.**</u>

---

[14] When venue is based upon a connection to a substantial part of the events giving rise to the claim or a substantial part of the property that is the subject of the action, venue need not have "the most substantial contacts to the dispute; rather, it is sufficient that a substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere." *See Nat'l Council on Comp. Ins., Inc. v. Caro & Graifman, P.C.,* 259 F.Supp.2d 172, 177 (D. Conn. 2003); *see also Park Inn Intern., L.L.C. v. Mody Enters., Inc.*, 105 F.Supp.2d 370, 376 (D. N.J. 2000) (for venue purposes, a substantial part of the events need not even be "a majority of the events.").

[15] (Opp. Br. at Ex. B). Because the allegations in a complaint are deemed admitted when a default judgment is entered, this fact is deemed admitted as to Mr. Rogan. (Dexia Br. at 6 n. 11)

14

Mrs. Rogan wrongly asserts that "there is no efficiency to be gained by transferring this matter because the issues germane to this matter are wholly unrelated to the pending Illinois citation proceedings and the relevant records, including the title company files and witnesses, are subject to compulsory process in Indiana." (Opp. Br. at 25).  First, as described fully *supra* and in Dexia's opening brief, the issues here and in Dexia's citation action are mirror images – both seek to determine the true owner of property titled in Mrs. Rogan's name.  Not only are they mirror images, but, as also discussed in Dexia's opening brief, NDIL already has conducted vast discovery regarding the Rogan family finances, and thus judicial economy will be served if this action is transferred there.  Second, where, as here, no reluctant witnesses are identified, the availability of compulsory process is irrelevant.  *See Mleczek v. Aspen Skiing Co., LLC*, 2007 WL 1810530, *3 (N.D. Ill. 2007) (availability of compulsory process not an issue when neither side identified any reluctant witnesses).

### C. The Other Private And Public Interests Weigh In Favor Of Transfer.

Equally unavailing are Mrs. Rogan assertions that "the convenience of the parties weighs heavily in favor of Indiana," and that "the relevant records, including the title company files and witnesses, are subject to compulsory process in Indiana." (Opp. Br. at 25-26).  First, the convenience of the parties does not weigh in favor of Indiana at all.  None of the parties currently live in Indiana and the Indiana property at issue has been sold.  Second, the relevant records include far more than files from the title company, with most of the relevant records coming from Mrs. Rogan's Chicago attorney and financial institutions in Canada and the Bahamas. (Dexia Br. at 26).  Finally, Mrs. Rogan fails to even mention the vast majority of public and private interests that courts consider in deciding motions to transfer venue. (Dexia Br. at 23 for a discussion of relevant factors).

15

**CONCLUSION**

For the reasons stated herein and in Dexia's opening brief, Dexia respectfully urges this honorable Court to transfer venue of this action to the Northern District of Illinois, Eastern Division.

Dated: **December 20, 2007**                    DEXIA CRÉDIT LOCAL


/s/    Eric S. Pruitt
Scott Mendeloff
Gabriel Aizenberg
Eric S. Pruitt
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Dexia Crédit Local*

CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2007, I electronically filed the foregoing DEXIA CREDIT LOCAL'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Gabriel Aizenberg gaizenberg@sidley.com, efilingnotice@sidley.com

David Cerven dcerven@sd1law.com

Joshua R Diller jdiller@okmlaw.com

Alison G Fox Alison.Fox@bakerd.com

Joel L Lipman jlipman@okmlaw.com

Scott Mendeloff smendeloff@sidley.com, efilingnotice@sidley.com

Michael J O'Rourke morourke@okmlaw.com

Joseph A Stewart joseph.stewart@usdoj.gov

Joseph S Reid - AUSA joseph.reid@usdoj.gov

Linda A Wawzenski Linda.Wawzenski@usdoj.gov

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

        Respectfully submitted,

        Eric S. Pruitt

        s/ Eric S. Pruitt
        Scott Mendeloff
        Gabriel Aizenberg
        Eric S. Pruitt
        Sidley Austin LLP
        One S. Dearborn Street
        Chicago, Illinois 60603
        (312) 853-7000

CH1 4095338v.6