Exhibits To Dexia Credit Local's Reply In Support Of Its Motion To Transfer Venue

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance )
Bank and Credit Local de France,                )
                                                )
                  Plaintiff,                    )
                                                )
            v.                                  )     No. 02C 8288
                                                )
PETER G. ROGAN et al                            )     Judge Mark Filip
                                                )
                                                )
                                                )
                  Defendants.                   )

**JUDY ROGAN'S RESPONSE TO
THIRD PARTY CITATION TO DISCOVER ASSETS**

The citation respondent, Judith Rogan, by her attorneys, propounds the following

responses and objections to the Third Party Citation to Discover Assets directed

Dexia Credit Local, f/k/a Dexia Public Finance Bank and Credit Local de France

**General Objections**

1. Citation respondent objects generally to all documents requested which call for

production of purely private and personal documents, including personal calendars,

personal letters and all document relating to non-financial affairs.

2. Citation respondent objects to all documents requested to the extent that

the request calls for the production of privileged documents, or documents protected by all

privileges at common law or statute, including but not limited to attorney-client and work

product.

3. Citation respondent objects to production and copying of documents

requested without the entry of an appropriate protective order.

**Document Responses**

1.     All Documents (written or electronic) relating to Your assets and liabilities, including but not limited to:

- tax returns and filings (foreign, federal, state, and municipal), including but not limited to all W-2s, Form 1099s, Form 1044s, Forms 3520 and 3520A, K-is, gift tax filings, work papers and accompanying schedules.

- property leases;

- mortgages, loan agreements, and other credit instruments

- credit and/or debit card statements;

- insurance policies;

- indemnification agreements;

- agreements or other documents evidencing Your management, ownership (whether in whole or in part), or Control of any entity;

- financial statements, including but not limited to balance sheets, general ledgers, cash receipts journals, cash disbursement journals, statements of cash flows, and any reports of any auditors or accountants concerning any such financial statements, bank statements, and statements concerning any form of investment.

- saving account statements;

- checking account statements;

- check registers;

- Treasury Forms TD F 90-22.1 (Report of Foreign Bank and Financial Accounts)

- certificates of deposit;

- safety deposit boxes (inventories and records of access);

- real property;

- cooperative shares;

- savings certificates;

- U.S. savings bonds;

- Treasury bills/bonds;

- municipal bonds;

- annuities;

- brokerage accounts (e.g., stock, commodities, etc.)

- mutual funds;

- domestic or foreign trusts for which You are a Settlor, beneficiary or Trustee;

- business and personal credit, charge, and/or debit card statements;

- copies of any debit or credit card in your possession, custody or control;

- boats;

- airplanes;

- automobiles or other motorized vehicles; and

- notes payable and receivable.

**RESPONSE:** Citation respondent will produce responsive documents requested, to the extent they exist and can be identified, subject to an appropriate protective order

4. In the event that You have any Documents responsive to paragraphs 2 and 3 of this subpoena, provide any and all documents sufficient to identify the purposes for which any relevant transactions occurred. This should include, but not be limited to, general and subsidiary ledgers, general and subsidiary journals, W-2's, 1099's, tax reporting materials, loan agreements, statements of account, correspondence, memoranda, notes, and accounting materials.

**RESPONSE:** Citation respondent will produce responsive documents to the extent they exist and can be identified, pursuant to an appropriate protective order.

5. All Documents (written or electronic) sufficient to identify any direct or indirect ownership or Control exercised by Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Sara C. Rogan over the entities and individuals listed on Rider B.

**RESPONSE:** Citation respondent will produce responsive documents to the extent they exist and can be identified, pursuant to an appropriate protective order.

6. All Communications, Correspondence, or agreements between or among You, any individual or entity on Rider B, and Oceanic Bank and Trust, Ltd. (Bahamas).

**RESPONSE:** Citation respondent will produce responsive documents, to the extent they exist and can be identified, pursuant to an appropriate protective order.

7. All Communications, Correspondence, or agreements between or among You, any individual or entity on Rider B, and T Protection, Ltd. (BVI).

**RESPONSE:** Citation respondent will produce responsive documents, to the extent they exist and can be identified, pursuant to an appropriate protective order.

8. All Communications, Correspondence, or agreements between or among You, any individual or entity on Rider B, and J.S. Archibald & Co. (BVI).

**RESPONSE:** Citation respondent will produce responsive documents, to the extent they exist and can be identified, pursuant to an appropriate protective order.

9. All Communications, Correspondence, or agreements between or among You, any individual or entity on Rider B, and Higgs and Johnson.

**RESPONSE:** Citation respondent will produce responsive documents, to the extent they exist and can be identified, pursuant to an appropriate protective order.

10. All Communications, Correspondence, or agreements between or among You, any individual or entity on Rider B, and Belize Bank.

**RESPONSE:** Citation respondent will produce responsive documents, to the extent they exist and can be identified, pursuant to an appropriate protective order.

11. A copy of Your calendar (written or electronic) for the period January 1, 2004 through the present.

**RESPONSE:** Citation respondent objects to request no. 11 on the grounds that it seeks irrelevant and purely private information and is outside the proper scope of a citation to discover assets.

12. A copy of Your (written or electronic) address book, contacts list, or other list of names/addresses/phone numbers that You maintain for personal and/or business purposes for the period January 1, 2004 through the present.

**RESPONSE:** Citation respondent objects to request no. 12 on the basis that it calls for purely private information and is outside the proper scope of a citation to discover assets.

13. A copy of Your current passport, including all visas and related Documents.

**RESPONSE:** Citation respondent objects to request no. 13 on the basis that it call for purely private information and is outside the proper scope of a citation to discover assets.

14. A copy of any and all applications or other documents related to applications for temporary or permanent residency or citizenship in Canada and/or anywhere outside the United States.

**RESPONSE:** Citation respondent objects to request no. 14 on the grounds that it calls for purely personal, private information and is outside the proper scope of a citation to discover assets.

15. Documents sufficient to show all Your travel via airplane or boat, including dates of travel and the departure and destination venues.

**RESPONSE:** Citation respondent objects to request no. 15 on the grounds that it calls for purely private, personal information outside the scope of a citation to discover assets.

16. All Communications, Correspondence, or agreements between You and Fred Cuppy, Troy Myers, John Tatooles, or John Foley regarding any individual or entity c Rider B.

**RESPONSE:** Citation respondent objects to request no.16 to the extent that such documents are protected by attorney-client or work product privilege and that such documents are outside the proper scope of a citation to discover assets.

17. All billing records and records of payment relating to services that Harper Grey LLP has provided to You or any individual or entity on Rider B.

**RESPONSE:** Citation respondent objects to request no. 17 on the basis of common

law privileges and that it exceeds the proper scope of a citation to discover assets.

18. All billing records and records of payment relating to services that Hogan Marren,

Ltd. has provided to You or any individual or entity on Rider B.

**RESPONSE:** Citation respondent objects to request no. 18 on the basis of common

law privileges and that such request exceeds the proper scope of a citation to discover

assets.

19. All billing records and records of payment relating to services that John Tatooles

has provided to You or any individual or entity on Rider B.

**RESPONSE:** Citation respondent objects to request no. 19 on the basis of common

law priveges and that such request exceeds the proper scope of discovery on a citation to

discover assets.

20. All billing records and records of payment relating to services that John Foley has

provided to You or any individual or entity on Rider B.

**RESPONSE:** Citation respondent objects to request no. 20 on the basis of common

law privileges and that such request exceeds the proper scope of a citation to discover

assets.

21. All billing records and records of payment relating to services that Burke Costanza

& Cuppy LLP has provided to You or any individual or entity on Rider B.

**RESPONSE:** Citation respondent objects to request no. 21 on the basis of common

law privileges and that such request exceeds the proper scope of a citation to discover

assets.

22. All billing records and records of payment relating to services that Cohen & Thiros, P.C. has provided to You or any individual or entity on Rider B.

**RESPONSE:** Citation respondent objects to request no. 22 on the basis of common law privileges and that such request exceeds the proper scope of a citation to discover assets.

23. Documents sufficient to identify any law firms or attorneys, other than those identified in Requests No. 17-22, that have provided services for the benefit of You or any individual or entity on Rider B.

**RESPONSE:**     Citation respondent objects to request no. 23 on the basis of common law privileges and that such request exceeds the proper scope of a citation to discover assets.

24. All billing records and records of payment relating to services provided by any law firm or attorney identified in the documents produced pursuant to Request No. 23.

**RESPONSE:**     Citation respondent objects to request no. 24 on the basis of common law privileges and that such request exceeds the proper scope of discovery on a citation to discover assets.

JUDY ROGAN

By: _____

One of her Attorneys

Michael J. O'Rourke, Esq.
Andrew N. Levine, Esq.
O'ROURKE KATTEN & MOODY
161 N. Clark Street, Suite 2230
Chicago, IL 60601
(312)849-2020
(312)849-2021 Fax
morourke@okmlaw.com

**EXHIBIT B**



| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | BEIJING | GENEVA | SAN FRANCISCO |
| ONE SOUTH DEARBORN | BRUSSELS | HONG KONG | SHANGHAI |
| CHICAGO, IL 60603 | CHICAGO | LONDON | SINGAPORE |
| (312) 853 7000 | DALLAS | LOS ANGELES | TOKYO |
| (312) 853 7036 FAX | | NEW YORK | WASHINGTON, DC |

epruitt@sidley.com
(312) 853-1093                    FOUNDED 1866

July 5, 2007

**By Email**

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601

    Re:  <u>Dexia v. Rogan (02 C 8288) – Citation to Judith Rogan</u>

Dear Mike:

    Today, I visited your offices to review the documents you made available to Dexia Credit Local ("Dexia") as the production of Judith Rogan in response to Dexia's Citation to Discover Assets in the above-referenced case. Based upon my review, the production made today consisted entirely of: (i) six boxes of documents relating to Peter Rogan's finances that had been taken from Peter Rogan's Merrillville office in or about October 2006 and already were made available to the United States (and Dexia) earlier this year; and (ii) documents that Mrs. Rogan produced to Dexia in 2005 in response to a subpoena in the above-referenced case. If today's production was intended to be a complete response to the Citation, then Mrs. Rogan has not made a good faith effort to respond to it because she simply has recycled previous productions.

    For example, Mrs. Rogan previously produced tax returns to us. You made those previously-produced tax returns available to us again today. However, despite the fact that Mrs. Rogan agreed to produce tax returns for the period 2004 through the present in her written response to the Citation, the documents that Mrs. Rogan produced today did not include Mrs. Rogan's tax returns for 2004, 2005 and 2006. Similarly, in the written response to the Citation that Mrs. Rogan provided today, she states that she will produce bank statements and financial records. Dexia has evidence obtained from other sources establishing that Mrs. Rogan has an account with HSBC in Canada and an account held in the name of the Judith K. Rogan Revocable Trust at Oceanic Bank and Trust in the Bahamas. Although these documents unquestionably are within Mrs. Rogan's possession, custody and control, she did not produce any documents related to these accounts. In summary, the production made available to Dexia consisted entirely of prior productions and suffers from several significant omissions.

    I will shortly follow up this letter with a more detailed response to Mrs. Rogan's written objections and responses to the Citation requests. However, in the meantime and to ensure that the production process continues to move forward, we ask that Mrs. Rogan immediately produce key documents requested in the Citation, *i.e.*, tax returns and related

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships



MICHAEL J. O'ROURKE
JULY 5, 2007
PAGE 2 | CHICAGO

documents for the years 2004-2006, account records for the Canadian and Bahamian bank accounts, and updated account statements for other accounts held in her name. Also, to the extent that you are claiming any privilege as the basis for withholding documents, we ask that you provide us with a privilege log within seven days. Finally, with respect to your proposed protective order, we will agree that the documents Mrs. Rogan produces should be subject to the protective order already entered in this case, which specifies the categories of documents that can be entitled to confidential treatment. A copy of that protective order is attached.

Sincerely,

Eric S. Pruitt

cc:    Gabriel Aizenberg

**Aizenberg, Gabriel**

**From:** Angela O'Rourke [mailto:awalther@okmlaw.com]
**Sent:** Tuesday, July 10, 2007 3:58 PM
**To:** Pruitt, Eric
**Cc:** morourke@okmlaw.com
**Subject:** Dexia v. Rogan et. al. Case no. 02 C 8288

Dear Mr. Pruitt
Attached please find the Judy Rogan's Tax returns for the years 2003 through 2005 bates labeled R 00001 – R 00077. If you have any problems with the attached documents please contact me. If you have any questions, please contact Michael O'Rourke.

Sincerely,

Angela B. O'Rourke
Legal Assistant

O'ROURKE KATTEN & MOODY
161 North Clark Street, Suite 2230
Chicago, Illinois 60601
Tel. (312)849-2020
Fax: (312)849-2021

**From:** orourkemm@aol.com [mailto:orourkemm@aol.com]
**Sent:** Wednesday, August 29, 2007 1:52 PM
**To:** Pruitt, Eric
**Subject:** HSBC documents

Eric  Attached are the documents we just got in from HSBC.  They are bates-stamped
JR006952-JR006967.  See you tomorrow morning.

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020
Fax: (312) 849-2021

Email and AIM finally together. You've gotta check out free AOL Mail!

**From:** orourkemm@aol.com [mailto:orourkemm@aol.com]
**Sent:** Tuesday, September 11, 2007 2:37 PM
**To:** Pruitt, Eric
**Subject:** Judy Rogan production

Eric  Attached are the personal documents which just arrived from Judy Rogan

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020
Fax: (312) 849-2021

Email and AIM finally together. You've gotta check out free AOL Mail!

**From:** orourkemm@aol.com [mailto:orourkemm@aol.com]
**Sent:** Tuesday, September 18, 2007 9:43 AM
**To:** Pruitt, Eric
**Subject:** Rogan bank documents

Eric  Attached are copies of the Brandywine documents which are the first documents we have received since we sent out our mass mailing (see cover power and document request). Please call if you have any questions.

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020
Fax: (312) 849-2021

Email and AIM finally together. You've gotta check out free AOL Mail!

**From:** Michael J. O'Rourke [mailto:orourkemm@aol.com]
**Sent:** Friday, October 19, 2007 4:21 PM
**To:** Pruitt, Eric
**Subject:** Rogan financial document production-10/19/07

Eric--Attached please find the latest production from Judy Rogan of financial documents requested by Dexia.

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020
Fax: (312) 849-2021

Email and AIM finally together. You've gotta check out free AOL Mail!

**SIDLEY AUSTIN LLP**
ONE SOUTH DEARBORN
CHICAGO, IL 60603
(312) 853 7000
(312) 853 7036 FAX

epruitt@sidley.com
(312) 853-1093

| | | |
|---|---|---|
| BEIJING | GENEVA | SAN FRANCISCO |
| BRUSSELS | HONG KONG | SHANGHAI |
| CHICAGO | LONDON | SINGAPORE |
| DALLAS | LOS ANGELES | TOKYO |
| | NEW YORK | WASHINGTON, DC |

FOUNDED 1866

August 24, 2007

**By Email and Facsimile**

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601

Re:     _Dexia v. Rogan (02 C 8288)  –  Citation to Judith Rogan_

Dear Mike:

   I am writing in relation to Judith Rogan's objections and document production in response to Dexia Crédit Local ("Dexia") Citation to Discover Assets in the above-referenced case. As noted in the Citation, we will not be able to proceed with Mrs. Rogan's examination until we have satisfactorily resolved the document production issues addressed in this letter. To date, Mrs. Rogan response to the Citation has been severely deficient, for reasons we explain in detail below. Accordingly, we will file a rule to show cause as to why Mrs. Rogan should not be held in contempt if we do not receive the information and/or production requested below by 5:00 p.m. on Tuesday, August 28th.

   Before we proceed with addressing Mrs. Rogan's compliance with her production obligations, a note of caution. As you know, the Citation prohibits Mrs. Rogan from, _inter alia_, making or allowing any transfer or other disposition of, or interfering with, any property belonging to the judgment debtor, Peter Rogan. We have developed evidence that Mrs. Rogan has previously facilitated such transfers. Accordingly, we urge you to caution Mrs. Rogan that she is prohibited from making or allowing any such transfers.

**I. General Objections.**

   **General Objection No. 1** – Mrs. Rogan objects generally to all documents requested "which call for production of purely private and personal documents." This objection was not specifically raised in Mrs. Rogan's response to Requests No. 1–10. Mrs. Rogan's invocation of this objection in response to Requests No. 11–15 is addressed below. Please confirm by 5:00 p.m. on Tuesday, August 28th.whether Mrs. Rogan has withheld any documents responsive to Requests No. 1–10 on the basis of this general objection.

   **General Objection No. 2** – Mrs. Rogan objects to all requests to the extent that they call for the production of privileged documents. It is well-established that the party seeking to withhold materials from discovery bears the burden of establishing the essential elements to



MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 2 | CHICAGO

demonstrate the materials are privileged. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997). Accordingly, Fed.R.Civ.P. 26(b)(5) requires that parties withholding otherwise discoverable information provide detailed descriptions of all information withheld to enable the requesting party to assess the applicability of the privilege. Furthermore, the privilege must be established on a document-by-document basis; a blanket claim failing to specify what information is protected will not suffice. *United States v. White*, 970 F.2d 328, 334 (7th Cir. 1992). We specifically requested that Mrs. Rogan provide us with a privilege log on July 5, 2007. Despite these requirements of which you surely are aware and our July 5th request, Mrs. Rogan has not yet provided us with a privilege log for documents she has withheld from production. By 5:00 p.m. on Tuesday, August 28th, Mrs. Rogan must provide a privilege log providing a detailed explanation for <u>each</u> document withheld from production. The log, <u>inter alia</u>, must state the sender, recipient, date, type of document (<u>e.g.</u>, memo, letter, etc.), identify the client and attorney, and provide a sufficient description of the subject matter so that we can assess whether or not it is privileged.

**General Objection No. 3** – Mrs. Rogan objected to producing documents without the entry of an appropriate protective order. As documented in my July 5th letter, the parties have agreed that Mrs. Rogan's document production will be governed by the terms of the protective order previously entered by Judge Filip in this case.

## II.     Specific Objections and Document Production Issues.

Below I address Mrs. Rogan's objections to specific document requests as well as deficiencies we have discovered in Mrs. Rogan's document production to date.

**Request No. 1** – Mrs. Rogan agreed to produce documents responsive to our request for "[a]ll documents (written or electronic) relating to Your assets and liabilities . . ." However, there are several areas in which Mrs. Rogan's production is deficient.

Oceanic Bank and HSBC account documents – Dexia served its Citation on Mrs. Rogan through personal service and by sending the Citation to you on June 20, 2007. Since that time, we repeatedly have requested production of the full account documents for Mrs. Rogan's accounts at Oceanic Bank & Trust in the Bahamas and HSBC in Canada.

> ➢ On July 5, 2007, after reviewing Mrs. Rogan's initial production of documents at your offices, I noted that Mrs. Rogan had not produced documents related to her bank accounts at Oceanic Bank & Trust and HSBC. That same day, I sent you a letter noting that Mrs. Rogan had not produced these documents and stating that we expected Mrs. Rogan to immediately produce these key financial records.

> ➢ On July 10th, you responded to my letter by stating that "we are pulling together the HSBC and Bahamas trust documents for production   I will call you in the next couple of days when I have them."



MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 3 | CHICAGO

> I responded to you on July 11th to emphasize that "the citation seeks not just the account statements for the HSBC, Oceanic Bank and other accounts, but also requires production of cancelled checks, wire transfer records, records of deposits, account opening documents, and communications relating to the accounts."

> On July 13th, Mrs. Rogan produced some account records to us. However, after examining the records, we discovered that the production contained **no** records for Mrs. Rogan's Oceanic Bank account and only a summary account statement for the HSBC account covering the period January 1, 2007 through July 2007.

> On August 14th, I sent you another letter stating that we still had not received any documents for Mrs. Rogan's account at Oceanic Bank and that the summary statement Mrs. Rogan produced for the HSBC account was not adequate. My August 14th email made clear that the Citation requires Mrs. Rogan to produce full account records for both the Oceanic Bank and HSBC accounts for the period January 1, 2004 through the present, "including: account opening documents, monthly account statements, all back up for individual credits and debits to the account (*i.e.*, records of deposit, checks, wire transfer records) and all correspondence or communications Mrs. Rogan has regarding these account[s]."

> On August 20th, you called to tell me that Mrs. Rogan was contacting HSBC to obtain the documents we were requesting, that Mrs. Rogan did not have any Oceanic Bank account documents in her possession, and that you had a "call in" to John Foley regarding obtaining the Oceanic Bank account statements. You also told me that you would call me on August 22nd with an update on when we could expect to receive these documents. I did not hear anything from you August 22nd.

Mrs. Rogan has been on notice since at least June 20th that she needed to provide us with her bank records, including full monthly statements, records of transfers and other documents related to her accounts. You stated on July 10th that Mrs. Rogan was gathering the Oceanic and HSBC documents. Despite these facts, we *still* have not received these documents (apart from the summary records for January–July 2007 produced for the HSBC account). If Mrs. Rogan did not have these records in her personal possession, she should have requested the records from HSBC and Oceanic weeks ago. There is no justification for the delay in producing these documents. The HSBC and Oceanic documents must be produced by 5:00 p.m. on Tuesday, August 28th.

Other Bank and Investment Accounts - Mrs. Rogan provided us with one-page, 2006 year end account summaries for many of her bank and investment accounts. However, as noted above, our requests covered the period January 1, 2004 through the present and required Mrs. Rogan to produce not only year end account summaries, but all account opening documents, monthly account statements, individual records of deposit, checks, wire transfer records, and all correspondence or communications Mrs. Rogan has regarding these accounts.



SIDLEY AUSTIN LLP

MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 4 | CHICAGO

Based upon our review, it appears that Mrs. Rogan may only have produced account documents in her immediate physical possession. However, Judge Schenkier repeatedly has affirmed in this case that a party responding to discovery requests has a responsibility to produce not only documents in her immediate possession, but also documents in her custody or control, i.e., documents that the party has the ability to receive upon request. *See, e.g., Dexia Credit Local v. Rogan et al.*, 231 F.R.D. 538, 541 (N.D. Ill. 2004) Based upon our review of the documents provided to date, Mrs. Rogan still has not produced the following documents to Dexia:

| Account | Title | Documents Not Produced |
|---------|-------|------------------------|
| Brandywine Fund | Judith K. Rogan | ➢ No monthly account statements for period January 1, 2004 through present;<br><br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| DWS Scudder | Judith K. Rogan Revocable Trust | ➢ No monthly account statements for January 2004 through March 2004, August 2004 through December 2004, or January 1, 2005 through present;<br><br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| Ameritrade | Judith K. Rogan Revocable Trust | ➢ No monthly account statements for July 2004, November 2004, April 2005 through August 2005, October 2005 through December 2005 and February 2006;<br><br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| 1st Nat'l Bank of Valparaiso | Judith K Rogan | ➢ No monthly account statements for period January 1, 2004 |



SIDLEY AUSTIN LLP

MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 5 | CHICAGO

| | | Trustee | ➢ through present;<br><br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
|---|---|---|---|
| 1st Nat'l Bank of Valparaiso | | Peter Rogan or Judith K | ➢ No monthly account statements for period January 1, 2004 through December 31, 2004;<br><br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| 1st Nat'l Bank of Valparaiso | Safe Deposit Box | Peter and Judith Rogan | ➢ No inventory of the contents of safe deposit box;<br>➢ No copies of the bank's records of access to the safe deposit box or other records relating to the safe deposit box. |
| Clipper Fund | | Judith K Rogan | ➢ No account opening documents;<br><br>➢ No monthly account statements for period January 1, 2004 through present;<br><br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |
| Ameritrade | | Judith K Rogan Trustee | ➢ No account opening documents;<br><br>➢ No monthly account statements for period January 1, 2004 through present;<br><br>➢ No records of individual deposits, checks, or wire transfer records for period January 1, 2004 through present. |



SIDLEY AUSTIN LLP

MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 6 | CHICAGO

By 5:00 p.m. on Tuesday, August 28th, provide us with a specific date within the next two weeks when we will receive the foregoing documents. If you believe any of the records identified above already have been produced, please identify by Bates number where those documents are to be found in Mrs. Rogan's production.

      **Request No. 6** – Mrs. Rogan agreed to produce all "communications, correspondence, or agreements" between Mrs. Rogan, any individual or entity on Rider B of the Citation, and Oceanic Bank. To date, Mrs. Rogan has not produced any such documents to Dexia. Mrs. Rogan (or her agents) must have had some communication with Oceanic Bank in setting up her account and arranging transfers to and from the account. If such communications are in the possession of Messrs. Foley, Tatooles, Cuppy or Myers or some other individual acting on Mrs. Rogan's behalf, Mrs. Rogan must request the responsive documents from those individuals. By 5:00 p.m. on Tuesday, August 28th, provide us with a specific date within the next two weeks when we will receive the foregoing documents.

      **Requests Nos. 7-10** – Mrs. Rogan agreed to produce responsive documents "to the extent they exist." By 5:00 p.m. on Tuesday, August 28th, provide us with a specific date within the next two weeks when we will receive the foregoing documents.

      **Requests Nos. 11-15** – Mrs. Rogan has objected to these requests on the grounds that they seek "irrelevant and purely private information" that is outside the proper scope of a citation to discover assets. This objection is without merit. Dexia's citation to discover assets was issued pursuant to 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277. The type of information discoverable under this provision is extremely broad. *See Gerald E. Kennedy v. Four Boys Labor Services, Inc.,* 279 Ill.App.3d 361, 367 (1996) (noting that "in interpreting the provisions of section 2-1402, the provisions are to be liberally construed.") In fact, Illinois courts explicitly have held that in the context of a citation proceeding, a "fishing expedition" is permissible so long as it is based on a belief that assets are in the possession of the third party. *See Terry Regan and Dennis Egan v. Garfield Ridge Trust & Savings Bank,* 247 Ill. App. 3d 621, 624 (1993) (holding that "a fishing expedition for assets is permissible in the context of an initial proceeding to discover assets"); *Federal Loan Corp. v. Harris,* 17 Ill.App.3d 49, 50 (1974) (same).

      The Seventh Circuit has held that a judgment creditor can properly use a citation to discover assets to request non-financial information that may assist the judgment creditor in discovering the location of the judgment debtor's assets. *See Matrin-Trigona v. Gouletas,* 634 F.2d 354, 357 (7th Cir. 1980) (affirming contempt order against citation respondent who refused to provide information regarding his place of birth, location of his telephone, and information relating to his filings as a candidate for public office) Thus, during discovery in this case, Mr. Rogan produced his own calendar, address book, passport and information evidencing travel. Each of these categories of documents contained information relevant to Mr. Rogan's assets and control over various investments. Mr. Rogan's calendar, airline ticket receipts and passport



SIDLEY AUSTIN LLP

MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 7 | CHICAGO

provided evidence of his travel to the Bahamas to coordinate a transfer of funds from his Bahamian trust to a U.S. bank account in 2002. Mr. Rogan's address book similarly provided information regarding Mr. Rogan's connections to investments of which he claimed to have no knowledge.

Here, Dexia has requested from Mrs. Rogan the same types of documents that Mr. Rogan already produced and which the Seventh Circuit in *Gouletas* found relevant in a citation proceeding. Specifically, Dexia requested a copy of Mrs. Rogan's calendar (Request 11), address book or contacts list (Request 12), passport (Request 13), applications or other documents related applications for temporary or permanent residency (Request 14) and document sufficient to show Mrs. Rogan's travel by airplane or boat (Request 15). These requests seek relevant information relating to the potential disposition and location of Mr. Rogan's assets, which we have reason to believe have flowed through accounts in Mrs. Rogan's name. For example, Mrs. Rogan opened her foreign accounts in the Bahamas and Canada during the pendency of this litigation. It appears that a substantial amount of these funds likely originated with Mr. Rogan, were transferred by Mr. Rogan to Mrs. Rogan's foreign accounts, and then used by Mrs. Rogan for Mr. Rogan's personal expenses, *e.g.*, Mrs. Rogan's payment of Mr. Rogan's $100,000 retainer fee with Hogan Marren, Ltd. in connection with its representation of Mr. Rogan in his appeal of *U.S. v. Rogan*. In addition, given that she is Mr. Rogan's wife, information about her travel and contacts is likely to reveal information about her husband's whereabouts and locations in which he has disposed of assets. Documents responsive to these requests must be produced by 5:00 p.m. on Tuesday, August 28th.

**Request No. 16** – Mrs. Rogan has objected to our request for communications between Mrs. Rogan and Fred Cuppy, Troy Myers, John Tatooles or John Foley regarding the individuals or entities on Rider B as: (i) seeking documents protected by the attorney-client privilege and (ii) outside the proper scope of a citation.

First, we note that we have never seen any documents suggesting that Mrs. Rogan has an attorney-client relationship with Messrs. Cuppy, Myers, Tatooles or Foley in relation to the entities and individuals identified in Rider B. The fact that these individuals are attorneys does not make every communication Mrs. Rogan had with them privileged. Accordingly, for each document withheld from production, Mrs. Rogan must provide us with a detailed privilege log providing the basis for her claim of privilege. *See Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 145 F.R.D. 84, 88 (N.D. Ill. 1992) (holding that "[f]or each document, the log should identify the date, the author and all recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories . . . must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the [existence of a privilege]. Accordingly, descriptions such as 'letter re claim,' 'analysis of claim,' or 'report in anticipation of litigation' -- with which we have grown all too familiar -- will be insufficient."). *See also In re Air Crash Near Roselawn, Ind.*, 1997 WL 97096, *2 (N.D. Ill. 1997) (same).



Second, the requested documents are within the proper scope of a citation. Messrs. Cuppy, Myers, Tatooles and Foley jointly manage the affairs of a large web of entities directly and indirectly owned by Mr. Rogan's domestic and foreign trusts and the domestic and foreign trusts of the Rogan children. Discovery to date has established that millions of dollars have flowed between and among these entities for Mr. Rogan's benefit. As noted above, documents currently in our possession indicate that Mr. Rogan also has caused funds to be transferred to Mrs. Rogan for his benefit. In light of the fact that Mrs. Rogan has no apparent ownership or other interest in the entities on Rider B (with the exception of JKR Business and her revocable trust), the fact that Mrs. Rogan has had any communications with Messrs. Cuppy, Myers, Tatooles or Foley regarding the entities on Rider B would be directly relevant to her knowledge of the affairs of the entities that have been used to hold and/or transfer and conceal the location of Mr. Rogan's assets.

By 5:00 p.m. on Tuesday, August 28th, provide us with a specific date within the next two weeks when we will receive the foregoing documents.

**Requests No. 17–24** - These requests seek billing records and records of payment for services provided by various law firms to Mrs. Rogan, Mr. Rogan, or the entities and individuals on Rider B. Mrs. Rogan has objected to these requests on the basis of "common law privileges" and as outside the proper scope of a citation. We have no idea what "common law" privileges Mrs. Rogan is invoking. In any event, Mrs. Rogan must identify with specificity the privilege she is invoking for *each* document she is withholding based on this objection and must provide a detailed privilege log providing the factual basis for her privilege claims as described above. With respect to Mrs. Rogan's relevance objection, the requested documents clearly are within the proper scope of a citation. Dexia has requested billing records and records of payment provided by various law firms. The firms named in these requests all have provided services to Mr. Rogan that directly or indirectly relate to the disposition of his assets. These firms' billing records likely will contain descriptive entries that may evidence the location of Mr. Rogan's assets. Indeed, Magistrate Judge Schenkier previously ordered Messrs. Cuppy, Foley and Tatooles to produced *unredacted* attorney invoices to Dexia. The invoices that these attorneys produced contained a wealth of information pertaining to Mr. Rogan's assets. Accordingly, we have every reason to believe that attorney invoices in Mrs. Rogan's possession similarly would contain information regarding the disposition of Mr. Rogan's assets and therefore are properly within the scope of the citation. The records of payment themselves are also directly relevant to Mr. Rogan's assets. The law firms named in Requests No. 17-24 all have provided services to Mr. Rogan and/or entities under his control. We already have discovered that Mr. Rogan caused Mrs. Rogan to use her HSBC account to pay for services Hogan Marren Ltd. rendered to Mr. Rogan. Records evidencing how all of these firms have been paid will establish the source of funds Mr. Rogan used to pay for their services.

By 5:00 p.m. on Tuesday, August 28th, provide us with a specific date within the next two weeks when we will receive the foregoing documents.

