**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| JUDITH K. ROGAN | ) | |
| | ) | |
| Plaintiff | ) | Civil Number: 2:07 CV 403PS |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | Judge Joseph Van Bokkelen |
| AND DEXIA CRÉDIT LOCAL, f/k/a | ) | |
| DEXIA PUBLIC FINANCE and CREDIT | ) | |
| BANK and CREDIT LOCAL DE FRANCE | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**DEXIA CRÉDIT LOCAL'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO**
**MAGISTRATE JUDGE CHERRY'S ORDER OF JANUARY 31, 2008**
**GRANTING MOTION TO TRANSFER**

Scott Mendeloff
Gabriel Aizenberg
Eric S. Pruitt
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Defendant Dexia Crédit Local*

Defendant Dexia Crédit Local ("Dexia") hereby responds to Plaintiff's Objections to Magistrate Judge Cherry's order transferring this case to the Northern District of Illinois.

## I.    INTRODUCTION

Before the Magistrate, Mrs. Rogan gave short shrift to Dexia's contention that 28 U.S.C. § 1404(a) justifies a transfer here, devoting just one paragraph that substantively addressed whether § 1404(a) justifies transferring this action to the Northern District of Illinois ("NDIL").  By her own admission, Mrs. Rogan also did not raise any objection to the proof Dexia submitted in support of its transfer motion.  Now, for the first time on appeal, Mrs. Rogan devotes significant attention to her position that Magistrate Judge Cherry erred in transferring under § 1404(a).  In addition, she now contends Magistrate Judge Cherry erred by failing *sua sponte* to strike *every* exhibit Dexia filed with its opening brief.[1]  For the reasons explained below, she is wrong, and Magistrate Judge Cherry's Order should be upheld.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A), a district court judge may refer nondispositive pretrial matters to a magistrate judge.  District court judges "may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."  *Id.*; *see also* Fed. R. Civ. P. 72(a).  A motion to transfer venue under § 1404(a) is a nondispositive pretrial matter, and thus Magistrate Judge Cherry's transfer order should upheld unless it was clearly erroneous or contrary to law.  *See Thomas v. Exxon Mobil Oil Corp.*, 2007 WL 1035159, at *1-2 (N.D. Ind. 2007) (affirming Magistrate Judge Cherry's *sua sponte* grant of transfer under 28 U.S.C. § 1406, noting that analysis § 1406 is similar to § 1404, and stating that "the Court will set aside Magistrate Judge Cherry's order

---

[1] Although Mrs. Rogan now objects to every exhibit filed with Dexia's Motion to Transfer, she does not object to *any* exhibit Dexia submitted with its reply in support of its motion.

transferring this case only to the extent that it 'is clearly erroneous or contrary to law.'"). "The

clear error standard means that the district court can overturn the magistrate judge's ruling only

if the district court is left with the definite and firm conviction that a mistake has been made."

*Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

## III.    THE MAGISTRATE'S TRANSFER ORDER SHOULD BE AFFIRMED.

### A.    Mrs. Rogan Waived Any Arguments Regarding the Propriety of Transfer Under § 1404(a).

In its motion to transfer, Dexia contended that transfer to NDIL is proper under:

(1) the first-to-file rule; and (2) § 1404(a).  Mrs. Rogan could have, as Dexia did, addressed *both*

the first-to-file rule and § 1404(a) in her opposition to Dexia's motion.  She did not do so.

Rather, she chose to focus her efforts before Magistrate Judge Cherry upon the first-to-file rule.

In her 26-page response, Mrs. Rogan devoted approximately 22 pages to issues relevant only to

Dexia's "first-to-file" rule argument, including the issue of whether NDIL has personal

jurisdiction over her in Dexia's NDIL citation action.  (JKR Br. at 1-22, Dkt. 38)[2]

Mrs. Rogan then dedicated another 2.5 pages:  (a) to laying out the general test

applied under § 1404(a), but failing to discuss the public/private factors courts consider as part of

a transfer analysis; and (b) to arguing an issue that she does not appeal (and which Dexia thus

does not address) – that venue is proper here, but not in NDIL.[3]  (*Id*. at 23-25)  Finally, Mrs.

Rogan allocated just *one* paragraph to the § 1404(a) elements that she now does appeal – *i.e.*,

convenience of the parties/witnesses and interests of justice.  (*Id*. at 25-26)  That she gave short

---

[2] Mrs. Rogan's brief below is referred to here as "JKR Br."; her appeal brief is referred to as "Obj."

[3] By failing to appeal the venue ruling, Mrs. Rogan has waived any objection she has to Magistrate Judge Cherry's holding that venue is proper in NDIL.  *See Egert v. Connecticut Gen. Life Ins. Co.*, 900 F.2d 1032, 1039 (7th Cir. 1990) (party waived argument by failing to file written objection to magistrate's conclusion, and noting that "the failure to file timely, written objections ordinarily waives either party's right of appellate review of these issues.")

shrift to these elements was readily apparent to the Magistrate, who noted:

> the only arguments Judith Rogan offers in support of her position that the convenience of the parties and interests of justice do not support transferring this matter to Illinois are, *without further analysis*, that 'the Wexford Property is located in Indiana and all conduct relevant to plaintiff's claims occurred in Indiana' and that '[t]he issues germane to the immediate matter are wholly unrelated to the pending Illinois citation proceedings and the relevant records, including the title company files and witnesses, are subject to the compulsory process in Indiana.'  Pl. Br. at pp. 25-26.

(Order at 17) (emphasis added; alteration in original).

Even if Mrs. Rogan's perfunctory § 1404(a) arguments below were sufficient to preserve her objections in this appeal, her appeal should be limited to the same arguments she made to the Magistrate.  *See Gulo v. Apfel*, 175 F.3d 1020, 1999 WL 133084, *5 (7th Cir. 1999) (appellant waived argument by failing to raise it before a magistrate); *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) (district court properly refused to consider arguments not raised to magistrate judge)*; Tenen v. Winter*, 15 F. Supp. 2d 270, 272 (W.D.N.Y. 1998) (district court "normally will not consider arguments, case law, or evidentiary material which could have been, but was not, presented to the magistrate judge.").  In her objections, Mrs. Rogan raises new arguments that she failed to make before the Magistrate – that:  (1) it is more convenient for the parties to litigate in Indiana because Mrs. Rogan "avers in a sworn affidavit that she will experience more expense in litigation costs" by litigating in NDIL, whereas defendants will have little if any difficulty litigating in the Northern District of Indiana ("NDIN"); (2) the interests of justice "favors neither side" because both Illinois and Indiana law will apply to this action, both districts have an interest in the disposition of the real property at issue, and the two districts have comparable statistics in speed of disposition;  and (3) because real property in Indiana and in Illinois is at issue, it is likely that the potential witnesses to prove ownership of either parcel of land will be inconvenienced by

disposition of this action in another state.  (Obj. at 13-14)  Because Mrs. Rogan could have made

these arguments to the Magistrate but did not do so, this Court should not consider them now.