*       *       *



MICHAEL J. O'ROURKE
AUGUST 24, 2007
PAGE 9 | CHICAGO

As noted above, Dexia will move for a rule to show cause against Mrs. Rogan if we do not receive the following by 5:00 p.m. on Tuesday, August 28th:

➢ Confirmation of whether Mrs. Rogan has withheld documents responsive to Requests No. 1-10 based on General Objection No. 1;

➢ A privilege log for all documents withheld on a claim of privilege;

➢ A full and complete production of the Oceanic Bank and HSBC documents; and

➢ A specific date within the next two weeks when we will receive the documents responsive to Request No. 1 identified on pages 4-5, *supra*, and the documents responsive to Requests No. 6-24.

As always, please contact me with any questions or concerns you may have about our requests.

Sincerely,

Eric S. Pruitt

cc:    Gabriel Aizenberg
       AUSA Joseph Stewart

**Pruitt, Eric**

| | |
|---|---|
| **From:** | orourkemm@aol.com |
| **Sent:** | Monday, August 27, 2007 11:05 PM |
| **To:** | Pruitt, Eric |
| **Subject:** | Re: Dexia v. Rogan - Citation to Judy Rogan |

Mr. Pruitt--I will respond to your letter in more detail later, but your threat of moving for a rule to show cause reflects a serious misunderstanding of the rules. we have had no discovery conference as called for  and your letter does not constitute a conference.  In addition, Mrs. Rogan has produced the documents in her possession relating to HSBC and I am in touch with the Hasting branch in Canada to obtain the account opening documents you have requested. I am also endeavoring to obtain Bahamas trust documents to the extent available.  If you want to discuss these matters further, I am available tomorrow in the morning.

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020
Fax: (312) 849-2021


-----Original Message-----
From: Pruitt, Eric <EPruitt@Sidley.com>
To: Pruitt, Eric <EPruitt@Sidley.com>; orourkemm@aol.com
Cc: Aizenberg, Gabriel <gaizenberg@sidley.com>; Joseph.Stewart@usdoj.gov;
Melissa.Childs@usdoj.gov
Sent: Fri, 24 Aug 2007 3:54 pm
Subject: RE: Dexia v. Rogan - Citation to Judy Rogan

Mike,

    Please see the attached letter.
*Eric S. Pruitt*
Sidley Austin LLP
One South Dearborn St.
Chicago, Illinois 60603
p. 312.853.1093
f.  312.853.7036
www.sidley.com


---

**From:** Pruitt, Eric
**Sent:** Friday, August 17, 2007 10:49 AM
**To:** 'orourkemm@aol.com'
**Cc:** Aizenberg, Gabriel
**Subject:** RE: Dexia v. Rogan - Citation to Judy Rogan

Mike,

I just left you a voicemail, but understand you are out of the office today. Your July 11th email below indicated that the HSBC and Oceanic Bank account documents were being pulled at that time. Accordingly, we do not see why there should be any delay in getting us a full set of the requested documents as outlined below. Please provide us with a date certain by which we will receive the documents before the close of business on Monday, August 20th.

**Eric S. Pruitt**
Sidley Austin LLP
One South Dearborn St.
Chicago, Illinois 60603
p. 312.853.1093
f. 312.853.7036
www.sidley.com

---

**From:** orourkemm@aol.com [mailto:orourkemm@aol.com]
**Sent:** Wednesday, August 15, 2007 2:24 PM
**To:** Pruitt, Eric
**Subject:** Re: Dexia v. Rogan - Citation to Judy Rogan

Eric I will be talking to Judy tomorrow I will get back to you Mike

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illlinois 60601
(312) 849-2020
fax: (312) 849-2021

-----Original Message-----
From: Pruitt, Eric <EPruitt@Sidley.com>
To: Pruitt, Eric <EPruitt@Sidley.com>; orourkemm@aol.com
Cc: Aizenberg, Gabriel <gaizenberg@Sidley.com>
Sent: Tue, 14 Aug 2007 11:45 am
Subject: RE: Dexia v. Rogan - Citation to Judy Rogan

Mike,

Thank you for the documents you have produced to date. We have been reviewing the documents Mrs. Rogan produced to us. I will soon respond to Mrs. Rogan's formal objections to the citation and also provide you with a detailed listing of items that we believe are missing from the production. However, the following items clearly should have been produced by now:

1)    As I mentioned below and as we have previously discussed, Mrs. Rogan has an account at Oceanic Bank and Trust Limited in the Bahamas. The account number appears to be . Mrs. Rogan has not produced any account records for this account. Mrs. Rogan needs to immediately produce all records relating to this account, including but not limited to: account opening documents, monthly account statements, all back up for individual credits and debits to the account (i.e., records of deposit, checks, wire transfer records) and all correspondence or communications Mrs. Rogan has regarding this account. Mrs. Rogan has had well over a month to produce these records.

2)   The HSBC account documents Mrs. Rogan produced appear to only cover the period January 21, 2007 through July 2007.  Moreover, the records produced appear to simply be a record that Mrs. Rogan printed out from the bank's website.  Mrs. Rogan needs to produce full account records for her HSBC account for the period January 1, 2004 through the present, including:  account opening documents, monthly account statements, all back up for individual credits and debits to the account (i.e., records of deposit, checks, wire transfer records) and all correspondence or communications Mrs. Rogan has regarding this account.

   As you know, Mrs. Rogan must produce not only the documents in her personal possession, but also documents that are within her control.  This means Mrs. Rogan must request and produce documents from HSBC and Oceanic Bank as necessary to fulfill her obligations under the citation.

   Please provide us with a date certain by which we will receive these documents.

**Eric S. Pruitt**
Sidley Austin LLP
One South Dearborn St.
Chicago, Illinois 60603
p. 312.853.1093
f.  312.853.7036
www.sidley.com

---

**From:** Pruitt, Eric
**Sent:** Wednesday, July 11, 2007 9:54 AM
**To:** 'orourkemm@aol.com'
**Cc:** Aizenberg, Gabriel
**Subject:** RE: Dexia v. Rogan - Citation to Judy Rogan

Mike,

   First, you mentioned that Mrs. Rogan currently is scheduled to be traveling for a wedding on the noticed date for her citation examination, July 30th.  We can agree to extend the date for Mrs. Rogan's examination, but would like to find a date in the first part of August.  Please provide us with dates in August on which Mrs. Rogan can appear in Chicago for her examination.

   Second, I would like to make sure it is clear that the citation seeks not just the account statements for the HSBC, Oceanic Bank and other accounts, but also requires production of cancelled checks, wire transfer records, records of deposits, account opening documents, and communications relating to the accounts.

   Third, it is our understanding that a mortgage was recorded on the Rogan home at 476 Wexford, Valparaiso, Indiana in July 2006.  The lender was Market Street Mortgage Corp.  I do not recall seeing any documents in the production relating to this mortgage.  Please confirm that you will be producing documents relating to the mortgage, including communications relating to the mortgage and all documents reflecting the disbursements of funds to Mrs. Rogan and the disposition of those funds.

   Please let me know if you have any questions.
**Eric S. Pruitt**
Sidley Austin LLP
One South Dearborn St.

Chicago, Illinois 60603
p. 312.853.1093
f. 312.853.7036
www.sidley.com

---

**From:** orourkemm@aol.com [mailto:orourkemm@aol.com]
**Sent:** Tuesday, July 10, 2007 12:49 PM
**To:** Pruitt, Eric
**Subject:** Re: Dexia v. Rogan - Citation to Judy Rogan

Eric the tax returns will be produced  I thought they were in there  also we are
pulling together the HSBC and Bahamas trust documents for production   I will
call you in the next couple of days when I have them

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illlinois 60601
(312) 849-2020
fax: (312) 849-2021


-----Original Message-----
From: Pruitt, Eric <EPruitt@Sidley.com>
To: morourke@okmlaw.com
Cc: Aizenberg, Gabriel <gaizenberg@Sidley.com>
Sent: Thu, 5 Jul 2007 3:55 pm
Subject: Dexia v. Rogan - Citation to Judy Rogan

Please see the attached letter.
***Eric S. Pruitt***
**Sidley Austin LLP**
One South Dearborn St.
Chicago, Illinois 60603
p. 312.853.1093
f. 312.853.7036
www.sidley.com
<<Untitled.pdf>> <<Dexia Protective Order.pdf>>

Sidley Austin LLP mail server made the following annotations on


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -


IRS Circular 230 Disclosure: To comply with certain U.S. Treasur

**Pruitt, Eric**

| | |
|---|---|
| **From:** | orourkemm@aol.com |
| **Sent:** | Wednesday, August 29, 2007 1:52 PM |
| **To:** | Pruitt, Eric |
| **Subject:** | HSBC documents |
| **Attachments:** | documents rec'd 8-29-07 JR006952-JR006967.pdf |

Eric  Attached are the documents we just got in from HSBC.  They are bates-stamped JR006952-JR006967.  See you tomorrow morning.

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020
Fax: (312) 849-2021

Email and AIM finally together. You've gotta check out free AOL Mail!

**Pruitt, Eric**

| | |
|---|---|
| **From:** | orourkemm@aol.com |
| **Sent:** | Thursday, August 30, 2007 7:58 AM |
| **To:** | Pruitt, Eric |
| **Subject:** | Re: Dexia v. Peter Rogan--Citation on Judy Rogan |

Eric I have no problem talking with both of you However, I have a short status in state court at 10:00. I will call you when I get back and we can conference in Joe You do not have to come over We can discuss by phone Mike

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020
Fax: (312) 849-2021

-----Original Message-----
From: Pruitt, Eric <EPruitt@Sidley.com>
To: orourkemm@aol.com
Sent: Thu, 30 Aug 2007 7:24 am
Subject: RE: Dexia v. Peter Rogan--Citation on Judy Rogan

Thank you for the documents. AUSA Joe Stewart would like to join us at 10 since his citation seeks most of the same documents that our issue with respect to our citation. Please let me know if you have any objection of AUSA Stewart joining the meeting.

*Eric S. Pruitt*
Sidley Austin LLP
One South Dearborn St.
Chicago, Illinois 60603
p. 312.853.1093
f. 312.853.7036
www.sidley.com

---

**From:** orourkemm@aol.com [mailto:orourkemm@aol.com]
**Sent:** Tuesday, August 28, 2007 2:14 PM
**To:** Pruitt, Eric
**Subject:** Re: Dexia v. Peter Rogan--Citation on Judy Rogan

See you then I hope to have the HSBC documents by then

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601

12/13/2007

(312) 849-2020
Fax: (312) 849-2021


-----Original Message-----
From: Pruitt, Eric <EPruitt@Sidley.com>
To: orourkemm@aol.com
Sent: Tue, 28 Aug 2007 1:03 pm
Subject: RE: Dexia v. Peter Rogan--Citation on Judy Rogan

Thursday at 10 works for me.  I will come to your office.

**Eric S. Pruitt**
Sidley Austin LLP
One South Dearborn St.
Chicago, Illinois 60603
p. 312.853.1093
f. 312.853.7036
www.sidley.com

---

**From:** orourkemm@aol.com [mailto:orourkemm@aol.com]
**Sent:** Tuesday, August 28, 2007 1:09 PM
**To:** Pruitt, Eric
**Subject:** Re: Dexia v. Peter Rogan--Citation on Judy Rogan

It is attached. Let me know if it doesn't come through. Tomorrow is not possible but Thursday at 10:00 a.m. is good. How about you come over here?

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020
Fax: (312) 849-2021


-----Original Message-----
From: Pruitt, Eric <EPruitt@Sidley.com>
To: orourkemm@aol.com
Cc: Aizenberg, Gabriel <gaizenberg@sidley.com>
Sent: Tue, 28 Aug 2007 11:37 am
Subject: RE: Dexia v. Peter Rogan--Citation on Judy Rogan

The privilege log was not attached to the email.

The Oceanic Bank account referenced in my letter was in the name of the Judith Rogan Revocable Trust, an Indiana trust for which Mrs. Rogan is the trustee.  It is not a Bahamian trust and I do not believe Oceanic Bank was ever a trustee for that trust.  Because this account was not held in the name of a Bahamian trust, law relating to Bahamians trusts and trusts should not be applicable or relevant.

Are you able to meet tomorrow to discuss these issues?

**Eric S. Pruitt**
Sidley Austin LLP
One South Dearborn St.
Chicago, Illinois 60603
p. 312.853.1093
f. 312.853.7036
www.sidley.com

---

**From:** orourkemm@aol.com [mailto:orourkemm@aol.com]
**Sent:** Tuesday, August 28, 2007 12:08 PM
**To:** Pruitt, Eric
**Subject:** Dexia v. Peter Rogan--Citation on Judy Rogan

Attached please find privilege log. I am expecting HSBC documents
imminently as the Bank required Judy Rogan letter authority for transmittal of
documents to me which has been sent. I understand there are new trustees
on the Bahamas trust and Bahamas law prohibits document disclosure.
Oceanic Bank has resigned as trustee. I am looking to verify names of
successor trustees and am investigating if any way to deal with anti-
disclosure rules.

Michael J. O'Rourke
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020
Fax: (312) 849-2021

---

Email and AIM finally together. You've gotta check out free AOL Mail!

Sidley Austin LLP mail server made the following annotations on 08/28/07,

--------------------------------------------------------------------------

IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulati

that, unless expressly stated otherwise, any U.S. federal tax advice conta

**EXHIBIT C**

| MRS. ROGAN'S AVERMENT | THE TRUTH |
|---|---|
| *Mrs. Rogan is a resident of Valparaiso, Indiana in Porter County and has resided in Valparaiso for over 20 years. (J. Rogan Aff ¶ 1)* | Mrs. Rogan resides in Vancouver, Canada.<br><br>• In an 10/06 letter to a representative of Oceanic Bank & Trust in The Bahamas, Mrs. Rogan wrote, "I am currently completing plans to reside in Canada," and instructed Oceanic to transfer funds to her account at HSBC in Vancouver. (Reply Br. at Ex. D)<br><br>• Mrs. Rogan opened bank accounts at HSBC bank in Canada. (Dexia Br. at 13, 15)<br><br>• Mrs. Rogan signed a lease for a residence in Vancouver (Dexia Br. at 13) |
| *Mrs. Rogan carries on no active business in Illinois (J. Rogan Aff. ¶ 3)* | Mrs. Rogan carries on active business in Illinois:<br><br>• On January 12, 2007, Mrs. Rogan executed "[u]nder penalties of perjury" IRS Form 2553, Election by a Small Business Corporation, notifying the IRS that. on December 12, 2006, Decorative Services Inc. ("DSI") was incorporated in Illinois; and (b) DSI's corporate address is at 55 East Erie in Chicago, Illinois. (Reply Br. at Ex. K)<br><br>• Mrs. Rogan used her Illinois counsel, John Foley of Tatooles, Foley & Associates, to incorporate DSI. (Reply Br. at Ex. K)<br><br>• In its By-Laws, DSI states that it "shall continuously maintain in the State of Illinois a registered office and a registered agent whose business office is identical with such registered office." (Reply Br. at Ex. K)<br><br>• DSI's registered agent is Mr. Foley, and its registered office is Mr. Foley's office in Chicago. (Reply Br. at Ex. K)<br><br>• On January 12, 2007, in a consent:<br><br>➤ Mrs. Rogan elected herself to the positions of president, treasurer, and secretary of DSI "pursuant to the provisions of Section 8.45 of the Illinois Business Corporation Act of |

<table>
<tr><td></td><td>

1983," as DSI's sole director. (Reply Br. at Ex. K)

> As DSI's sole shareholder, Mrs. Rogan authorized DSI to file its articles of incorporation with the "office of the Recorder of Deeds of Cook County, <u>Illinois</u>" "pursuant to the provisions of Section 7.10 the <u>Illinois</u> Business Corporation Act of 1983." (Reply Br. at Ex. K)

- Since DSI's incorporation in December 2006, Mrs. Rogan has transacted business with her own Illinois corporation by writing at least five checks to DSI on at least the following dates: 3/17/07, 5/21/07, 6/29/07, 7/19/07, 8/9/07. (Ex. 1)

</td></tr>
<tr><td>

*[N]or has [Mrs. Rogan] carried on any active business in Illinois during the last 10 years (J. Rogan Aff ¶ 3)*

</td><td>

Mrs. Rogan's business in Illinois is recent and active:

- In addition to DSI, Mrs. Rogan has carried on at least one other business in Illinois during the last 10 years: JKR Business ("JKRB"). JKRB is a purported sole proprietorship of Judy Rogan. (Dexia Br. at 10) JKRB has been the sole source of Mrs. Rogan's reported earned income since at least 1997. (*Id.*)

- JKRB's sole source of income was from the "Business Services Fees" it received from the Mr. Rogan-controlled companies Braddock Management, LP and an <u>Illinois</u> corporation, Edgewater Property Company ("EPC"). (*Id.*)

- Mr. Rogan carried out this scheme with JKRB in Chicago. JKRB deposited the proceeds of these frauds into an account at the Private Bank & Trust in Chicago. (Dexia Br. at 10-11)

- JKRB was EPC's contract manager for the EPC-EMC lease. (*Id.*) From 1989-1994, Mrs. Rogan was an officer of EPC. (Ex. 2 at 9)

</td></tr>
</table>

2

| | |
|---|---|
| | • In its 2006 federal tax return, filed in the first quarter of 2007, EPC identifies Mrs. Rogan as its contact person. (Reply Br. at Ex. F) |
| *[Mrs. Rogan's] banks accounts [are located in Indiana] (J. Rogan Aff. ¶ 2).* | Mrs. Rogan's primary bank accounts listed below are located outside of Indiana.<br><br>• HSBC account in Canada via which at least $2.25M has passed since November 2006.[1] (Dexia Br. at 13, 15)  Mrs. Rogan authorized DSI to file its articles of incorporation with the "office of the Recorder of Deeds of Cook County, Illinois."<br><br>• Oceanic Bank account from which Mrs. Rogan has transferred at least $5.7M since May 2005. (*Id.* at 13)<br><br>• DWS Scudder account through which at least $5.2M has been transferred since 2005, which is maintained in Flossmoor, Illinois by L.P Littlewood & Associates. (*Id.* at 15) |
| *Mrs. Rogan has no loans from or to any Illinois business or individual (J. Rogan Aff. ¶ 3).* | Mrs. Rogan has had a substantial loan with an Illinois corporation:<br><br>• PGR Properties, Inc ("PGR") is another Illinois corporation that Mr. Rogan controlled. (Ex. 3)<br><br>• Just three-and-a-half years ago, in June 2004, Mrs. Rogan "borrowed" $550,000 from PGR – an Illinois business. (Reply Br. at Ex. G)<br><br>• Mrs. Rogan was an officer of PGR from 1994-1995  (Ex. 2 at 9) |
| *Mrs. Rogan's **only** contact with Illinois is a condominium property she owns in Chicago (J. Rogan Aff. ¶ 2)* | In addition to the multitude of contacts with Illinois referenced above, Mrs. Rogan's Illinois contacts include:<br><br>• Condominium in Chicago, Illinois.<br><br>   ➢ The Rogans acquired the 55 E. Erie property in June 2004, titling it in the name of "Judith K. Rogan Revocable Trust (the "Erie Condo"). (Reply Br. |

---

[1] Note: This corrects the $5.9M figure set forth in Dexia's opening brief.

at Ex. H)

- ➤ Mrs. Rogan pays monthly fees to the condominium association, and property taxes in Cook County, Illinois (Reply Br. at Exs. I, J)

- ➤ Mrs. Rogan's company, DSI, uses 55 E. Erie as its corporate address. (Reply Br. at Ex. K)

- ➤ An Illinois company owned by Mr. Rogan, BFB Ltd., whose sole purpose was to own Mr. Rogan's yacht, used 55 E. Erie as its address. (Reply Br. at Ex. K)

- Chicago legal fees.

  - ➤ Both before and after Dexia initiated its citation action, Mrs. Rogan consistently has turned to two Chicago law firms – Tatooles, Foley & Associates and O'Rourke, Katten & Moody – to represent her interests. (Reply Br. at Ex. J)

  - ➤ Mrs. Rogan paid to the following legal expenses to Chicago firms for her husband's benefit: (a) $1.5M to Winston & Strawn for fees incurred in *Dexia v. Rogan* and *US v. Rogan*; (b) $150,000 to Mayer Brown Roe & Maw for fees incurred in *Dexia v. Rogan* and *EMC v. EPC*; (c) $100,000 of to Hogan Marren to fund her husband's appeal in *US v. Rogan*; (d) fees to Trial Graphix for expenses EPC incurred during the 2006 trial in *EMC v. EPC*. (Ex. 5)

- Other payments to Illinois entities.

  - ➤ Mrs. Rogan makes monthly payments to the Union League Club in Chicago. (Reply Br. at Ex. J)

  - ➤ Mrs. Rogan has made periodic payments to the Morgan Group, Inc. ("MGI"), an Illinois real estate development and consulting

4

|  | company.  (Reply Br. at Ex. J) |
|  | ➢ One of MGI's principals, John Mullen, served on the Board of Directors of the parent of Edgewater Medical Center, Vital Community Health Services, Inc., from in or about May 2000 until some time in 2001.  (Ex. 4) |

CH1 4102929v.1

EXHIBIT   1



Name:   JUDITH K ROGAN
        476 WEXFORD RD
Account:
Page:   4 of 4



03/07/2007 4813 $3,326.51



03/26/2007 4832 $229.00



03/26/2007 4839 $7,633.19



03/12/2007 4824 $3,326.51



03/19/2007 4834 $3,000.00



03/28/2007 4826 $2,280.00



03/19/2007 4835 $5,000.00



03/13/2007 4827 $31.75



04/03/2007 4836 $16,375.00



03/15/2007 4829 $1,046.49



03/23/2007 4837 $6,415.94



03/15/2007 4830 $65.00



03/22/2007 4838 $349.00

**R 00461**



**First National Bank**
**V A L P A R A I S O**

Name: **JUDITH K ROGAN**
**476 WEXFORD RD**
Account:
Page: **3 of 3**



05/29/2007 4858 $3,326.51



05/10/2007 4864 $15.00



05/30/2007 4871 $115.00



05/11/2007 4859 $45.00



05/14/2007 4865 $12.00



05/29/2007 4872 $2,478.37



05/09/2007 4860 $65.00



05/24/2007 4867 $231.88



05/24/2007 4874 $6,584.69



05/09/2007 4861 $100.00



05/24/2007 4868 $38.00



05/25/2007 4875 $2,600.00



05/08/2007 4862 $1,046.49



05/20/2007 4869 $675.00



05/22/2007 4876 $4,000.00



05/09/2007 4863 $273.44



05/22/2007 4870 $60.00

**R 00467**



**Name:** JUDITH K ROGAN
476 WEXFORD RD
**Account:**
**Page:** 5 of 5



07/20/2007  4916  $2,500.00



07/25/2007  4917  $300.00

R 00475



**First National Bank**
V A L P A R A I S O

Name:     **JUDITH K ROGAN**
           **476 WEXFORD RD**
Account:
Page:      3 of 3



08/31/2007 4919 $12.50

08/20/2007 4925 $205.00



08/31/2007 4933 $275.15

08/06/2007 4920 $210.00

08/22/2007 4926 $358.99

08/07/2007 4921 $150.00

08/21/2007 4927 $1,046.49

08/10/2007 4922 $5,000.00

08/14/2007 4928 $190.00

08/10/2007 4923 $5,000.00

08/20/2007 4929 $65.00

08/21/2007 4924 $256.64

08/30/2007 4932 $38.00

**R 00478**

EXHIBIT   2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEXIA CRÉDIT LOCAL, f/k/a Dexia Public Finance Bank and Crédit Local de France, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| PETER G. ROGAN, et al., | ) ) | |
| Defendants. | ) ) ) | Case No. 02-CV-8288 |
| ……………………………… | ) ) ) | |
| EDGEWATER PROPERTY COMPANY and PGR PROPERTIES, INC., | ) ) ) | Hon. Mark Filip |
| Counterplaintiffs, | ) ) | |
| v. | ) ) | Magistrate Judge Sidney I. Schenkier |
| DEXIA CRÉDIT LOCAL, | ) ) | |
| Counterdefendant. | ) | |

## DEFENDANTS EDGEWATER PROPERTY COMPANY AND PGR PROPERTIES, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Edgewater Property Company ("EPC") and PGR Properties, Inc. ("PGR") (collectively "Defendants"), by and through their attorneys Mayer, Brown, Rowe & Maw, and pursuant to Fed. R. Civ. P. 33, hereby submit their written responses and objections to Plaintiff Dexia Crédit Local's ("Plaintiff" or "Dexia") First Set of Interrogatories ("First Interrogatories").

## GENERAL OBJECTIONS

1. Nothing herein shall be construed as an admission by Defendants regarding the competence, admissibility, relevance of any fact or document, or as an admission of the truth or

| Name | Address | Position | Time Period[2] |
|------|---------|----------|-------------|
| Peter G. Rogan | 476 Wexford, Valparaiso, IN 46383 | President<br>Secretary<br>Director<br>Treasurer | 1989 – 1994, 1996 – present<br>1993, 1994, 1997 – present<br>1989 – present<br>1989 – 1992, 1997 – present |
| David C. Miller | 240 E. 90th Street, Merrillville, IN 46411 | Treasurer<br>Secretary<br>VP/Asst. Sec'y | 1995, 1996<br>1996<br>1999 – present |
| Judith K. Rogan | 476 Wexford, Valparaiso, IN 46383 | Treasurer<br>Secretary | 1993, 1994<br>1989 – 1992 |
| John J. Tatooles | c/o 205 N. Michigan Ave., Suite 4314, Chicago, IL 60601 | President | 1995 |
| John Foley | c/o 205 N. Michigan Ave., Suite 4314, Chicago, IL 60601 | Secretary | 1995 |

Subject to and without waiving the forgoing objections, PGR responds to Interrogatory

No. 5 as follows:

| Name | Address | Position | Time Period[3] |
|------|---------|----------|-------------|
| Peter G. Rogan | 476 Wexford, Valparaiso, IN 46383 | President<br>Secretary<br>Treasurer<br>Director | 1994 – present<br>1996 – present<br>1994 – 2001<br>1994 – present |
| David C. Miller | 240 E. 90th Street, Merrillville, IN 46411 | Treasurer | 2002 – present |
| Judith K. Rogan | 476 Wexford, Valparaiso, IN 46383 | Secretary | 1994, 1995 |
| John J. Tatooles | c/o 205 N. Michigan Ave., Suite 4314, Chicago, IL 60601 | Asst. Secretary | 1994, 1995 |
| John Foley | c/o 205 N. Michigan Ave., Suite 4314, Chicago, IL 60601 | VP/Asst. Sec'y | 1999 |

---

[2] EPC was incorporated on October 11, 1988.
[3] PGR was incorporated on July 1, 1994

EXHIBIT   3



SERVICES    PROGRAMS    PRESS    PUBLICATIONS    DEPARTMENTS    CONTACT

## CORPORATION FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| **Entity Name** | PGR PROPERTIES, INC. | **File Number** | 57883154 |
| **Status** | GOODSTANDING | | |
| **Entity Type** | CORPORATION | **Type of Corp** | DOMESTIC BCA |
| **Incorporation Date (Domestic)** | 07/01/1994 | **State** | ILLINOIS |
| **Agent Name** | C T CORPORATION SYSTEM | **Agent Change Date** | 02/26/2007 |
| **Agent Street Address** | 208 SO LASALLE ST, SUITE 814 | **President Name & Address** | BRIAN P BOGAN 12300 APACHE AVE #914 SAVANNAH GA 31419 |
| **Agent City** | CHICAGO | **Secretary Name & Address** | SAME |
| **Agent Zip** | 60604 | **Duration Date** | PERPETUAL |
| **Annual Report Filing Date** | 06/26/2007 | **For Year** | 2007 |

**Return to the Search Screen**

| Purchase Certificate of Good Standing |
|---|

**(One Certificate per Transaction)**

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

EXHIBIT   4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re:                                          )
                                                )
EDGEWATER MEDICAL CENTER,                       )
                                                )
        Debtor/Debtor-in-Possession             )      Case No. 02-B07378
                                                )      Chapter 11
                                                )      Honorable Bruce W. Black
                                                )
EDGEWATER MEDICAL CENTER, f/k/a                 )      Adversary Proceeding No. 04A02330
NORTHSIDE OPERATING CO.,                        )
                                                )
        Plaintiff,                              )
                                                )
vs.                                             )
                                                )
ACCESS COMMUNITY HEALTH                         )
SERVICES, INC., VITAL COMMUNITY                 )
HEALTH SERVICES, INC., WESSEL                   )
BENGSTON, P. MACON BREWER,                      )
GEORGE CHAPAS, FRED CUPPY,                      )
WILLIAM FRULAND, ROGER MAYS,                    )
JOHN MULLEN, DAVID SHANAHAN,                    )
and GEORGE THOMA,                               )
                                                )
Defendants.                                     )

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
MAY 3 1 2005
KENNETH S. GARDNER, CLERK
PS REP. - RD

## ANSWER AND ADDITIONAL
## DEFENSES TO COMPLAINT

For their Answer and Additional Defenses to the Complaint, Defendants Access

Community Health Services, Inc., Vital Community Health Services, Inc., Wessel Bengston, B.

Macon Brewer, George Chapas, Fred Cuppy, William Fruland, Roger Mays, John Mullen, David

Shanahan and George Thoma, state as follows:

### Answer

1.      This complaint seeks damages against directors of Debtor and other
        persons who adversely dominated Debtor from no later than 1994

10.  Defendant Roger Mays ("Mays") served on the Board of Directors of
     Defendant Access beginning on or about May 2000, and was Secretary
     and Treasurer for the Access Board. Upon information and belief, Mays
     is a citizen of the state of Indiana.

ANSWER:

Defendants admit the allegations of the first sentence of paragraph 10. Defendants deny

the allegations of the second sentence of paragraph 10.

11.  Defendant John Mullen ("Mullen") served on the Board of Directors of
     Vital beginning on or about May 2000. Upon information and belief,
     Mullen is a citizen of the state of Illinois.

ANSWER:

Defendants admit the allegations of paragraph 11.

12.  Defendant David Shanahan ("Shanahan") served on the Board of
     Directors of Defendant Access, and the Board of Directors of Defendant
     Vital, beginning on or about May 2000. Upon information and belief,
     Shanahan is a citizen of the state of Florida.

ANSWER:

Defendants admit the allegations of paragraph 12.

13.  Defendant George Thoma ("Thoma") served on the Finance Committee
     of Access beginning on or about May 2000. Upon information and
     belief, Thoma is a citizen of the state of Missouri.

ANSWER:

Defendants admit that Thoma was appointed to the Access Finance Committee on or

about May 2000 and that he is a citizen of Missouri. Defendants deny the remaining allegations

of paragraph 13.

Jurisdiction

14.  On or about February 25, 2002, Debtor filed a voluntary petition or relief
     under chapter 11 of the Bankruptcy Code, 11 U.S.C. §101, et seq. (the

- 5 -

of interest policy.  These and other benefits conferred by Rogan, including lavish trips and other perquisites for Board service, rendered Mays unable to render independent business judgment in matters pertaining to Peter Rogan.

ANSWER:

Defendant Mays denies the allegations of paragraph 77.  The remaining defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 77.

78.    Upon information and belief, Defendant John Mullen has received substantial compensation for real estate consulting services provided to Peter Rogan and/or Rogan-affiliated companies, including work relating to the development of properties next to Edgewater, through which Mullen stood to profit handsomely.  Upon information and belief, Mullen also received directors' fees, lavish trips and other perquisites for service on the of Directors for numerous other entities affiliated with Debtor and Peter Rogan, including the Edgewater Foundation, Chicagoland Services Support Foundation, Chicagoland Services Foundation, and Hope Community Health Services, Inc.  These and other benefits conferred by Rogan rendered Mullen unable to render independent business judgment in matters pertaining to Peter Rogan.

ANSWER:

Defendant Mullen admits that he received compensation for real estate consulting services provided to Peter Rogan or his affiliates.  Defendant Mullen denies the remaining allegations of paragraph 78.  The remaining defendants lack knowledge or information sufficient to admit or deny the allegations of paragraph 78.

79.    Upon information and belief, Defendant David Shanahan and Peter Rogan have been friends and business associates for more than twenty years.  David Shanahan owns residential property in Longboat Key, Florida, as does Rogan.  Upon information and belief, these properties are located less than 15 miles from one another.  Shanahan worked at Ernst & Young with Rogan early in his career.

ANSWER:

Defendant Shanahan admits that he has been friends with Peter Rogan for over twenty years and that he worked at Ernst & Young at the time as Rogan early in Shanahan's career.