*See Paterson-Leitch*, 840 F.2d at 991 ("[I]t would be fundamentally unfair to permit a litigant to

set its case in motion before the magistrate, wait to see which way the wind was blowing, and-

having received an unfavorable recommendation-shift gears before the district judge.").

### B.    Magistrate Judge Cherry Did Not Err In Transferring This Action.

If this Court nonetheless decides to consider the § 1404(a) arguments that Mrs.

Rogan failed to raise below, those arguments should be rejected because she does not establish

that the Magistrate's decision was clearly erroneous or contrary to law.

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in

the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."  28 U.S.C. § 1404(a).  Judges have a wide degree of latitude

in deciding whether to transfer an action.  *See Thomas*, 2007 WL 1035159, at *2.  A careful

reading of Magistrate Judge Cherry's decision shows that his decision to transfer this action was

based upon a handful of key undisputed facts or public court filings.  It was *not* based upon

consideration of the evidence Mrs. Rogan now, for the first time, contends was inadmissible.

### 1.    Private Interests.

"The factors to be considered when determining the private interests of the parties

include:  (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the

convenience of the parties; and (4) the convenience of the witnesses."  (Order at 17)

Plaintiff's choice of forum.  The Magistrate gave less weight to Mrs. Rogan's

choice of forum "because the majority of the operative facts are connected to Illinois," as

evidenced, *inter alia*, by the fact that:  (a) some of the disputed property is in Illinois; and (b) the

fraud her husband committed occurred in Illinois.[4]  (Order at 18-20)  In so holding, the

Magistrate noted that Mrs. Rogan's complaint seeks an adjudication of *all* her property, and that

her complaint alleges that this lawsuit stems from enforcement proceedings against her husband

in NDIL.  (*Id*. at 18-19)  The Magistrate's decision to give Mrs. Rogan's choice of forum less

weight in these circumstances was proper.  *See Montgomery v. STG Int'l, Inc.*, 2008 WL 250012,

*3 (D.D.C. 2008) ("the plaintiffs' choice of forum is entitled to less deference" where "the facts

demonstrate that Virginia has more meaningful ties to the litigation than does the District of

Columbia," where the plaintiffs filed the lawsuit).  Because Mrs. Rogan's appeal fails even to

address this aspect of the Magistrate's decision, she fails to establish it was clearly erroneous.

<u>Situs of material events</u>.  In explaining why the private interests justify transfer,

the Magistrate found that

> Perhaps most importantly, a determination of whether Judith Rogan's personal
> and real property is subject to the judgment creditors of Peter Rogan and whether
> [Dexia and the United States] have a valid interest in the Wexford Property will
> turn on the events and transactions underlying the fraud actions against Peter
> Rogan and whether he transferred funds gained from his fraudulent action to his
> wife, Judith Rogan.  The events underlying the fraud in those cases took place in
> Illinois and Peter Rogan's companies involved in the fraud were in Illinois."

(Order at 19)  As noted herein, Mrs. Rogan's complaint itself alleges that this action arises out of

the judgments entered against Mr. Rogan in NDIL,[5] and thus the Magistrate did not need to rely

upon any of the now-objected-to evidence to determine that the "situs of material events" factor

---

[4] The Magistrate also noted that "[i]f Judith Rogan indeed lives outside of Indiana, then her choice of
forum is also given less consideration as well." (Order at 21)  This is also a proper consideration. *See*,
*Kelly Buick of Atlanta, Inc. v. TIG Ins. Co.*, 2005 WL 3238325, *2 (N.D. Ind. 2005).  The overwhelming
evidence shows that Mrs. Rogan lives in Canada rather than Indiana.  (Mot. to Transfer Venue at 14-15,
23-24, discussing Canada lease, Dkt. 24; Dexia Reply at 6, Dkt. 46)  This evidence includes a letter Mrs.
Rogan wrote in October 2006 discussing her plans to move to Canada, which Mrs. Rogan produced to
Dexia in response to Dexia's citation to discover assets and which Dexia submitted as Ex. D to its reply in
support of its transfer motion.  (Dexia Reply at 6, Dkt. 46)  Mrs. Rogan has not objected to this exhibit.

[5] The Seventh Circuit affirmed the judgment against Mr. Rogan.  *See U.S. v. Rogan*, 2008 WL 442413
(7th Cir. Feb. 20, 2008).

favored transfer.  In addition, just like with the Magistrate's analysis of the weight given to her choice of forum, Mrs. Rogan here fails even to mention – much less raise any objection to – this part of Magistrate Judge Cherry's decision.  (Obj. at 12-14)  Thus, she fails to show clear error in the Magistrate's finding that NDIL is the situs of the material events underlying this case.

<u>Convenience of the parties</u>.  After noting that the Wexford Property has been sold and that Mrs. Rogan failed to provide a current address in Indiana, Magistrate Judge Cherry held that because NDIN and NDIL are located within about 25 miles of each other, "regardless of where Judith Rogan is living, any inconvenience in the farther district is minimal."  (Order at 20-21)  In response, Mrs. Rogan now states that she averred "in a sworn affidavit that she will experience more expense in litigation costs."  (Obj. at 13)  No so.  Although Mrs. Rogan submitted a short affidavit as Ex. C to her response to Dexia's motion, that affidavit does not even mention the potential cost of litigation, let alone swear "that she will experience more expense in litigation costs" in Illinois.  Even if Mrs. Rogan had submitted a sworn statement regarding potential litigation costs, however, Magistrate Judge Cherry would have been well within the scope of his authority to ignore it.  *Koken v. Auburn Mfg., Inc.*, 341 F. Supp. 2d 20, 27 (D. ME. 2004) (stating that magistrate judge's decision to discount affidavit she did not find persuasive was "clearly appropriate" in her role as the factfinder deciding a summary judgment motion).