EXHIBIT  5



**BANK AND TRUST LIMITED**

BAYSIDE HOUSE
BAYSIDE EXECUTIVE PARK
WEST BAY STREET & BLAKE ROAD
P.O. BOX AP. 59213
NASSAU, THE BAHAMAS
eMAIL:info@oceanic.bs
TEL: (242) 502-8822
FAX: (242) 502-8840
Web: www.oceanic.bs

# STATEMENT

**Global Current Account**

Our Ref : █████████

**Judith Rogan**

Transactions from Tuesday, January 27, 2004 to Thursday, September 27, 2007

| Date | Narrative | Debit USD | Credit USD | Balance USD |
|------|-----------|-----------|------------|-------------|
| 26-Jan-2004 | Balance forward | | | 0.00 |
| 04-May-2005 | [4375] Distribution from Rogan Trust #10 | | 4,000,000.00 | (4,000,000.00) |
| 11-May-2005 | [4375] Investment In Stars- Liquidity Fu | 1,480,000.00 | | (2,520,000.00) |
| 12-May-2005 | [4375] Trf to Winston & Strawn x311 | 1,200,000.00 | | (1,320,000.00) |
| 12-May-2005 | [4375] W/T Fee x311 | 40.00 | | (1,319,960.00) |
| 19-May-2005 | [4375] Redemption of Stars Liquidity Fun | | 1,200,000.00 | (2,519,960.00) |
| 31-May-2005 | [4375] Investment in Stars | 2,500,000.00 | | (19,960.00) |
| 31-May-2005 | Fee Note No 25872 | 3,375.00 | | (16,585.00) |
| 31-May-2005 | Interest - Clients Account | | 4,803.22 | (21,388.22) |
| 30-Jun-2005 | Interest - Clients Account | | 41.40 | (21,429.62) |
| 21-Jul-2005 | [4375] July 21 Redemption  From Stars | | 150,000.00 | (171,429.62) |
| 31-Jul-2005 | Fee Note No 26536 | 0.30 | | (171,429.32) |
| 31-Jul-2005 | Interest - Clients Account | | 166.43 | (171,595.75) |
| 03-Aug-2005 | [4375] Wire Transfer Mayer Brown Rowe 50 | 150,000.00 | | (21,595.75) |
| 03-Aug-2005 | [4375] Draft Fee 505 | 40.00 | | (21,555.75) |
| 31-Aug-2005 | Fee Note No 26814 | 4.30 | | (21,551.45) |
| 31-Aug-2005 | Interest - Clients Account | | 72.82 | (21,624.27) |
| 01-Sep-2005 | [4375] Funds received re Stars Redemptio | | 500,000.00 | (521,624.27) |
| 02-Sep-2005 | [4375] Transfer re Distrib- Judith Roga | 500,000.00 | | (21,624.27) |
| 02-Sep-2005 | [4375] W/T Fee S579 | 40.00 | | (21,584.27) |
| 30-Sep-2005 | Fee Note No 27135 | 3.00 | | (21,581.27) |
| 30-Sep-2005 | Interest - Clients Account | | 60.16 | (21,641.43) |
| 31-Oct-2005 | Fee Note No 27422 | 0.30 | | (21,641.13) |
| 31-Oct-2005 | Interest - Clients Account | | 35.65 | (21,676.78) |
| 01-Nov-2005 | [4375] Funds received re Stars Redemptio | | 1,500,000.00 | (1,521,676.78) |
| 03-Nov-2005 | [4375] Trf re distribution to Judith Rog | 1,500,000.00 | | (21,676.78) |
| 03-Nov-2005 | [4375] W/T fee S732 | 40.00 | | (21,636.78) |
| 30-Nov-2005 | Interest - Clients Account | | 323.44 | (21,960.22) |
| 30-Nov-2005 | Fee Note No 27905 | 6.98 | | (21,953.24) |
| 31-Dec-2005 | Interest - Clients Account | | 59.52 | (22,012.76) |
| 31-Jan-2006 | Fee Note No 28727 | 3,000.00 | | (19,012.76) |
| 31-Jan-2006 | Interest - Clients Account | | 66.67 | (19,079.43) |
| 28-Feb-2006 | Interest - Clients Account | | 54.88 | (19,134.31) |

*(handwritten notes in margin: "$4m in", "Winston", "Mayer", "$1.5 to HSBC")*

**EXHIBIT**

R 00269

# EXHIBIT D

# O'ROURKE KATTEN & MOODY

## FACSIMILE TRANSMISSION

ATTORNEYS AT LAW
161 NORTH CLARK STREET
SUITE 2230
CHICAGO, ILLINOIS 60601
(312) 849-2020
(312) 849-2021 Fax

TO: G. Aizenberg

FROM: Ethen Crecks / MIKE O'ROURKE

COMPANY: SIDLEY

DATE: 12/19/07

FAX NUMBER: 312 853 7036

TOTAL NO. OF PAGES INCLUDING COVER: ②

PHONE NUMBER:

SENDER'S REFERENCE NUMBER:

RE: ROGAN DOC

YOUR REFERENCE NUMBER:

☐ URGENT        ☑ FOR REVIEW        ☐ PLEASE REPLY

NOTES/COMMENTS:

OUR BATES #R00279 WAS ALSO DIFFICULT TO READ. WE FOUND A BETTER COPY AND HAVE LABELED IT R00279A. PLEASE CALL W/ ANY QUESTIONS.

**IMPORTANT:** THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND PROHIBITED FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

Ms. Melanie Moxie
Oceanic Bank

Dear Ms. Moxie:

I am currently completing plans to reside in Canada. As such, I request a distribution to me of $1,500,000 USD and request you wire that amount to my account at HSBC at 999 West Hastings St., Vancouver, British Columbia Canada.

The wire instructions are:

Swift code: HKBCCATT
Bank number: 016
Transit number: 10280
FBO:
Account name: Judith Rogan
Account number: 280-089293-203

I appreciate your assistance.



Judith K. Rogan

R00279A

**EXHIBIT E**



## CORPORATION FILE DETAIL REPORT

| | | | |
|---|---|---|---|
| **Entity Name** | DECORATIVE SERVICES, INC. | **File Number** | 65255138 |
| **Status** | GOODSTANDING | | |
| **Entity Type** | CORPORATION | **Type of Corp** | DOMESTIC BCA |
| **Incorporation Date (Domestic)** | 12/06/2006 | **State** | ILLINOIS |
| **Agent Name** | JOHN FOLEY | **Agent Change Date** | 12/06/2006 |
| **Agent Street Address** | 180 N WACKER DR STE 600 | **President Name & Address** | JUDITH ROGAN 55 E. ERIE, #3205, CHICAGO 60611 |
| **Agent City** | CHICAGO | **Secretary Name & Address** | JUDITH ROGAN 55 E. ERIE, #3205, CHICAGO 60611 |
| **Agent Zip** | 60606 | **Duration Date** | PERPETUAL |
| **Annual Report Filing Date** | 11/20/2007 | **For Year** | 2007 |

**Return to the Search Screen**

Purchase Certificate of Good Standing

**(One Certificate per Transaction)**

BACK TO CYBERDRIVEILLINOIS.COM HOME PAGE

**EXHIBIT F**

# U.S. Income Tax Return for an S Corporation

Form **1120S**

Department of the Treasury
Internal Revenue Service

▶ Do not file this form unless the corporation has filed Form 2553
to elect to be an S corporation.
▶ See separate instructions.

OMB No. 1545-0130

**2006**

For calendar year 2006 or tax year beginning _____ , 2006, ending _____ ,

| | | | |
|---|---|---|---|
| **A** Effective date of S election | Use the IRS label. Otherwise, print or type. | Edgewater Property Company<br>c/o Judith K Rogan<br>476 Wexford<br>Valparaiso, IN 46383-8045 | **C** Employer identification number |
| 2/11/1989 | | | ___80 |
| **B** Business activity code number (see instructions) | | | **D** Date incorporated<br>10/11/1988 |
| 531390 | | | **E** Total assets (see instructions)<br>$ 648,024. |

**F** Check if: **(1)** ☐ Initial return   **(2)** ☐ Final return   **(3)** ☐ Name change   **(4)** ☒ Address change   **(5)** ☐ Amended return

**G** Enter the number of shareholders in the corporation at the end of the tax year ............................................ ▶ 1

**H** Check if Schedule M-3 is required *(attach Schedule M-3)* .............................................................. ▶ ☐

**Caution.** Include *only* trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| I N C O M E | | | | |
|---|---|---|---|---|
| | **1a** Gross receipts or sales .. | **b** Less returns and allowances . | **c** Bal ▶ | **1c** |
| | **2** Cost of goods sold (Schedule A, line 8) ................................ | | | **2** |
| | **3** Gross profit. Subtract line 2 from line 1c .......................... | | | **3** |
| | **4** Net gain (loss) from Form 4797, Part II, line 17 *(attach Form 4797)* .......... | | | **4** |
| | **5** Other income (loss) *(attach statement)* ............................ | | | **5** |
| | **6** **Total income (loss).** Add lines 3 through 5 ............................ ▶ | | | **6** |

| D E D U C T I O N S (SEE INSTRS) | | |
|---|---|---|
| | **7** Compensation of officers ........................................ | **7** |
| | **8** Salaries and wages (less employment credits) ........................ | **8** |
| | **9** Repairs and maintenance ........................................ | **9** |
| | **10** Bad debts ................................................... | **10** |
| | **11** Rents ....................................................... | **11** |
| | **12** Taxes and licenses ............................................ | **12** |
| | **13** Interest ..................................................... | **13** |
| | **14** Depreciation not claimed on Schedule A or elsewhere on return *(attach Form 4562)* .... | **14** |
| | **15** Depletion **(Do not deduct oil and gas depletion.)** ...................... | **15** |
| | **16** Advertising .................................................. | **16** |
| | **17** Pension, profit-sharing, etc, plans ................................ | **17** |
| | **18** Employee benefit programs ...................................... | **18** |
| | **19** Other deductions *(attach statement)* .............................. | **19** |
| | **20** **Total deductions.** Add lines 7 through 19 .......................... ▶ | **20** |
| | **21** **Ordinary business income (loss).** Subtract line 20 from line 6 .......... | **21** |

| T A X A N D P A Y M E N T S | | | |
|---|---|---|---|
| | **22a** Excess net passive income or LIFO recapture tax *(see instructions)* ......... | **22a** | |
| | **b** Tax from Schedule D (Form 1120S) .................. | **22b** | |
| | **c** Add lines 22a and 22b *(see instructions for additional taxes)* ........... | | **22c** |
| | **23a** 2006 estimated tax payments and 2005 overpayment credited to 2006 | **23a** | |
| | **b** Tax deposited with Form 7004 ...................... | **23b** | |
| | **c** Credit for federal tax paid on fuels *(attach Form 4136)* ... | **23c** | |
| | **d** Credit for federal telephone excise tax paid *(attach Form 8913)* | **23d** | |
| | **e** Add lines 23a through 23d ........................................ | | **23e** |
| | **24** Estimated tax penalty *(see instructions)*. Check if Form 2220 is attached ▶ ☐ | | **24** |
| | **25** **Amount owed.** If line 23e is smaller than the total of lines 22c and 24, enter amount owed | | **25** 0. |
| | **26** **Overpayment.** If line 23e is larger than the total of lines 22c and 24, enter amount overpaid. | | **26** |
| | **27** Enter amount from line 26 Credited to 2007 estimated tax _____ Refunded | | **27** |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ _____   ▶ Shareholder

Signature of officer        Date        Title

May the IRS discuss this return with the preparer shown below *(see instructions)*? ☒ Yes ☐ No

**Paid Preparer's Use Only**

| Preparer's signature ▶ | | Date 3/13/07 | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | Tatooles, Foley & Associates<br>180 N. Wacker Drive, Suite 600<br>Chicago, IL 60606 | | EIN | Phone no. |

BAA For Privacy Act and Paperwork Reduction Act Notice, see the separate instructions.          SPSA0105L  01/05/07          Form 1120S (2006)

**EXHIBIT G**

# DEMAND NOTE

$550,000.00                                                    Dated: June 3, 2004

FOR VALUE RECEIVED, the undersigned (hereinafter referred to as the "Maker") promises to pay to the order of PGR Properties, Inc., an Illinois corporation (hereinafter referred to as the "Payee"), UPON DEMAND, the principal sum of Five Hundred Fifty Thousand and 00/100's Dollars ($550,000.00).

The outstanding principal balance and "accrued interest" as defined below shall be payable upon demand.

"Accrued interest" shall mean the minimum amount of interest as computed on the outstanding principal so that there will be no imputed interest due under this note in accordance with Sections 1274 and 7872 of the Internal Revenue Code of 1986, as amended.

Payments are to be made to the Payee at 240 East 90th Drive, Merrillville, Indiana, 46410 or, at the option of the holder of this Demand Note, at such other place as said holder shall designate from time to time, in writing to the Maker.

Notwithstanding anything herein to the contrary, the privilege is reserved by the Maker to prepay, in whole or in part, the unpaid balance hereunder without penalty or premium.

If any one of the following events of default ("Event of Default") shall occur, the principal sum due under this Demand Note and all interest accrued through the date of such Event of Default shall forthwith become due and payable without presentment, demand, protest or notice of any kind, all of which are expressly waived, and anything contained herein to the contrary notwithstanding, the Maker shall thereupon forthwith pay in full, or make provisions for payment in full, this Demand Note, and the holder shall be entitled to exercise all rights and avail itself of all remedies, in order to effect such payment in full·

    (i)    The Maker shall default in the payment under this Demand Note at the time when such payment becomes due and payable as aforesaid and such failure to make payment is not cured within fourteen (14) days; or

    (ii)    The Maker is adjudicated bankrupt; or

    (iii)    The Maker has made an assignment for the benefit of creditors; or

    (iv)    The Maker has made a written admission of inability to pay; or

    (v)    The Maker has filed a bankruptcy petition; or

    (iv)    The Maker has suffered any court action approving any involuntary bankruptcy petition, or effecting an arrangement in bankruptcy pursuant to the bankruptcy.

JR-CIT 001096

All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed duly served and given when personally delivered to the party to whom it is directed, or in lieu of such personal service when delivered or mailed by certified mail, return receipt requested, first class postage prepaid, effective on the day next following the date of such mailing, as follows:

To Maker:      Judith K. Rogan, Trustee
              Judith K. Rogan Revocable Trust dated 4/19/1989
              476 Wexford
              Valparaiso, IN  46385-8045

To Payee:      PGR Properties, Inc.
              240 East 90th Drive
              Merrillville, Indiana  46410

or to such other address or addresses as Maker, or the Payee shall specify in writing to the other from time to time hereafter.

The Maker shall be liable to the holder of this Demand Note for reasonable attorney's fees and costs incurred in connection with any action related to the enforcement or collection of this Demand Note.  This Demand Note shall be governed and interpreted by the laws of the State of Illinois.

Maker:

JUDITH K. ROGAN REVOCABLE TRUST

By: _____
       Judith K. Rogan, Trustee

tllaw/jf/pgrprop/jkr-note

JR-CIT 001097

# EXHIBIT H

COOK COUNTY RECORDER OF DEEDS

EUGENE "GENE" MOORE

RECORDER OF DEEDS
COOK COUNTY, ILLINOIS

HOME PAGE
BOOKMARK
LOCATIONS
INTERESTING LINKS
FEE SCHEDULE
WHAT'S NEW
FAQ
EXPLORE MENU

Grantor / Grantee
Document Number
Legal Search
PIN Search
Trust Number
Subdivision Search

Forms

View Purchased
Documents

[Back One Page]

**Result For:[0421027116]**

| Document No. | Executed | Recorded | Document Type | Case No. | Amount |
|---|---|---|---|---|---|
| 0421027116 | 06/03/2004 | 07/28/2004 | WARRANTY DEED | | $1,107,500.00 |

**Legal Description**

Secion-Township: 10-39-14          Block #:  Part of Lot:          SubDiv-Condo: 0329719204

Lot #:

Building:

**Property Description**

17-10-112-011-1088  UPIN  Condo Unit Numbers
17-10-112-011-1550  UPIN  Condo Unit Numbers
17-10-112-011-1551  UPIN  Condo Unit Numbers

**Grantor(s)**

Name: 55 ERIE INVESTORS LLC  Trust Number: -

**Grantee(s)**

Name: JUDITH K ROGAN TRUST  Trust Number: -
Name: ROGAN JUDITH K TRUST  Trust Number: -

**Prior Document**

## COOK COUNTY RECORDER OF DEEDS DISCLAIMER

While the Cook County Recorder of Deeds (CCRD) attempts to keep this website up to date with existing law and policies, the CCRD does not guaranty the accuracy of any of the information contained herein, including, but not limited to, database information and document images. CCRD also does not guaranty the legality of the documents and database information contained herein and accepts no liability for any damages incurred, whether directly, indirectly, incidental, punitive or consequential, as a result of any errors, omissions or discrepancies in any information published on this website or any use of this website, including, but not limited to use of on-line forms or affidavits.

For assistance with the use of this website, please click here **rcdsupport@cookcountygov.com** or call 312-603-5154 Monday - Friday between the hours of 9:30 a.m. and 5:30 p.m. CDT.

Copyright © 2005 Cook County Recorder of Deeds, All rights reserved.

http://www.ccrd.info/CCRD/controller?command&flag=getDetails&optflag=DetailsCommand&county=i1031&userid=null&use...    10/15/2007

## SPECIAL WARRANTY DEED
### (LLC to Individual)

THIS AGREEMENT, made this 3rd day of June, 2004, between 55 ERIE INVESTORS LLC, a Delaware limited liability company, as GRANTOR, created and existing under and by virtue of the laws of the State of Delaware and duly authorized to transact business in the State of Illinois, and Judith K. Rogan Revocable Trust Dated April 19, 1989, of 240 East 90th Drive, Merrillville, as GRANTEE(S), WITNESSETH, that GRANTOR, for and in consideration of the sum of Ten Dollars ($10.00) in hand paid by GRANTEE(S), the receipt whereof is hereby acknowledged, and pursuant to the authority given by the Management Committee of said GRANTOR, by these presents does REMISE, RELEASE, ALIEN AND CONVEY unto GRANTEE(S), FOREVER, all of the following described real estate, situated in the County of Cook and State of Illinois known and described as follows, to wit:

### SEE ATTACHED EXHIBIT A

Together with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereon, and all the estate, right, title, interest, claim or demand whatsoever, of GRANTOR, either in law or equity, of, in and to the above described premises, with the hereditaments and appurtenances: TO HAVE AND TO HOLD said premises as above described. Grantor also hereby grants to the Grantee, its successors and assigns, as rights and easements appurtenant to the subject unit described herein, the rights and easements for the benefit of said unit set forth in the declaration of condominium; and Grantor reserves to itself, its successors and assigns, the rights and easements set forth in said declaration for the benefit of the remaining land described herein.



Doc#: 0421027116
Eugene "Gene" Moore   Fee: $30.50
Cook County Recorder of Deeds
Date: 07/28/2004 03:46 PM Pg: 1 of 4

THE ABOVE SPACE FOR RECORDER'S USE ONLY

And the GRANTOR, for itself, and its successors, does covenant, promise and agree, to and with the GRANTEE(S), that it has not done or suffered to be done, anything whereby the said premises hereby granted are, or may be, in any manner encumbered or charged, except as herein recited; and that the said premises, against all persons lawfully claiming, or to claim the same, by, through or under it, it WILL WARRANT AND DEFEND, subject to those exceptions set forth on attached Exhibit B.

PIN#: Part of   17-10-112-001-0000
17-10-112-007-0000, and
17-10-112-008-0000

Address of Real Estate: 55 East Erie, Unit #3205 & P-357 & 358, Chicago, Illinois 60611

IN WITNESS WHEREOF, said GRANTOR has caused its name to be signed by its authorized signatory the day and year first above written.

GRANTOR:

**Near North National Title Corp**
**222 North Lasalle Street**
**Chicago, Illinois 60601**

55 ERIE INVESTORS LLC,
a Delaware limited liability company

By: _____
Joshua Silverman, authorized signatory

STATE OF ILLINOIS   )
                    )   SS
COUNTY OF COOK   )

     I, the undersigned, a Notary Public in and for the County and State aforesaid, do hereby certify that Joshua Silverman, authorized signatory of 55 ERIE INVESTORS LLC (the "Company"), personally known to me to be the same person whose name is subscribed to the foregoing instrument as such general partner, appeared before me in person and acknowledged that he signed and delivered the said instrument as his own free and voluntary act, and as the free and voluntary act of the Company, for the uses and purposes therein set forth.

     Given under my hand and notarial seal this 3rd day of June, 2004.

_____
Notary Public

SEAL
"OFFICIAL SEAL"
Mary Couzin
Notary Public, State of Illinois
My Commission Expires July 19, 2005

This instrument was prepared by:    Michael Maremont
                                    70 East Lake Street #800
                                    Chicago, IL  60601

Mail recorded document to:

JOHN FOLEY, ESQ, 205 N. MICHIGAN AVE, #4300, CHICAGO, IL 60601

Send subsequent tax bills to:

JUDITH ROGAN, 55 EAST ERIE #3205, CHICAGO, IL 60611

## EXHIBIT A

Unit 3205 and Parking Space Units 357, 358 in the 55 East Erie Condominium as delineated on a survey of the following described real estate:

The Northwest 1/4 (except the South 40 feet thereof) and the Northeast 1/4 of Block 35 in Kinzie's Addition to Chicago in the North Fractional Section 10, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

Which survey is attached as Exhibit "B" to the Declaration of Condominium recorded October 24, 2003 as document number 0329719204, and as amended from time to time, together with its undivided percentage interest in the common elements, all in Cook County, Illinois.

PIN: 17-10-112-001, 17-10-112-007 and 17-10-112-008

## EXHIBIT B

(a) covenants, conditions, and restrictions of record; (b) terms, provisions, covenants, and conditions of the Declaration of Condominium Ownership and of Easements, Restrictions, Covenants and By-Laws for 55 East Erie Condominium, recorded with the Cook County Recorder's Office on October 24, 2003 as Document No. 0329719204 (the "**Declaration**"), and all amendments, if any, thereto; (c) private, public, and utility easements, including any easements which may hereafter be executed by Grantor and any easements which may be established by or implied from the Declaration, or amendments thereto, if any, and private alleys and roads and highways, if any; (d) party wall rights and agreements, if any; (e) limitations and conditions imposed by the Illinois Condominium Property Act; (f) special taxes or assessments for improvements not yet completed; (g) any unconfirmed special tax or assessment; (h) installments not due at the date hereof for any special tax or assessment for improvements heretofore completed; (j) general taxes not yet due and payable; (k) installments due after the date hereof of assessments established pursuant to the Declaration; (l) possible encroachments, if any, which do not materially, adversely impair the use and enjoyment of the premises; and (m) acts done or suffered by Grantee(s) or anyone claiming by, through or under Grantee(s).



**EXHIBIT I**

THE 55 EAST ERIE CONDO ASSN
55 E ERIE
CHICAGO IL 60611

55-3205-CU
ROGAN, PETER & JUDY
55 EAST ERIE
CHICAGO IL 60611

## Statement

| DATE | DESCRIPTION | AMOUNT DUE | BALANCE |
|---|---|---|---|
| | PREVIOUS MONTH ENDING BALANCE | | 0.00 |
| | CURRENT CHARGES | | |
| 07/01/2007 | ASSESSMENT | 860.58 | |
| 07/01/2007 | PK SPACE P357 | 0.17 | |
| 07/01/2007 | PK SPACE P358 | 0.17 | |
| 07/01/2007 | MONTHLY PARKING - SPACE P358 | 46.40 | |
| 07/01/2007 | MONTHLY PARKING - SPACE P357 | 46.40 | |
| 07/01/2007 | CABLE TELEVISION | 37.77 | |
| 07/01/2007 | CLOSET RENT | 55.00 | |
| | TOTAL CURRENT | | 1,046.49 |

Total Amount Due: $ 1,046.49

Comments: THERE WILL BE A BOARD OF DIRECTORS MEETING ON JUNE 19, 2006 7:00 PM IN THE HOSPITALITY ROOM.
QUESTIONS REGARDING YOUR STATEMENT SHOULD BE DIRECTED TO THE ON-SITE MANAGEMENT OFFICE AT
312-440-0100.
THIS STATEMENT REFLECTS PAYMENT RECEIVED THROUGH JUNE 19TH.

Statement Date June 20, 2007

JUDY ROGAN
4970 WEXFORD ROAD
VALPARAISO IN 46385

## SUDLER
AAMC*, AMO*

MANAGING FINE PROPERTIES SINCE 1927

IREM's 2006 & 2007 PROPERTY MANAGEMENT COMPANY OF THE YEAR!
(312) 751-0900
WWW.SUDLERPROPERTYMANAGEMENT.COM

JR001078

# EXHIBIT J

JUDITH K ROGAN
476 WEXFORD RD
VALPARAISO IN 46385-8045

Account No.: ▓▓▓▓▓▓▓                              Statement Date: **05/03/05**      Page: **1**

**This Statement Cycle Reflects 33 Days**

## INVESTMENT CHECKING SUMMARY

| Category | Number | Amount |
|---|---|---|
| Balance Forward From 03/31/05 | | 80,758.07 |
| Deposits | 1 | 600,000.00+ |
| Checks | 8 | 579,257.71 |
| Automatic Teller Withdrawals | 1 | 100.00 |
| Automatic Withdrawals | 9 | 63,810.11 |
| Automatic Deposits | 1 | 100,000.00+ |
| Interest Added This Statement | | 61.13+ |
| Ending Balance On 05/03/05 | | 137,651.38 |

| | |
|---|---|
| **Annual Percentage Yield Earned** | 0.55% |
| **Interest Paid This Year** | 134.95 |
| **Interest Paid Last Year** | 183.28 |
| **Average Balance (Collected)** | 122,925.38 |

## DEPOSITS AND OTHER CREDITS

| Date | Type | Amount | Date | Type | Amount | Date | Type | Amount |
|---|---|---|---|---|---|---|---|---|
| 04/11/05 | DEPOSIT | 600,000.00 | | | | | | |

## ELECTRONIC CREDITS

| Date | Description | Amount |
|---|---|---|
| 04/27/05 | WTIN-JUDITH ROGAN | 100,000.00 |
| 05/03/05 | INTEREST PAID | 61.13 |

## ELECTRONIC DEBITS

| Date | Description | Amount |
|---|---|---|
| 04/05/05 | CHASE EPAY | 702.79 |
| 04/06/05 | CITI-CLICK 2 PAY PAYMENT | 50,497.18 |
| 04/11/05 | VZW I2W CEPS PAYMENTS | 206.66 |
| 04/15/05 | NIPSCO UTIL PYMT | 1,158.09 |
| 04/18/05 | DIRECTV DIRECTV | 67.09 |
| 04/20/05 | SAKS FIFTH AVE EBILLING | 649.26 |

R 00382



**First National Bank**
**V A L P A R A I S O**

\* JUDITH K ROGAN

Account No. ▓▓▓▓▓                    Statement Date: **05/03/05**      Page: **2**

## ELECTRONIC DEBITS (cont.)

| Date | Description | Amount |
|------|-------------|--------|
| 04/25/05 | VZW I2W CEPS PAYMENTS | 51.65 |
| 04/26/05 | WDL 2356 MORTHLAND AVE VALPARAISO IN | 100.00 |
| 04/27/05 | WTIN-FEE 04/27/05 | 10.00 |
| 04/27/05 | CITI-CLICK 2 PAY PAYMENT | 10,467.39 |

## CHECKS AND OTHER DEBITS

(* indicates a gap in the check numbers)

| Date | Check # | Amount | Date | Check # | Amount | Date | Check # | Amount |
|------|---------|--------|------|---------|--------|------|---------|--------|
| 04/28/05 | 4269 | 35,000.00 | 04/18/05 | 4495 | 1,000.00 | 04/18/05 | 4498 | 35,000.00 |
| 04/13/05 | *4492 | 100.00 | 04/15/05 | 4496 | 500,000.00 | 04/25/05 | *4501 | 8,000.00 |
| 04/11/05 | *4494 | 50.00 | 04/21/05 | 4497 | 107.71 | | | |

## DAILY BALANCE SUMMARY

Beginning Ledger Balance on 04/01/05 was 80,758.07

| Date | Balance | Date | Balance | Date | Balance |
|------|---------|------|---------|------|---------|
| 04/05/05 | 80,055.28 | 04/18/05 | 91,976.26 | 04/27/05 | 172,590.25 |
| 04/06/05 | 29,558.10 | 04/20/05 | 91,327.00 | 04/28/05 | 137,590.25 |
| 04/11/05 | 629,301.44 | 04/21/05 | 91,219.29 | 05/03/05 | 137,651.38 |
| 04/13/05 | 629,201.44 | 04/25/05 | 83,167.64 | | |
| 04/15/05 | 128,043.35 | 04/26/05 | 83,067.64 | | |

R 00383

**First National Bank**
V A L P A R A I S O

Name:        JUDITH K ROGAN
             476 WEXFORD RD
Account:
Page:        3 of 3



05/12/2005  4271  $1,000.00



05/24/2005  4503  $842.00



05/12/2005  4272  $5,806.59



05/31/2005  4505  $255.00



05/10/2005  4273  $25,000.00



05/23/2005  4274  $5,610.99



05/06/2005  4499  $500.00



05/12/2005  4502  $75.00

**R 00387**



**Name:** JUDITH K ROGAN
476 WEXFORD RD
**Account:**
**Page:** 3 of 3



06/22/2005 4276 $73.68



06/13/2005 4277 $1,000.00



06/15/2005 4278 $6,000.00



06/24/2005 4506 $2,360.00



07/01/2005 4508 $290.00

R 00390

# First National Bank
## VALPARAISO

Name:  **JUDITH K ROGAN**
        **476 WEXFORD RD**
Account:
Page:      **3 of 3**



07/27/2005  $75,000.00



08/03/2005  4512  $200.00



07/08/2005  4279  $1,000.00



07/22/2005  4280  $2,000.00



07/26/2005  4282  $2,000.00



07/08/2005  4507  $36.00



07/15/2005  4511  $9,000.00

**R 00393**



**First National Bank**
**V A L P A R A I S O**

Name:    JUDITH K ROGAN
         476 WEXFORD RD
Account:
Page:    3 of 4



09/12/2005  $40,000.00



09/12/2005  4289  $1,000.00



09/23/2005  4296  $928.08



09/14/2005  $15,000.00



09/16/2005  4290  $5,000.00



09/21/2005  4298  $15,000.00



09/20/2005  $50,000.00



09/26/2005  4291  $100.00



09/19/2005  4488  $200.00



09/21/2005  $25,000.00



09/14/2005  4292  $15,000.00



10/03/2005  4514  $150.00



09/09/2005  4287  $375.19



09/23/2005  4293  $100.00



09/28/2005  4515  $403.24



09/07/2005  4288  $962.08



09/23/2005  4294  $175.52



10/03/2005  4516  $40.00

R 00399



Name: **JUDITH K ROGAN**
**476 WEXFORD RD**
Account:
Page: **3 of 3**




11/07/2005 4525 $5,600.99




11/30/2005 4532 $49.52



12/02/2005 4560 $180.00



11/17/2005 4526 $1,000.00



11/29/2005 4533 $500.00



11/15/2005 4527 $873.08



11/23/2005 4553 $50.00



11/15/2005 4528 $553.00



11/14/2005 4556 $1,807.98



11/15/2005 4529 $59.70



11/16/2005 4557 $60.00



11/17/2005 4531 $5,000.00



12/02/2005 4559 $2,478.72

**R 00406**



**Name:** JUDITH K ROGAN
476 WEXFORD RD

**Account:**
**Page:** 3 of 3




12/05/2005 4534 $399.62



12/28/2005 4543 $98.54




12/21/2005 4565 $572,818.20



12/08/2005 4535 $983.08



12/13/2005 4554 $125.00



12/21/2005 4566 $190,646.38



12/15/2005 4536 $1,000.00



12/12/2005 4558 $375.24



12/23/2005 4567 $9,000.00



12/09/2005 4539 $200.00



12/09/2005 4561 $300.00




12/13/2005 4540 $67.46



12/07/2005 4562 $120.00



12/23/2005 4541 $26.48



12/19/2005 4564 $120.28

R 00409



**First National Bank**
**V A L P A R A I S O**

| Name: | JUDITH K ROGAN |
| | 476 WEXFORD RD |
| Account: | |
| Page: | 3 of 3 |



01/09/2006  $18,172.00



01/18/2006  4563  $100.00



02/02/2006  4573  $2,000.00



01/11/2006  4544  $928.08



02/02/2006  4568  $50.00



01/26/2006  4602  $1,400.00



01/12/2006  4545  $1,000.00



02/02/2006  4569  $750.00



01/26/2006  4604  $335,000.00



01/11/2006  4547  $50.00




02/03/2006  4570  $296.19



02/01/2006  4606  $487.50



01/13/2006  4548  $20,000.00



02/02/2006  4571  $210.80



01/31/2006  4607  $155.00



01/19/2006  4549  $62.14



02/02/2006  4572  $928.08

**R 00412**



**Name:** JUDITH K ROGAN
476 WEXFORD RD
**Account:**
**Page:** 3 of 3



02/13/2006 4550 $1,000.00



02/17/2006 4610 $10.95



02/21/2006 4576 $67.14



02/16/2006 4611 $4,500.00



03/03/2006 4577 $113.49



02/13/2006 4612 $18,172.00



03/01/2006 4578 $890.63



02/16/2006 4608 $575.45



02/07/2006 4609 $3,113.88

**R 00415**

 