For the first time on appeal, Mrs. Rogan relies upon *Chamberlain* for the proposition that an individual plaintiff automatically will be confronted with considerable expense in litigating in a transferee district.  (Obj. at 13)  *Chamberlain* involved a plaintiff "of limited means," and a possible transfer from the Southern District of Illinois to Minnesota.  2005 U.S. Dist. LEXIS 25571, at *10.  Unlike the *Chamberlain* plaintiff, however, Mrs. Rogan has not

even suggested that her means are limited.  Nor could she, given the evidence regarding her

substantial finances, including the fact that she held title to the Wexford property, which based

upon the sales contract she provided to this Court, was worth $1.6 million (Ex. 1 to Dkt. 4).[6]

Moreover, the short distance between NDIL and NDIN is not comparable to the long distance

between Southern Illinois and Minnesota contemplated in *Chamberlain*.  Even if one disregards

all the evidence Dexia submitted that shows Mrs. Rogan has substantial means and thus would

not be adversely affected by transfer, Mrs. Rogan still fails to show how it would cost her more

to litigate just 25 miles from NDIN.  In short, Mrs. Rogan does not establish that the Magistrate

clearly erred in holding that the convenience of the parties supports a transfer.

   <u>Convenience of witnesses</u>.  The Magistrate ruled that "because the majority of the

evidence and witnesses related to the underlying fraud, which will ultimately determine the

interest Defendants have in any of Judith Rogan's property, are in Illinois or outside of [Indiana][7]

(for example, Peter Rogan, who appears to have left the United States), more of the witnesses

related to the most substantial issues in the case are located in Illinois."  (Order at 21)  Mrs.

Rogan now contends that some witnesses will "likely" be inconvenienced regardless of whether

the action is transferred because disputed property is in Indiana and in Illinois.  (Obj. at 14)  She

fails, however, to explain why this is so.  She neither identifies any such witnesses nor states

where such witnesses live. (*Id*. at 13-14)  Mrs. Rogan thus has not shown that the Magistrate

clearly erred in holding that more witnesses regarding key issues in this action are in Illinois.

---

[6] As Dexia explains *infra*, the evidence Dexia submitted with its motion regarding Mrs. Rogan's finances
was admissible.  Further establishing Mrs. Rogan's considerable means is Ex. D to Dexia's reply in
support of its motion, to which Mrs. Rogan does not object, which is a letter Mrs. Rogan wrote to Oceanic
bank in October 2006, requesting a $1,500,000 wire transfer to her bank account in Canada.

[7] The Magistrate's order states that the majority of witnesses are located "in Illinois or *outside Illinois*."
(Order at 21) (emphasis added).  Magistrate Judge Cherry was explaining why the convenience of the
witnesses favors Illinois, and he previously explained that the underlying fraud occurred in Illinois.  Read
in that context, it appears the second reference to Illinois was supposed to say "outside Indiana."

In sum, essentially none of the Magistrate's analysis was based upon the now-disputed evidence. Rather, it was based upon the related litigation in NDIL, as evidenced by judicial decisions from that district, as well as by basic facts such as the short distance between NDIN and NDIL. The Magistrate correctly recognized that the outcome of Mrs. Rogan's lawsuit "will turn on the events and transactions underlying the fraud actions against Peter Rogan and whether he transferred funds gained from his fraudulent action to his wife." (Order at 19) Thus, contrary to Mrs. Rogan's contention, transferring this case will not "merely shift convenience from one party to another." (Obj. at 14). Rather, because the majority of the relevant events occurred in Illinois, a transfer to NDIL, on balance, will be more convenient for the parties.

## 2.    **Interests of Justice**.

"The 'interest of justice' analysis focuses on the efficient administration of the judicial system, rather than on the private considerations of the litigants. Considerations taken into account include 'ensuring speedy trials, *trying related litigation together*, and having a judge who is familiar with the applicable law try the case.'" (Order at 21-22, internal citations omitted) (emphasis added). The interests-of-justice factor "may be determinative … even if the convenience of the parties and witnesses might call for a different result." *Coffee v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986). Mrs. Rogan now contends "the interest of justice favors neither side." (Obj. at 13). She is wrong.

The Magistrate held that the interests of justice would be furthered by transfer to NDIL. First, he stated that although both Indiana and Illinois had an interest in the disposition of the real property at issue, "Illinois has more of an interest" in enforcing the judgments against Peter Rogan, regardless of whether the property at issue is located in Illinois or Indiana. (Order at 22). Second, and:

Most importantly, the Northern District of Illinois, Eastern Division, is already intimately familiar with the complex underlying litigation against Peter Rogan, specifically the nature of the fraud and or his transfer of funds to his family members.  The instant action is closely related to that underlying litigation as Judith Rogan is seeking to adjudicate the effect of the judgments entered in those cases on her personal and real property; she seeks a determination of whether Dexia and the United States can execute upon assets in her name to satisfy those judgments.

(Order at 22.)  Because, as Magistrate Judge Cherry noted, NDIL already has "supervised

extensive discovery regarding Peter Rogan's assets and finances, presided over hearings related

to Peter Rogan's transfers of assets to family members, and ruled on motions to compel and

motions for sanctions related to the discovery of Peter Rogan family assets," it "is uniquely

positioned to assess the issue of whether Peter Rogan has used his family members, specifically

his wife Judith Rogan, to hold and maintain his assets."  (Order at 23.)  It is readily apparent that

Magistrate Judge Cherry's holding was based largely, and properly, upon the fact that transfer

would permit related litigation to be tried together, an important consideration in the § 1404(a)

analysis.  *See Van Dorn*, 796 F.2d at 222 (stating that "related litigation *should* be transferred to

a forum where consolidation is feasible") (emphasis added).

In her appeal, Mrs. Rogan ignores the portion of the Magistrate's Order

regarding NDIL's familiarity with the underlying litigation, and the resulting judicial economy

arising from that familiarity.  She also ignores that her lawsuit stems from, and is intimately

related to, enforcement efforts relating to judgments entered against Peter Rogan in NDIL.  In

fact, the section of her brief addressing the interests-of-justice factor does not even mention the

related litigation, much less explain why the Magistrate clearly erred in considering it.  (Obj. at

13-14).  As the Magistrate recognized, the relationship between this lawsuit and the NDIL

actions is obvious on the face of Mrs. Rogan's complaint – without the need to rely upon the

now-disputed evidence.  (Order at 22-23, noting that Mrs. Rogan "is seeking to adjudicate the

effect of the judgments entered in [the NDIL] cases on her personal and real property.")  Thus, the Magistrate did not clearly err in holding that it is proper to transfer this action to a nearby district where:  (a) related litigation is pending; and (b) several judges already are intimately familiar with the complex issues that will be relevant to resolving this dispute.

### C.    Magistrate Judge Cherry Did Not Plainly Err By Failing to *Sua Sponte* Strike Dexia's Exhibits From The Record.

As explained above, the Magistrate did not explicitly rely upon the evidence to which Mrs. Rogan now objects in applying the § 1404(a) factors.  Thus, this Court need not even consider her objections to that evidence in deciding this appeal.  *See Sutiono v. Attorney General of U.S.*, 217 F. App'x. 184, 187 (3rd Cir. 2007) (appellate court need not consider argument that judge improperly relied upon certain evidence when other evidence supported her decision).[8] Even if one were to assess her evidentiary objections, however, they should be overruled.