**First National Bank**
**V A L P A R A I S O**

Name:  JUDITH K ROGAN
       476 WEXFORD RD
Account:
Page:   3 of 3



03/07/2006 4579 $210.00



03/31/2006 4587 $16,452.00



03/06/2006 4580 $928.08



03/27/2006 4589 $525,000.00



03/13/2006 4581 $1,000.00



03/31/2006 4590 $958.08



03/13/2006 4582 $141.05



03/31/2006 4591 $126.09



03/14/2006 4583 $250,000.00



03/22/2006 4586 $270.00

R 00418



**First National Bank**
V A L P A R A I S O

Name:  **JUDITH K ROGAN**
       **476 WEXFORD RD**
Account:
Page:   **3 of 3**




04/13/2006 4592 $81.22



05/01/2006 4599 $7,000.00



04/14/2006 4593 $1,000.00



04/25/2006 4600 $540.00



04/19/2006 4594 $1,699.03



04/21/2006 4614 $125.00



04/21/2006 4595 $1,126.04



04/27/2006 4615 $10,000.00



04/24/2006 4596 $94.69



05/01/2006 4616 $4,507.08



04/20/2006 4598 $40,000.00



05/03/2006 4651 $50.00

**R 00421**

**First National Bank**
V A L P A R A I S O

Name:     JUDITH K ROGAN
          476 WEXFORD RD
Account:
Page:     3 of 3



05/15/2006 4617 $1,000.00



05/26/2006 4624 $20,000.00



05/15/2006 4618 $1,326.33



05/08/2006 4652 $9,000.00







05/15/2006 4619 $160.00



05/16/2006 4653 $2,000.00



05/23/2006 4621 $495.00





05/22/2006 4622 $60.12



06/01/2006 4623 $76.94

**R 00424**



Name:    JUDITH K ROGAN
         476 WEXFORD RD
Account:
Page:    4 of 4




07/03/2006 $632,707.37



06/26/2006 4632 $4,472.00



07/03/2006 4642 $1,160.73



06/07/2006 4626 $2,000.00



06/14/2006 4633 $150,000.00



06/30/2006 4643 $400,000.00



06/07/2006 4627 $1,007.73



06/29/2006 4638 $61.15



06/26/2006 4654 $1,500.00



06/07/2006 4628 $9,640.57



06/22/2006 4639 $100,000.00



06/12/2006 4629 $67.48



06/28/2006 4640 $10,000.00



06/19/2006 4631 $386.90



06/28/2006 4641 $40,000.00

R 00428



**First National Bank**
V A L P A R A I S O

Name:    JUDITH K ROGAN
476 WEXFORD RD
Account:
Page:    3 of 3




07/12/2006  4644  $1,000.00




07/10/2006  4655  $2,453.87



07/21/2006  4645  $71.45



07/21/2006  4656  $100.00



07/31/2006  4647  $4,468.75



07/21/2006  4657  $2,354.32



07/28/2006  4648  $58.97



07/21/2006  4659  $30,000.00



07/21/2006  4649  $210.00



08/03/2006  4662  $1,041.73



07/21/2006  4650  $1,280.39



07/21/2006  4695  $10,000.00

R 00431



**First National Bank**
**V A L P A R A I S O**

Name: **JUDITH K ROGAN**
**476 WEXFORD RD**

Account:

Page: **3 of 4**



09/15/2006 4666 $60.00

09/07/2006 4688 $255.00

09/07/2006 4705 $428.67

09/06/2006 4683 $1,007.73

09/11/2006 4689 $3,500.00

09/06/2006 4706 $178.63

09/06/2006 4684 $217.29

09/13/2006 4690 $53.42

09/12/2006 4707 $250.00

09/07/2006 4685 $100.00

09/11/2006 4691 $50,000.00

09/08/2006 4708 $9,000.00

09/08/2006 4686 $69.95

09/15/2006 4692 $185.00

09/18/2006 4709 $220.00

09/11/2006 4687 $1,000.00

09/25/2006 4696 $1,239.37

09/21/2006 4710 $120.00

R 00437



First National Bank
VALPARAISO

Name: JUDITH K ROGAN
476 WEXFORD RD
Account:
Page: 3 of 4



10/05/2006 4714 $2,757.60



10/19/2006 4724 $15.00



10/19/2006 4733 $377.38



10/13/2006 4715 $61.05



10/17/2006 4726 $210.00



10/16/2006 4734 $248.05



10/12/2006 4719 $1,000.00



10/18/2006 4727 $1,007.73



10/18/2006 4735 $2,900.00



10/16/2006 4720 $180.52



10/17/2006 4729 $20.16



10/23/2006 4736 $2,000.00



10/16/2006 4721 $112.85



10/16/2006 4730 $65.00



10/31/2006 4737 $200.00



10/17/2006 4722 $38.16



10/16/2006 4731 $288.60



10/26/2006 4738 $2,000.00

R 00441

**EXHIBIT K**

#1 - Jones highlighted relevant info in below email. Viewable n HTML format

**Sender:** customerservice@nebs.com [customerservice@nebs.com]

**Recipient:** dcmiller@netnitco.net [dcmiller@netnitco.net]

**Subject:** Order Confirmation

**Date:** 2004-02-03 15:58:45Z

Thank you for placing your order with NEBS!

The order confirmation number is 355100.

To ensure accurate order processing,
please take a moment to review the information below.

APPLICABLE DISCOUNTS DO NOT SHOW ON THIS EMAIL.

Our records indicate that you ordered:

#1 Product/Desc.: LM145C-1, Classic Laser/Inkjet Multipurpose Check 1-part
Price: $68.95
Qty: 250
Options:
Logo choice: No Logo
Ink Color 1: Black
Paper Color/Finish: Green Classic
Typestyle: ts1
Consecutive Start Number: 2501
Imprint Information:
Stub Heading
**BFB, Inc.**
**55 East Erie Street, Suite 3205**
**Chicago, IL 60611-2256**
Comments: This is a reorder - checks originally ordered in 1998. All information is the same except for a
change in the address. Check will be faxed w/ bank etc info. Thx - DC Miller

We will bill/ship your order as follows:

LAW OFFICES OF

# TATOOLES, FOLEY & ASSOCIATES

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

JOHN J. TATOOLES, J.D., P.C.
JOHN FOLEY, J.D., P.C.
♦ ♦ ♦
LIBERTYVILLE, ILLINOIS 60048

180 NORTH WACKER DRIVE, SUITE 600
CHICAGO, ILLINOIS 60606

TEL: (312) 540-4410
FAX: (312) 946-8220

DIRECT LINE: (312) 540-4412
E-MAIL: JF@TFALAW.COM

600 S. WASHINGTON ST
SUITE 301
NAPERVILLE, ILLINOIS 60540

TEL. (630) 717-1200
FAX (630) 717-7595

January 16, 2007

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Internal Revenue Service Center
Cincinnati, OH 45999

Re:     Decorative Services, Inc.
        Election by a Small Business Corporation (Form 2553)

To Whom It May Concern:

Enclosed please find the Election by a Small Business Corporation (Form 2553) to be filed on behalf of the above-referenced entity.

Thank you for your assistance in this matter.  Further questions may be directed to the undersigned at 312-540-4412.

Sincerely,

John Foley

Enc.

cc:  J. Rogan (w/enc)

**JR001006**

**Form 2553**
(Rev. March 2005)
Department of the Treasury
Internal Revenue Service

# Election by a Small Business Corporation
(Under section 1362 of the Internal Revenue Code)
▶ See Parts II and III on back and the separate instructions.
▶ The corporation may either send or fax this form to the IRS. See page 2 of the instructions.

OMB No. 1545-0146

**Notes:** 1. *Do not file Form 1120S, U.S. Income Tax Return for an S Corporation, for any tax year before the year the election takes effect.*

2. *This election to be an S corporation can be accepted only if all the tests are met under Who May Elect on page 1 of the instructions; all shareholders have signed the consent statement; an officer has signed this form; and the exact name and address of the corporation and other required form information are provided.*

| Part I | Election Information |
|---|---|

**Please Type or Print**

Name (see instructions)
Decorative Services, Inc.

**A** Employer identification number
~~██~~ 02

Number, street, and room or suite no. (If a P.O. box, see instructions.)
55 E. Erie Ave., Unit 3205

**B** Date incorporated
12/6/2006

City or town, state, and ZIP code
Chicago, IL 60611

**C** State of incorporation
Illinois

**D** Check the applicable box(es) if the corporation, after applying for the EIN shown in **A** above, changed its name ☐ or address ☐

**E** Election is to be effective for tax year beginning (month, day, year) . . . . . . . . . . . . . . . . . . . . . . . ▶

**F** Name and title of officer or legal representative who the IRS may call for more information
Judith Rogan, President

**G** Telephone number of officer or legal representative
(219) 508-1454

**H** If this election takes effect for the first tax year the corporation exists, enter month, day, and year of the **earliest** of the following: (1) date the corporation first had shareholders, (2) date the corporation first had assets, or (3) date the corporation began doing business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ▶ 12/6/06

**I** Selected tax year: Annual return will be filed for tax year ending (month and day) ▶ December 31

If the tax year ends on any date other than December 31, except for a 52-53-week tax year ending with reference to the month of December, complete Part II on the back. If the date you enter is the ending date of a 52-53-week tax year, write "52-53-week year" to the right of the date.

| J Name and address of each shareholder or former shareholder required to consent to the election. (See the instructions for column K) | K Shareholders' Consent Statement. Under penalties of perjury, we declare that we consent to the election of the above-named corporation to be an S corporation under section 1362(a) and that we have examined this consent statement, including accompanying schedules and statements, and to the best of our knowledge and belief, it is true, correct, and complete. We understand our consent is binding and may not be withdrawn after the corporation has made a valid election. (Sign and date below.) | | L Stock owned or percentage of ownership (see instructions) | | M Social security number or employer identification number (see instructions) | N Shareholder's tax year ends (month and day) |
|---|---|---|---|---|---|---|
| | Signature | Date | Number of shares or percentage of ownership | Date(s) acquired | | |
| Judith K. Rogan, Trustee of the Judith K. Rogan Revocable Trust dated 4/19/1989 476 Wexford Valparaisos, IN 46385 | *Judith K Rogan* | 1-12-07 | 1,000 | 12/6/06 | 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 | 12/31 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Under penalties of perjury, I declare that I have examined this election, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete.

Signature of officer ▶ *Judith K Rogan*   Title ▶ President   Date ▶ 1-12-07

For Paperwork Reduction Act Notice, see page 9 of the instructions.   Form **2553** (Rev. 3-2005)

ISA
STF FED4589F.1

JR001007

Form 2553 (Rev. 3-2005)

Page **2**

| **Part II** | **Selection of Fiscal Tax Year** (All corporations using this part must complete item O and item P, Q, or R.) |

**O** Check the applicable box to indicate whether the corporation is:

1. ☐ A new corporation **adopting** the tax year entered in item I, Part I.
2. ☐ An existing corporation **retaining** the tax year entered in item I, Part I.
3. ☐ An existing corporation **changing** to the tax year entered in item I, Part I.

**P** Complete item P if the corporation is using the automatic approval provisions of Rev. Proc. 2002-38, 2002-22 I.R.B. 1037, to request **(1)** a natural business year (as defined in section 5.05 of Rev. Proc. 2002-38) or **(2)** a year that satisfies the ownership tax year test (as defined in section 5.06 of Rev. Proc. 2002-38). Check the applicable box below to indicate the representation statement the corporation is making.

**1. Natural Business Year** ▶ ☐ I represent that the corporation is adopting, retaining, or changing to a tax year that qualifies as its natural business year as defined in section 5.05 of Rev. Proc. 2002-38 and has attached a statement verifying that it satisfies the 25% gross receipts test (see instructions for content of statement). I also represent that the corporation is not precluded by section 4.02 of Rev. Proc. 2002-38 from obtaining automatic approval of such adoption, retention, or change in tax year.

**2. Ownership Tax Year** ▶ ☐ I represent that shareholders (as described in section 5.06 of Rev. Proc. 2002-38) holding more than half of the shares of the stock (as of the first day of the tax year to which the request relates) of the corporation have the same tax year or are concurrently changing to the tax year that the corporation adopts, retains, or changes to per item I, Part I, and that such tax year satisfies the requirement of section 4.01(3) of Rev. Proc. 2002-38. I also represent that the corporation is not precluded by section 4.02 of Rev. Proc. 2002-38 from obtaining automatic approval of such adoption, retention, or change in tax year.

**Note:** *If you do not use item P and the corporation wants a fiscal tax year, complete either item Q or R below. Item Q is used to request a fiscal tax year based on a business purpose and to make a back-up section 444 election. Item R is used to make a regular section 444 election.*

**Q** Business Purpose — To request a fiscal tax year based on a business purpose, check box Q1. See instructions for details including payment of a user fee. You may also check box Q2 and/or box Q3.

**1.** Check here ▶ ☐ if the fiscal year entered in item I, Part I, is requested under the prior approval provisions of Rev. Proc. 2002-39, 2002-22 I.R.B. 1046. Attach to Form 2553 a statement describing the relevant facts and circumstances and, if applicable, the gross receipts from sales and services necessary to establish a business purpose. See the instructions for details regarding the gross receipts from sales and services. If the IRS proposes to disapprove the requested fiscal year, do you want a conference with the IRS National Office?
☐ Yes   ☐ No

**2.** Check here ▶ ☐ to show that the corporation intends to make a back-up section 444 election in the event the corporation's business purpose request is not approved by the IRS. (See instructions for more information.)

**3.** Check here ▶ ☐ to show that the corporation agrees to adopt or change to a tax year ending December 31 if necessary for the IRS to accept this election for S corporation status in the event (1) the corporation's business purpose request is not approved and the corporation makes a back-up section 444 election, but is ultimately not qualified to make a section 444 election, or (2) the corporation's business purpose request is not approved and the corporation did not make a back-up section 444 election.

**R** Section 444 Election — To make a section 444 election, check box R1. You may also check box R2.

**1.** Check here ▶ ☐ to show the corporation will make, if qualified, a section 444 election to have the fiscal tax year shown in item I, Part I. To make the election, you must complete **Form 8716**, Election To Have a Tax Year Other Than a Required Tax Year, and either attach it to Form 2553 or file it separately.

**2.** Check here ▶ ☐ to show that the corporation agrees to adopt or change to a tax year ending December 31 if necessary for the IRS to accept this election for S corporation status in the event the corporation is ultimately not qualified to make a section 444 election.

| **Part III** | **Qualified Subchapter S Trust (QSST) Election Under Section 1361(d)(2)*** |

| Income beneficiary's name and address | Social security number |
|---|---|
| Trust's name and address | Employer identification number |

Date on which stock of the corporation was transferred to the trust (month, day, year) . . . . . . . . . . . . . . . . . . ▶

In order for the trust named above to be a QSST and thus a qualifying shareholder of the S corporation for which this Form 2553 is filed, I hereby make the election under section 1361(d)(2). Under penalties of perjury, I certify that the trust meets the definitional requirements of section 1361(d)(3) and that all other information provided in Part III is true, correct, and complete.

_____   _____
Signature of income beneficiary or signature and title of legal representative or other qualified person making the election        Date

*Use Part III to make the QSST election only if stock of the corporation has been transferred to the trust on or before the date on which the corporation makes its election to be an S corporation. The QSST election must be made and filed separately if stock of the corporation is transferred to the trust **after** the date on which the corporation makes the S election.

Form **2553** (Rev. 3-2005)

JR001008

STF FED4589F.2

FILE COPY

Department of the Treasury

# TD F 90-22.1
(Rev 7/00) SUPERSEDES ALL
PREVIOUS EDITIONS

## REPORT OF FOREIGN BANK AND FINANCIAL ACCOUNTS
Do **NOT** file with your Federal Tax Return

OMB No. 1506-0009

| 1 Filing for Calendar Year | 2 Type of Filer | | | | 3 Taxpayer Identification Number |
|---|---|---|---|---|---|
| 2006 | a [X] Individual  b [ ] Partnership  c [ ] Corporation  d [ ] Fiduciary | | | | |

## Part I  Filer Information

| 4 Last Name or Organization Name | 5 First Name | 6 Middle Initial |
|---|---|---|
| Rogan | Judith K | |

| 7 Address (Number, Street, and Apartment or Suite Number) | 8 Date of Birth |
|---|---|
| 476 Wexford | 8/09/1948 |

| 9 City | 10 State | 11 ZIP/Postal Code | 12 Country | 13 Title (Not necessary if reporting a personal account) |
|---|---|---|---|---|
| Valparaiso | IN | 46385-8045 | US | |

| 14 Are these accounts jointly owned? | 15 Number of joint owners | 16 Taxpayer Identification Number of joint owner (if known) |
|---|---|---|
| a [ ] Yes  b [X] No | | |

| 17 Last Name or Organization Name | 18 First Name | 19 Middle Initial |
|---|---|---|
| | | |

## Part II  Information on Financial Accounts

| 20 Number of Foreign Financial Accounts in which a financial interest is held | 21 Type of account |
|---|---|
| 2 | a [ ] Bank  b [X] Securities  c [ ] Other |

| 22 Maximum value of account | 23 Account Number or other designation |
|---|---|
| a [ ] Under $10,000          c [ ] $100,000 to $1,000,000 | |
| b [X] $10,000 to $99,999   d [ ] Over $1,000,000 | 4375/SNG |

| 24 Name of Financial Institution with which account is held | 25 Country in which account is held |
|---|---|
| Oceanic Bank and Trust Limited | Bahamas |

| 26 Does the filer have a financial interest in this account? | 27 Last Name or Organization Name of Account Holder |
|---|---|
| a [X] Yes  b [ ] No   If no, complete boxes 27-35 | |

| 28 First Name | 29 Middle Initial | 30 Taxpayer Identification Number |
|---|---|---|
| | | |

| 31 Address (Number, Street, and Apartment or Suite Number) | 32 City |
|---|---|
| | |

| 33 State | 34 ZIP/Postal Code | 35 Country | |
|---|---|---|---|
| | | | |

| 36 Signature | 37 Date |
|---|---|
| | |

This form should be used to report a financial interest in, signature authority, or other authority over one or more financial accounts in foreign countries, as required by the Department of the Treasury Regulations (31 CFR 103). No report is required if the aggregate value of the accounts did not exceed $10,000. **SEE INSTRUCTIONS FOR DEFINITION.** File this form with:

**U.S. Department of the Treasury, P.O. Box 32621, Detroit, MI 48232-0621.**

### PRIVACY ACT NOTIFICATION

Pursuant to the requirements of Public Law 93-579 (Privacy Act of 1974), notice is hereby given that the authority to collect information on TD F 90-22.1 in accordance with 5 USC 552a(e) is Public Law 91-508; 31 USC 5314; 5 USC 301; 31 CFR 103.
The principal purpose for collecting the information is to assure maintenance of reports where such reports or records have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings. The information collected may be provided to those officers and employees of any constituent unit of the Department of the Treasury who have a need for the information in the performance of their duties. The records may be referred to any other department or agency of the United States upon the request of the head of such department or agency for use in a criminal, tax, or regulatory investigation or proceeding. The information collected may also be provided to appropriate state, local, and foreign law enforcement and regulatory personnel in the performance of their official duties.
Disclosure of this information is mandatory. Civil and criminal penalties, including in certain circumstances a fine of not more than $500,000 and imprisonment of not more than five years, are provided for failure to file a report, supply information, and for filing a false or fraudulent report.
Disclosure of the Social Security number is mandatory. The authority to collect is 31 CFR 103. The Social Security number will be used as a means to identify the individual who files the report.

FD1Z9101L  07/24/02                    APPRV #053

R 00137



FORM **BCA 2.10** (rev. Dec. 2003)
**ARTICLES OF INCORPORATION**
Business Corporation Act

Jesse White, Secretary of State
Department of Business Services
Springfield, IL 62756
217-782-9522
217-782-6961
www.cyberdriveillinois.com

Remit payment in the form of a cashier's
check, certified check, money order
or an Illinois attorney's or CPA's check
payable to Secretary of State.

See Note 1 on back to determine fees.

Doc#:  0634644065 Fee: $26.00
Eugene "Gene" Moore
Cook County Recorder of Deeds
Date: 12/12/2006 12:49 PM Pg: 1 of 2

**FILED**

DEC 0 6 2006
JESSE WHITE
SECRETARY OF STATE

Filing Fee: $150  Franchise Tax $ 25.00  Total $ 175.00  File # 6525-513-8  Approved: CLL

—— Submit in duplicate ——Type or Print clearly in black ink—— Do not write above this line ——

1. Corporate Name: Decorative Services, Inc.

The corporate name must contain the word "corporation," "company," "incorporated," "limited" or an abbreviation thereof.

2. Initial Registered Agent: John Foley
   First Name          Middle Initial          Last Name

   Initial Registered Office: 180 N. Wacker Drive, Suite 600
   Number          Street          Suite No. (P.O. Box alone is unacceptable)

   Chicago          IL 60606          Cook
   City          ZIP Code          County

3. Purposes(s) for which the corporation is organized:
   (If more space is needed, attach additional 8 1/2" x 11" sheets.)

   The transaction of any or all lawful businesses for which corporations may be incorporated under the Illinois Business Corporation Act.

4. Paragraph 1 — Authorized Shares, Issued Shares and Consideration Received:

| Class | Number of Shares Authorized | Number of Shares Proposed to be Issued | Consideration to be Received Thereof |
|---|---|---|---|
| Common | 10,000 | 1,000 | $ 1,000 |
| | | | |
| | | | |
| | | TOTAL = $ | 1,000.00 |

Paragraph 2 — The preferences, qualifications, limitations, restrictions and special or relative rights in respect of the shares of each class are:
(If more space is needed, attach additional 8 1/2" x 11" sheets.)

(cont.)

RECORDING DESK
BOX 170

STF IL33238F.1

Printed by authority of the State of Illinois. June 2005

R 00141

**ITEMS 5, 6 AND 7 ARE OPTIONAL.**

5.  a.  Number of Directors constituting the initial board of directors of the corporation: _____
    b.  Names and Addresses of persons serving as directors until the first annual meeting of shareholders or until their successors are elected and qualify:

| Name | Address | City, State, ZIP |
|------|---------|------------------|
|      |         |                  |
|      |         |                  |
|      |         |                  |

6.  a.  It is estimated that the value of the property to be owned by the corporation
        for the following year wherever located will be:                                                         $ _____
    b.  It is estimated that the value of the property to be located within the State
        of Illinois during the following year will be:                                                           $ _____
    c.  It is estimated that the gross amount of business that will be transacted by
        the corporation during the following year will be:                                                       $ _____
    d.  It is estimated that the gross amount of business that will be transacted
        from places of business in the State of Illinois during the following year will be:   $ _____

7.  Other Provisions: Attach a separate 8 1/2" x 11" sheet for any other provision to be included in the Articles of Incorporation (e.g., authorizing preemptive rights, denying cumulative voting, regulating internal affairs, voting majority requirements, fixing a duration other than perpetual, etc.).

**NAME(S) & ADDRESS(ES) OF INCORPORATOR(S)**

8.  The undersigned incorporator(s) hereby declare(s), under penalties of perjury, that the statements made in the foregoing Articles of Incorporation are true.

Dated        December 5        ,        2006
             Month & Day                Year

|  | Signature and Name | | Address |
|--|--------------------|--|---------|
| 1. | _____ <br> Signature <br> John Foley , Incorporator <br> Name (type or print) | 1. | 180 N. Wacker Drive, Suite 600 <br> Street <br> Chicago, IL 60606 <br> City/Town   State   ZIP Code |
| 2. | _____ <br> Signature <br> _____ <br> Name (type or print) | 2. | _____ <br> Street <br> _____ <br> City/Town   State   ZIP Code |
| 3. | _____ <br> Signature <br> _____ <br> Name (type or print) | 3. | _____ <br> Street <br> _____ <br> City/Town   State   ZIP Code |

Signatures must be in **BLACK INK** on an original document. Carbon copy, photocopy or rubber stamp signatures may only be used on conformed copies.
**NOTE:** If a corporation acts as incorporator, the name of the corporation and the state of incorporation shall be shown and the execution shall be by a duly authorized corporate officer. Type or print officer's name and title beneath signature.

**Note 1 — Fee Schedule:**
*   The initial franchise tax is assessed at the rate of 15/100 of 1 percent ($1.50 per $1,000) on the paid-in capital represented in this state. (The minimum initial franchise tax is $25.)
*   The filing fee is $150.
*   The minimum total due (franchise tax + filing fee) is $175.

Printed by authority of the State of Illinois. June 2006

STF IL33326F.2

**Note 2 — Return to:**

Tatooles, Foley & Assoc.
                              Firm name
John Foley
                              Attention
180 N. Wacker Dr., #600
                              Mailing Address
Chicago, IL 60606
                              City, State, ZIP Code

R 00142

**RECORDING DESK
BOX 170**

Form **2553**
(Rev. March 2005)
Department of the Treasury
Internal Revenue Service

# Election by a Small Business Corporation
(Under section 1362 of the Internal Revenue Code)
► See Parts III and III on back and the separate instructions.
► The corporation may either send or fax this form to the IRS. See page 2 of the instructions.

OMB No. 1545-0146

**Notes:** 1. *Do not file Form 1120S, U.S. Income Tax Return for an S Corporation, for any tax year before the year the election takes effect.*
2. *This election to be an S corporation can be accepted only if all the tests are met under Who May Elect on page 1 of the instructions; all shareholders have signed the consent statement; an officer has signed this form; and the exact name and address of the corporation and other required form information are provided.*

| **Part I** | **Election Information** |
|---|---|

**Please Type or Print**

| Name (see instructions) **Decorative Services, Inc.** | **A** Employer identification number **20-8013802** |
|---|---|
| Number, street, and room or suite no. (If a P.O. box, see instructions.) **55 E. Erie Ave., Unit 3205** | **B** Date incorporated **12/6/2006** |
| City or town, state, and ZIP code **Chicago, IL 60611** | **C** State of incorporation **Illinois** |

**D** Check the applicable box(es) if the corporation, after applying for the EIN shown in A above, changed its name ☐ or address ☐

**E** Election is to be effective for tax year beginning (month, day, year) . . . . . . . . . . . . . . . . . ►

| **F** Name and title of officer or legal representative who the IRS may call for more information **Judith Rogan, President** | **G** Telephone number of officer or legal representative **(219) 508-1454** |
|---|---|

**H** If this election takes effect for the first tax year the corporation exists, enter month, day, and year of the **earliest** of the following: (1) date the corporation first had shareholders, (2) date the corporation first had assets, or (3) date the corporation began doing business . . . . . . . . . . . . . . . . . . . . . . . . . . . ► **12/6/06**

**I** Selected tax year: Annual return will be filed for tax year ending (month and day) ► **December 31**

If the tax year ends on any date other than December 31, except for a 52-53-week tax year ending with reference to the month of December, complete Part II on the back. If the date you enter is the ending date of a 52-53-week tax year, write "52-53-week year" to the right of the date.

| **J** Name and address of each shareholder or former shareholder required to consent to the election. (See the instructions for column K) | **K** Shareholders' Consent Statement. Under penalties of perjury, we declare that we consent to the election of the above-named corporation to be an S corporation under section 1362(a) and that we have examined this consent statement, including accompanying schedules and statements, and to the best of our knowledge and belief, it is true, correct, and complete. We understand our consent is binding and may not be withdrawn after the corporation has made a valid election. (Sign and date below.) | | **L** Stock owned or percentage of ownership (see instructions) | | **M** Social security number or employer identification number (see instructions) | **N** Share-holder's tax year ends (month and day) |
|---|---|---|---|---|---|---|
| | Signature | Date | Number of shares or percentage of ownership | Date(s) acquired | | |
| Judith K. Rogan, Trustee of the Judith K. Rogan Revocable Trust dated 4/19/1989 476 Wexford Valparaisos, IN 46385 | *Judith K Rogan* | 1-12-07 | 1,000 | 12/6/06 | ▒▒▒▒▒▒ | 12/31 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Under penalties of perjury, I declare that I have examined this election, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete.

Signature of officer ► *Judith K Rogan*    Title ► **President**    Date ► **1-12-07**

For Paperwork Reduction Act Notice, see page 4 of the instructions.

ISA
STF FED4589F.1

Form **2553** (Rev. 3-2005)

R 00144

# BY-LAWS

## OF

## DECORATIVE SERVICES, INC.

## ARTICLE I

### OFFICES

The corporation shall continuously maintain in the State of Illinois a registered office and a registered agent whose business office is identical with such registered office, and may have other offices within or without the state.

## ARTICLE II

### SHAREHOLDERS

**SECTION 1. ANNUAL MEETING.** An annual meeting of the shareholders shall be held on the first Friday in December of each year beginning in 2007 or at such time as the board of directors may designate for the purpose of electing directors and for the transaction of such other business as may come before the meeting. If the day fixed for the annual meeting shall be a legal holiday, such meeting shall be held on the next succeeding business day.

**SECTION 2. SPECIAL MEETINGS.** Special meetings of the shareholders may be called either by the president, by the board of directors or by the holders of not less than one-fifth of all the outstanding shares of the corporation entitled to vote, for the purpose or purposes stated in the call of the meeting.

**SECTION 3. PLACE OF MEETING.** The board of directors may designate any place, as the place of meeting for any annual meeting or for any special meeting called by the board of directors. If no designation is made, or if a special meeting be otherwise called, the place of meeting shall be at the corporation's principal office.

**SECTION 4. NOTICE OF MEETINGS.** Written notice stating the place, date, and hour of the meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than 10 nor more than 60 days before the date of the meeting, or in the case of a merger, consolidation, share exchange, dissolution or sale, lease or exchange of assets not less than 20 nor more than 60 days before the date of the meeting, either personally or by mail, by or at the direction of the president, secretary or the officer or persons calling the meeting, to each shareholder of record entitled to vote at such meeting. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail addressed to the shareholder at his or her address as it appears on the records of the corporation, with postage thereon prepaid. When a meeting is

R 00146

## WRITTEN CONSENT

## OF THE SOLE DIRECTOR OF

## DECORATIVE SERVICES, INC.

The undersigned, being the sole director of **Decorative Services, Inc.**, an Illinois corporation ("Corporation"), acting pursuant to the provisions of Section 8.45 of the Illinois Business Corporation Act of 1983, as amended, does hereby authorize and consent in lieu of a meeting to the adoption of the following resolutions:

RESOLVED, that the By-Laws inserted prior to this Consent be and they hereby are adopted as the By-Laws of the Corporation;

RESOLVED, that the following persons be and they hereby are elected to serve as officers of the Corporation, from the date of this Resolution, to serve for the term provided in the By-Laws or until their successors are elected and shall have qualified:

|  |  |
|---|---|
| President: | Judith Rogan |
| Treasurer: | Judith Rogan |
| Secretary: | Judith Rogan |

FURTHER RESOLVED, that the Treasurer of the Corporation be and she hereby is authorized and directed to pay all organizational expenses of the Corporation out of the funds of the Corporation.

FURTHER RESOLVED, that the Preorganization Subscription for one-thousand (1,000) shares of the Corporation's no par value common shares be and hereby is accepted and approved;

FURTHER RESOLVED, that the common shares of the Corporation issued as heretofore described shall be deemed fully paid and non-assessable;

FURTHER RESOLVED, that an election to be treated as a "small business corporation" for federal income tax purposes under Section 1362 of the Internal Revenue Code of 1986, as amended, be made and filed on behalf of the Corporation (with the Consent of its shareholders) for the fiscal year ending December 31, 2006 and all subsequent fiscal years until the termination and revocation of such election;

FURTHER RESOLVED, that the President of the Corporation is hereby authorized on behalf of the Corporation to designate banks in which the funds of the Corporation may be deposited to the credit of the corporation, with such officers as they deem appropriate carry on

R 00160

business with said banks, all of which shall be evidenced an set forth in the printed forms of resolutions of any of said banks, and any such resolutions executed and delivered by the officers of the Corporation shall be deemed and hereby are adopted as resolutions of the Directors of the Corporation as if set forth in full in Minutes of the meeting of the Directors of the Corporation.

IN WITNESS WHEREOF, the undersigned, being the sole director of the Corporation, has signed this consent effective as of December 6, 2006, this _12_ day of January 2007.