To start, Mrs. Rogan concedes that she failed to object to even a single exhibit in Dexia's opening brief before the Magistrate.  (Obj. at 6, stating that "the Magistrate's strict adherence to fundamental evidentiary principles in a motion proceeding should be assumed as a given, not posed as a matter for reminder to the court")  This alone precludes her from raising her objections on appeal because, like with all arguments, parties waive evidentiary objections by failing to raise them in a timely manner.  *See* Fed. R. Evid. 103(a) (decisions to admit evidence may not be found erroneous "unless a substantial right of the party is affected, ***and*** "there was a "timely objection or motion to strike") (emphasis added); *Estate of Moreland v. Dieter*, 395 F.3d 747, 756 (7th Cir. 2005) (failure to object to admission of expert testimony at

---

[8] Even under the "abuse of discretion" standard of review, which, as explained hereafter, is not applicable here, evidentiary rulings will not be reversed unless they were "both erroneous *and* affected the outcome of the case." *Harper v. Alpert*, 400 F.3d 1052, 1069 (7th Cir. 2005).  Thus, if the evidence at issue did not affect the outcome of the case, the reviewing court does not need to determine whether the challenged ruling(s) were erroneous.

trial forfeited the issue on appeal). This basic principle applies to all levels of judicial proceedings, and Mrs. Rogan is therefore incorrect when she contends that parties need not object to evidence they deem inadmissible in a "motion proceeding." *See Zayre Corp. v. S.M.&R . Co.*, 882 F.2d 1145, 1150 (7th Cir. 1989) (refusing to consider appellant's arguments regarding evidence district court considered in granting summary judgment, and noting that pursuant to Fed. R. Evid. 103(a)(1), "[a]n evidentiary objection not raised in the district court is waived on appeal … and this rule holds as true for a summary judgment proceeding as it does for a trial."); *Johnson v. U.S. Postal Serv*., 64 F.3d 233, 237 (6th Cir. 1995) (affirming summary judgment and stating that "failure to object to evidentiary material submitted in support of a summary judgment motion constitute waiver of those objections."); *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1041 (6th Cir. 1991) (affirming dismissal of a complaint and holding that party waived evidentiary objection when she did not object "in the district court to the consideration of that evidence in the motion to dismiss."); *Aronoff v. DiBruno*, 2005 WL 1940007, *3 (S.D. Ind. 2005) (stating "that material offered into evidence without objection thereby becomes admitted, subject only to review for plain error," where defendant failed to object to introduction of evidence at preliminary-injunction hearing and then contended "that the primary evidence offered by [plaintiff] in support of his summary judgment motion must be excluded on the grounds of hearsay, authenticity, and foundation.").

Apparently recognizing that her failure to object below is fatal to her ability to now raise her evidentiary objections before this Court, Mrs. Rogan advances a novel tactic. She does not ask this Court to overlook her own failure to object below by arguing that a plain error review[9] of the admissibility of Dexia's exhibits is warranted here.[10] Nor should this Court *sua*

---

[9] "The plain error doctrine may be available to review evidentiary rulings to which no objection was at trial if a moving party can demonstrate: (1) exceptional circumstances exist; (2) substantial rights are

*sponte* undertake a plain error review when she does not request it.[11]  *See Karazanos v. Madison Two Assocs.*, 147 F.3d 624 (7th Cir. 1998) (refusing to "definitively" resolve whether trial court committed plain error by considering affidavits attached to summary judgment motion where party failed to object below and failed to properly ask for plain-error review before the Seventh Circuit by failing to cite Fed. R. Evid. 103(d)).  Instead of asking for a plain-error review, Mrs. Rogan attempts to shift the blame for her failure to object to the Magistrate by arguing that it "is a major disappointment" that the Magistrate did not *sua sponte* strike or ignore the exhibits that Mrs. Rogan now claims are objectionable.  (Obj. at 6)  Notwithstanding her "major disappointment," she errs.

Mrs. Rogan neither cites any case law nor even suggests that courts are <u>required</u> to *sua sponte* strike "inappropriate clutter."  Mrs. Rogan's reliance on *Allis-Chambers* for the proposition that a court should act as gatekeeper to exclude evidence is misplaced.  (Obj. at 6-7)  In that case, the court granted a motion to exclude unreliable expert testimony.  *Allis-Chalmers*, 141 F. Supp. 2d at 961.  Courts certainly do serve as gatekeepers to exclude unreliable expert

---

affected; and (3) a miscarriage of justice will occur if plain error review is not applied." *Estate of Moreland*, 395 F.3d at 756.  *See also Backwater, Inc. v. Penn-American Ins. Co.*, 448 F.3d 962, 964 (7th Cir. 2006) (plain error is "an error so obvious, crucial, and egregious that we may and should correct it even though no objection was made below.").  If all those factors are satisfied, the court has discretion to correct the errors.  *See* Fed. R. Evid. 103(d) (Rule 103(d) does not preclude plain error review where no objection was raised); *see also Stringel*, 89 F.3 at 421 (plain error review *may* be available if moving party satisfies three-part test).

[10] Citing *Hedman*, Mrs. Rogan appears to contend that an abuse-of-discretion standard of review should apply even though she failed to object to the exhibits below.  (Obj. at 11).  Mrs. Rogan does not even attempt to explain why *Hedman* is relevant or how it supports her proposition. The only issue in *Hedman* that is even moderately similar to the issues at hand was the court's refusal to reconsider its previous decision, during trial, to exclude evidence.  *Hedman*, 111 F.Supp.2d at 1026.  The *Hedman* court was not reviewing for abuse of discretion, but rather under the more deferential standard governing a motion for a new trial, which is "an extraordinary remedy that is to be granted only in exceptional circumstances."  *Id.* at 1027.  In fact, *Hedman* supports Dexia's position, showing that evidentiary rulings will rarely be overturned under deferential standards of review.

[11] Mrs. Rogan may attempt to assert the plain-error standard in her reply brief, but, of course, "[a]rguments raised for the first time in a reply brief are waived."  *Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007).

testimony <u>when parties object to such testimony</u>.[12] But to suggest that *Allis-Chalmers* somehow stands for the proposition that a courts <u>must</u> exclude *all* types of evidence, *regardless of whether a party objects*, is a gross mischaracterization of the case and of the law generally.