Judith K. Rogan, Trustee of the Judith K. Rogan Revocable Trust dated April 19, 1989

R 00161

## WRITTEN CONSENT OF

## THE SOLE SHAREHOLDER OF

## DECORATIVE SERVICES, INC.

The undersigned, being the sole shareholder of Decorative Services, Inc., an Illinois corporation (the "Corporation"), acting pursuant to the provisions of Section 7.10 of the Illinois Business Corporation Act of 1983, as amended, does hereby authorize and consent in lieu of a meeting to the adoption of the following resolutions:

RESOLVED, that the Preorganization Subscription Agreement for one-thousand (1,000) shares of this Corporation's no par value common shares (attached as Exhibit "A") be and it hereby is accepted and approved;

RESOLVED, that the Articles of Incorporation of this Corporation as filed in the office of the Secretary of State be and the same are hereby approved;

FURTHER RESOLVED, that the Articles of Incorporation of this Corporation, together with the Certificate of Incorporation, be forthwith filed for record in the office of the Recorder of Deeds of Cook County, Illinois.

IN WITNESS WHEREOF, the undersigned, being all the shareholders of this Corporation, have signed this consent effective as of the 6th day of December, 2006, this _12_ day of January, 2007.

Judith K. Rogan, Trustee of the Judith K.
Rogan Revocable Trust dated April 19, 1989

**EXHIBIT L**



ISSUED BY THE

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEXIA CRÉDIT LOCAL, f/k/a Dexia Public Finance Bank and Crédit Local de France, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 02 C 8288 ) |
| PETER G. ROGAN et al. | ) Judge Mark Filip ) ) ) ) |
| Defendants. | ) |

<u>**CITATION TO DISCOVER ASSETS TO THIRD PARTY**</u>

TO:      Mrs. Judith Rogan
476 Wexford Avenue
Valparaiso, Indiana 46385

    A Judgment against defendants Peter G. Rogan ("Rogan"), Braddock Management LP ("Braddock"), and Bainbridge Management, Inc. ("Bainbridge") (collectively, "Judgment Debtors") was entered on May 3, 2007 in the amount of $124,280,712.79 plus post-judgment interest, and remains unsatisfied in the amount of $124,280,712.79 plus post-judgment interest.

    **YOU ARE COMMANDED** to appear at Sidley Austin LLP, One South Dearborn St., Chicago, Illinois 60603 on **July 30, 2007** at **9:30 a.m.** and be examined under oath relating to any and all accounts, property, income or assets of Judgment Debtors. Please note that the examination date is conditional and subject to change by Plaintiff Dexia Crédit Local based on its assessment of the completeness and status of your production of documents.

    **YOU ARE COMMANDED** to produce prior to the examination all documents, papers and records identified in Rider A. The documents, papers and records must be produced by **July 5, 2007** and should be delivered to Eric Pruitt, Sidley Austin LLP, One South Dearborn St., Chicago, Illinois 60603.

**YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to Judgment Debtors or to which Judgment Debtors may be entitled or that may be acquired by or become due to Judgment Debtors and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to Judgment Debtors, until the further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment.

**YOUR FAILURE TO APPEAR AND ANSWER AS HEREIN DIRECTED MAY CAUSE YOU TO BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT.**

## CERTIFICATE OF ATTORNEY

I, Eric S. Pruitt, certify to the Court, under penalties as provided by law pursuant to 735 ILCS 5/1-109 that the following information is true:

1.  Judgment was entered in the amount of $124,280,712.79 on May 3, 2007.
2.  Name of the Court entering Judgment: United States District Court, Northern District of Illinois, Eastern Division
3.  Case No. 02-8288

| | |
|---|---|
| **Dated: June 7, 2007** | **ISSUED:** JUN - 7 2007 |
| PLAINTIFF DEXIA CRÉDIT LOCAL | MICHAEL W. DOBBINS, Clerk of the District Court |
| By: _____ <br> One of Its Attorneys | |
| SIDLEY AUSTIN LLP <br> Scott Mendeloff <br> Gabriel Aizenberg <br> Eric S. Pruitt <br> One South Dearborn Street <br> Chicago, Illinois 60603 <br> (312) 853-7000 | _____ <br> (By) Deputy Clerk |
| *Counsel for Dexia Crédit Local* | |

## IN THE UNITED STATES DISTRICT COURT
### CASE NO. 02 C 8288
### AFFIDAVIT OF SPECIAL PROCESS SERVER

**Lewis Ellis**, being first duly sworn on oath deposes and says that he served process in the above mentioned cause.
That he served the within:

( ) Summons & Complaint
( **X** ) Citation to Discover Assets
( ) Rule to Show Cause
( ) Subpoena
( **X** ) Other: **Citation Notice, Certificate of Attorney**

1.    ( ) By leaving a copy with the named party, ------- personally on -------.

2.    ( **X** ) On the within named party, **Judith Rogan**, by leaving a copy with **Refused Name, Refused Title/Relation**, who states that they are a member of the household on **June 8, 2007**, and informed that person of the contents thereof, and that further he mailed a copy of same in a sealed envelope with postage prepaid addressed to the party on **06/12/2007**.

3.    ( ) On the within party, ------- by leaving a copy with  -------, on -------, and informed that person of the contents thereof.

4.    ( **X** ) That the sex, race and approximate age of the person with whom he left the documents were as follows:

SEX: **Male**          RACE: **Caucasian**          APPROXIMATE AGE: **45-50**

5.    ( **X** ) That the place where and the time of day when the documents were served were as follows:

PLACE: **476 Wexford Ave., Valparaiso, IN 46385**
TIME OF DAY: **3:16 PM**

6.    ( ) That he was unable to serve the within named party ------- located at -------- for the reason: -------

Signed and Sworn to before me
This **12**th day of **June 2007**.

OFFICIAL SEAL
KELLY L DENT
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/02/09

Lewis Ellis
Special Process Server
IT'S YOUR SERVE, INC.
Private Detective No. 117-000885

ISSUED BY THE

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| DEXIA CRÉDIT LOCAL, f/k/a Dexia Public Finance Bank and Crédit Local de France, | ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 02 C 8288 ) |
| PETER G. ROGAN et al. | ) Judge Mark Filip ) ) |
| Defendants. | ) ) ) |

## <u>CITATION TO DISCOVER ASSETS TO THIRD PARTY</u>

TO:    Mrs. Judith Rogan
       55 East Erie St., Apt. 3205
       Chicago, Illinois 60611

A Judgment against defendants Peter G. Rogan ("Rogan"), Braddock Management LP ("Braddock"), and Bainbridge Management, Inc. ("Bainbridge") (collectively, "Judgment Debtors") was entered on May 3, 2007 in the amount of $124,280,712.79 plus post-judgment interest, and remains unsatisfied in the amount of $124,280,712.79 plus post-judgment interest.

**YOU ARE COMMANDED** to appear at Sidley Austin LLP, One South Dearborn St., Chicago, Illinois 60603 on **July 30, 2007 at 9:30 a.m.** and be examined under oath relating to any and all accounts, property, income or assets of Judgment Debtors. Please note that the examination date is conditional and subject to change by Plaintiff Dexia Crédit Local based on its assessment of the completeness and status of your production of documents.

**YOU ARE COMMANDED** to produce prior to the examination all documents, papers and records identified in Rider A. The documents, papers and records must be produced by **July 5, 2007** and should be delivered to Eric Pruitt, Sidley Austin LLP, One South Dearborn St., Chicago, Illinois 60603.

**YOU ARE PROHIBITED** from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from execution or garnishment belonging to Judgment Debtors or to which Judgment Debtors may be entitled or that may be acquired by or become due to Judgment Debtors and from paying over or otherwise disposing of any money not so exempt, which is due or becomes due to Judgment Debtors, until the further order of court or termination of the proceedings. You are not required to withhold the payment of any money beyond double the amount of the judgment.

**YOUR FAILURE TO APPEAR AND ANSWER AS HEREIN DIRECTED MAY CAUSE YOU TO BE ARRESTED AND BROUGHT BEFORE THE COURT TO ANSWER TO A CHARGE OF CONTEMPT OF COURT, WHICH MAY BE PUNISHABLE BY IMPRISONMENT.**

<u>**CERTIFICATE OF ATTORNEY**</u>

I, Eric S. Pruitt, certify to the Court, under penalties as provided by law pursuant to <u>735 ILCS 5/1-109</u> that the following information is true:

1. Judgment was entered in the amount of $124,280,712.79 on May 3, 2007.
2. Name of the Court entering Judgment: United States District Court, Northern District of Illinois, Eastern Division
3. Case No. 02-8288

| | |
|---|---|
| **Dated: June 7, 2007** | **ISSUED:** JUN - 7 2007 |
| PLAINTIFF DEXIA CRÉDIT LOCAL | **MICHAEL W. DOBBINS**, Clerk of the District Court |
| By: _____ | |
| One of Its Attorneys | |
| | |
| SIDLEY AUSTIN LLP | |
| Scott Mendeloff | |
| Gabriel Aizenberg | |
| Eric S. Pruitt | |
| One South Dearborn Street | |
| Chicago, Illinois 60603 | |
| (312) 853-7000 | (By) Deputy Clerk |
| | |
| *Counsel for Dexia Crédit Local* | |

## IN THE UNITED STATES DISTRICT COURT
### CASE NO. 02 C 8288
## AFFIDAVIT OF SPECIAL PROCESS SERVER

**Jason Holinka**, being first duly sworn on oath deposes and says that he served process in the above mentioned cause.
That he served the within:

        (   ) Summons & Complaint
        ( **X** ) Citation to Discover Assets
        (   ) Rule to Show Cause
        (   ) Subpoena
        ( **X** ) Other: **Citation Notice, Certificate of Attorney**

1.    (   ) By leaving a copy with the named party, ------- personally on -------

2.    ( **X** ) On the within named party, **Judith Rogan**, by leaving a copy with **Dennis Esquivel, Doorman**, who states that they are a member of the household on **June 11, 2007**, and informed that person of the contents thereof, and that further he mailed a copy of same in a sealed envelope with postage prepaid addressed to the party on **06/13/2007**.

3.    (   ) On the within party, ------- by leaving a copy with -------, on -------, and informed that person of the contents thereof.

4.    ( **X** ) That the sex, race and approximate age of the person with whom he left the documents were as follows:

SEX: **Male**          RACE: **Hispanic**          APPROXIMATE AGE: **30-40**

5.    ( **X** ) That the place where and the time of day when the documents were served were as follows:

PLACE: **55 E. Erie St., #3205, Chicago, IL 60611**
TIME OF DAY: **8:50 PM**

6.    (   ) That he was unable to serve the within named party ------- located at ------- for the reason: -------

Signed and Sworn to before me
This **13**th day of **June 2007**.

OFFICIAL SEAL
KELLY L DENT
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/02/09

Jason Holinka
Special Process Server
IT'S YOUR SERVE, INC.
Private Detective No. 117-000885

**EXHIBIT M**

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 3.0**
**Eastern Division**

Dexia Credit Local

                   Plaintiff,

v.

Peter G Rogan, et al.

                   Defendant.

Case No.: 1:02−cv−08288
Honorable Mark Filip

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, June 21, 2007:

      MINUTE entry before Judge Sidney I. Schenkier : The order of 6/20/07 (doc. # 343) is corrected as follows: Motion hearing held. Plaintiff's motion for leave to serve citation to discover assets on Mr. Peter G. Rogan and Mrs. Judith Rogan 341 is granted. Service of the citation to discover assets as to Mr. Rogan is to be effectuated under Fed. R. Civ. P. 4(f)(3) by delivery, via Federal Express, to Patrick Deady and the Harper Grey law firm. Service of the citation to discover assets as to Mrs. Rogan is to be effectuated under Fed. R. Civ. P. 4(f)(3) by delivery, via Federal Express, to Patrick Deady and Michael O'Rourke. Mailed notice(mmm, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

# EXHIBIT N

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 02 C 8288 |
| PETER G. ROGAN, et al. | ) ) ) | Hon. Marvin E. Aspen |
| Defendants. | ) | |

**PLAINTIFF DEXIA CREDIT LOCAL'S FIRST SET OF INTERROGATORIES AND
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
TO DEFENDANT PETER G. ROGAN**

Plaintiff Dexia Credit Local ("Dexia"), by its attorneys, serves the following

interrogatories and requests for production of documents and things upon defendant Peter G.

Rogan ("Rogan") and requests that each interrogatory be answered and document and thing be

produced within 30 days after the service hereof, in accordance with Fed. R. Civ. P. 26, 33, and

34.

### DEFINITIONS & INSTRUCTIONS

### DEFINITIONS

1. "And" and "or" shall be construed either disjunctively or conjunctively as

necessary to bring within the scope of these requests and interrogatories all responses that might

otherwise be construed to be outside its scope.

2. "Communication" means the transmittal of information (in the form of facts,

ideas, inquiries, or otherwise).

3.  "Concerning" means pertaining in any way to, concerning to, referring to, relating to, describing, evidencing, constituting, reflecting or being in any way logically or partially connected with the matter described.

4.  "Control" or "Controlled" means the possession, whether direct or indirect or through or in concert with one or more other persons, of the power to direct or cause the direction of the management or policies of a person through, inter alia, membership, board representation, or an ownership interest (by vote or value) equal to or greater than 50 percent.

5.  "Documents" includes, but is not limited to, all writings of every kind including, but not limited to, letters, telegrams, memoranda, reports, studies, photographs, calendar and diary entries, pamphlets, notes, charts, drawings, graphs, tabulations, analyses, statistical or informational accumulations, advertisements, portfolios, any kind of records of meetings and conversations (including tape recordings), film impressions, videotapes, moving pictures, magnetic tapes, communications in electronic form, data and writings (both deleted and non-deleted) stored in a computer, computer diskette, CD ROM, or data tape, electronic mail, data compilations, sound or mechanical reproductions, or recordings, drafts of documents, and copies of documents which are not identical duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or are attached thereto) whether or not the originals are in Rogan's possession, custody or control.

6.  "Family" means the group of individuals related to Rogan by blood, marriage, adoption, or other legal custody who live or have lived with Rogan and any individual who is not a member of such group, but who is related by blood, marriage, or adoption to a member of such group.

2

7. "Identify" means state the name, title, employer, address, and telephone number.

8. "Investment Institution" means any entity that offers services related to the purchase, sale or exchange of common stocks, preferred stocks, government bonds, corporate bonds, municipal bonds, unit investment trusts, mortgage-backed securities, Ginnie Maes, convertible bonds, money market funds, certificates of deposit, mutual funds, IRAs, annuities, life insurance, options, futures, managed commodity accounts, gold and silver certificates, and public offerings.

9. "Option" means the "Exclusive Option Agreement and Right of First Refusal" that EPC and Northside Operating Company entered into on August 17, 1994.

10. "Person" means any natural person or any business, legal or governmental entity or association, including but not limited to a trust, an estate, a partnership, company or a corporation.

11. "Rogan" means defendant Peter G. Rogan and any employees, attorneys, agents, partners, or other persons acting or purporting to act on his behalf.

12. "You" and "Your" means Rogan, as defined above.

## DEFINITIONS: PERSONS/ENTITIES

1. "Access Community Health Services, Inc." means Access Community Health Services, Inc. and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

2. "Bainbridge" means Bainbridge Management, Inc. and Bainbridge Management L.P., their predecessors in interest, successors in interest, officers, directors,

3

employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on their behalf.

      3.  "Barnabas" means Ravi Barnabas and any of his employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on his behalf.

      4.  "Braddock" means Braddock Management, Inc. and Braddock Management, L.P, their predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on their behalf.

      5.  "Chicagoland Services Support Foundation" means Chicagoland Services Support Foundation, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

      6.  "Cain Brothers" means Cain Brothers, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

      7.  "Cubria" means Andrew Cubria and any employees, agents, attorneys, or anyone acting or purporting to act on his behalf.

      8.  "Ehmen" means Roger Ehmen and any employees, agents, attorneys, or anyone acting or purporting to act on his behalf.

      9.  "Edgewater" means Edgewater Medical Center, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

4

6. "Edgewater Foundation" means Edgewater Foundation, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

7. "Edgewater Operating Co." means Edgewater Operating Company, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

8. "EPC" means Edgewater Property Company, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

9. "Florascribe" means Florascribe, Inc. its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

10. "Grant" means Grant Hospital, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

11. "Gross" means F. Scott Gross, and any employees, agents, attorneys, or anyone acting or purporting to act on his behalf.

12. "Interhealth Associates, Inc." means Interhealth Associates, Inc. and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

13. "Interhealth Management, Inc." means Interhealth Management, Inc. and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

5

14. "Inter Health Management Corporation" means Inter Health Management Corporation and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

15. "Kaliana" means Kumar Kaliana and any of his employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on his behalf.

16. "Maggie Springer & Associates of Illinois, Inc." means Maggie Springer & Associates of Illinois, Inc. and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

17. "Northside Operating Co." means Northside Operating Company, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

18. "Permian Healthcare, Inc." means Permian Healthcare, Inc., its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

19. "Peter Rogan Revocable Trust" means the Peter Rogan Revocable Trust, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

20. "PGR" means PGR Properties, Inc., its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

21. "Primus Management" means Primus Management and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

22. "Rao M.D., S.C." means Rao M.D., S.C. and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

23. "R.C. Health Management Corporation" means R.C. Health Management Corporation and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

24. "Rao" means Sheshiqiri Rao Vavilikolanu and any of his employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on his behalf.

25. "Vital Community Health Services, Inc." means Vital Community Health Services, Inc. and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

26. "Waldo Point Management, Inc." means Waldo Point Management, Inc., its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

## GENERAL INSTRUCTIONS

1. The use of the singular form of any word in these discovery requests includes the plural and vice versa.

2. Each of the definitions and each of the instructions is hereby incorporated into each of the discovery requests to which it may pertain.

7

3.  The specificity of any discovery request herein should not be construed to limit the generality or reach of any other request herein.

4.  Responses to these discovery requests shall be seasonably supplemented to the extent required by Rule 26(e) of the Federal Rules of Civil Procedure.

## INSTRUCTIONS FOR INTERROGATORIES

1.  Each interrogatory, and each subparagraph of each interrogatory, is to be fully and separately answered, and before each answer is given, the interrogatory in question must be set forth in full.

2.  Each individual interrogatory shall be construed independently.  No interrogatory shall be construed by reference to any other interrogatory for the purpose of limiting the response to such interrogatory.

3.  With respect to any interrogatory contained herein, if the answering party is able to provide some, but not all, of the information requested, the answering party is to provide such information as it can, and specifically identify the item to which it does not have sufficient information to respond fully and the reasons for its inability to respond fully.

4.  Where a claim of privilege is asserted in objecting to any interrogatory or sub-part thereof, and an answer is not provided on the basis of such assertion, (i) the party asserting the privilege shall in the objection to the interrogatory or sub-part thereof, identify the nature of the privilege (including work product) which is being claimed and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked; and (ii) the following information shall be provided in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged information:  (a) for documents:  (1) the type of document; (2) general subject matter

8

of the document; (3) the date of the document; and (4) such other information as is sufficient to identify the document, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other; and (b) for oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and place of communication; and (3) the general subject matter of the communication.

### INSTRUCTIONS FOR DOCUMENTS REQUESTS

1.  In producing documents, you are requested to furnish all documents known or available to you regardless of whether these documents are possessed directly by you or your agents, employees, partners, representatives, investigators, or by your attorneys or their agents, employees, representatives, or investigators.

2.  If any of the requested documents cannot be produced in full, you are requested to produce them to the fullest extent possible, specifying clearly the reasons for your inability to produce the remainder and stating whatever information, knowledge or belief you do have concerning the unproduced portion.

3.  With respect to any documents called for by this request but withheld due to any claim of privilege, list for each such document: (a) the type of document (e.g., letter, memorandum); (b) the general subject matter of the document; (c) the date of the document; (d) the author of the document; (e) the addressee and any other recipients of the document; (f) the nature of the privilege claimed; and, where not apparent, (g) the relationship of the author, addressees, and recipients to each other

4.  If you assert a privilege as to any portion of any category of the documents described, please produce the remainder of that category as to which you do not assert a privilege.

5.  If any portion of any document is redacted, please state with specificity the basis or ground for the redaction.

6.  For each and every document produced in response to these requests, either designate the request number to which the document is responsive or, alternatively, produce them as they are maintained in the ordinary course of business.

## INTERROGATORIES

1.  Identify each account held with a bank or Investment Institution in the name of, or for the benefit of, Rogan and/or any member of the Rogan Family for the years 1990 to present.  For each account, identify the name and address of the financial institution, the account number, and account balance as of the present date.

2.  List all of Your assets and liabilities, with a description of each asset or liability and its actual or estimated value as of the present date, including but not limited to any asset, whether liquid or not, held outside the country; any asset or property held in the name of a member of the Rogan Family; and any asset held in another person's name for which You possess any interest.  This includes, but is not limited to, all real property owned by You or in which You had any legal or beneficial interest, or any options to purchase property or deposits placed on property by You.

3.  Identify all entities, corporations, partnerships or limited liability companies in which You have had an interest during all or any part of the period from 1990 through the present, including the amount and value of Your ownership interest, and the period of time You

have held it.  For each entity, corporation, partnership or limited liability company listed, identify its assets and liabilities and the actual or estimated value of each asset and liability on the present date.

4.  Identify each payment or anything else of monetary value that You or any member of the Rogan Family have received from (a) Edgewater or Grant, (b) any actual or contemplated supplier of Edgewater or Grant, (c) any customer of goods or services of Edgewater Grant, and (d) any contractor working with or seeking to work with Edgewater or Grant.  For each item, list the date such payment was made and describe why this payment was made.

5.  List and describe in detail all lawsuits, government investigations, regulatory proceedings, or criminal cases to which You have been a party or otherwise been subject, including caption of suit (if applicable) or other basis for identifying the matter (e.g., for a grand jury investigation, provide the location of the grand jury and number of investigation), nature of claim/investigation/proceeding, amount sought (if applicable), and resolution or current status.

6.  Identify any names, both legal and otherwise, other than Peter G. Rogan that You have used or have been associated with You.

7.  Identify each member of the Rogan Family by stating the person's name, address, telephone number, and social security number.

8.  For the time period January 1990 to present, identify each person whom Rogan has Controlled and/or acted as a director, officer, employee, or partner by stating, the person's name, address, phone number, the time period during which Rogan was an officer, director, employee, or partner, and whether Rogan was a director, officer, employee, or partner for or with that person.

11

9.   For the time period January 1990 to present, identify each time Rogan has left the United States by stating the city and country that he went to, the dates he went, who he went with, why he went, and where he stayed.

10. State the factual basis for the affirmative defenses alleged in Rogan's First Amended Answer to Dexia's First Amended Complaint.

## DOCUMENT REQUESTS

1.   All documents You took from the premises of Edgewater or Grant at any time.

2.   All documents identified in response to the interrogatories above and any other documents reviewed or relied upon in preparing that response.

3.   All documents concerning to Your dealings with any bank or other Investment Institution.

4.   All federal, state and local tax filings for You for the years 1990-present.  This includes, but is not limited to, all W-2s, Form 1099s, Form 1044s, gift tax filings, and accompanying schedules.

5.   All documents concerning to any health insurance held for the benefit of You and/or any member of Your Family.

6.   All documents concerning to expenses that You submitted or charged to Edgewater or Grant in from 1990-present, including, but not limited to, receipts, credit card statements, and reimbursement forms.

7.   All documents concerning to transfers of cash or property by You, any member of the Rogan Family, or any business entity in which You are involved to any defendant in this case, to any person listed in above in the section entitled "DEFINITIONS:  PERSONS/

12

ENTITIES," to any current or former employee or board member of any person listed in above in the section entitled "DEFINITIONS: PERSONS/ ENTITIES."

    8. All documents concerning any entities, corporations, partnerships or limited liability companies in which You have had an interest during all or any part of the period from 1990 to the present.

    9. All documents concerning to any payment or anything else of monetary value that You or any member of the Rogan family has received from (a) Edgewater or Grant, (b) any actual or contemplated supplier of Edgewater or Grant, (c) any customer of goods or services of Edgewater or Grant, and (d) any contractor working with or seeking to work for Edgewater or Grant.

    10. All documents concerning any personal property You own or have owned during all or any part of the period from 1990 to the present, including, but not limited to motor vehicles, furniture or fixtures, homes, and telecommunications, office or computer equipment.

    11. All documents concerning any real property owned by You or in which You had any legal or beneficial interest, or any options to purchase property or deposits placed on property by You, during the period 1990 to the present.

    12. All documents concerning to mortgages, commercial or residential, in which You and/or Your spouse have an interest.

    13. All documents concerning to Your assets and liabilities, including but not limited to any asset, whether liquid or not, held outside the country; any asset or property held in the name of a member of Your Family; and any asset held in another person's name for which You possess any interest. 

14. All documents concerning to any lawsuits, criminal proceedings, or government investigations to which You have been a party, including but not limited to all pleadings, correspondence, depositions, statements and transcripts.

15. All documents that Rogan has produced in response to subpoenas from any grand jury.

16. All documents and other discovery that Rogan has produced in connection with United States v. Peter Rogan, Case No. 02C3310 (N.D. Ill).

17. Copies of Rogan's current and expired passports.

18. Copies of Rogan's current and expired driver's licenses.

19. All documents concerning the Option.

20. For the time period January 1990 to present, all communications, agreements, and contracts between and among Rogan and each person for whom or with whom Rogan has acted as a director, officer, employee, or partner concerning Dexia, Edgewater, or Grant.

21. For the time period January 1990 to present, all documents concerning Medicare or Medicaid

22. All documents concerning Cain Brothers.

23. All documents concerning Edgewater.

24. All documents concerning Grant.

25. All communications, contracts, and agreements concerning Dexia, Edgewater, or Grant between and among Rogan and any of the persons or entities listed above in the DEFINITIONS: PERSONS/ENTITIES.

26. All documents concerning Dexia, including but not limited to communications between and among Rogan and Dexia.

14

27. All documents identified in Rogan's Initial Disclosures.

28. All documents concerning any of the allegations stated in Your Answer and Affirmative Defenses.

29. All documents concerning Barnabas, Cubria, Florascribe, Gross, Kaliana, Rao, and Rao M.D., S.C.

30. All documents concerning the Peter Rogan Revocable Trust, including but not limited to:

a)   the trust formation documents and all amendments and modifications thereto;

b)   agreements or contracts between and among the Peter Rogan Revocable Trust and any other person(s);

c)   savings accounts;

d)   checking accounts;

e)   certificates of deposit;

f)   safety deposit boxes;

g)   real estate;

h)   cooperative shares;

i)   savings certificates;

j)   U.S. savings bonds;

k)   Treasury bills/bonds;

l)   municipal bonds;

m)  insurance policies;

n)   annuities;

o)   brokerage accounts (e.g., stock, commodities, etc.);

p) mutual funds;

q) annuities;

r) stock and dividends;

s) trusts;

t) communications, contracts, or agreements with any other defendant(s);

u) federal, state, and municipal tax returns;

v) employment agreements;

w) business and personal credit, charge, or debit card statements;

x) boats;

y) airplanes;

z) automobiles or other motorized vehicles;

aa) communications between and among the Peter Rogan Revocable Trust and any other

   defendant(s);

bb) federal, state, and municipal tax returns;

cc) gift tax returns.

31. For each person you Control or have Controlled during the time period 1990-present:

a) formation documents, including but not limited to articles of incorporation (and

   amendments thereto), by-laws (and amendments thereto), or partnership agreements;

b) board minutes, board committee minutes, shareholder meeting minutes;

c) if the person is a partnership, documents sufficient to show the identity and location of all

   partners, whether limited or general

d) tax returns (federal, state, and municipal);

16

e) property leases;

f) mortgages, loan agreements, and other credit instruments;

g) credit or debit card statements;

h) insurance policies;

i) indemnification agreements;

j) employment contracts;

k) organizational charts;

l) equity or shareholder agreements concerning to the management, ownership, or control

of the entity;

m) financial statements, including but not limited to balance sheets, statements of operations,

statements of member interests, statements of cash flows, and any reports of any auditors

or accountants concerning any such financial statements;

n) bank statements;

o) statements concerning any form of investment.


Dated: January 9, 2004                          SIDLEY AUSTIN BROWN & WOOD LLP

                                                Scott Mendeloff
                                                Gabriel Aizenberg
                                                Eric S. Pruitt
                                                Shelly A. DeRousse
                                                Bank One Plaza
                                                10 South Dearborn Street
                                                Chicago, Illinois 60603
                                                (312) 853-7000

                                                Attorneys for Dexia Credit Local

**EXHIBIT O**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02 C 8288 |
| PETER G. ROGAN, et al. | ) ) | Hon. Marvin E. Aspen |
| Defendants. | ) | Mag. Judge Sidney I. Schenkier |
| ------------------------------------------------------------ | ) ) | |
| EDGEWATER PROPERTY COMPANY and PGR PROPERTIES, INC., | ) ) ) | |
| Counterplaintiffs, | ) ) | |
| v. | ) ) | |
| DEXIA CREDIT LOCAL, | ) ) | |
| Counterdefendant. | ) ) | |

**PLAINTIFF DEXIA CREDIT LOCAL'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS BAINBRIDGE MANAGEMENT, LP, BAINBRIDGE MANAGEMENT, INC., AND BRADDOCK MANAGEMENT, LP**

Plaintiff Dexia Credit Local ("Dexia"), by its attorneys, serves the following requests for production of documents upon defendants Bainbridge Management, LP, Bainbridge Management, Inc., and Braddock Management, LP and requests that each document be produced within 30 days after the service hereof, in accordance with Fed. R. Civ. P. 26 and 34.

17. **"Florascribe"** means Florascribe, Inc., its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

18. **"Grant"** means Grant Hospital, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

19. **"Gross"** means F. Scott Gross, and any employees, agents, attorneys, and anyone acting or purporting to act on his behalf.

20. **"Interhealth Associates, Inc."** means Interhealth Associates, Inc. and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

21 **"Interhealth Management, Inc."** means Interhealth Management, Inc. and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

22. **"Inter Health Management Corporation"** means Inter Health Management Corporation and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

23. **"JKR Business"** means JKR business, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

24. **"Kaliana"** means Kumar Kaliana and any of his employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on his behalf.

6

33. **"R.C. Health Management Corporation"** means R.C. Health Management Corporation and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

34. **"Peter G. Rogan"** means defendant Peter G. Rogan (Social Security #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) and any employees, attorneys, agents, partners, or anyone acting or purporting to act on his behalf.

35. **"Judith K. Rogan"** means Judith K. Rogan (Social Security #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) and any employees, agents, attorneys, or anyone acting or purporting to act on her behalf.

36. **"Robert C. Rogan"** means Robert C. Rogan (Social Security #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) and any employees, agents, attorneys, or anyone acting or purporting to act on his behalf.

37. **"Brian P. Rogan"** means Brian P. Rogan (Social Security #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) and any employees, agents, attorneys, or anyone acting or purporting to act on his behalf.

38. **"Sara Caitlin Rogan"** means Sara Caitin Rogan and any employees, agents, attorneys, or anyone acting or purporting to act on her behalf.

39. **"Peter Rogan Revocable Trust"** means the Peter Rogan Revocable Trust and its predecessors in interest, successors in interest, trustees, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

40. **"Robert Cashman Rogan Trust"** means the Robert Cashman Rogan Trust, its predecessors in interest, successors in interest, trustees, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

41. **"Brian Peter Rogan Trust"** means the Brian Peter Rogan Trust, its predecessors in interest, successors in interest, trustees, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

8

## DOCUMENT REQUESTS

1. All Documents identified in response to "Plaintiff Dexia Credit Local's First Set of Interrogatories to Defendants Bainbridge Management, LP, Bainbridge Management, Inc., and Braddock Management, LP" (the "Interrogatories") and any documents reviewed or relied upon in preparing Your responses to the Interrogatories.

2. All Documents relating to the formation of Bainbridge and Braddock, including but not limited to (a) articles of incorporation and any amendments thereto; (b) by-laws and any amendments thereto; and (c) partnership agreements.

3. For the time period 1990 to the present, all Documents establishing the identity and location of all shareholders and partners to Bainbridge and/or Braddock, including both general and limited partners.

4. All Documents relating to Boulevard Investors LLC.

5. All Documents relating to JKR Business.

6. For the time period 1990 to the present, all Documents relating to Bainbridge's and Braddock's:

       a.     tax returns (federal, state, and municipal) and gift tax returns;

       b.     tax filings (federal, state, and local) for the years 1990-present, including but not limited to all W-2s, Form 1099s, Form 1044s, gift tax filings, and accompanying schedules;

       c.     property leases;

       d.     mortgages, loan agreements, and other credit instruments;

       e.     credit and/or debit card statements;

       f.     insurance policies;

15. Any and all Communications, contracts, and agreements between Bainbridge and Braddock and the Person(s) listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES"

16. All Documents relating to any transfer of funds or assets (directly or indirectly), including without limitation, cash, between the Person(s) listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES" and You, including, without limitation, all documents relating to invoices; bills; payments; loans; investments; repayments of investments or loans; communications; emails; meetings; telephone records; telephone messages; memos; discussions, correspondence; files; or any agreements or understandings; checks; bank statements; profit statements; reports; work plans; and/or analysis.