Mrs. Rogan also cites a trio of cases for the proposition that courts "themselves possess the power to" unilaterally strike or prevent the filing of exhibits to transfer motions. (Obj. at 6)  At best, the first two cases, *Ward* and *Barnes*, support a proposition that courts *may* limit the attachments to and allegations in *complaints* – they say nothing about transfer motions or other categories of motions.  The rationale of the courts in *Ward* and *Barnes* is limited to the context of a complaint, as both decisions emphasize that excessive allegations in, and attachments to, complaints would be contrary to the basic pleading requirement of a short and plain statement.  The third case, *Koken*, merely denied a motion to supplement the record made after a Magistrate already had issued a decision on dispositive motions.  It shows only that a court may deny a motion to admit additional evidence after the court has ruled on dispositive motions – it provides no support the proposition that courts <u>must</u> *sua sponte* strike exhibits to transfer motions.

Although Mrs. Rogan's citation to *Koken* is misplaced, that case does offer some guidance helpful to the disposition of her objections.  In addressing counsel's argument that the court erred by failing to explain the need to provide expert testimony, *Koken* explains that "counsel cannot expect to be led by the hand, rose-garden-like, by opposing counsel or the decision-maker through the record, and be given a seminar on what their professional duties require of them in pursuing their case."  341 F. Supp. 2d at 27.  Similarly, here, counsel for Mrs.

---

[12] Even in the context of expert testimony, where a district court has an obligation to ensure that any such testimony is relevant and reliable, the Seventh Circuit has held that a party forfeits any objection to the admission of expert testimony by failing to object to the trial court.  *Estate of Moreland*, 395 F.3d at 756.

Rogan could not expect that: (1) the Magistrate would alert them of their basic responsibility to object to evidence they deem problematic; or (2) this Court will explain that, at best, a plain-error standard of review might apply, and then for this Court to engage in a plain-error review even though Mrs. Rogan does not even ask for such a review.

### 1.    Mrs. Rogan Fails To Show Plain Error Requiring Reversal.

Even assuming *arguendo* that a plain-error review would be appropriate here, Mrs. Rogan cannot satisfy her burden to establish that any alleged evidentiary errors require reversal under the plain-error standard.

No exceptional circumstances. Mrs. Rogan points to no "exceptional circumstances" in this case, and none exist. In fact, much of the evidence to which Mrs. Rogan now objects is material she herself produced. *See Stringel*, 89 F.3d at 421 (no "extraordinary circumstances" existed where appellant created the evidence he later objected to).

No effect on substantial rights. Under the plain-error standard, "substantial rights" are affected if the final outcome of the proceeding likely would have been different had the errors not occurred. *See, e.g.*, *Production Specialties Group, Inc. v. Minsor Sys., Inc.*, 2008 WL 151176 (7th Cir. 2008) (no plain error when appellant failed to show a different jury instruction would have likely changed the outcome of a trial). For good reason, however, these cases address trials or other dispositive events, such as summary judgment, which, by definition, determine the outcome of a case. *Id.*; *see also Backwater, Inc.*, 448 F.3d at 964 (7th Cir. 2006) (appellants "identify no plain error in the way *the trial* was conducted) (emphasis added); *Zayre Corp.*, 882 F.2d at 1145 (no plain error in relying upon certain affidavits in granting summary judgment). Mrs. Rogan fails to explain how her substantial rights are affected by the Magistrate's Order, which merely transfers this action to a different venue, and in no way

addresses the merits of her claims.  Even if a transfer order could theoretically affect a party's

substantial rights, however, Mrs. Rogan never explains how exclusion of the exhibits would have

impacted the decision, and thus she fails to establish any error affected her substantial rights.  In

fact, as described above, the Magistrate's Order was based largely upon the fact that related

litigation is pending in Illinois, rather than on the now-disputed evidence.  Therefore Mrs. Rogan

cannot establish that striking the exhibits likely would have changed the outcome.

<u>No miscarriage of justice</u>.  Mrs. Rogan fails to explain how a miscarriage of

justice would result from any of the alleged errors.  Although Mrs. Rogan presents a laundry list

of generic complaints regarding the evidence Dexia submitted in support of its transfer motion,

she *never* asserts that any of the evidence is inaccurate, suggesting that Magistrate Judge Cherry

did not plainly err in considering it.  *See Stringel*, 89 F.3d at 422 (noting that where tape

recording containing defendant's voice was admitted into evidence without proper foundation,

defendant's failure on appeal to argue "that the copy of the tape … was not an authentic and

accurate recording of his conversation" suggested no plain error in district court's consideration

of the tape as summary judgment evidence).  It is difficult to imagine a miscarriage of justice

caused by consideration of accurate evidence in a motion to transfer, which, of course, does even

discuss, let alone rule on, the merits of Mrs. Rogan's claims.  The transfer order merely ensures

that the merits of this lawsuit will be determined in NDIL as opposed to in NDIN.  In addition,

the Magistrate explicitly held that the "interest of justice" would be furthered by transferring this

action because related litigation is pending in NDIL.  Certainly Mrs. Rogan cannot establish that

transfer under these circumstances would be a gross miscarriage of justice.

## 2.    <u>The Now Disputed Exhibits Were Admissible</u>.

In any event, Mrs. Rogan's belated evidentiary objections are groundless and should be rejected under any standard of review.  To respond to Mrs. Rogan's objections in the most sensible manner possible, and to streamline the issues for this court, Dexia has grouped the exhibits by category of objection.  In addition, because Mrs. Rogan has not objected to the exhibits Dexia submitted with its reply in support of its transfer motion, this Court may consider those documents even if it excludes other exhibits based on Mrs. Rogan's objections.  Therefore, where relevant, this section also discusses reply exhibits.

**Authenticity/foundation objections (Exs. B, C, E–I, P–U, W, X AA–II).**  Mrs. Rogan repeatedly states that particular exhibits "lack foundation," but provides no further explanation of her foundation objections, *i.e.*, whether her foundation objection is directed to the authenticity, relevance, or some other aspect of foundation.  These cursory objections do not provide enough detail for the Court or Dexia to identify the basis for the objection, let alone assess the merits of her objections.  Mrs. Rogan's "foundation" objections should be rejected on this basis alone.  *See U.S. v. Barker*, 27 F.3d 1287, 1292 (7th Cir. 1994) (defendant failed to properly raise or preserve evidentiary objection where defendant only had objected to "foundation," because such an objection "was neither specific nor did it apprise the court of which of the many possible foundational defects he believed rendered the evidence inadmissible. Objections to evidence on the basis of foundation may take many forms . . . Therefore, an objection based merely on 'foundation' is far too general to alert the court to the specific shortcoming alleged, much less give the court or opposing counsel an opportunity to rectify the

claimed defect."); *U.S. v. Eberhart*, 467 F.3d 659, 667 (7th Cir. 2006) (same).  This section thus addresses the authentication component of foundation.[13]