17. All Documents relating to payments made by You to the Person(s) listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES" including without limitation, checks; bank statements; profit statements; loans; investments; repayments of investments or loans; transfers of assets or property, including without limitation, cash; communications; emails; meetings; telephone records; telephone messages; memos; discussions; reports; work plans; analyses; correspondence; files or any agreements or understandings.

18. All Documents relating to payments made by the Person(s) listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES" to You, including without limitation, checks; bank statements; profit statements; loans; investments; repayments of investments or loans; transfers of assets or property, including without limitation, cash; communications; emails; meetings; telephone records; telephone messages; memos; discussions; reports; work plans; analyses; correspondence; files or any agreements or understandings.

14

19. In the event that You have any Documents responsive to paragraphs 16 through 18 of this subpoena, provide all documents relating to the purposes for which any relevant transactions occurred. This should include, but not be limited to, general and subsidiary ledgers, general and subsidiary journals, W-2's, 1099's, tax reporting materials, loan agreements, statements of account, correspondence, memoranda, notes, and accounting materials.

20. All Documents relating to any direct or indirect ownership interest held by You in any of the entities listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES" (or any other entities associated with Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Sara Caitlin Rogan).

21 All Documents concerning any entities, corporations, partnerships or limited liability companies (other than any of the entities listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES") in which You have had an interest during all or any part of the period from 1990 to the present.

22. All Documents relating to any direct or indirect control exercised by Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Caitlin Rogan (or any entity associated with Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Sara Caitlin Rogan) over the entities listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES"

23. All Documents concerning the Peter Rogan Revocable Trust, Brian Peter Rogan Trust, Robert Cashman Rogan Trust, and Sara Caitlin Rogan Trust (collectively "the Rogan Trusts") including but not limited to:

15

    t.    tax returns (federal, state, and municipal) and gift tax returns;

    u.    tax filings (federal, state, and local) for the years 1990-present, including but not limited to all W-2s, Form 1099s, Form 1044s, gift tax filings, and accompanying schedules;

    v.    employment agreements;

    w.    business and personal credit, charge, or debit card statements;

    x.    boats;

    y.    airplanes; and

    z.    automobiles or other motorized vehicles.

24. All Documents You took from the premises of Edgewater or Grant at any time.

25. All Documents concerning Your dealings with any bank or other Investment Institution.

26. All Documents concerning expenses and fees that You submitted or charged to Edgewater or Grant from 1990-present, including, but not limited to, receipts, invoices, credit card statements, and reimbursement forms.

27 All Documents concerning any real property owned by You or in which You had any legal or beneficial interest, or any options to purchase property or deposits placed on property by You, during the period 1990 to the present.

28. All Documents concerning Your assets and liabilities, including but not limited to any asset, whether liquid or not, held outside the country; and any asset held in another person's name for which You possess any interest.

17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02 C 8288 |
| PETER G. ROGAN, et al. | ) ) | Hon. Marvin E. Aspen |
| Defendants. | ) | Mag. Judge Sidney I. Schenkier |
| ------------------------------------------------------------- | ) ) | |
| EDGEWATER PROPERTY COMPANY and PGR PROPERTIES, INC., | ) ) ) | |
| Counterplaintiffs, | ) ) | |
| v. | ) ) | |
| DEXIA CREDIT LOCAL, | ) ) | |
| Counterdefendant. | ) ) | |

**PLAINTIFF DEXIA CREDIT LOCAL'S FIRST SET OF INTERROGATORIES
TO DEFENDANTS BAINBRIDGE MANAGEMENT, LP, BAINBRIDGE
MANAGEMENT, INC. AND BRADDOCK MANAGEMENT, LP**

Plaintiff Dexia Credit Local ("Dexia"), by its attorneys, serves the following

interrogatories upon defendants Bainbridge Management, LP, Bainbridge Management, Inc., and

Braddock Management, LP and requests that each interrogatory be answered, under oath, within

30 days after the service hereof, in accordance with Fed. R. Civ. P. 26 and 33.

## INTERROGATORIES

1    Identify each Person that, during all or any part of the period from January 1990 through the present, has Controlled You or acted as Your director, officer, employee, partner or shareholder by stating the Person's name, address, phone number, the amount and value of each Person's ownership (where applicable), and the time period during which the Person was an officer, director, employee, partner or shareholder.

2.   Identify each account held with a bank or Investment Institution in Your name or for the benefit of You for the years 1990 to the present.  For each account, identify the name and address of the bank or Investment Institution, the account number, and account balance as of the present date.

3.   List all of Your assets and liabilities, with a description of each asset or liability and its actual or estimated value as of the present date, including but not limited to any asset, whether liquid or not, held outside the country; and any asset held in another Person's name for which You possess any interest.  This includes, but is not limited to, all real property owned by You or in which You had any legal or beneficial interest, or any options to purchase property or deposits placed on property by You.

4.   Identify all entities, corporations, partnerships or limited liability companies in which You have had an interest during all or any part of the period from 1990 through the present, including the amount and value of Your ownership interest, and the period of time You have held it.  For each entity, corporation, partnership or limited liability company listed, identify its assets and liabilities and the actual or estimated value of each asset and liability on the present date.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02 C 8288 |
| PETER G. ROGAN, et al. | ) ) | Hon. Marvin E. Aspen |
| Defendants. | ) | Mag. Judge Sidney I. Schenkier |
| ------------------------------------------------------ | ) ) | |
| EDGEWATER PROPERTY COMPANY and PGR PROPERTIES, INC., | ) ) ) | |
| Counterplaintiffs, | ) ) | |
| v. | ) ) | |
| DEXIA CREDIT LOCAL, | ) ) | |
| Counterdefendant. | ) ) | |

**PLAINTIFF DEXIA CREDIT LOCAL'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS EDGEWATER PROPERTY COMPANY AND PGR PROPERTIES, INC.**

Plaintiff Dexia Credit Local ("Dexia"), by its attorneys, serves the following requests for production of documents upon defendants Edgewater Property Company ("EPC") and PGR Properties, Inc. ("PGR"), and requests that each document be produced within 30 days after the service hereof, in accordance with Fed. R. Civ. P. 26 and 34.

18. **"Florascribe"** means Florascribe, Inc., its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

19. **"Grant"** means Grant Hospital, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

20. **"Gross"** means F. Scott Gross, and any employees, agents, attorneys, and anyone acting or purporting to act on his behalf.

21 **"Interhealth Associates, Inc."** means Interhealth Associates, Inc. and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

22. **"Interhealth Management, Inc."** means Interhealth Management, Inc. and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

23. **"Inter Health Management Corporation"** means Inter Health Management Corporation and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

24. **"JKR Business"** means JKR business, its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

25. **"Kaliana"** means Kumar Kaliana and any of his employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on his behalf.

6

34. **"R.C. Health Management Corporation"** means R.C. Health Management Corporation and its predecessors in interest, successors in interest, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

35. **"Peter G. Rogan"** means defendant Peter G. Rogan (Social Security #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) and any employees, attorneys, agents, partners, or anyone acting or purporting to act on his behalf.

36. **"Judith K. Rogan"** means Judith K. Rogan (Social Security #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) and any employees, agents, attorneys, or anyone acting or purporting to act on her behalf.

37. **"Robert C. Rogan"** means Robert C. Rogan (Social Security #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) and any employees, agents, attorneys, or anyone acting or purporting to act on his behalf.

38. **"Brian P. Rogan"** means Brian P. Rogan (Social Security #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) and any employees, agents, attorneys, or anyone acting or purporting to act on his behalf.

39. **"Sara Caitlin Rogan"** means Sara Caitlin Rogan and any employees, agents, attorneys, or anyone acting or purporting to act on her behalf.

40. **"Peter Rogan Revocable Trust"** means the Peter Rogan Revocable Trust and its predecessors in interest, successors in interest, trustees, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

41. **"Robert Cashman Rogan Trust"** means the Robert Cashman Rogan Trust, its predecessors in interest, successors in interest, trustees, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

42. **"Brian Peter Rogan Trust"** means the Brian Peter Rogan Trust, its predecessors in interest, successors in interest, trustees, officers, directors, employees, agents, attorneys, subsidiaries, affiliates and anyone acting or purporting to act on its behalf.

8

4.   All Documents concerning expenses or charges of any kind that You submitted or charged to Edgewater or Grant from 1990 through the present, including, but not limited to, bills, receipts, invoices, reimbursement forms, and records of payment.

5.   Any and all Communications, contracts, and agreements between EPC and PGR and the Person(s) listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES."

6.   All Documents relating to any transfer of funds or assets (directly or indirectly), including without limitation, cash, between the Person(s) listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES" and You, including, without limitation, all documents relating to invoices; bills; payments; loans; investments; repayments of investments or loans; communications; emails; meetings; telephone records; telephone messages; memos; discussions; correspondence; files; or any agreements or understandings; checks; bank statements; profit statements; reports; work plans; and/or analysis.

All Documents relating to payments made by You to the Person(s) listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES" including without limitation, checks; bank statements; profit statements; loans; investments; repayments of investments or loans; transfers of assets or property, including without limitation, cash; communications; emails; meetings; telephone records; telephone messages; memos; discussions; reports; work plans; analyses, correspondence; files or any agreements or understandings.

8.   All Documents relating to payments made by the Person(s) listed in the above section entitled "DEFINITIONS  PERSONS/ENTITIES" to You, including without limitation, checks; bank statements; profit statements; loans; investments; repayments of investments or loans; transfers of assets or property, including without limitation, cash; communications;

13

emails; meetings; telephone records; telephone messages; memos; discussions; reports; work plans; analyses; correspondence; files or any agreements or understandings.

9. In the event that You have any Documents responsive to paragraphs 6 through 8 of this subpoena, provide all documents relating to the purposes for which any relevant transactions occurred. This should include, but not be limited to, general and subsidiary ledgers, general and subsidiary journals, W-2's, 1099's, tax reporting materials, loan agreements, statements of account, correspondence, memoranda, notes, and accounting materials.

10. All Documents relating to any direct or indirect ownership interest held by You in any of the entities listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES" (or any other entities associated with Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Sara Caitlin Rogan).

11. All Documents concerning any entities, corporations, partnerships or limited liability companies (other than any of the entities listed in the above sections entitled "DEFINITIONS: PERSONS/ENTITIES") in which You have had an interest during all or any part of the period from 1990 to the present.

12. All Documents relating to any direct or indirect control exercised by Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Sara Caitlin Rogan (or any entity associated with Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Sara Caitlin Rogan) over the entities listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES"

13. All Documents concerning any real property owned by You or in which You had any legal or beneficial interest, or any options to purchase property or deposits placed on property by You, during the period from 1990 through the present, including, but not limited to:

14

27. All Documents concerning JKR Business.

28. All Documents concerning the Option, including but not limited to Communications concerning the Option between and among You and any Person(s) listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES"

29. All Documents concerning Peter G. Rogan, including but not limited to communications between or among Rogan and You concerning Edgewater Hospital, Grant Hospital, or Dexia Credit Local.

30. All Documents concerning Edgewater Hospital.

31. All Documents concerning Grant Hospital.

32. All Documents concerning Dexia Credit Local.

33. All Documents identified in Your Initial Disclosures.

34. All Documents concerning any of the allegations stated in Counts III and IV of Your Counterclaims against Dexia, including but not limited to documents concerning: (a) Dexia's alleged interference with any purported agreements or contracts – oral or written – between Edgewater and EPC and/or PGR, (b) any damages you allegedly suffered as a result of such interference; and (c) all documents in any way evidencing agreements or contracts – oral or written -- between You and Edgewater.

35. All Documents concerning Barnabas, Cubria, Roger Ehmen, Florascribe, Gross, Kaliana, David Miller, Rao, and Rao M.D., S.C.

36. Any document retention policy of EPC or PGR.

18

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02 C 8288 |
| PETER G. ROGAN, et al. | ) ) | Hon. Marvin E. Aspen |
| Defendants. | ) ) | Mag. Judge Sidney I. Schenkier |
| ------------------------------------------------------------- | ) ) | |
| EDGEWATER PROPERTY COMPANY and PGR PROPERTIES, INC., | ) ) ) | |
| Counterplaintiffs, | ) ) | |
| v. | ) ) | |
| DEXIA CREDIT LOCAL, | ) ) | |
| Counterdefendant. | ) ) | |

**PLAINTIFF DEXIA CREDIT LOCAL'S FIRST SET OF INTERROGATORIES TO
DEFENDANTS EDGEWATER PROPERTY COMPANY AND PGR PROPERTIES, INC.**

Plaintiff Dexia Credit Local ("Dexia"), by its attorneys, serves the following

interrogatories upon defendants Edgewater Property Company ("EPC") and PGR Properties, Inc.

("PGR"), and requests that each interrogatory be answered, under oath, within 30 days after the

service hereof, in accordance with Fed. R. Civ. P. 26 and 33.

## INTERROGATORIES

1. Identify each account held with a bank or Investment Institution in Your name, or for Your benefit for the years 1990 to the present. For each account, identify the name and address of the bank or Investment Institution, the account number, any Person with authority to access the account, and the account balance as of the present date.

2. Identify all of Your assets and liabilities, with a description of each asset or liability and its actual or estimated value as of the present date, including but not limited to any asset, whether liquid or not, held outside the country; and any asset held in another Person's name in which You possess any interest. This includes, but is not limited to, all real property owned by You or in which You have any legal or beneficial interest, or any options to purchase property or deposits placed on property by You.

3. Identify all Persons which have had an ownership interest in You during all or any part of the period from January 1990 through the present, including the amount and value of each Person's ownership interest, and the period of time the Person held it.

4. Identify each payment or anything else of monetary value that You have ever received from Edgewater or Grant. For each item, list the date such payment was made and describe why this payment was made.

5. Identify each Person that has Controlled You or acted as Your director, officer, employee, shareholder or partner by stating the Person's name, address, phone number, and the time period during which the Person was an officer, director, employee, shareholder or partner.

6. Identify and describe in detail all lawsuits, government investigations, regulatory proceedings, or criminal cases to which You have been a party or otherwise have been

6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 02 C 8288 |
| PETER G. ROGAN, et al. | ) ) | Judge Mark Filip |
| Defendants. | ) ) | Mag. Judge Sidney I. Schenkier |
| ------------------------------------------------------- | ) ) | |
| EDGEWATER PROPERTY COMPANY and PGR PROPERTIES, INC., | ) ) ) | |
| Counterplaintiffs, | ) ) | |
| v. | ) ) | |
| DEXIA CREDIT LOCAL, | ) ) | |
| Counterdefendant. | ) ) | |

**PLAINTIFF DEXIA CREDIT LOCAL'S DOCUMENT REQUESTS,
INTERROGATORIES, AND REQUESTS TO ADMIT TO DEFENDANTS
BRADDOCK MANAGEMENT LP, BAINBRIDGE MANAGEMENT LP,
BAINBRIDGE MANAGEMENT, INC. EDGEWATER PROPERTY
COMPANY, AND PGR PROPERTIES, INC.**

Plaintiff Dexia Credit Local ("Dexia"), by its attorneys, serves the following

document requests, interrogatories, and requests to admit upon defendants Braddock

Management LP, Bainbridge Management LP, Bainbridge Management, Inc. Edgewater

Property Company, and PGR Properties, Inc., and requests that each be responded to within 30

days after the service hereof.

and Medicaid reimbursements lost as a result of certain physicians' violation of the law," and identify any witnesses with information, documents, and/or evidence that supports or refutes this allegation. (EPC/PGR Resp. To Dexia Mot. to Amend at 12)

4.  Identify the "certain physicians" who You contend violated the law referenced in the EPC/PGR Response To Dexia's Motion to Amend at p. 12 by stating their names, how they violated the law, when You first discovered that they violated the law, and how You first discovered that they violated the law.

5.  State the factual basis for the allegation that Dexia "commandeered Edgewater's affairs in the spring of 2001," and identify any witnesses with information that supports or refutes this allegation. (EPC/PGR Resp. To Dexia Mot. to Amend at 11)

6.  Do You contend that the acts of fraud that Roger Ehmen, Bainbridge and Braddock pleaded guilty to were concealed from Peter Rogan? If Your answer to Interrogatory No. 7 is yes, (a) state with particularity the manner in which each such act of fraud alleged in the complaint in this case was concealed from Peter Rogan; (b) identify all documents or other evidence that You contend supports a finding that the acts of fraud were concealed from Peter Rogan; and (c) identify all persons with knowledge of facts that You contend would support or refute the allegation that the acts of fraud were concealed from Peter Rogan.

7.  Do You intend to assert reliance of the advice of counsel (or other advisors) as a defense with respect to any of the acts or omissions set forth in the complaint? If Your answer is yes, (a) identify with particularity, both descriptively and by citation to specific paragraph numbers of the complaint, each act or omission as to which You intend to assert such a defense; (b) identify with particularity the specific advice You intend to assert that you relied upon with respect to each such act or omission, including a specific identitication of the person(s) who sought the advice, the person(s) who rendered such advice, the date upon which the advice was sought, the date upon which such advice was rendered, and the precise contents of all such advice received, and (c) identify any witnesses with information, documents, and/or other evidence that supports or refutes any of the foregoing answers.

8.  Describe with particularity all business transactions between Braddock Management LP or Bainbridge Management LP and/or Edgewater on the one hand and BFB Ltd. on the other hand, and to the extent You contend that BFB has provided any services to or through Bainbridge Management LP or Edgewater, identify with particularity what those services were and all witnesses to those services.

9.  Describe with particularity the nature of all business transactions between Braddock Management LP, Bainbridge Management LP or Bainbridge Inc on the one hand and JKR Business, on the other hand, specifically stating what services JKR Business provided Bainbridge LP or Bainbridge Inc. and/or what services Bainbridge LP or Bainbridge Inc. provided JKR Business.

10. If it is your contention that someone other than Peter Rogan has had ultimate authority over the operations of Braddock, Bainbridge, and/or Bainbridge Inc. at any time in its history, identify that individual, state with particularity the factual basis of your contention

8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DEXIA CREDIT LOCAL, f/k/a Dexia Public Finance Bank and Credit Local de France, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 02 C 8288 ) |
| PETER G. ROGAN, et al. | ) Judge Mark Filip ) |
| Defendants. | ) Mag. Judge Sidney I. Schenkier ) |
| ------------------------------------------------------------------- | ) |
| EDGEWATER PROPERTY COMPANY and PGR PROPERTIES, INC., | ) ) ) |
| Counterplaintiffs, | ) ) |
| v. | ) ) |
| DEXIA CREDIT LOCAL, | ) ) |
| Counterdefendant. | ) |

### PLAINTIFF DEXIA CREDIT LOCAL'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS TOGETHER WITH ITS INTERROGATORIES, AND REQUESTS TO ADMIT TO DEFENDANTS PETER ROGAN, BAINBRIDGE MANAGEMENT, LP, BAINBRIDGE MANAGEMENT, INC., AND BRADDOCK MANAGEMENT, LP

Plaintiff Dexia Credit Local ("Dexia"), by its attorneys, serves the following requests for production of documents upon defendants Peter Rogan, Bainbridge Management, LP, Bainbridge Management, Inc., and Braddock Management, LP and requests that each document be produced within 30 days after the service hereof, in accordance with Fed. R. Civ. P. 26 and 34.

4.  All Documents relating to any direct or indirect ownership interest held by You in any of the entities listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES."

5.  All Documents relating to any direct or indirect Control exercised by Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Caitlin Rogan (or any trust, partnership, corporation or other entity associated with Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Sara Caitlin Rogan) over the entities listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES."

6.  All Documents relating to any direct or indirect interest held by Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Caitlin Rogan (or any trust, partnership, corporation or other entity associated with Peter G. Rogan, Judith K. Rogan, Robert C. Rogan, Brian P. Rogan or Sara Caitlin Rogan) over the entities listed in the above section entitled "DEFINITIONS: PERSONS/ENTITIES."

## INTERROGATORIES

1.  Identify with specificity all reports of financial performance of Edgewater Medical Center You sent and caused to be sent to Dexia following Dexia's issuance of the letter of credit in relation to Edgewater's bond issuance in 1998.

## REQUESTS TO ADMIT

1.  Admit that, prior to the time Dexia provided a letter of credit in relation to the 1998 issuance of bonds for the benefit of Edgewater Medical Center, You sent Dexia reports of Edgewater Medical Center's financial performance.

# EXHIBIT P

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DEXIA CREDIT LOCAL, f/k/a Dexia Public )
Finance Bank and Credit Local de France, )
                                 )
               Plaintiff, )
                                 )        No. 02 C 8288
              v. )
                                 )        Hon. Mark Filip
PETER G. ROGAN, et al. )
                                 )        Mag. Judge Sidney I. Schenkier
              Defendants. )
   ————————————— )
EDGEWATER PROPERTY COMPANY and )
PGR PROPERTIES, INC., )
                                 )
          Counterplaintiffs, )
                                 )
              v. )
                                 )
DEXIA CREDIT LOCAL, )
                                 )
          Counterdefendant. )

**PLAINTIFF DEXIA CREDIT LOCAL'S MOTION TO COMPEL DEFENDANTS
PETER G. ROGAN, BRADDOCK MANAGEMENT, LP, BAINBRIDGE
MANAGEMENT, LP, BAINBRIDGE MANAGEMENT, INC.,
EDGEWATER PROPERTY COMPANY, AND PGR
PROPERTIES, INC. TO RESPOND TO
DOCUMENT REQUESTS AND
<u>ANSWER INTERROGATORIES</u>**

      Plaintiff Dexia Credit Local ("Dexia") respectfully moves this Court pursuant to

Federal Rule of Civil Procedure 37(a) for an order compelling defendants Peter G. Rogan

("Rogan"), Braddock Management, LP ("Braddock"), Bainbridge Management, LP, Bainbridge

Management, Inc. (together, "Bainbridge"), Edgewater Property Company ("EPC"), and PGR

Properties, Inc. ("PGR") (collectively, the "Rogan entities") to respond to certain document

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEXIA CREDIT LOCAL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02 C 8288 |
| | ) | |
| PETER G. ROGAN, et al., | ) | |
| | ) | Judge Mark Filip |
| Defendants. | ) | |
| | ) | Mag. Judge Sidney I. Schenkier |
| ------------------------------------------------- | ) | |
| | ) | |
| EDGEWATER PROPERTY COMPANY | ) | |
| and PGR PROPERTIES, INC., | ) | |
| | ) | |
| Counterplaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEXIA CREDIT LOCAL, | ) | |
| | ) | |
| Counterdefendant. | ) | |

**PLAINTIFF DEXIA CREDIT LOCAL'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL DEFENDANTS PETER G. ROGAN, BRADDOCK
MANAGEMENT, LP, BAINBRIDGE MANAGEMENT, LP, BAINBRIDGE
MANAGEMENT, INC., EDGEWATER PROPERTY COMPANY, AND
PGR PROPERTIES, INC. TO RESPOND TO DOCUMENT
REQUESTS AND ANSWER INTERROGATORIES**

Scott T. Mendeloff
Gabriel Aizenberg
Eric S. Pruitt
Tara M. Charnes
SIDLEY AUSTIN BROWN & WOOD LLP
10 South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Attorneys for Plaintiff Dexia Credit Local

## BACKGROUND

On January 9, January 11, February 4, and February 11, 2004, plaintiff Dexia Credit Local ("Dexia") served document requests and interrogatories upon defendants Peter Rogan ("Rogan"), Braddock Management LP ("Braddock"), Bainbridge Management LP ("Bainbridge"), Bainbridge, Management, Inc. (Bainbridge, Inc.), Edgewater Property Company ("Edgewater"), and PGR Properties, Inc. ("PGR") seeking discovery, among other things, on three subjects – all of which defendants refuse to produce. First, defendants refuse to provide discovery sufficient to permit a full accounting of defendants' *assets* (other than records of payments received directly from Edgewater ("EMC")), including discovery *inter alia* of the location and identity of defendants' bank accounts, records of real property and other assets held in the name of Rogan, Rogan's family, and the other defendants, unredacted records of defendants' checking, savings, money market and investment accounts, and complete and unredacted tax records. Specifically, Rogan refuses to respond (either in whole or in part) to Interrogatories Nos. 1, 2 and 3 and Document Requests Nos. 4, 7, 10, 11, 12, and 13. Braddock and Bainbridge refuse to respond (either in whole or in part) to Interrogatories Nos. 2 and 3 and Document Requests Nos. 6 (f), (l) and (m), 20, 21, 25, 27 and 28. EPC and PGR refuse to respond (either in whole or in part) to Interrogatories Nos. 1 and 2 and Document Requests Nos. 3 (c)-(g), (l), (m) & (o), 8, 9, 11 and 19.

Second, defendants refuse to respond to interrogatories and document requests sufficient to permit Dexia to *trace* asset transfers and payments between and among defendants and entities defendants directly or indirectly control, including the members of the boards of directors of EMC, Vital, and Access. Specifically, these requests seek discovery relating to defendants' financial and business dealings with other Rogan-affiliated entities and individuals which, on information and belief, facilitated Rogan's scheme by receiving and transferring the fraudulently obtained proceeds of the conspiracy between and among defendants and other Rogan-affiliated individuals and entities. Based on this objection, Rogan refuses to respond (either in whole or in part) to Interrogatories Nos. 1, 2, 3, 7 and 9 and Document Requests No. 3, 4, 5, 7, 8, 10, 11, 12, 13, 17 and 18. Braddock and Bainbridge refuse to respond (either in whole or in part) to Interrogatories Nos. 2 and 3 and Document Requests Nos. 4, 5, 6 (a)-(c), (e), (g), (h), (j), (k), (p), (aa), and (ff), 11, 15-20, 21-23, 25, 27 and 28. EPC and PGR refuse to respond

(either in whole or in part) to Interrogatories Nos. 1 and 2 and Document Requests Nos. 3 (a)-(i), (k)-(m) & (o), 5-9, 11-12, 18-19, 24, 26, 27, and 29.

*Third*, defendants refuse to respond to interrogatories and document requests sufficient to permit Dexia to determine the extent to which defendants exercised ***control*** over other entities.[1] Specifically, these requests ask for all documents relating to the control Rogan or his family exercised over the defendants or any of the entities specifically identified in the requests. Based upon this objection, Rogan refuses to respond (either in whole or in part) to Interrogatory No. 8 and Document Request No. 31. Braddock and Bainbridge refuse to respond (either in whole or in part) to Document Request No. 22. EPC and PGR refuse to respond (either in whole or in part) to Document Request No. 12.

The foregoing discovery requests are relevant to and reasonably calculated to lead to the discovery of admissible evidence regarding numerous key issues and allegations raised in EPC and PGR's recently-filed summary judgment motion and, more importantly, in Dexia's complaint, namely, Dexia's allegations that defendants: (a) are liable for punitive damages (Cplt. ¶ 63); (b) perpetrated a widespread conspiracy to loot EMC for Rogan's benefit (*id.* ¶¶ 6-9, 127-45, 190-96, 210-16, 221-56); (c) knew of and participated in the alleged fraud (*id.* ¶¶ 1-5, 53-126, 163-71, 178, 182-96, 245-56); (d) and others were Rogan's alter egos. (*id.* ¶¶ 26, 155-62, 224, 235, 238-43). Dexia's discovery requests are attached as Exhibits A - F.

On February 12, March 3, March 8, March 12 and March 24, 2004, defendants served responses to Dexia's discovery requests in which they refused to produce the requested documents and answer the interrogatories propounded, advancing the arguments that discovery requested is: (a) irrelevant to the allegations in Dexia's complaint (*See, e.g.*, Rogan Resp. to Dexia Req. Nos. 3 – 5, 7, 8, 10, 13, 16-18, and 31 and Int. Nos. 1-3, 8 and 9 (Ex. G)); and (b) irrelevant because Dexia has not established defendants' liability. (*See, e.g.*, Rogan Resp. to Dexia Interrog. 2 (Ex. G)). Additionally, defendants objected to Dexia's definition of "control"

---

[1] These entities and individuals were all either directly involved in EMC's affairs or directly or indirectly controlled by Rogan and involved in facilitating the control Rogan exercised over EMC, including: (i) doctors that pled guilty to perpetrating healthcare fraud at EMC; (ii) companies Rogan owned and which received payments from EMC; (iii) other companies known or believed to have been controlled by Rogan; (iv) various EMC-related entities with which Braddock and Bainbridge had management contracts; (v) Rogan's family; and (vi) trusts in the name of Rogan and his children, all of which have held ownership interests in defendants, including PGR, Braddock (via interests in Braddock's limited partner), and Bainbridge (via interests in Bainbridge's limited partner).

(which is intended to cover both direct and indirect control). (Rogan Resp. to Dexia Interrog. & Doc. Req., Gen. Obj. 7 (Ex. G)) Defendants' objections to Dexia's discovery requests are attached as Exhibits G-L. A summary table of Dexia's discovery requests, defendants' objections, and the relevance of the discovery is attached hereto as Exhibit M.

Counsel for Dexia initiated an effort to resolve these disputes, and conferred with counsel for defendants several times by telephone. Exhibit N consists of letters Dexia's counsel wrote to counsel for each of the defendants memorializing their discussions. Defendants' counsel did not respond to these letters, rendering these resolution efforts unsuccessful.[2]

For the reasons stated below, the discovery Dexia seeks plainly is proper and, indeed, essential because it is directly relevant to the allegations in its complaint, the remedies Dexia seeks, and the defenses EPC and PGR raise in their summary judgment motion.

## ARGUMENT

Dexia's motion to compel is governed by the Federal Rules of Civil Procedure, which contemplate liberal discovery and define "relevancy" under Rule 26 broadly. *Stallings v. Union Pacific R. Co.*, 2003 U.S. Dist. LEXIS 9550, at *17 (N.D. Ill. 2003); *EEOC v. Staffing Network, LLC*, 2002 WL 31473840, at *1 (N.D. Ill. 2002). "A discovery request is relevant if there is any chance that the information sought may be relevant to the subject matter of the litigation." *Saket v. Am. Airlines, Inc.*, 2003 WL 685385, at *2 (N.D. Ill. 2003). Discovery need not seek information admissible at trial, so long as the request appears reasonably calculated to lead to the discovery of admissible evidence. *See White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001).

**I.   DISCOVERY OF DEFENDANTS' ASSETS, TRANSFERS, AND THE ENTITIES THEY CONTROL IS DIRECTLY RELEVANT TO DEXIA'S CLAIMS AND THE REMEDIES IT SEEKS.**

**A.   Defendants' Assets and Financial Records Are Relevant to Dexia's Claim for Punitive Damages.**

In its complaint, Dexia properly seeks punitive damages on claims for which Illinois law allows such a recovery:  fraud (Counts I and II), *Stafford v. Puro*, 63 F.3d 1436, 1443

---

[2] Although not directly relevant to the discovery issues addressed in Dexia's motion to compel, Exhibit O hereto provides a some background regarding Sidley's representation of EMC and EMC's discovery requests under Fed. R. Bankr. P 2004.

(7th Cir. 1995); breach of fiduciary duty (Counts IV, V, VI, VIII), *O'Neill v. Gallant Ins. Co.*, 769 N.E.2d 100, 109 (Ill. App. Ct. 2002); willful conversion (Count VII), *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998); *Motherway, Glen & Napleton v. Tehin*, 2003 WL 21501952, at *5 (N.D. Ill. 2003); and civil conspiracy (Count X). *Sarno v. Thermen*, 608 N.E.2d 11, 21 (Ill. App. Ct. 1993); *NPF, Inc. v. Sotka*, 2000 WL 574527, at *11 (N.D. Ill. 2000).

The discovery Dexia seeks regarding defendants' "assets" is relevant and admissible on Dexia's claim for punitive damages. "[E]vidence of a defendant's net worth and pecuniary position may be introduced in a case in which punitive damages is an issue." *Pickering v. Owens-Corning Fiberglas Corp.*, 638 N.E.2d 1127, 1139 (Ill. App. Ct. 1994) (allowing discovery of financial statements, business plans and financial projections, and appraisals, estimates, and statements of fair market value in connection to punitive damages claim) (internal citations omitted). *See also Deal v. Byford*, 537 N.E.2d 267, 272 (Ill. 1989) ("financial status of the defendant" relevant to assessing punitive damages award); *Kay v. First Continental Trading, Inc.*, 1997 WL 614378, at *2 (N.D. Ill. 1997) (evidence of net worth admissible where punitive damages are at issue). As *Aspen v. King World Prods. Corp.*, 2001 WL 1403001, at *3 (N.D. Ill. 2001) explains, "there can be no doubt that net worth is discoverable under Rule 26(b)(1) of the Federal Rules of Civil Procedure, as it regards a matter 'that is relevant to the claim' of a party: that is, plaintiff's punitive damages claim." *See also Pickering*, 638 N.E.2d at 1139 ("We are aware of no Illinois case which limits the scope of financial discovery relating to punitive damages").