Most of the exhibits to which Mrs. Rogan raises an authentication objection are *Mrs. Rogan's own financial records* that she herself produced to Dexia in discovery (Exs. F, P, Q, S–U, AA, DD) or that of Mrs. Rogan's agents (*i.e.*, attorneys) produced on Mrs. Rogan's behalf (Exs. H, R, HH and II[14]), or by banks where Mrs. Rogan holds accounts (Exs. I, X, BB). (Pruitt Decl., Ex. A)[15]  It is well-established that records produced by a party or a party's agent during litigation are self-authenticating and require no additional foundation to establish their authenticity.  *See United States v. Brown*, 688 F.2d 1112, 1115-16 (7th Cir. 1982) (documents produced by defendant's attorney were considered authenticated without further action, and noting result would be the same if defendant himself had produced the documents); *Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors, Inc.*, 46 F. Supp. 2d 769, 772 (N.D. Ill. 1999)  (it is not error "to admit as evidence documents that Defendants themselves possess and produced in response to Plaintiff's requests for production of documents") (citing *U.S. v. Brown*); *Int'l Paper Co. v. Androscoggin Energy LLC*, 2002 WL 31155069, *2 (N.D. Ill. 2002) (same).  Moreover, regardless of who produced these financial records, " [c]ourts have found that copies of checks and other bank records are self-authenticating under FRE 902(a)." *Ament v. Towsend*, 1998 WL 299806, *4 (N.D. Ill. 1998); *see also Edward G. Bashian & Sons, Inc., v. Am. Nat'l Bank & Trust Co.*, 1997 WL 337434, *7 (N.D. Ill. 1997) (stating that Fed. R.

---

[13] To the extent Mrs. Rogan intended her foundation objections to be objections to the relevance of particular documents, Dexia separately addresses Mrs. Rogan's relevance objections below.

[14] The absurdity of Mrs. Rogan's authentication objections is highlighted by the fact that Exhibits HH and II are letters that Mrs. Rogan's own counsel, Mr. O'Rourke, wrote to Dexia's counsel in the course of this litigation.

[15] Had Mrs. Rogan raised a timely objection before the Magistrate, Dexia would have had the opportunity to respond in its Reply Brief.  Dexia would have then supplied the attached Declaration to support the admission of the evidence Mrs. Rogan now contends is objectionable.

Evid. 902(9) "allows for self-authentication of commercial paper and 'related documents,'" and

therefore admitting a "telex … communicating" that a bank had accepted drafts drawn from a

line of credit).

   The other documents to which Mrs. Rogan objects similarly did not require

additional authentication in order for the Magistrate to consider them.  Exhibits C (Statement of

Financial Affairs, submitted in *In re Bainbridge Management, L.P.*), W (Copy of Deed for 55

East Erie, #3205), and EE (Summary of Discovery Motions and Orders Relating to Rogan

Finances in Dexia/Edgewater Matters)[16] are public documents of which the court may properly

take judicial notice.  *See Laborers' Pension Fund v. Blackmore Sewer Constr. Co.*, 298 F.3d 600,

607 (7th Cir. 2002) (stating that courts "may take judicial notice of matters of public record," and

taking such notice that a certain bank was "a branch office of Harris Bank").  Exhibits G and CC

are records of sworn deposition testimony, certified by court reporters.  Such testimony does not

require additional authentication.  *See United States v. Charboneau*, 2005 WL 2346947, *5

(M.D. Fla. 2005) (deposition was authenticated under Fed. R. Evid. 902(8) when "accompanied

by certificates of acknowledgment").[17]  Exhibits FF and GG are letters discussing the

construction of the Rogans' Indiana home, which were offered to impeach the credibility of Mrs.

Rogan's contention that she was the source of funds used to construct that home.[18]  Because

Dexia offered these documents to impeach the credibility of Mrs. Rogan's sworn statement that

she "has paid all mortgage and related property costs on the residence and has maintained the

---

[16] Ex. EE is a summary of public documents, *i.e*., court filings in the Northern District of Illinois that
Dexia's counsel prepared.

[17] Although Dexia did not submit the certification pages with the exhibits, instead producing only the
relevant substantive pages, Mrs. Rogan has never objected on the grounds that the exhibits are not
actually transcripts of the depositions.  Had Mrs. Rogan made such an objection to the Magistrate, Dexia
would have produced the certification.

[18] Mot. to Transfer at 25-26.

residence with her family since the property was acquired"[19] and Mrs. Rogan failed to offer any evidence indicating that the documents were forged or otherwise inauthentic, Dexia was not required to provide any further authentication for the documents. *See United States v. De Gudino*, 722 F.2d 1351, 1355-56 (7th Cir. 1984) (citing Fed. R. Evid. 901(b)(4) and holding that a court may treat documents as authentic where authentication can be inferred from "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances" and defendant failed to present evidence that documents were not what they purported to be).

**Hearsay objections (Exs. B, O, V, W, X, AA, BB, and EE – JJ).**  Mrs. Rogan has not identified any instance in which the Magistrate actually relied upon these exhibits to establish a fact material to his legal analysis.  She thus has failed to establish why it matters if these exhibits constituted inadmissible hearsay.  Regardless, these exhibits are not hearsay.

Not offered for the truth of the matter asserted.  Exhibit V, a letter to Mrs. Rogan's counsel, was not offered for the truth of any matter asserted in the document, but was offered only to establish that Dexia had notified Mrs. Rogan of its intent to seek a rule to show cause as of the date of the letter.[20]  Exhibit EE is a summary document of publicly-available court filings in proceedings pending in NDIL.  The document was not offered for the truth of any matter asserted in those filings, but only to establish the amount of discovery activity that had occurred in the NDIL – a public fact of which the Magistrate properly could take judicial notice and which easily could be gleaned by reviewing the public docket of that litigation.  *See Philips Medical Systems Intern., B.V. v. Bruetman*, 982 F.2d 211, 215 (7th Cir. 1992) (taking judicial notice of related litigation).

---

[19] JKR Affidavit, Dkt. 5, submitted in Support of Motion for Preliminary Injunction, Dkt. 4.

[20] Mot. to Transfer Venue at 4.

Ex. JJ, a summary chart of "Rogan-Related Business Entities and Trusts Identified During Discovery in Dexia/Edgewater Proceedings," was not offered for the truth of any matter asserted in the document, *i.e.*, it was not offered to establish that Peter Rogan actually controls the identified entities. Instead, the document was cited only for the purpose of establishing the number of entities that Dexia believes Peter Rogan has used to conceal the proceeds of the fraud he committed in Illinois.[21] In addition, Exhibits N-Q (discovery requests from Dexia in *Dexia v. Rogan*, and a letter from Mrs. Rogan's counsel to Dexia's counsel) in Dexia's Reply, to which Mrs. Rogan has not objected, provide evidence regarding the related litigation and show that discovery in the NDIL litigation involved issues regarding Mrs. Rogan's finances.