Discovery of net worth and pecuniary position supports (but is not limited to) discovery of financial statements (both audited and unaudited), *JCW Inv., Inc. v. Novelty, Inc.*, 2003 WL 742184, at *1,*3 (N.D. Ill. 2003), tax returns, *EEOC v. Staffing Network, L.L.C.*, 2002 WL 31473840, at *1, *5 (N.D. Ill. 2002), valuations of assets and liabilities, *Aspen*, 2001 WL 1403001, at *1, business plans and financial projections, *Pickering*, 638 N.E.2d at 1139, any other documents relevant to establishing net worth, *Salstone v. Gen'l Felt Indus.*, 1986 WL 13738, at *1-*2 (N.D. Ill. 1986), and records of transfers, *i.e.*, discovery designed to trace the flow of assets in and out of the person/entity from whom punitive damages are sought. *EEOC v. Ian Schrager Hotels, Inc.*, 2000 WL 307470, at *4 (C.D. Cal. Mar. 8, 2000).

Obviously, discovery of "assets" is at the core of any net worth determination. The "tracing" requests track the flow of funds to and from defendants, allowing Dexia: (a) to

confirm that the discovery defendants' provide as to their net worth and pecuniary position is accurate; and (b) to ensure that any transfers of assets from defendants to others were made for proper consideration and not for the purpose of hiding assets. *See, e.g., Ian Schrager Hotels*, 2000 WL 307470, at *4 ("Clearly, plaintiff may obtain defendants' financial information, to the present, to determine whether defendants have attempted to transfer, or have transferred, income or assets to others to avoid potential liability if defendants lose the pending litigation. Such information is relevant under Rule 26(b) to plaintiff's claims for damages and punitive damages.") Dexia's "control" requests are simply a variant of the foregoing because discovering which entities defendants control is relevant to ascertaining defendants' respective net worth.

**B.    The Requested Assets, Tracing, and Control Records Are Of Core Relevance To Dexia's Conspiracy Allegations.**

A second, independent reason for this Court to uphold the propriety of Dexia's requests is that Dexia's complaint alleges a widespread conspiracy among numerous actors to loot EMC for Rogan's benefit. (Cplt. ¶¶ 1, 6, 8, 135, 141, 234, 244 & 251) In these circumstances, numerous courts have compelled discovery of all documents concerning transfers between and among these actors, *i.e.*, defendants, their coconspirators, and they control. The following cases illustrate this in circumstances closely analogous to our own.

In *Shapo v. Engle*, 1999 WL 446853, at *1 (N.D. Ill. 1999), plaintiff Director of Insurance of the State of Illinois, in his capacity as liquidator of three insurance companies (the "Insurance Companies") sued several individuals and companies alleging *inter alia* the existence of a conspiracy. The alleged mastermind of the conspiracy was defendant Clyde Engle, the former board chairman the Insurance Companies, who allegedly carried out the conspiracy with former directors of the Insurance Companies and other affiliated businesses. *Id.* The conspiracy involved a scheme to defraud the Insurance Companies through transactions by which Engle and others improperly funneled money out of the Engle-controlled Insurance Companies to Engle-controlled entities, *i.e.*, parents or other downstream entities of the Insurance Companies. *Id.* The challenged transfers included: $6 million in "management fees" to Engle-controlled parent companies; purchases of artwork, jewelry, and other collectibles for Engle's benefit; improper loans; and capital contributions for the benefit of Engle-controlled entities. *Id.* at *2-*4.

Plaintiff sought discovery as to transfers of funds and assets between and among the Insurance Companies, the parent companies, and the parent companies' subsidiaries. 2000

5

WL 876994, at *3 (N.D. Ill. 2000). Defendants objected to the discovery as irrelevant, so plaintiff moved to compel. Chief Judge Kocoras compelled discovery:

> In his complaint, Plaintiff has alleged a complex RICO conspiracy to defraud involving a network of transactions between various companies, subsidiaries, and affiliates. Even though Plaintiff may not have alleged transactions between some specific entities (i.e. two parent companies), it is entirely possible that tracing the transfer of funds through the various entities "may be relevant to the subject matter of the action." Given the complexity and broad nature of the relationships and transactions at issue, the Court will not narrowly proscribe discovery so as to curtail the tracing of funds merely because the transfer of funds may involve two parent companies, rather than some other combination of entities. Instead, the Court will grant the motion to compel and order Defendants to produce the documents demonstrating the transfer of cash and/or assets between the various entities.

*Id.* (emphasis added). Defendants did not fully comply with the order, so plaintiff moved to enforce it. 2001 WL 204804, at *1 (N.D. Ill. 2001) In a ruling of great significance to this case, Chief Judge Kocoras rejected defendants' efforts to narrow the scope of his order, holding that it clearly had "envisioned the Plaintiffs being able to trace the money from the Insurance Companies, through the Downstream Affiliates to the Parent Companies, and then to its ***ultimate destination***." *Id.* (emphasis added). The Chief Judge explained why it was critical for plaintiff to know where the funds ended up: "Documentation that proves the final destination of the money could show that the money was indeed used for the benefit of the Parent Companies, and not for the benefit of the Insurance Companies." Chief Judge Kocoras reasoned further:

> [I]t cannot be said that the financial records of the Parent Companies are not relevant. The Plaintiff has alleged a vast conspiracy. The aim of the alleged conspiracy, according to Plaintiff, was to funnel money out of the Insurance Companies and into the Parent Companies, to the detriment of the Insurance Companies, and the benefit of the Parent Companies. The Plaintiff believes that being able to show ***where the money ended up*** is necessary to portray the breadth of the conspiracy. Although the Defendants contend that this theory is inconsistent with the Plaintiff's Complaint, the Supreme Court has stated that discovery is not limited to issues raised in the pleadings.

*Id.* at *2 (emphasis added).

Other cases are in accord with Chief Judge Kocoras' rulings in *Shapo*. In *Van Kampen High Yield Mun. Fund v. O'Donnell & Naccarato*, 2003 WL 751005, at *2 (E.D. Pa. 2003), plaintiffs alleged that defendants had conspired to divert funds from a mismanaged construction project to defendant Thomas Holt, Jr., and sought to compel the production of

6

documents of the several defendants and others reflecting transfers between defendants and Holt-controlled entities. Holt objected because there was no evidence that funds from the project went to him. Defendants also objected because many of the specified entities were not defendants in the action and had no connection to the case. *Id.* The court these objections and compelled discovery, holding that Holt's personal financial records were relevant because plaintiff alleged that Holt had fraudulently transferred funds from the project and converted those funds for his own use. *Id.* As to the other objections, the court ruled that because the complaint included "allegations that the defendants conspired to divert funds from the Kaighn Point project, any transfer of funds between the defendants would indeed be relevant." *Id.* And, of particular relevance to the issues the Rogan defendants raise opposing discovery here, the court went on to hold that "transfers of funds between the Defendants and entities controlled by the Defendants would also be relevant and therefore discoverable." *Id.* (emphasis added).

In *Senise v. American Motor Club*, 129 B.R. 981, 987 (Bankr. E.D.N.Y. 1991), debtor American Motor Club alleged that defendants, AMC directors, diverted funds from AMC for their own personal use and sought to compel discovery of defendants' bank accounts and personal finances. Defendants objected to the relevance of such information. The court compelled discovery because defendants' financial records would "either belie or substantiate" debtor's allegations that defendants diverted funds, depending on whether monies could be "traced" from debtor to defendants' personal accounts. *Id.* The court also rejected defendants' contention that debtor's requests were unduly burdensome because defendants' financial records and bank accounts could provide debtor "with the only means of establishing that money belonging to the [d]ebtor was diverted by [defendants] for their own personal use." *Id.* at 988.[3]

Like the plaintiffs in the foregoing cases, Dexia alleges a "vast conspiracy" among defendants whose aim to "funnel money" out of EMC for "the benefit" of Rogan, *Shapo*, 2001 WL 204804, at *2, which funds constituted Dexia's collateral. Dexia's complaint is replete with such factual allegations. (Cplt. ¶¶ 1, 6, 8, 135, 141, 234, 244 & 251) Dexia also alleges that: (a) Rogan caused EMC to enter into numerous arrangements with Braddock and

---

[3] Other cases involving fraudulent siphoning of funds where discovery of financial records was allowed: *Constitution Bank v. Levine*, 151 F.R.D. 278, 280 (E.D. Pa. 1993); *Shearson Lehman Hutton, Inc. v. Lambros*, 135 F.R.D. 195, 198 (M.D. Fla. 1990) ("[T]he contents of defendants' tax returns may lead to admissible evidence concerning the merits of plaintiff's claims of financial impropriety and conversion. . . ."); and *Jacobs v. Kennedy Van Saun Mfg. & Eng. Corp.*, 12 F.R.D. 523, 526 (M.D. Penn. 1952).

Bainbridge that drained EMC of in excess of $25 million in management fees, benefit and salary reimbursements, and other expenditures (*id.* at ¶¶ 127-28); and (b) defendants Rogan, EPC, and PGR caused EMC to expend its funds to develop EPC and PGR properties at the expense of EMC and Dexia. (*Id.* at ¶¶ 135-39)  Therefore, as in *Shapo*, *Van Kampen*, and *Senise*, defendants' financial records are relevant to and, indeed, could constitute the "only means of establishing" that money belonging to EMC – which, importantly, constituted Dexia's collateral – was diverted by Rogan and the other defendants for Rogan's own personal use.  *Senise*, *supra*. To "portray the breadth of the conspiracy" to divert funds from EMC to Rogan, Dexia must be able to obtain discovery as to: (a) whom defendants controlled; (b) transfers of funds and assets between defendants and other entities defendants owned or controlled; and (c) "where the money ended up."  *Shapo*, 2001 WL 204804, at *2.  This discovery will "either belie or substantiate" Dexia's allegations that defendants perpetrated a conspiracy to divert EMC funds, depending on whether EMC monies can be "traced" from EMC to the accounts of defendants or those under defendants' control.  *Senise*, *supra*.

### C.     Defendants' Assets and Financial Records Are Relevant To Demonstrating That Defendants – Particularly Rogan – Knew Of The Fraudulent Scheme.

Dexia's requests are also relevant to demonstrating that defendants – particularly Rogan – knew of the fraud scheme Dexia alleges in its complaint.  Defendants' ***possession*** of funds funneled out of EMC as part of the charged course of conduct would provide the foundation for the well-established inference that defendants knew of the illicit nature of those funds, which of course goes to the heart of our opponents' defense.

Seventh Circuit Federal Criminal Jury Instruction 3.14 provides that a juror "may reasonably infer that a person who possesses recently stolen property knew it had been stolen." *See also U.S. v. Bonnetts*, 747 F.2d 1159, 1162-65 (7th Cir. 1984) (trial court properly instructed on inference of knowledge arising from possession of recently stolen goods where evidence established that:  (a) stolen car was delivered to the defendant at his work place; and (b) a few days later the defendant instructed co-worker to give the car keys to the defendant's wife).

The inference of knowledge arising from the possession of stolen property has been applied in cases – such as this one – involving the possession of fraudulently obtained funds.  In *U.S. v. Bratton*, 875 F.2d 439 (5th Cir. 1989), Doris and George Bratton were indicted for fraudulently causing two unauthorized transfers from Doris' employer's futures accounts to

8

an account in George's name. Doris pled guilty to wire fraud, but testified at George's trial that he was not involved in the transfers and that she had told him the transferred funds were part of an inheritance of a recently-deceased relative. On appeal of his conviction for aiding and abetting Doris, George challenged the sufficiency of the evidence that he knew the funds were stolen. While the government pointed to certain circumstantial evidence of George's knowledge (*e.g.*, George's active control and management of the stolen funds), the Fifth Circuit noted that much of this evidence was consistent with Doris' exculpatory testimony. It nevertheless found the evidence sufficient based, in part, upon the inference of knowledge which could be drawn from George's possession of the stolen funds. *Id.* at 442.

Here, Dexia alleges that Rogan participated in a scheme to defraud Dexia, EMC, and others in a wide variety of ways, and that the other defendants worked with Rogan to accomplish this scheme, and to assist Rogan to profit personally from it. (Cplt. ¶¶ 1-5, 53-126, 163-71, 178, 190-96, 207-09 & 221-56). Knowledge and intent certainly are hotly contested in this case. In their guilty pleas, defendants Braddock, Bainbridge, and Ehmen admit that they knew of and participated in the healthcare fraud at EMC. (Exs. P-R) Yet, astoundingly, in their answers to Dexia's complaint, Braddock and Bainbridge deny that they participated in a scheme to defraud EMC, to Dexia's detriment. And, perhaps the central pillar of the defense of Rogan, EPC, and PGR is their claim that they knew nothing of the fraud scheme that their codefendants Braddock, Bainbridge, and Ehmen pled guilty to perpetrating through EMC. If Rogan, EPC, and PGR received the substantial portions of the money generated in the fraud scheme at EMC, Seventh Circuit Pattern Instruction 3.14 and *Bratton* provide that this is circumstantial proof that Rogan, EPC, and PGR knew of the funds' illicit source. Thus, Dexia must be allowed to discover defendants' assets and financial records to permit Dexia to show that defendants possessed the fraud proceeds. Given the significance of the issue of possession of the funds, Dexia is entitled to proof of any form of possession, *i.e.*, asset, tracing, and control records not only of Rogan but also of Rogan-controlled entities and the defendants Rogan owns or controls.

**D.    The Discovery Dexia Seeks Is Directly Relevant to Dexia's Allegation that Defendants and Others Were Rogan's Alter Egos.**

The discovery Dexia seeks also is directly relevant to Dexia's core allegation that defendants and others were Rogan's alter egos. Where, as here, a complaint "contains allegations suggestive of an alter ego argument," the plaintiff "must be allowed to take discovery

regarding the relationships among the various defendants." *Ross v. UKI Ltd.*, 2004 WL 67221, at *7 (S.D.N.Y. 2004). An established method for ascertaining the relationships among the various defendants here is through financial records and tracing of funds.

In *Pielet Bros. Scrap Iron & Metal Ltd. P'ship v. Reynolds Metal Co.*, 1994 WL 649105, at *1 (N.D. Ill. 1994), plaintiff, who had leased property from defendant Reynold Metals Company, brought suit against Reynolds seeking specific performance of the lease. Reynolds counterclaimed against various corporate defendants, their limited partners, and shareholders, seeking damages stemming from environmental contamination to the property. *Id.* Reynolds alleged that the three individual defendants, *i.e.*, the limited partners and shareholders of the corporate defendants, owned and controlled the corporate defendants such that the corporate defendants were alter egos or "shell entities" of the individual defendants and each other. *Id.* at *4. Reynolds initiated discovery aimed at uncovering evidence which it could use to support its alter ego allegations: financial records, including general ledgers and documents pertaining to bank accounts, banking institutions, and authorized signatories, as well as "documentation relation to agreements, financial transactions, transfers of assets, or other transactions." *Id.* at *3.

The counter-defendants refused to produce this discovery, so Reynolds moved to compel. The court granted the plaintiff's motion because the documents were "directly relevant" to proving plaintiff's alter ego theory inasmuch as they could show "whether funds have been commingled or whether an entity has been treating the assets of another as its own." *Id.*. *See also Chicago Dist. Council of Carpenters Pen. Fund v. D.P. Builders, Inc.*, 1997 WL 685021, at *3 (N.D. Ill. 1997) (discovery of cash receipt journals to allow tracing of transfers held relevant *inter alia* to alter-ego claim); *Abu-Nassar v. Elders Futures Inc.*, 1991 WL 45062, at *16 (S.D.N.Y. 1991) (discovery as to changes in corporate form, asset transfers, and related entities held "relevant to [plaintiff's] claims of alter ego liability"); *Electromatic (PTY) Ltd. v. Rad-O-Lite, Inc.*, 90 F.R.D. 182, 183-84 (E.D. Pa. 1981) (discovery of "information regarding financial transactions among the various defendants" held relevant to plaintiffs' claim that "the various entities are merely the alter egos of the individual defendants").[4]

---

[4] Other cases on this point include: *McLeod, Alexander, Powel & Apffel*, 894 F.2d 1482, 1485-86 (5th Cir. 1990) (tax returns and cancelled checks relevant to show how much defendant and corporation "paid on each other's bills and how closely their financial affairs were intertwined"); *United States v. Seaga Corp. of Ill.*, 2002 WL 31045388, at *2 (N.D. Ill. 2002) (tax returns relevant to alter ego claim).

10

Like the plaintiffs in the foregoing cases, Dexia makes numerous allegations establishing that defendants were Rogan's alter egos. As Judge Aspen recognized in denying EPC and PGR's motion to dismiss, "the crux of Dexia's complaint is that all of the entities involved in this case are owned and controlled by one defendant, Rogan, and that they are in essence all one entity under his complete dominance." *Dexia Credit Local v. Rogan*, 2003 WL 22349111, at \*10 (N.D. Ill. 2003). Dexia alleges that Rogan directly and indirectly entered into myriad lucrative management contracts with EMC and other related entities to exert control over the hospital's operations and to siphon large sums of money from EMC. (Cplt. ¶¶ 26, 56, 57). The complaint further alleges that Rogan achieved these ends by using a wide array of different forms and organizations to attempt to insulate himself from personal responsibility for the misconduct he perpetrated and caused to be perpetrated at and through EMC. (*Id.* ¶ 26). Furthermore, Dexia alleges that, at all times relevant to this case, Rogan controlled defendants Braddock, Bainbridge, Access, and Vital. (*Id.* ¶¶ 54, 97, 155). The complaint further alleges that the reason Access and Vital failed to take any legal action against Braddock and Bainbridge for the millions of dollars of damage done to EMC in the form of bogus loans and forgiven debts is that Rogan entirely controlled Access and Vital, as well as Braddock and Bainbridge, and therefore any legal action taken against Braddock and Bainbridge on behalf of EMC would have benefited only EMC and its creditors, including Dexia, and not Rogan. (*Id.* at ¶ 162)

Dexia's discovery requests for the financial records of the various defendants are directly relevant to the foregoing portions of its complaint. This discovery could reveal if Rogan and the other defendants have "commingled" funds or have been "treating the assets of another as [their] own." *Pielet Bros.*, 1994 WL 649105, at \*3. This discovery also could establish whether Rogan used the other defendants to: (a) siphon money from EMC, as Dexia alleges; and (b) route it to himself, other defendants, or persons or entities he controlled.

**D.　The Discovery Dexia Seeks Is Directly Relevant To The Board Independence Issue EPC And PGR Raise In Their Summary Judgment Motion.**

The foregoing authorities establish that Dexia is entitled to this discovery it seeks based upon the complaint's factual allegations and remedies sought. A wholly separate basis for the propriety of the discovery Dexia seeks lies in the issue of board independence upon which EPC and PGR base their recently-filed summary judgment motion. Dexia's complaint alleges that Rogan controlled the EMC, Vital, and Access boards (Cplt. ¶¶ 26, 129-36, 141-62) because

11

their members "consisted primarily of Rogan's personal friends, long-time business associates and others under Rogan's control." (*Id.* ¶ 26) After refusing Dexia discovery on this issue, EPC and PGR now file for summary judgment, arguing EPC and PGR's conduct could not have been improper because a "an independent Board – a Board of which Peter Rogan was not a member and whose members he did not control or appoint" (S.J. Mem. at 24) and "with no ties to Peter Rogan or his property companies"[5] (*id.* at 7) – approved EMC's transactions with Rogan's property companies: (a) EMC's initial decision to lease the EPC properties, rather than to purchase them; (b) the alleged oral contract between EMC and PGR to pay PGR's property taxes; (c) EMC's substantial improvements to the EPC and PGR properties; and (d) the decision to forego an option to purchase the EPC properties.

To assess the board's independence from Rogan, Dexia must be able to determine the existence, nature, and extent of any direct or indirect financial interconnections between Rogan and board members.[6] First, Dexia must be permitted to obtain records of all financial transactions between and among Rogan, Rogan entities, and Rogan's relatives, on the one hand, and the board members, their businesses, and their family members, on the other. This will establish whether Rogan directly or indirectly made payments to or for the direct or indirect benefit of board members. Second, Dexia requires discovery to determine whether Rogan and any given director have shared business interests, *i.e.*, discovery of the assets and holdings of: (a) Rogan, Rogan entities, Rogan's relatives; and (b) board members (including director-related entities and family members). This discovery would reveal if board members acted to further the business interests they shared with Rogan, instead of the interests of EMC. It also would reveal if these shared business interests were structured in a manner that made the board members beholden to Rogan, *e.g.*, Rogan was the majority owner and largest investor of the business, so the success of the business was directly tied to Rogan's substantial involvement in it.

---

[5] In their May 12, 2004 response to Dexia's statement of the discovery Dexia needs to respond to their summary judgment motion, EPC and PGR suddenly appear to back off their claim that Rogan lacked ties to the EMC directors, and now suggest that Rogan "had a personal acquaintance or friendship with one or more of the board members." (Opp. at 5-6)

[6] Additional detail supporting this rationale can be found in Dexia's recently-filed Statement Of Discovery Necessary To Respond To The Summary Judgment Motion Of Defendants Edgewater Property Company And PGR Properties, Inc.

**II.    DEFENDANTS' OBJECTIONS TO DEXIA'S ASSET, TRACING, AND CONTROL DISCOVERY REQUESTS ARE GROUNDLESS AND SHOULD BE OVERRULED.**

Defendants have raised only two objections to Dexia's discovery requests.  First, defendants contend that the asset, tracing, and control discovery Dexia seeks is irrelevant to the "allegations contained in Dexia's First Amended Complaint."  (*See, e.g.*, Rogan Response to Dexia Interrog. 2 (Ex. G))  The preceding section of this brief explains why this discovery is directly relevant and reasonably calculated to lead to the discovery of evidence relevant to the allegations in Dexia's complaint, the punitive damages remedy Dexia's seeks, and to the independent board defense EPC and PGR raise in their summary judgment motion. Accordingly, defendants' relevance objection should be overruled.

Second, defendants argue that the discovery Dexia seeks is not proper until Dexia has established liability, and therefore the requested discovery of their "financial assets and liabilities . . . where those assets and liabilities are held [and] whether [they] hold[] options to purchase property cannot lead to any relevant or discoverable evidence" at this time.  (*See, e.g.*, Rogan Response to Dexia Interrog. 2 (Ex. G))  In all of the cases Dexia cites in Section I of this brief, however, the courts compelled discovery before trial, and thus before any finding of liability.  None of these cases held – or even suggested – that a liability finding was a condition precedent to the production of the defendants' financial records.  *See, e.g., Shapo, supra; Van Kampen, supra; Senise, supra; Pielet Bros., supra.*

Indeed, courts specifically have held that the type of discovery Dexia seeks is discoverable before trial, *e.g.*, as to punitive damages.  In *Salstone v. Gen'l Felt Indust.*, defendants agreed that evidence regarding their net worth was admissible at trial for the purpose of assessing punitive damages, but argued that the plaintiff needed to make a prima facie case (*i.e.*, after a ruling on summary judgment) for punitive damages before they needed to produce this discovery.  1986 WL 13738, at *1 (N.D. Ill. 1986).  Judge Williams rejected this argument and granted the motion to compel because Fed. R. Civ. P. 26(b)(1) entitles parties to obtain pretrial discovery regarding any non-privileged matter which is relevant to the action.  *Id.* at *2.

In *Aspen*, defendants sought a protective order staying discovery of their financial and net worth status until after the trial of liability and compensatory damages.  2001 WL 1403001, at *1.  The Northern District of Illinois court hearing the case rejected the

13

argument the Rogan defendants propound here, holding the information relevant to plaintiff's claim for punitive damages and thus discoverable before trial under Fed. R. Civ. P. 26(b)(1). *Id.* at *4. *Aspen* also stated two additional reasons for requiring production of the net worth information pretrial: (a) efficiency -- disputes about the adequacy of defendants production could be resolved well before trial, without requiring the parties and the court to devote time at the eve of trial to discovery motions and last-minute depositions; (b) settlement -- "if the net worth is sufficiently low, it may persuade a plaintiff that it has no real deep pocket for actual or punitive damages, and that its settlement position should be adjusted accordingly." *Id.*[7]

Thus, the law unequivocally demonstrates that Dexia need not wait to obtain this discovery until after a liability finding against defendants. Because the discovery rules and other considerations mandate pretrial discovery on all issues that are relevant to the subject matter of a case, defendants' objection to the pretrial production of discovery relevant to Dexia's asset, tracing, and control requests should be overruled.

## III.   DEXIA'S DEFINITION OF "CONTROL" IS CLEAR AND DESIGNED TO OBTAIN RELEVANT INFORMATION.

In its discovery requests, Dexia defines "control" as "the possession, whether direct or indirect or through or in concert with one or more other persons, of the power to direct or cause the direction of the management or policies of a person[8] through, inter alia, membership, board representation, or an ownership interest (by vote or value) equal to or greater than 50 percent." (Dexia Interrog. & Doc. Req., Definition 4 (Ex. G))  Rogan has objected to this definition of "control" as being "vague," without offering any suggestion as to how or why this definition is vague. (Rogan Resp. to Dexia's Interrog. & Doc. Req., Gen. Obj. 7 (Ex. G))

Rogan's conclusory assertion that this definition is "vague" and/or his own belief that he would define "control" differently simply is not a valid basis for to object to Dexia's

---

[7] Other cases holding that a party seeking punitive damages is entitled to discovery as to financial condition before trial include:  *United States v. Matsue Rental Co., 204* F.R.D. 396, 399 (S.D. Ohio 2001); *EEOC v. Klockner H & K Machines, Inc.,* 168 F.R.D. 233, 236 (E.D. Wis. 1996); *Krenning v. Hunter Health Clinic, Inc.,* 166 F.R.D. 33, 34 (D. Kan. 1996); *CEH, Inc. v. FV "Seafarer,"* 153 F.R.D. 491, 499 (D.R.I. 1994) ("To require a *prima facie* showing of entitlement of punitive damages before the completion of discovery would be to ignore one purpose of discovery -- to locate evidence to support a claim before trial . . . . [T]o deny discovery of net worth until plaintiffs can make a showing of a *prima facie* case at trial would only lead to delay and confusion while plaintiffs digest the information.").

[8] Dexia's definition of "person" encompasses both individuals and entities. (Dexia Interrog. & Doc. Req., Definition 10 (Ex. A))

discovery requests. *See Meyer v. S. Pacific Lines,* 199 F.R.D. 610, 611 (N.D. Ill. 2001) ("The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules"). Dexia's "control" definition is clear and reasonably calculated to obtain information about entities which Rogan and the other defendants control controlled either on their own, or through concerted action with friends and associates – *i.e.,* precisely the type of control which was part and parcel of the Rogan-orchestrated conspiracy and essential to its success.

Information regarding defendants' control over other entities is relevant for the reasons stated previously in this brief and also to evaluate Rogan's (and other defendants') liability under agency law. "Principals are strictly liable for their agents' acts – even if the agents are not employees – if the principals authorize or ratify the acts or even just create an appearance that the acts are authorized." *Rosenthal & Co. v. CFTC,* 802 F.2d 963, 966 (7th Cir. 1986); *Hartmann v. Prudential Ins. Co. of Am.,* 9 F.3d 1207, 1210 (7th Cir. 1993) ("[W]hen an agent acts on behalf of his principal, he binds the principal even if he exceeds his instructions"); *U.S. v. Rogan,* 2002 WL 31433390, at *4 (N.D. Ill. 2002) ("[A] principal is liable for fraud upon a third person committed by an agent acting with apparent authority"). Dexia's complaint is replete with allegations that Rogan, directly and indirectly, controlled defendants, and that, on information and belief, Rogan also controlled additional entities that Rogan and other defendants used to transfer and conceal funds fraudulently obtained from EMC. (Cplt. ¶¶ 17-19, 22-23, 54, 132-33, 135 & 161-62) If Rogan controlled defendants and others, as their principal, he would be liable for their frauds and misconduct in addition to his own.[9] Thus, this Court should overrule Rogan's objection to Dexia's definition of "control."

## CONCLUSION

For the reasons stated, Dexia respectfully requests that this Court grant its motion to compel and order:

(a)     Rogan to fully and completely respond to Interrogatories Nos. 1-3, 7, 8 and 9 and Document Requests Nos. 3-5, 7, 8, 10-13, 17, 18 and 31 and Request No. 2 (Second Set of Document Requests);

---

[9] Presumably, for this reason, Rogan specifically denied Dexia's allegation that he controlled defendants Braddock and Bainbridge – the entities which have admitted to have committed healthcare fraud at EMC.

(b)    Braddock, Bainbridge, and Bainbridge, Inc. to fully and completely respond to Interrogatories Nos. 2 and 3 and Document Requests Nos. 4, 5, 6 (a)-(c), (e)-(m). (p), (aa), and (ff), 11, 15-20, 21-23, 25, 27 and 28; and

(c)    EPC and PGR to fully and completely respond to Interrogatories Nos. 1 and 2 and Document Requests Nos. 3 (a)-(i), (k)-(m) & (o), 5-9, 11, 12, 18, 19, 24, 26, 27, and 29.

Dated: May 18, 2004                            Respectfully submitted,

                                               _____
                                               One of the Attorneys for Plaintiff
                                               Dexia Credit Local

                                               Scott T. Mendeloff
                                               Gabriel Aizenberg
                                               Eric S. Pruitt
                                               Tara M. Charnes
                                               SIDLEY AUSTIN BROWN & WOOD LLP
                                               10 South Dearborn Street
                                               Chicago, Illinois 60603
                                               (312) 853-7000

16

# EXHIBIT Q

# O'ROURKE KATTEN & MOODY

## FACSIMILE TRANSMISSION

ATTORNEYS AT LAW
161 NORTH CLARK STREET
SUITE 2230
CHICAGO, ILLINOIS 60601

(312) 849-2020
(312) 849-2021 Fax

| TO: Eric Pruitt | FROM: Limo T. Cherian |
|---|---|
| COMPANY: Sidley, Austin Brown & Wood | DATE: November 18, 2004 |
| FAX NUMBER: 312-853-7036 | TOTAL NO. OF PAGES INCLUDING COVER: 4 |
| PHONE NUMBER: | SENDER'S REFERENCE NUMBER: |
| RE: Déxia Credit Local vs. Peter Rogan | YOUR REFERENCE NUMBER: |

☐ URGENT                ☐ FOR REVIEW                ☐ PLEASE REPLY

NOTES/COMMENTS:

**IMPORTANT:** THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND PROHIBITED FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE. THANK YOU.

# O'ROURKE KATTEN & MOODY

161 North Clark Street, Suite 2230
Chicago, Illinois 60601

(312) 849-2020   (312) 849-2021 Fax

November 18, 2004

Via Facsimile Transmission to 312-853-7036

Eric Pruitt
Sidley Austin Brown & Wood, LLP
10 S. Dearborn St
Chicago, IL 60603

Re:    Déxia Credit Local v. Peter Rogan, et al.
       02 C 8288 (N.D. Ill)
       Subpoenas to Brian Rogan, Judith Rogan and JKR Business

Dear Eric:

Per our conversation on Monday, I wanted to respond to your letter of October 28, 2004 regarding the subpoenas served on Brian Rogan, Judith Rogan and JKR Business.

Brian Rogan

You have requested three categories of information regarding Brian Rogan: 1) records relating to Brian Rogan's foreign and domestic trusts; 2) Records reflecting or evidencing transfers of $10,000 or more from certain individuals and entities to Brian Rogan; and 3) Records reflecting financial information provided by Brian Rogan to tax preparers, attorneys and financial advisors (which you have defined to include Peter Rogan). With respect to all of these categories of documents, the requests are overly broad, unduly burdensome, seek personal confidential financial information of a third party, seek information which is not relevant to claims or defenses in this matter, and seek information outside of Brian's possession, custody or control.

The discovery appears to be asset tracing discovery directed at assets of a person who is not a party to this litigation and as such, are not related to the claims or defenses in this matter as required by Federal Rule of Civil Procedure 26(b)(1). Brian is not a defendant in the action and is not alleged to have been in any way involved in the subject matter of the complaint. To the extent that you are seeking the location of assets to satisfy a judgment against a defendant in this matter, discovery, to the extent allowed against third parties, is obtainable under Rule 69 of the Federal Rules of Civil Procedure. In reviewing the cases you have cited in your motion to compel regarding Fred Cuppy and the reply in support of the same, none are similar to the instant case and none require the production by Brian of the discovery sought herein.