Public Records. Ex. W is a public record the Cook County Recorder of Deeds issued memorializing Judith Rogan's purchase of a condominium in Cook County, Illinois. As such, it is admissible under the public record exception to the hearsay rule and as a document affecting an interest in property. *See* Fed. R. Evid. 803(8), (14) & (15). Moreover, an exhibit to which Mrs. Rogan does not object also establishes Mrs. Rogan's ownership of the Cook County, IL, condominium: Exhibit H to Dexia's Reply, which is a copy of the deed to the same Cook County, IL property, and which was printed from the website of the Cook County Record of Deeds.

Admission of Party-Opponent. Exhibits HH and II are letters to Dexia's counsel from Mrs. Rogan's counsel. As such, the letters are statements of Mrs. Rogan's agents and are admissible under Fed. R. Evid. 801(d)(2) as admissions of a party-opponent.

---

[21] Mot. to Transfer Venue at 11.

**Relevance (Exs. B, T and CC)**.  As an initial matter, Mrs. Rogan's bare, conclusory statements that these documents are not relevant do not come close to articulating *why* the documents are not relevant to the issues addressed in Dexia's Motion.  Notably, Mrs. Rogan does not even bother to explain how, if at all, Magistrate Judge Cherry used these purportedly irrelevant documents in deciding a fact material to his legal analysis.  Exhibit B is a page from the partnership agreement of Braddock Management, L.P. Partnership, the company Mr. Rogan owned that ran Edgewater Medical Center in Illinois and which Mr. Rogan used to commit the healthcare fraud at that hospital.  This agreement was relevant to show Braddock's contacts with Illinois, and that the relevant underlying conduct occurred in Illinois.  Exhibit T is a tax form, relevant to establish that Peter Rogan is the settlor of a trust.  In conjunction with other exhibits discussed *supra*, it was relevant to establish that Mrs. Rogan has received distributions from this trust, and that, contrary to her contentions, she has substantial bank accounts outside of Indiana.  Exhibit CC, depositions of Mrs. Rogan's children, is relevant to show that the related NDIL-proceedings have addressed Rogan family finances.

**Judith Rogan is "Not a Named Party" (Exs. A, D, J-N, Y and Z)**.  With respect to Exhibits A (second amended complaint in *Dexia v. Rogan*), D (final judgment in related litigation), J-N (discovery-related documents, and discovery-related orders, in related litigation), Y (citation to discovery assets issued to Mrs. Rogan in NDIL) and Z (Mr. Rogan's amended response and objections to interrogatories in related litigation), Mrs. Rogan states only that she is "not a named party" in the suits pending in NDIL against her husband and his affiliated companies.  This cursory observation does not articulate what objection Mrs. Rogan has to these exhibits under the Federal Rules of Evidence.  Accordingly, it is impossible for either the Court or Dexia to know what evidentiary objection, if any, Mrs. Rogan was attempting

to articulate.  To the extent these observations could be construed as objections to the relevance of the documents, however, Mrs. Rogan's "objections" have no merit.

Each of the exhibits provide evidence of the related litigation in NDIL, and this is undoubtedly relevant to a transfer motion.  (Order at 22, citing case law for the proposition that "trying related litigation" together is a consideration in deciding a motion to transfer venue); *Van Dorn*, 796 F.2d at 222 (stating that "related litigation should be transferred to a forum where consolidation is feasible").  Mrs. Rogan's objection to Dexia's Exhibit A is perhaps the most absurd contention she makes, considering she attached the ***exact same document*** as Exhibit B in response to Dexia's motion, and she relied upon that document in support of her arguments regarding venue.  (JKR Br. at 25 n.7, and Ex. B to that brief, Dkt. 38)  Moreover, Mrs. Rogan has failed to identify how the Magistrate relied upon these exhibits in deciding an issue material to Dexia's Motion.  Also, Exhibits L-Q[22] to Dexia's Reply similarly evidence the related litigation in NDIL, and Mrs. Rogan has not objected to those exhibits.

## **CONCLUSION**

For the reasons stated herein, Dexia respectfully urges this honorable Court to overrule Mrs. Rogan's objections and affirm Magistrate Judge Cherry's Order transferring this action to the Northern District of Illinois, Eastern Division.

Dated: **February 21, 2008**                    DEXIA CRÉDIT LOCAL


                                               /s/      Eric S. Pruitt
                                               Scott Mendeloff
                                               Gabriel Aizenberg
                                               Eric S. Pruitt
                                               SIDLEY AUSTIN LLP
                                               One South Dearborn Street

---

[22] These exhibits include, *inter alia*, the Citation to Discover Assets issued to Judith Rogan in *Dexia v. Rogan*, along with correspondence regarding her response to that citation.

Chicago, Illinois 60603
(312) 853-7000

*Attorneys for Dexia Crédit Local*

CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2008, I electronically filed the foregoing DEXIA CREDIT LOCAL'S REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Gabriel Aizenberg gaizenberg@sidley.com, efilingnotice@sidley.com

David Cerven dcerven@sd1law.com

Joshua R Diller jdiller@okmlaw.com

Alison G Fox Alison.Fox@bakerd.com

Joel L Lipman jlipman@okmlaw.com

Scott Mendeloff smendeloff@sidley.com, efilingnotice@sidley.com

Michael J O'Rourke morourke@okmlaw.com

Joseph A Stewart joseph.stewart@usdoj.gov

Joseph S Reid - AUSA joseph.reid@usdoj.gov

Linda A Wawzenski Linda.Wawzenski@usdoj.gov

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

Respectfully submitted,

Eric S. Pruitt

s/  Eric S. Pruitt
Scott Mendeloff
Gabriel Aizenberg
Eric S. Pruitt
Sidley Austin LLP
One S. Dearborn Street
Chicago, Illinois  60603
(312) 853-7000

# Exhibit A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| JUDITH K. ROGAN | ) |
| | ) |
| Plaintiff | ) Civil Number: 2:07 CV 403PS |
| v. | ) |
| | ) |
| THE UNITED STATES OF AMERICA | ) Judge Joseph Van Bokkelen |
| AND DEXIA CRÉDIT LOCAL, f/k/a | ) |
| DEXIA PUBLIC FINANCE and CREDIT | ) |
| BANK and CREDIT LOCAL DE FRANCE | ) |
| | ) |
| Defendants | ) |

## DECLARATION OF ERIC PRUITT

I, Eric Pruitt, declare that the following is true and correct:

1.      I am over 21 years of age and I have personal knowledge of the matters set forth in this Declaration.  If called upon to do so, I would testify to the matters stated in this Declaration.