E. Pruitt
November 18, 2004
Page 2

Furthermore, even if there is a determination that some sort of financial discovery is appropriate regarding Brian, your requests, even as narrowed are still too broad. They encompass the time period from January 1994 to the present. Further they request production of documents which are not in Brian's possession custody or control. As we have discussed, Brian is not in personal possession of any documents related to either any domestic or foreign trusts. There is no indication that Brian has, or has the legal right to, any documents regarding these trusts other than the documents which have already been provided to you through other sources. [1] If the court makes a determination that Brian's personal financial information is discoverable at this stage of litigation, Brian will of course seek responsive and relevant information from any agents of which he is aware including the ones you indicated in your letter, Fred Cuppy, John Foley, John Tattooles and Troy Meyers.

Finally, it is my understanding that you are seeking some of the information you seek from Brian Rogan through Motions to Compel against other individuals, including Fred Cuppy. Please let me know if you are amenable to waiting for a ruling from the Court on these Motions before pursuing the discovery from Brian.

Judith Rogan

As set forth above regarding Brian Rogan, Judy Rogan is not a defendant in the action and is not alleged to have been in any way involved in the subject matter of the complaint. As with the request to Brian, your request is beyond the scope of Rule 26(b)(1) for party initiated discovery as it is not relevant to the claims or defenses in this matter. To the extent that you are seeking the location of assets to satisfy a judgment against a defendant in this matter, discovery, to the limited extent allowed against third parties, is obtainable under Rule 69 of the Federal Rules of Civil Procedure. In reviewing the cases you have cited in your motion to compel regarding Fred Cuppy and the reply in that matter, none are similar to the instant case and none require the production by Judy of the discovery sought herein.

Furthermore, even if there is a determination that some sort of financial discovery is appropriate regarding Judy, your requests are too broad. They encompass virtually every conceivable piece of financial information about Judy from January 1994 to the present. Further they request production of documents which are not in Judy's possession custody or control.

JKR Business

I have reviewed your letter regarding the alleged involvement of JKR business and records it may have. It is our understanding that JKR business was not a formal corporate or

---

1    As you indicated, you have already received substantial information regarding Brian's domestic trust in the possession of Fred Cuppy. To the extent it is deemed relevant, discoverable, we will request the additional information set forth in your chart to which Brian has a legal right from Mr. Cuppy as you have requested.

Case 1:08-cv-03057    Document 47-16    Filed 12/21/2007    Page 5 of 22

E. Pruitt
November 18, 2004
Page 3

partnership entity but rather a business idea for a sole proprietorship for Judy Rogan to run a floral business. However, we understand that JKR never actually had any operations and never engaged in any business. Consequently it is my understanding that there are no records pertaining to JKR business.

I understand that JKR was listed at some point as the lessee of the premises at 240 East 90th Drive and that consequently many documents were addressed to various entities "c/o JKR business." However, this appears to have been merely a manner of addressing mail rather than any indication that JKR Business actually performed any activity. We are unaware of any documents regarding any corporate or partnership records, bank accounts, employees, payroll, transfers to and from JKR. However, as your letter makes reference to alleged transactions involving JKR Business, is it possible to forward the documents that you referenced in your letter so that we can follow up on this matter?

Very truly yours,

Limo T. Cherian

**From:** Pruitt, Eric
**Sent:** Thursday, December 09, 2004 03:03 PM
**To:** Limo Cherian (E-mail)
**Cc:** Aizenberg, Gabriel
**Subject:** Dexia v. Rogan et al (02 C 8288)

Limo,

   Attached are examples of the documents we discussed today.  These are representative samples only, and I can provide you with more examples of such documents should you need them.  Per our conversation, let's touch base on Tuesday and try to have a more detailed discussion about how we will proceed with the subpoenas to Brian Rogan, JKR Business and Judith Rogan in light of Judge Schenkier's December 8th ruling.

*Eric S. Pruitt*
**Sidley Austin Brown & Wood LLP**
10 South Dearborn Street
Chicago, Illinois 60603
p. (312) 853-1093
f.  (312) 853-7036
www.sidley.com

1/24/97 at 16:59:41.12

**JKR Business**
## Cash Receipts Journal
### For the Period From Jan 1, 1996 to Dec 31, 1996
Filter Criteria includes: Report order is by Check Date. Report is printed in Detail Format.

| Date | Account ID | Transaction Ref | Line Description | Debit Amnt | Credit Amnt |
|------|-----------|-----------------|------------------|-----------:|------------:|
| 2/22/96 | 31401 | CR02-01 | Business Services Jan & Feb | | 10,000.00 |
| | 11101 | | Braddock Management, LP | 10,000.00 | |
| 3/20/96 | 31401 | CR03-01 | Business Services March | | 10,000.00 |
| | 11101 | | Braddock Management, LP | 10,000.00 | |
| 3/28/96 | 31401 | CR03-02 | Business Services April | | 10,000.00 |
| | 11101 | | Braddock Management, LP | 10,000.00 | |
| 5/29/96 | 31401 | CR05-01 | Business Services May | | 10,000.00 |
| | 11101 | | Braddock Management, LP | 10,000.00 | |
| 6/26/96 | 31401 | CR 06-01 | Business Services Fees 1/96 - 6/96 | | 25,000.00 |
| | 11101 | | Edgewater Property Company | 25,000.00 | |
| 9/27/96 | 31401 | CR09-01 | Business Services Fees | | 35,000.00 |
| | 11101 | | Edgewater Property Company | 35,000.00 | |
| 12/4/96 | 31401 | CR12-01 | Business Services Fees | | 25,000.00 |
| | 11101 | | Braddock Management, LP | 25,000.00 | |
| | | | | **125,000.00** | **125,000.00** |

PRIV LOG TF 00493

Page: 1

**JKR Business**
## Cash Receipts Journal
For the Period From Jan 1, 1998 to Dec 31, 1998
Filter Criteria includes: Report order is by Check Date. Report is printed in Detail Format.

| Date | Account ID | Transaction Ref | Line Description | Debit Amnt | Credit Amnt |
|---|---|---|---|---|---|
| 1/8/98 | 61402 | CR01-01 | Reimburse Vehicle XP | | 200.79 |
| | 11101 | | Braddock Management | 200.79 | |
| 1/9/98 | 61402 | CR01-02 | Reimburse Vehicle XP | | 331.10 |
| | 61801 | | Reimburse Supplies XP | | 62.77 |
| | 11101 | | Peter G. Rogan | 393.87 | |
| 1/31/98 | 61402 | CR01-03 | Reimburse Vehicle XP | | 237.32 |
| | 11101 | | Braddock Management | 237.32 | |
| 1/31/98 | 61402 | CR01-04 | Reimburse Vehicle XP | | 284.99 |
| | 11101 | | Peter G. Rogan | 284.99 | |
| 2/1/98 | 31401 | CR02-01 | Professional Fees 1/98 & 2/98 | | 15,000.00 |
| | 11101 | | BRaddock Management | 15,000.00 | |
| 3/20/98 | 31401 | CR03-01 | Professional Fees 1/98 - 3/98 | | 25,000.00 |
| | 11101 | | Edgewater Property Company | 25,000.00 | |
| 3/31/98 | 61402 | CR03-02 | Reimburse Auto XP | | 103.31 |
| | 11101 | | Peter G. Rogan | 103.31 | |
| 5/20/98 | 61402 | CR05-01 | Reimburse Auto XP | | 15.29 |
| | 11101 | | Peter G. Rogan | 15.29 | |
| 5/21/98 | 61402 | CR05-02 | Reimburse Auto XP | | 78.14 |
| | 11101 | | Braddock Management | 78.14 | |
| 5/29/98 | 61402 | CR05-03 | Reimburse Auto XP | | 530.37 |
| | 11101 | | Interhealth Associates | 530.37 | |
| 5/30/98 | 61402 | CR05-04 | Reimburse Auto XP | | 191.76 |
| | 11101 | | Braddock Management | 191.76 | |
| 5/31/98 | 61801 | CR05-05 | Reimburse Supplies XP | | 322.34 |
| | 11101 | | Peter G. Rogan | 322.34 | |
| 6/12/98 | 31401 | CR06-01 | Professional Fees 4/98 - 6/98 | | 30,000.00 |
| | 11101 | | Edgewater Property Company | 30,000.00 | |
| 6/13/98 | 31401 | CR06-02 | Professional Fees - 3/98 - 5/98 | | 25,000.00 |
| | 11101 | | Braddock Management | 25,000.00 | |
| 7/23/98 | 61402 | CR07-01 | Reimburse Auto XP | | 53.05 |
| | 11101 | | Braddock Management | 53.05 | |
| 7/23/98 | 61801 | CR07-02 | Reimburse Supplies Purchased | | 99.92 |
| | 11101 | | Peter G. Rogan | 99.92 | |
| 8/18/98 | 61402 | CR08-01 | Reimburse Auto XP | | 663.52 |
| | 11101 | | Braddock Mangement, LP | 663.52 | |
| 8/18/98 | 61402 | CR08-02 | Reimburse Auto XP | | 27.25 |
| | 11101 | | Interhealth Associates | 27.25 | |
| 8/18/98 | 61801 | CR08-03 | Reimburse Supplies XP | | 750.43 |
| | 11101 | | Peter G. Rogan | 750.43 | |
| 8/27/98 | 31401 | CR08-04 | Business Services 7/98 & 8/98 | | 20,000.00 |
| | 11101 | | Edgewater Property Company | 20,000.00 | |
| 8/27/98 | 31401 | CR08-05 | Business Services 6/98 - 8/98 | | 30,000.00 |
| | 11101 | | Braddock Mangement, LP | 30,000.00 | |
| 9/14/98 | 61402 | CR09-01 | Reimburse Auto XP | | 112.50 |
| | 11101 | | Interhealth Assoc | 112.50 | |
| 9/14/98 | 61402 | CR09-02 | Reimburse Auto XP | | 1,838.21 |
| | 61801 | | Reimburse Supplies XP | | 2,041.82 |
| | 11101 | | Peter G. Rogan | 3,880.03 | |
| 9/14/98 | 61402 | CR09-03 | Reimburse Auto XP | | 149.48 |
| | 11101 | | Braddock Management | 149.48 | |
| 10/2/98 | 61402 | CR10-01 | Reimburse Auto XP | | 100.46 |
| | 11101 | | Braddock Management, LP | 100.46 | |
| 10/12/98 | 61402 | CR10-02 | Reimburse Personal Vehicle XP | | 205.65 |

EPC 000902

**JKR Business**

Page: 2

## Cash Receipts Journal

For the Period From Jan 1, 1998 to Dec 31, 1998

Filter Criteria includes: Report order is by Check Date. Report is printed in Detail Format.

| Date | Account ID | Transaction Ref | Line Description | Debit Amnt | Credit Amnt |
|------|-----------|-----------------|------------------|-----------|-------------|
| | 11101 | | Braddock Management, LP | 205.65 | |
| 10/12/98 | 61402 | CR10-03 | CAR EXPENSES | | 51.79 |
| | 11101 | | INTERHEALTH ASSOCIATES INC | 51.79 | |
| 10/12/98 | 61402 | CR10-04 | | | 1,285.32 |
| | 11101 | | PETER G ROGAN | 1,285.32 | |
| 10/23/98 | 61402 | CR10-05 | | | 22.95 |
| | 11101 | | Braddock Management, LP | 22.95 | |
| 10/23/98 | 61402 | CR10-06 | | | 58.15 |
| | 11101 | | PETER G ROGAN | 58.15 | |
| 11/4/98 | 61402 | CR11-01 | | | 299.98 |
| | 11101 | | Braddock Management, LP | 299.98 | |
| 11/4/98 | 61402 | CR11-02 | | | 42.46 |
| | 11101 | | INTERHEALTH ASSOCIATES INC | 42.46 | |
| 11/4/98 | 61402 | CR11-03 | | | 945.29 |
| | 11101 | | PETER G ROGAN | 945.29 | |
| 11/23/98 | 61402 | CR11-04 | Reimburse Petty Cash XP | | 32.85 |
| | 11101 | | Braddock Management, LP | 32.85 | |
| 11/30/98 | 31401 | CR11-05 | Business Service Fees 9/98 - 11/98 | | 20,000.00 |
| | 11101 | | Braddock Management, LP | 20,000.00 | |
| 11/30/98 | 31401 | CR11-06 | Business Service Fees 9/98 - 11/98 | | 20,000.00 |
| | 11101 | | Edgewater Property Company | 20,000.00 | |
| 12/7/98 | 61402 | CR12-01 | Reimburse Auto Expense | | 205.46 |
| | 11101 | | Braddock Management, LP | 205.46 | |
| 12/7/98 | 61402 | CR12-02 | Reimburse Auto Expense | | 50.86 |
| | 61801 | | Reimburse Supplies Expense | | 220.30 |
| | 11101 | | PETER G ROGAN | 271.16 | |
| | | | | 196,615.88 | 196,615.88 |

EPC 000903

**JKR Business**
## Cash Receipts Journal
For the Period From Jan 1, 1999 to Dec 31, 1999
Filter Criteria includes: Report order is by Check Date. Report is printed in Detail Format.

| Date | Account ID | Transaction Ref | Line Description | Debit Amnt | Credit Amnt |
|------|-----------|-----------------|------------------|-----------:|------------:|
| 1/5/99 | 61402 | CR01-01 | Reimburse Auto XP | | 869.31 |
| | 11101 | | PETER G ROGAN | 869.31 | |
| 1/5/99 | 61402 | CR01-02 | Reimburse Auto XP | | 373.27 |
| | 11101 | | Edgewater Property Company | 373.27 | |
| 1/5/99 | 61402 | CR01-03 | Reimburse Auto XP | | 108.66 |
| | 11101 | | Braddock Management, LP | 108.66 | |
| 1/5/99 | 61402 | CR01-04 | Reimburse Auto XP | | 38.34 |
| | 11101 | | INTERHEALTH ASSOCIATES INC | 38.34 | |
| 1/19/99 | 17302 | CR01-05 | Proceeds from Sale of Rogan Children UTMA Clipper Shares | | 118,118.18 |
| | 11101 | | Clipper Funds | 118,118.18 | |
| 2/12/99 | 61402 | CR02-01 | | | 72.68 |
| | 11101 | | PETER G ROGAN | 72.68 | |
| 2/12/99 | 61402 | CR02-02 | | | 48.90 |
| | 11101 | | Braddock Management, LP | 48.90 | |
| 3/9/99 | 61402 | CR03-01 | Reimburse Auto XP | | 751.54 |
| | 11101 | | PETER G ROGAN | 751.54 | |
| 3/9/99 | 31401 | CR03-02 | Services 1st Qtr 1999 | | 20,000.00 |
| | 61402 | | Reimburse Auto XP | | 20.53 |
| | 11101 | | Edgewater Property Company | 20,020.53 | |
| 3/9/99 | 61402 | CR03-03 | Reimburse Auto XP | | 1,049.67 |
| | 31401 | | Services 1st Qtr 1999 | | 20,000.00 |
| | 11101 | | Braddock Management, LP | 21,049.67 | |
| 3/22/99 | 17302 | CR03-04 | Refund of Deposit | | 250.00 |
| | 31501 | | Interest Earned on Deposit | | 54.73 |
| | 61613 | | Gas Bill Thru 2/24/99 | 81.33 | |
| | 61612 | | Electric Bill Thru 2/24/99 | 185.58 | |
| | 11101 | | NIPSCO | 37.82 | |
| 4/8/99 | 61402 | CR04-01 | | | 838.89 |
| | 11101 | | Braddock Management, LP | 838.89 | |
| 4/8/99 | 61402 | CR04-02 | | | 396.06 |
| | 11101 | | PETER G ROGAN | 396.06 | |
| 5/7/99 | 61402 | CR05-01 | | | 519.11 |
| | 11101 | | Braddock Management, LP | 519.11 | |
| 5/7/99 | 61402 | CR05-02 | | | 98.65 |
| | 11101 | | Edgewater Property Company | 98.65 | |
| 5/7/99 | 61402 | CR05-03 | | | 1,392.82 |
| | 11101 | | PETER G ROGAN | 1,392.82 | |
| 6/4/99 | 31401 | CR06-01 | 2nd Qtr 1999 Business Services Fees | | 20,000.00 |
| | 61601 | | Reimburse Office Rental | | 6,244.42 |
| | 61611 | | Reimburse Telephone XP | | 2,500.89 |
| | 61612 | | Reimburse Electricity | | 540.96 |
| | 61613 | | Reimburse Natural gas | | 196.01 |
| | 61621 | | Reimburse R & M | | 1,020.00 |
| | 61801 | | Reimburse Office Supplies | | 978.20 |
| | 11101 | | Braddock Management, LP | 31,480.48 | |
| 7/7/99 | 61402 | CR07-01 | | | 605.38 |
| | 11101 | | Braddock Management, LP | 605.38 | |
| 7/7/99 | 61402 | CRO7-02 | | | 142.77 |
| | 11101 | | Edgewater Property Company | 142.77 | |
| 7/7/99 | 61402 | CR07-03 | | | 635.58 |
| | 11101 | | PETER G ROGAN | 635.58 | |
| 8/31/99 | 61811 | CRO8-01 | | | 500.00 |
| | 11101 | | BFB | 500.00 | |
| 10/31/99 | 31401 | CR10-01 | Invoice: 1099-01 | | 40,000.00 |
| | 11101 | | Braddock Management, LP | 40,000.00 | |

EPC 000861

**JKR
BUSINESS**

PO Box 10489
240 EAST 90TH DRIVE
MERRILLVILLE, IN 46411-0489
(219) 793-9500
FAX (219) 793-9570

November 12, 1996

Fred M. Cuppy
Burke, Murphy, Costanza & Cuppy
Suite 600
8585 Broadway
Merrillville, IN  46410-7092

Dear Mr. Cuppy:

David Miller has approved the following invoices for payment
from the respective child's Trust Account:

| Invoice #049122 | $1,128.00 | BPR |
| Invoice #049121 | $ 983.00 | RCR |
| Invoice #049120 | $ 965.00 | SCR *11-15-96* |

Thank you.

Sincerely,

Ann Naulty
Executive Assistant

Enc. 3

CRT 011484

**From:** Limo T. Cherian [mailto:lcherian@ommlaw.com]
**Sent:** Wednesday, January 12, 2005 10:22 AM
**To:** 'Aizenberg, Gabriel'; 'Pruitt, Eric'
**Subject:** Dexia / Edgewater

Eric and Gabriel,

We are still in the process of trying to get responsive documents from the various attorneys and accountants.  I haven't heard back from any of them other than Fred Cuppy, presumably because of the holidays.  I will follow up on each of those.  Mr. Cuppy informed me that he will require a check from Plaintiff for $500 to review and collect documents.  Please let me know if this is amenable to you.  I am also trying to see if our clients have responsive documents in their personal possession.  Can I get back to you at end of next week?

As for the Miller subpoena, Mike and I agree to assist in contacting David Miller's family to see how they want to handle your request for documents.  I think we discussed that the scope of any request to the Miller family would be narrowed significantly and it would be helpful for me to be able to explain what you will be requesting when I call.  Is it possible for you to send me a draft subpoena or something which will allow me to explain what records you will be seeking?

We had discussed whether you would be willing to do a $10,000 threshold for Judy Rogan.  Gabriel, you said you would make sure that was acceptable.  Can you let me know whether you can agree to that.  Without some threshold, it would be impossible to respond, especially as to any transactions between family members.

Limo

Limo T. Cherian
O'Rourke Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, IL  60601
Tel: 312-849-2020
Fax: 312-849-2021

The information contained in this transmission is attorney privileged and/or confidential information intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

-----Original Message-----
**From:** Aizenberg, Gabriel [mailto:gaizenberg@sidley.com]
**Sent:** Tuesday, January 11, 2005 2:49 PM
**To:** 'Limo Cherian (E-mail)'
**Cc:** Pruitt, Eric
**Subject:** RE: Dexia / Edgewater

12/19/2007

Also, Limo, have you been able to determine what role you/your firm could play in facilitating getting the financial info re: Miller from Miller's family?

Gabriel Aizenberg
Sidley Austin Brown & Wood LLP
Bank One Plaza
10 South Dearborn Street
Chicago, IL 60603
w. 312-853-7092
f. 312-853-7036

-----Original Message-----
**From:** Pruitt, Eric
**Sent:** Tuesday, January 11, 2005 2:23 PM
**To:** Limo Cherian (E-mail)
**Cc:** Aizenberg, Gabriel
**Subject:** Dexia / Edgewater

Limo,

   Hope things are going well for you.  Just following up on our conversation of December 16, 2004 regarding the subpoenas to Brian Rogan, Judy Rogan and JKR Business.  During our conversation, you agreed to produce several categories of documents and/or investigate whether responsive documents could be located.  Could you give us a status update, including when we can expect to receive any responsive documents you have been able to locate.  Thanks.

*Eric S. Pruitt*
**Sidley Austin Brown & Wood LLP**
10 South Dearborn Street
Chicago, Illinois 60603
p. (312) 853-1093
f. (312) 853-7036
www.sidley.com


Sidley Austin Brown & Wood LLP mail server made the following annotations on 01/11/2005, 02:52:09 PM
-------------------------------------------------------------------

This e-mail is sent by a law firm and may contain information that is privileged or confidential. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately.

12/19/2007

**From:** Pruitt, Eric
**Sent:** Thursday, January 13, 2005 03:44 PM
**To:** Limo Cherian (E-mail)
**Cc:** Aizenberg, Gabriel
**Subject:** Dexia / Edgewater

Limo,

  See the attached letter responding to your e-mail of January 12.   Please call me or Gabriel with any questions or concerns once you have read the letter.

*Eric S. Pruitt*
**Sidley Austin Brown & Wood LLP**
10 South Dearborn Street
Chicago, Illinois 60603
p. (312) 853-1093
f.  (312) 853-7036
www.sidley.com

# SIDLEY AUSTIN BROWN & WOOD LLP

<table>
<tr><td>

BEIJING

BRUSSELS

CHICAGO

DALLAS

GENEVA

HONG KONG

LONDON
</td><td>

BANK ONE PLAZA
10 S. DEARBORN STREET
CHICAGO, ILLINOIS 60603
TELEPHONE 312 853 7000
FACSIMILE 312 853 7036
www.sidley.com

FOUNDED 1866
</td><td>

LOS ANGELES

NEW YORK

SAN FRANCISCO

SHANGHAI

SINGAPORE

TOKYO

WASHINGTON, D.C.
</td></tr>
</table>

WRITER'S DIRECT NUMBER
(312) 853-1093

WRITER'S E-MAIL ADDRESS
epruitt@sidley.com

January 13, 2005

**By E-Mail**

Limo Cherian
O'Rourke McCloskey & Moody
161 North Clark Street, Suite 2230
Chicago, Illinois 60601

Re:    *Dexia Crédit Local v. Peter G. Rogan et al.*  (02 C 8288) (N.D. Ill.)
         *Edgewater Medical Center v. Peter Rogan et al.*  (04 A 2327) (N.D. Ill.)

         Subpoenas to David Miller, Brian Rogan, Judith Rogan and JKR Business

Dear Limo:

This letter responds to your e-mail of January 12th regarding Dexia's subpoenas to David Miller, Brian Rogan, Judith Rogan and JKR Business in the above-referenced case.

## DOCUMENTS REQUESTED FROM FRED CUPPY

To the extent that the $500 requested by Mr. Cuppy includes legal fees, we will not agree to pay them. As you may recall, Judge Schenkier explicitly rejected this concept when he denied Mr. Hirshman's request that Dexia pay anything other than reasonable copying costs associated with the production of documents by third parties. To the extent that these expenses are for copying costs, it has never been the practice in the Dexia or Edgewater matters to require a requesting party to advance copying costs associated with the copying of documents produced by a party. Consistent with the parties' practice in the Dexia/Edgewater cases, we will accept and pay an invoice for reasonable copying costs provided to us by whatever outside copy service Mr. Cuppy chooses to copy the requested documents. We will not advance any money to Mr. Cuppy for "expenses" or legal fees associated with copying the requested documents.

## SUBPOENA TO DAVID MILLER

We greatly appreciate your assistance with the sensitive issue of speaking to Mr. Miller's family regarding the records we seek. We have attached a subpoena directed to

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

**SIDLEY AUSTIN BROWN & WOOD** LLP                    **CHICAGO**

Limo Cherian
January 13, 2005
Page 2

Deborah Miller listing the limited categories of records that we are requesting. As we previously
discussed, we have limited our requests to records relating to Mr. Miller's employment and the
compensation Mr. Miller received from Mr. Rogan, Mr. Cuppy, or entities owned, controlled or
managed by Mr. Rogan or Mr. Cuppy. The subpoena should be self-explanatory, but please let
us know if you need any clarification or explanation of the types of documents we seek.

### THRESHOLD FOR TRANSFER REQUESTS TO JUDY ROGAN

As noted in your e-mail, we previously discussed a possible threshold for requests
relating to transfers made or received by Judy Rogan. Consistent with Judge Schenkier's
December 8th ruling on identical requests to Mr. Cuppy and the Boulevard Entities, we would
like records sufficient to identify transfers of $5,000 or more.

\*            \*            \*

As always, please do not hesitate to call me with any questions or concerns.

Sincerely,

Eric S. Pruitt

cc:    Gabriel Aizenberg

encls.

CHI 3139550v1

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | BANK ONE PLAZA | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(312) 853-1093

WRITER'S E-MAIL ADDRESS
epruitt@sidley.com

April 7, 2005

**By E-Mail**

Limo Cherian
O'Rourke McCloskey & Moody
161 North Clark Street, Suite 2230
Chicago, Illinois 60601

Re:  *Dexia Crédit Local v. Peter G. Rogan et al.*  (02 C 8288) (N.D. Ill.)
*Edgewater Medical Center v. Peter Rogan et al.*  (04 A 2327) (N.D. Ill.)

Subpoenas to JKR Business

Dear Limo:

This letter relates to the subpoenas of Dexia Crédit Local and Edgewater Medical Center to JKR Business in the above-referenced cases. As you may recall, among the items requested in our subpoena to JKR Business were bank account records. You previously informed us that, to the best of your knowledge: (i) JKR Business did not appear to have had any corporate existence and (ii) there were no bank account records for JKR Business. We recently discovered the attached check from Braddock Management LP to JKR Business. Please note that the reverse side of the check shows that it was deposited into JKR Business account #109252. The number "071006486" on the back of the check is an ABA routing number identifying the financial institution to which the check was deposited. As evidenced by the attached internet search result, "071006486" is the routing number for The Private Bank and Trust Company of Chicago. Consistent with JKR Business' obligation to produce any documents in its possession, custody, or control, we request that you obtain and produce any and all records (including wire records, cancelled checks, signature cards, accounting opening and closing records) relating to the JKR Business account at The Private Bank and Trust Company, and records for any other JKR Business account that has not previously been disclosed.

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Limo Cherian
April 7, 2005
Page 2


As always, please do not hesitate to call me with any questions or concerns.



Sincerely,

Eric S. Pruitt


cc:    Gabriel Aizenberg



BOA 002670

**BRADDOCK MANAGEMENT, L.P.**
MIDWEST REGION OFFICE
P.O. BOX 10489
MERRILLVILLE, IN 46411-0489

Memo:

One Hundred Eight and 66/100 Dollars

PAY
TO THE
ORDER
OF

JKR Business
240 E. 90th Drive
P.O. Box 10489
Merrillville, IN 46411-0489

BANK OF AMERICA
CHICAGO, IL
2-3/710

CHECK NO. 4172

Dec 31, 1998    *******$108.66
DATE              AMOUNT

AUTHORIZED SIGNATURE

4172



For Deposit Only
# 71006486

COMPANY
CHICAGO ILLINOIS 60602
71006486
FOR DEPOSIT ONLY
JKA BUSINESS
106252

BOA 002671

# SIDLEY AUSTIN BROWN & WOOD LLP

| | | |
|---|---|---|
| BEIJING | BANK ONE PLAZA | LOS ANGELES |
| BRUSSELS | 10 S. DEARBORN STREET | NEW YORK |
| CHICAGO | CHICAGO, ILLINOIS 60603 | SAN FRANCISCO |
| DALLAS | TELEPHONE 312 853 7000 | SHANGHAI |
| GENEVA | FACSIMILE 312 853 7036 | SINGAPORE |
| HONG KONG | www.sidley.com | TOKYO |
| LONDON | FOUNDED 1866 | WASHINGTON, D.C. |

WRITER'S DIRECT NUMBER
(312) 853-1093

WRITER'S E-MAIL ADDRESS
epruitt@sidley.com

May 20, 2004

**By Email**

Sean P. Dailey
Mayer Brown Rowe & Maw LLP
190 South LaSalle Street
Chicago, Illinois 60603

Re:    *Dexia Credit Local v. Peter G. Rogan et al.  -  Case No. 02 C 8288*

Dear Sean:

I am writing to address several outstanding discovery issues in the above-referenced matter.

**BFB, Ltd.**

We never received any response to a district court subpoena Dexia served on July 11, 2003 on BFB, Ltd. ("BFB") through its registered agent, John Foley. You have represented BFB in relation to the Rule 2004 subpoena Edgewater served on it in the bankruptcy proceeding. Please tell us whether you will: (i) respond on behalf of BFB to the subpoena Dexia served on July 11, 2003; and (ii) accept service of a new district court subpoena on behalf of BFB.

**Piper Rudnick**

Both Piper Rudnick and you have informed us that Mayer Brown is reviewing and handling the production of documents Dexia subpoenaed from Piper Rudnick on March 30, 2004. Please let us know when we can expect production.

**Waiver of Tracing, Assets and Control Objections**

In EPC and PGR's Opposition to Plaintiff Dexia's Statement of Need for Discovery ("Opposition"), EPC and PGR state that they produced to Edgewater's custodian, Eugene Crane, many documents responsive to Dexia's document requests. (Opposition at 14, n.4) EPC and PGR also state that, although defendants initially sought an agreement preventing

SIDLEY AUSTIN BROWN & WOOD LLP IS AN ILLINOIS LIMITED LIABILITY PARTNERSHIP PRACTICING IN AFFILIATION WITH OTHER SIDLEY AUSTIN BROWN & WOOD PARTNERSHIPS

SIDLEY AUSTIN BROWN & WOOD LLP                    CHICAGO

Sean P. Dailey
May 20, 2004
Page 7

those documents were produced to Gene Crane, please confirm that you waive or retract any objection to Dexia viewing and using any such documents produced to Gene Crane.

Request No. 25 – You stated during our meet and confer call that neither EPC nor PGR has any documents related to Cain Brothers. We brought your attention to the existence of an $85,000 payment by EPC to Cain Brothers in 1994 and asked that you check again with your client in relation to this request. Please confirm whether there are any documents relating to Cain Brothers in the possession, custody or control of EPC and PGR.

Request No. 27 – You agreed to produce all documents relating to JKR Business relevant to this litigation. Dexia has received one document relating to JKR Business. Please confirm whether EPC and PGR are producing any additional documents responsive to this request. We also ask that you keep in mind that relevance is defined broadly in the context of discovery, so the fact that JKR Business is listed as the contract manager for the EPC-EMC lease should entitle Dexia to obtain (at minimum) documents sufficient to identify JKR's employees, principals, partners, shareholders, etc., to ascertain the areas of business in which JKR operates and JKR's connection to EPC (and the other defendants), and to understand why JKR was listed as contract manager.

Request No. 28 - This request seeks all documents related to the Option. To date, EPC only has produced the Option agreement itself. Please confirm that, aside from the agreement, EPC possesses no other documents relating to the Option.

Request No. 36 – This request seeks all documents related to any document retention policy of EPC and PGR. You agreed to produce any responsive documents, but none have been produced to Dexia. Please confirm whether you are producing documents responsive to this request.

Interrogatory No. 2 - This interrogatory asks EPC and PGR to identify their assets and liabilities. In the Opposition filed with Judge Filip, you state that "EPC and PGR already responded to this interrogatory in full." This is not correct. First, the response to this interrogatory does not purport to list all of EPC and PGR's assets and liabilities, but merely states that their assets and liabilities "include" those listed in the response. Moreover, Dexia is aware of significant liabilities of EPC and PGR that were not identified in response to this interrogatory, including:

- A note payable from PGR Properties, Inc. to Braddock Management LP recorded as an asset of Braddock on its 1999 tax return; and

- A $4,000,000 note payable from EPC to Peter G. Rogan, as trustee of the Rogan Revocable Trust, secured by a mortgage interest in the EPC properties.