2.      I am an attorney at Sidley Austin LLP ("Sidley") and counsel to Dexia Crédit Local ("Dexia").

3.      On behalf of Dexia, Sidley has issued discovery requests to Judith K. Rogan ("Mrs. Rogan"), law firms representing Mrs. Rogan, *i.e.*, Hogan Marren Ltd. and Tatooles Foley & Associates ("Tatooles"), and the firm that constructed Mrs. Rogan's home in Valparaiso, Indiana, *i.e.*, Precision Construction.

4.      I have received and maintained the documents that Mrs. Rogan, Hogan Marren, Tatooles and Precision produced to Dexia in response to Sidley's requests.  I also have reviewed the records that Dexia attached to its Motion to Transfer Venue that it filed in the above-captioned case.

5.    Exhibits F, P, Q, S, T, U, AA, and DD are tax returns, a lease addendum, bank records and other documents that Mrs. Rogan produced to Dexia in response to a Citation to Discover assets that issued from the Northern District of Illinois in connection with *Dexia v. Rogan* (02 C 8288) (N.D. Ill.). Exhibits F, P, Q, and S do not contain Bates numbers because Mrs. Rogan's counsel did not affix Bates numbers to the documents prior to producing the documents to Dexia.

6.    Exhibit H was produced to Dexia by Tatooles, who previously acted as counsel to Mrs. Rogan's sole proprietorship, JKR Business.

7.    Exhibit R was produced to Dexia by Mrs. Rogan's counsel, Hogan Marren. Exhibit R is a wire transfer record indicating Mrs. Rogan's transfer of $100,000 to Hogan Marren.

8.    Exhibits HH and II are letters that Mrs. Rogan's counsel in the above-captioned proceeding, O'Rourke, McCloskey & Moody, sent to Sidley in connection with *Dexia v. Rogan* (02 C 8288) (N.D. Ill.).

9.    Ex. GG is a letter that Mrs. Rogan's husband, Peter Rogan, wrote to Precision Construction. Precision Construction was involved in the construction of the Rogan home at 476 Wexford Road, Valparaiso, Indiana that is at issue in this case. Precision Construction produced this letter to Dexia from its files on August 23, 2007. (Ex. 1)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 21, 2008

Eric Pruitt, Esq.

# Exhibit 1

## Rauscher, Scott

| | |
|---|---|
| **From:** | Bill Silfies [BillSilfies@PrecisionConstruction.com] |
| **Sent:** | Thursday, August 23, 2007 9:23 AM |
| **To:** | Rauscher, Scott |
| **Subject:** | RE: Follow-Up Document Request |

**Attachments:** Rogan Letter.pdf

Attached is the letter requested.
To confirm our telephone conversation, Precision is not a party to this claim and there will be no actions against Precision.
The purpose for this information is the collection of a judgment against Mr. Rogan and whether or not the home is subject to the judgment.

With this document we have provided the necessary and requested information.

*Thank You,*

*Bill Silfies*
*Controller*



Precision Construction
9616 Indianapolis Boulevard
Highland, IN 46322
Phone: 219.924.0044 ext 272
Fax: 219.922.4130
EMail: billsilfies@precisionconstruction.com

-----Original Message-----
**From:** Bill Silfies
**Sent:** Thursday, August 23, 2007 8:13 AM
**To:** 'srauscher@sidley.com'
**Subject:** Follow-Up Document Request
**Importance:** High

As I understood, we provided documents for your use that are far beyond he records retention requirement.
We have never been informed as to the purpose of the documents and what role our company has with this request.
The purpose of the document as explained to us that we provided, was to show the company address letterhead tied to the individual and not to show the actual construction discussions contained in the letter.

The threat of going to the courts is not taken lightly. If necessary we will involve our attorney as well however since we are unaware of the nature of the claim we prefer to not expend the funds to do so unless you intend to pay for those costs.

I don't have an issue with assisting your cause, however we are entitled to know what this claim is all about.

*Thank You,*

*Bill Silfies*
*Controller*



Precision Construction
9616 Indianapolis Boulevard
Highland, IN 46322
Phone: 219.924.0044 ext 272
Fax: 219.922.4130
EMail: billsilfies@precisionconstruction.com



# EDGEWATER MEDICAL CENTER

March 4, 1994

**VIA FACSIMILE**

Mr. Charles Carter
Mr. John Kotynski
Precision Construction
2605 Garfield Avenue
Highland, IN 46322

Gentlemen:

This is in follow-up to our meeting of Tuesday, March 1, 1994. During that meeting, we agreed that in an effort to enhance the communication process between Precision and Judy and Dan Schuman, we would institute a number of reports. The first report will be a detailed schedule of the tasks to be accomplished between now and the end of the job. This schedule will identify who is responsible for the task(s) and when that task and/or decision will be made or completed.

The second report is a "To Do" list. This list will be initially prepared by Charlie and presented to us for our additions. Once that is done, the "To Do" list will be continually updated.

Both of the above reports are to be faxed to Judy and to Dan Schuman by Friday, March 4, 1994. This will allow Judy and I to meet with Dan this weekend, make any changes to the reports and provide that back to Charlie for his update. In addition, after these initial reports are completed this Friday, the weekly updates will be prepared by Charlie and faxed to Dan and Judy every Friday thereafter.

On a related matter, we also discussed the Byre Electric and the Light Touch System. Charlie thought we had agreed to a conclusion on this item. I stated that this is not the case. I have not agreed to Dave's suggested solution and I discussed with Dan an

1

appropriate solution. I understand that Dan and Precision are to discuss this and to reach a conclusion. I am not certain whether this is to be done with Charlie or Dave Van Dyke.

Finally, I received a copy of a Request for Draw that was faxed to Fred Cuppy and in turn forwarded to me. Fred is out-of-town until Tuesday but in the interim, Dan, Judy and I will be reviewing the request. As Fred communicated with Dave Sawyer, we may in fact withhold some of the request because of lack of completion of the tasks. In addition, Fred requested that any credits due us be included in this draw. This request dove-tails into my request of Charlie that all the credits due us be brought up-to-date and current by this Friday, March 4, 1994.

In light of the ongoing discussions concerning the Hyre Electric/Light Touch System and the lack of documentation on the credits due us, both of these items need to be resolved before any draw requests can be acted upon.

I believe that this captures the essence of the meeting and some further updates that have occurred. Should you have any questions, please contact Dan Schuman.

Sincerely,

Peter G. Rogan
President

PGR/mr

cc: Fred Cuppy
    Dan Schuman

- - - -
PRECISN.LTR

2