## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| JUDITH K. ROGAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Number: 2:07 CV 403 PS |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | Judge Joseph Van Bokkelen |
| AND DEXIA CREDIT LOCAL, f/k/a | ) | |
| DEXIA PUBLIC FINANCE and CREDIT | ) | |
| BANK and CREDIT LOCAL FRANCE, | ) | |
| | ) | |
| Defendants. | ) | |

### JUDITH ROGAN'S REPLY IN SUPPORT OF OBJECTIONS TO
### MAGISTRATE JUDGE CHERRY'S JANUARY 31, 2008 ORDER OF TRANSER

Plaintiff, Judith Rogan, by and through her attorneys, states:

## I.    BACKGROUND

At the outset, Plaintiff objects to consideration of the United States' late-filed response to

Objections.  According to the docket entry, the United States filed its response on Sunday,

February 24, 2008, more than three days after responses were ordered due by Judge Joseph Van

Bokkelen's February 6, 2008, order granting review and granting Defendants' fifteen days to file

their response, and Plaintiff seven days to file the instant reply. Because the United States' filing

was late, Plaintiff respectfully requests this Court deny consideration of that filing.

Plaintiff submits that Magistrate Cherry committed error and his ruling should be

overturned on three grounds: 1) the Magistrate improperly refused to accord deference to

plaintiff's choice of forum which is wrong *because Judy Rogan is and has always been a*

*resident of Indiana.*  See Supplemental Affidavit of Judith Rogan, Ex. A.; 2) the Magistrate

granted transfer without Dexia identifying one Illinois witness of substance; and 3) the Magistrate mistakenly found that the facts and witnesses *to the case in this Court* were predominantly situated in Illinois.  On all three grounds, the Magistrate committed clear error and the proper resolution of these issues compels retaining the case before this Court, the plaintiff's, and most proper, choice of forum.

Dexia presented two principle issues.  The first issue involved the first-to-file rule (which Dexia argued at length) and the second issue (treated in much less detail by Dexia) concerned resolution of the statutory requirements of 28 U.S.C. § 1404(a).  Plaintiff gave commensurate treatment to each argument Dexia offered. Ultimately, the Magistrate concentrated on only one issue, the criteria under § 1404(a), and concluded essentially that plaintiff's choice of forum should be disregarded based upon materials relating to two separate unrelated cases involving her husband.

Plaintiff challenges Dexia's false claim that Plaintiff gave short shrift to the principles of § 1404(a).  Plaintiff thoughtfully explained and argued each issue Dexia presented.  Furthermore, Plaintiff has timely raised objections to the Magistrate's erroneous reliance on inadmissible material when on February 5, 2008 Judith Rogan filed her Objections pursuant to Federal Rule of Civil Procedure 72(a). Defendants' waiver argument is particularly unavailing now that they address those same substantive objections that Plaintiff has properly placed before this Court.

Regardless, the effect of the Magistrate's order is that Judith Rogan, a private party who lives in Indiana and filed suit in Indiana involving Indiana claims on Indiana property under Indiana law is unjustly being uprooted from litigating in Indiana.  That is true even when it is plain that the United States can sue and be sued in any federal court, and that Dexia a multi-national, multi-division foreign corporation, can sue and be sued in any federal court.

2

Judith Rogan chose her home-state to file the instant action against the Defendants so that she could properly assert her property rights that were being prejudiced by Defendants' improper filing of liens. Defendants have yet to identify a single cogent basis for granting the request based on inconvenience to the parties or inconvenience to the witnesses.

The decision granting Defendants' motion to transfer this case to the Northern District of Illinois was made without: 1) due deference to Plaintiff's choice of forum and her state of residence; 2) Defendants' alleging that they would be inconvenienced by the disposition of this cause in the Northern District of Indiana; 3) Defendants' specifying a single witness who lives in Illinois; 4) giving deference to the fact that most of Plaintiffs' and Defendants' enumerated witnesses before this Court reside in Indiana; and 5) consideration that the interests of justice do not favor the handling of this matter in the Northern District of Illinois because this is the first-filed proceeding in which Judith Rogan is a litigant. The above errors and an improper reliance on inadmissible, irrelevant material contributed to an order granting transfer of this cause to the Northern District of Illinois that is clearly erroneous on the facts and contrary to federal law.

## II.    PROCEDURAL HISTORY

Judith Rogan filed this action related to the subject liens on August 27, 2007 in United States District Court, Northern District of Indiana, case no. 2:2007-CV-00280 RM (N.D. Ind.). At the time, Judith Rogan was not a named party and thus, not a litigant in any litigation with Defendants, but was only a Respondent in a Supplementary Proceeding in the Northern District of Illinois. On or about September 20, 2007 Judith moved for a preliminary injunction in the Federal Action seeking to enjoin the Defendants from enforcing or in any way encumbering the Wexford Property. The hearing on plaintiff's motion was set for October 29, 2007 before the Honorable Judge Robert L. Miller, Jr. At the hearing on plaintiff's motion for preliminary

injunction, Judge Miller dismissed plaintiff's case on the basis that the Court lacked subject matter jurisdiction.

On October 30, 2007, one day after the dismissal of plaintiff's Federal Action, plaintiff filed an action against the Defendants in the Porter County Superior Court, Valparaiso, Indiana, under case no. 64D05-0710-PL-10161 (the "State Action").  Plaintiff's allegations in the State Action essentially mirror those of plaintiff's original Federal Action. On October 30, 2007, plaintiff also filed a motion for a preliminary injunction in the State Action which motion was set to be heard on November 14, 2007.

On November 9, 2007, Defendant the United States removed the State Action back to this Court pursuant to 28 U.S.C. §§ 1442 and 1444.  On November 18, 2007 Defendant Dexia filed its 36-page motion to transfer this case to the Northern District of Illinois which, in pertinent part, named only "Peter Rogan", now living in Canada, and "Joseph Cuppy" (Fred Cuppy), now living in Florida, as witnesses who may be inconvenienced more by proceeding in the Northern District of Indiana rather than the Northern District of Illinois. On December 20, 2007, Defendant Dexia filed its 18-page Reply in support of its Motion to Transfer.

## III.    ANALYSIS

Once it has been determined that the court has the power to transfer an action under 28 U.S.C. § 1404(a), the court, in evaluating the convenience and fairness of transfer, must consider both the private interests of the parties and the public interest.  Private interests include (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof in each forum, including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses; and (4) convenience to the parties -- specifically their respective residences and abilities to bear the

4

expense of trial in a particular forum. *Rapier v. Capital One Auto Fin., Inc.*, 2007 U.S. Dist. LEXIS 78582, *6 (S.D. Ind. 2007).

The public interests relevant to an analysis under § 1404(a) include the court's familiarity with applicable law, the efficiency with which the court may resolve the matter, and the desirability of resolving disputes in the region in which they arose. *United Consumers Club v. Prime Time Mktg. Mgmt.*, 2008 U.S. Dist. LEXIS 2868 (N.D. Ind. January 11, 2008). "Unless the balance is strongly in favor of the Defendant, the plaintiff's choice of forum should rarely be disturbed." *In re National Preso Industries*, 347 F.3d 662, 664 (7th Cir. 2003).

Under 1404(a), the movant Dexia had the burden of proving that the transferee court is "clearly more convenient" than the transferor court. *Volkswagen Aktiengesellschaft v. W. Coast Metric, Inc.*, 2004 U.S. Dist. LEXIS 3177, *3-4 (S.D. Ind. 2004). Magistrate Judge Cherry never held Dexia to the burden of proving the NDIL is "clearly more convenient" because Dexia never specified any witnesses who would be inconvenienced and certainly did not identify how Dexia or the United States was inconvenienced. Further, Magistrate Judge Cherry relied on inadmissible exhibits in finding that trying related litigation together favored Dexia even where Judith Rogan was not a litigant[1] in the other litigation. The failure to hold Dexia to its burden in satisfying the elements is obvious. Dexia never specified any inconvenience in its original motion and never named any witness who would be inconvenienced.

---

[1] A California federal appellate court discussed the concept of "litigant" in interpreting the rights of a claimant under a statute. The California court admitted that Courts in California use the terms "party" and "litigant" interchangeably. *United States v. City of L.A.*, 2003 U.S. App. LEXIS 24386, **6 (9th Cir. 2003). The Court further cited to the Black's Law Dictionary definition for its holding that it was unclear "that the term 'litigant' *is* any broader than the term 'party.'" *Id*, citing Black's Law Dictionary 756 (7th ed. 2000) (defining "litigant" as "a party to a lawsuit.").

A.      **Public Interest Factors Favor Neither Party.**

The factors pertinent to this analysis include the court's familiarity with applicable law, the efficiency with which the court may resolve the matter, and the desirability of resolving disputes in the region in which they arose.

Magistrate Judge Cherry determined that Indiana and Illinois are equally familiar with the relevant case law regarding judicial liens and are almost equally efficient. He writes as to familiarity, "Similarly, both courts are capable of analyzing the appropriate law related to the Illinois property and the property located outside the United States as well as to the determination of whether Judith Rogan is holding property for the benefit of Peter Rogan. In addition, both districts appear to have an interest in the disposition of real property at issue in this case because of the Chicago condominium in Illinois and the Wexford Property in Indiana." *Order*, January 31, 2008, p. 23.  As to speedy disposition, Judge Cherry states, "Because the districts have comparable statistics, this factor does not affect the decision on the motion to transfer." *Order*, at p. 24.

The Magistrate erred in applying the desirability test, third factor, and speaks of an interest in trying related litigation together.  His err is understandable because he was weighed down by more than 360 pages of documents purporting to show how actions commenced in Illinois and Indiana are related litigation.

The cases, *United States v. Peter Rogan* and *Dexia v. Peter Rogan* do not qualify as related litigation to this action, an action over the propriety of fixing two judgment liens, one in Illinois and one in Indiana, against a non-debtor.  If that were the case, parties such as those in the instant case would be rewarded for improperly filing liens against non-debtors with the hope

of bootstrapping litigation in which the parties received a favorable judgment.  Judith Rogan

states for the final time that she was not a litigant in any of those previous cases.

      **B.**    **Magistrate Judge Cherry erred in finding that the private interests**
                 **favored transfer of this cause at the request of a foreign corporation**
                 **and the United States.**

            **1.**    **The Convenience of the Parties favors the Northern District of**
                        **Indiana because Judith Rogan resides in Indiana and Defendants**
                        **Cite no inconvenience to them.**

The Magistrate Judge erred in considering irrelevant material in finding a question as to

whether Judith Rogan resides in Indiana.  This fact is critically important because it is undisputed

that Dexia, a foreign corporation, and the United States, can be sued in any district court in the

United States. Therefore, if Judith Rogan avers she lives in Indiana she logically would

experience less inconvenience in defending an action in an Indiana court, and the convenience of

the parties favors Judith Rogan.

Judith Rogan has consistently maintained her residence as being Indiana. Such a term is

unambiguous. *Armstrong v. Federated Mut. Ins. Co.*, 785 N.E.2d 284, 289 (5th Dist., Ind. Ct.

App. 2003) (where the appellate court concluded that the trial court did not err in rejecting the

proposed instructions because "resident" was unambiguous and well understood by the average

juror). Judith Rogan's admissible evidence wherein she declares she is a resident of Indiana in a

sworn affidavit, complaint, and preceding motion for temporary restraining order, should

foreclose the issue and Magistrate Cherry's finding the issue "ambiguous" is simply wrong.

These declarations are entitled to deference in evaluating convenience to the parties.[2]   Herein,

---

[2] The January 31, 2008, Order reads, "If Judith Rogan indeed lives outside of Indiana, then her
choice of forum is also given less consideration as well." Order, January 31, 2008, p. 18.
Magistrate Judge Cherry had before him the Plaintiff's affidavit confirming her residency. His
ambiguity as to her residence is startling. He simply disregarded the sworn statement in Judith

Judith Rogan reaffirms those declarations and supplies a supporting 2007 lease for her Indiana residence for further substantiation.  See Supplemental Affidavit of Judith Rogan, Exhibit A thereto.

The lack of deference to plaintiff's choice of forum was the threshold error in Magistrate Cherry's § 1404(a) analysis. The plaintiff's choice of forum is entitled to deference, especially when the action is brought in the plaintiff's home forum. *Masterspas, Inc. v. Master Spas of Utah, Inc.*, 2006 U.S. Dist. LEXIS 62023, *9 (N.D. Ind. 2006) citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981).

Judith Rogan's chosen forum is especially apropos where the main conduct complained of, the attachment of an illegal judgment lien to her Wexford property, occurred in Indiana, the chosen forum.  The Magistrate improperly disregarded Judith Rogan's affidavit and statements claiming she is a resident of Indiana. Not only is she a resident of Indiana, Judith is a private party who logically would experience more inconvenience than a multi-national foreign corporation and the United States of America.

 It is also undisputed that Dexia has not specified any inconvenience it would experience should this matter proceed before this Court in the Northern District of Indiana.  In separate pages in its response, Dexia refers to the short distance from the Northern District of Illinois and Northern District of Indiana. Dexia states, "Mrs. Rogan still fails to show how it would cost her more to litigate just 25 miles from NDIN" (*Response to Objections*, February 21, 2008, p. 8), and then adopts the language of the January 31, 2008 order, "Judge Cherry held that because NDIN

---

Rogan's affidavit and accepted extraneous material he found in the 360 pages of exhibits Dexia attached in its motion. As result, he found a fact issue where no fact issue exists. See Exhibit A to this Reply, an affidavit and signed lease agreement.

and NDIL are located within about 25 miles of each other, 'regardless of where Judith Rogan is living, any inconvenience in the farther district is minimal.'" (*Resp*., citing Order at pp. 20-21).

How are Dexia and the United States inconvenienced?  We do not know because they have not cited any inconvenience. The interest of the parties therefore clearly favors Judith Rogan and her choice of forum, her home state Indiana.

### 2.     Magistrate Judge Cherry erred in his consideration of witness convenience.

Magistrate Judge Cherry also concluded in his order that the witnesses would be more inconvenienced by traveling to the Northern District of Indiana where Dexia did not specified who the inconvenienced Illinois witness would be and that witness' potential testimony.

Courts often conclude that convenience to the witnesses is the most significant of the factors considered under section 1404(a).  *Somers v. Flash Tech. Corp. of Am.*, 2000 U.S. Dist. LEXIS 13094, *8 (S.D. Ind. 2000). This analysis is not merely a numbers game: what is significant is the substance and materiality of potential witnesses' testimony. *Id*.

Courts in Indiana find it not only helpful but necessary in a motion to transfer to specify the witnesses who are expected to testify to the allegations in the complaint.  In *Flash Tech. Corp. of Am.*, the Court granted a motion to transfer after considering that the movant submitted a list of thirteen potential witnesses who were living in Tennessee and not Indiana who would be greatly inconvenienced by traveling to Indiana to give testimony. *Flash Tech. Corp. of Am.*, 2000 U.S. Dist. LEXIS 13094, *9 (S.D. Ind. 2000).   In *Heller*, a case cited by Magistrate Judge Cherry, the Defendant movant was admonished by the Court for failing to cite a witness and their expected testimony. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286 (7th Cir. 1989).  The Seventh Circuit found that movant "Midwhey has the burden of showing that 'the

9

transferee forum is clearly more convenient,' and thus Midwhey was obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included." *Id*. at 1293. That is precisely why the Seventh Circuit affirmed the denial of transfer. *Id*.

Like Defendant *Midwhey*, Defendants did not specify key witnesses living in Illinois in their motion. Defendants fail to identify a single material Illinois witness. Defendant's failure to supply proof on this pivotal factor should be determinative. See *Somers v. Flash Tech. Corp. of Am.*, 2000 U.S. Dist. LEXIS 13094, *8 (S.D. Ind. 2000). In fact, Dexia identifies two individuals working in Indiana in Exhibit A to its response, and identifies in the motion, "Joseph Cuppy" (Fred Cuppy) and "Peter Rogan". Problem is, all the witnesses live or work outside Illinois. Dexia's sole exhibit to its affidavit identifies two individuals who work for an Indiana company. Their affidavit bolsters Plaintiff's argument.

Defendant Dexia's document entitled, "Eric Pruitt's Declaration" is unnecessarily supportive of plaintiff's position. Plaintiff has already identified witnesses who live and work in Indiana in prior Court filings. Those witnesses include:

1.     **Chris Dunlavy**

Mr. Dunlavy is state counsel for Ticor Title Insurance Company in Indiana. See Affidavit of Christopher Dunlavy attached hereto as Exhibit B.

2.     **Timothy Kelly**

Mr. Kelly represented the purchasers of the Wexford Property. He received the lien letter at his offices in Indiana, located at 5521 West Lincoln Highway, Suite 101, Crown Point, Indiana 46307. See Affidavit of Timothy Kelly attached as Exhibit C.

3.     **Allen C. O'Brien** and **Mary O'Brien**

Mr. and Mrs. O'Brien, purchasers of the Wexford Property, are residents of Porter County, Indiana. Each is expected to testify to the resulting frustration he and his wife experienced after Dexia's illegal tactics in pursuing a bogus judgment lien.  See Affidavit of Allen O'Brien attached hereto as Exhibit D.

4.      **Judith Rogan**

Mrs. Rogan restates again that she is a resident of Indiana and in September 2007 she entered into an eighteen-month lease for the property at 206 Scarborough Court in Valparaiso, Indiana. See Exhibit A.

5.      **Charles Carter** and **John Kotynski**

Mr. Carter and Mr. Kotynski work for an Indiana company, Precision Construction, and received correspondence that is attached to the Declaration of Eric Pruitt. The business address as stated is 2605 Garfield Avenue, Highland, Indiana 46322.

6.      **Peter Rogan**

Mr. Rogan, Dexia alleges, resides in Canada and was party to lawsuits initiated by the United States and Dexia.

7.      **Fred Cuppy**

Mr. Cuppy, Dexia alleges, resides in Florida, and was counsel for Peter Rogan in lawsuits initiated by the United States and Dexia.

These are the potential witnesses to date who have been identified before the Court. **Seven of the nine** identified witnesses reside in Indiana.  The other witnesses are alleged to reside in Canada and Florida, respectively.

Even though Defendants specified no Illinois witnesses in each of its previous filings, Magistrate Judge Cherry concluded:

> "Because the majority of the evidence and witnesses relating to the underlying fraud, which will ultimately determine the interest Defendants have in any of Judith Rogan's property, are in Illinois or ouside of [Indiana] (for example, Peter Rogan, who appears to have left the United States, more of the witnesses related to the most substantial issues in the case are located in Illinois." (*Order*, January 31, 2008, at 21).

A finding is clearly erroneous when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. See *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); see also, *800 Adept, Inc. v. Murex Sec., Ltd.,* 2007 U.S. Dist. LEXIS 70861, *5-6 (D. Fla. 2007).

In this case, no evidence in the record supported the conclusion that it is more convenient for witnesses to appear before the NDIL as expressed by the Magistrate Judge in his Order transferring this motion. There was no specific evidence in the record to support the Magistrate's conclusion. See *Heller*, 883 F.2d at 1293 (Movant has obligation to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have included). The Magistrate's positive grant of a motion to transfer without specification of the residence of the witnesses to be called resulted in a clearly erroneous order on the facts.

**C.    Dexia's Voluminous Exhibits lack foundation, in some instances are pure hearsay, and have scant relevance.**

Defendants attach a horde of irrelevant, prejudicial and foundationless exhibits to their motion to transfer. It is plainly clear the vast majority lack foundation, evidentiary support, and is substantively inadmissible on plain hearsay grounds. Symptomatic of Defendants' scattered and alarming approach to this transfer motion is Dexia's attachment of letters at Exhibit HH and II exchanged among counsel in a case against Peter Rogan. This attachment prompts the

12

question whether Dexia intends to call its attorney, Eric Pruitt (who authored a Declaration attempting to lay *post facto* foundation), to authenticate an email he received from Judith Rogan's attorney. This Declaration does not cure the otherwise inadmissible correspondence.

Dexia also misstates evidence law on numerous occasions in their Reply. Rather than belabor the issue, Plaintiffs' cite to one representative example of evidentiary overreach. Dexia remarks in response to Plaintiff's numerous objections as to inadmissible evidence that, "she *never* asserts that any of the evidence is inaccurate…" (*Resp.*, February 21, 2008, p. 16).

If the claimed accuracy of an exhibit dispensed with the rules of admissibility, the laws of evidence would perforce cease to exist. For instance, unreliable co-conspirator statements would now be admissible against a Defendant in a criminal case. Hearsay would be allowed if not objected to on accuracy grounds. Attorneys could cite what opposing counsel wrote out-of-court (as has unfortunately occurred in this case) and not be considered witnesses. Because accuracy of an exhibit is not dispositive or controlling on admissibility, Judith Rogan did not need to point out in a responsive motion outside a hearing that inadmissible exhibits were inaccurate.

**D.** **The remaining two factors in the private analysis, situs of material events and relative ease of access to sources of proof, favor neither forum.**

The situs of material events in this case relate to the placement of judgment liens that Plaintiff claims are invalid. The situs of material events did not favor either forum as there are judgment liens attaching to both Indiana and Illinois properties. Conduct that took place in both Indiana and Illinois will be relevant. Accordingly, it cannot be said that Indiana is without connection to this cause of action. See *United Consumers Club v. Prime Time Mktg. Mgmt.*, 2008 U.S. Dist. LEXIS 2868, *16 (N.D. Ind., January 11, 2008).

Further, access to available sources of proof favors neither forum where the distance is less than 25 miles. The Seventh Circuit has found that, "easy air transportation, the rapid transmission of documents, and the abundance of law firms with nationwide practices, make it easy these days for cases to be litigated with little extra burden in any of the major metropolitan areas." *Board of Trustees, Inc. v. Elite Erectors, Inc.*, 212 F. 3d 1031, 1037 (7th Cir. 2000).

The Hammond Federal Courthouse is located at 5400 Federal Plaza, Hammond, Illinois, just off I-90 and is situated 21.96 miles from the geographical epicenter of Chicago (State and Madison streets), a major metropolitan area. It is incomprehensible how Dexia, represented by a law firm with a nationwide practice, would be inconvenienced or be denied access to available sources of proof. Finally, Dexia has not argued that its access to available sources of proof was inconvenienced because they have not cited an Illinois witness. We may never know if an Illinois witness would be inconvenienced but Dexia has supplied two Indiana witnesses in their Declaration (affidavit) who might find it inconvenient.

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Honorable Court deny the motion to transfer, Defendants to answer the allegations in the Complaint for the first time in now more than six months, and order any all other relief this Court deems fair and equitable.

Judith K. Rogan

By: /s/ Michael J. O'Rourke
One of her attorneys

14

Michael J. O'Rourke
Joel L. Lipman
O'Rourke, Katten & Moody
161 N. Clark Street, Suite 2230
Chicago, Illinois 60601
(312) 849-2020
Fax: (312) 849-2020

David Cerven
Smith & Debonis, LLC
9696 Gordon Drive
Highland, Indiana 46322
(219) 922-1000
Fax: (219) 922-1600

DOCUMENT STRICKEN PER ORDER DE# 78

**EXHIBIT A**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

JUDITH K. ROGAN, individually )
and as Trustee of the )
Judith K. Rogan Revocable Trust, )
 )
  Plaintiff )
 )
  v. )  No. 2:07 CV 403PS
 )
UNITED STATES OF AMERICA )
and DEXIA CREDIT LOCAL, f/k/a )  Honorable Judge Joseph S. Van Bokkelen
DEXIA PUBLIC FINANCE and )
CREDIT BANK and CREDIT )
LOCAL DE FRANCE )  Magistrate Judge Paul R. Cherry
 )
  Defendants. )

## SUPPLEMENTAL DECLARATION OF JUDITH K. ROGAN

Judith K. Rogan, being first duly sworn, deposes and states:

1. Affiant is a resident of Valparaiso, Indiana in Porter County and has resided in Valparaiso since 1983.

2. Affiant lives at 206 Scarborough Court, Valparaiso, Indiana 46385 ("Scarborough Residence").

3. Attached is a true and correct copy of the residential lease 1 executed on September 21, 2007 for the Scarborough Residence for a period of eighteen months beginning October 15, 2007 through April 15, 2009.

3. Prior to moving into the Scarborough Residence, I owned a house located at 476 Wexford Road, Valparaiso, Indiana 46385 (the "Wexford Property"). I had owned the Wexford Property continuously since 1989.

4.      On November 17, 2007, I closed on the sale of the Wexford Property to Mary and Allen O'Brien. One of the reasons I sold the Wexford Property is because I help take care of my mother, who is elderly and has health issues which cause her difficulty in negotiating stairs. The Scarborough Residence is more accommodating to my mother's needs because it has easier entry into the house and she does not need to walk upstairs and downstairs between floors. Her bedroom is located on the main floor.

5.      As I have continuously stated, I have for years and remain a resident of Indiana.

Dated: 2-26-08                          Further Affiant Sayeth Not

Judith K. Rogan

**Walter J. and Helen Armbruster**
**1709 Darien Club Drive**
**Darien, Illinois 60561**
**Fax: (630) 571-9580**
**September 20, 2007**

Mrs. Judith K. Rogan
476 Wexford Road
Valparaiso, Indiana 46385
Fax: (219) 464-8297

Hi Judy,

Attached is a standard lease agreement with the following items I'd like to point out:

**Lease** is for a period of 18 months.

**Paragraph 2** – Lease period begins October 15, 2007 and ends on April 15, 2009, with October 2007 rent prorated, then rent is payable the first of each month thereafter.

**Paragraph 6** – security deposit of $2,000.00 required at time of signing.

**Paragraph 7** – pet deposit of $1,000.00 required at time of signing. I'd like to point out that we'd like the expandable pet gates be used instead of those that screw into the door frame. Doors, especially the pocket doors, should not be used to keep pets in rooms, unless your dog has been trained not to scratch the doors. Most of the pocket doors are custom made and original to the house and cost a great deal to repair.

**Paragraph 27** – states that a month-to-month agreement may be entered into after the 18-month term expires, if both parties so desire.

According to the above, your first check would cover:

| | |
|---|---|
| Security Deposit | $2,000.00 |
| Pet Deposit | 1,000.00 |
| October rent beginning October 15 and prorated at $64.50/day for 17 days | 1,096.50 |
| **October rent plus security deposit** | **4,096.50** |
| Less $500.00 deposit | 500.00 |
| **Total Due** | **$3,596.00** |

If you agree with all the terms of the lease, please sign the last page and fax to my husband's office at (630) 571-9580. If you have any questions about the lease, call me on my cell at (630) 772-3905. Once all parties have signed, I'll send you a fax of the executed last page.

We look forward to having you and your mother and Lhasa as tenants and hope you enjoy the house.

Regards,

Helen Armbruster

## RESIDENTIAL LEASE, INDIANA

**BY THIS AGREEMENT** made and entered into on September _____, 2007 between Walter J. and Helen Armbruster, herein referred to as Lesser, and Judith K. Rogan, herein referred to as Lessee, Lessor leases to Lessee the premises situated at 206 Scarborough Court in the City of Valparaiso, County of Porter, State of Indiana, (hereinafter referred to as the demised premises) together with all appurtenances, for a term of eighteen (18) months beginning on October 15, 2007 and to end on April 15, 2009 at Midnight.

1. **Delivery of Possession.** Lessor shall deliver possession of the demised premises to Lessee on the date hereinabove mentioned as the date on which this lease has commenced.

2. **Rent.** Lessee agrees to pay, without demand, to Lessor as rent for the demised premises the sum of Two Thousand ($2,000.00) per month in advance on the first day of each calendar month. The first month's rent shall be prorated to begin October 15, 2007. Thereafter, rent shall be due on the first day of each month beginning November 1, 2007 and sent to:     Walter J. and Helen Armbruster.
1709 Darien Club Drive
Darien, Illinois 60561

3. **Form of Payment.** Lessee agrees to pay rent each month in the form of one personal check, OR one cashiers check, OR one money order made out to Walter J. and Helen Armbruster.

4. **Late Payments.** For any rent payment not made by the date due, Lessee shall pay a late fee in the amount of Ten Dollars ($10.00) per day.

5. **Returned Checks.** If, for any reason, a check used by Lessee to pay Lessor is returned without having been paid, Lessee shall pay a charge of Fifty Dollars ($50.00) as additional rent AND take whatever other consequences there might be in making a late payment. After the second time a Lessee's check is returned, Lessee must thereafter secure a cashiers check or money order for payment of rent.

6. **Security Deposit.** On execution of this lease, Lessee deposits with Lessor Two Thousand Dollars ($2,000.00), receipt of which is acknowledged by Lessor, as security for the faithful performance by Lessee of the terms hereof, to be returned to Lessee on the full and faithful performance by him of the provisions hereof. The deposited amount shall continue to be the property of Lessee and shall be held in trust by Lessor. Upon termination of this lease and delivery of possession of the demised premises back to Lessor, the balance of the security deposit shall be refunded within forty-five (45) days, together with a notice of an itemized statement showing any charges made against such deposit by Lessor and copies of documents in support thereof. Unless otherwise agreed, the Lessee is not entitled to apply the security deposit to rent owed. If Landlord should sell or otherwise transfer the premises, Landlord will cause a return of the security deposit to Lessee, less any valid deductions pursuant to this agreement, unless such security deposit has been provided to Lessee or otherwise assumed by the Transferee.

7. **Pet Deposit.** On execution of this lease, Lessee deposits with Lessor One Thousand Dollars ($1,000.00), receipt of which is acknowledged by Lessor, as security for any damages caused to the demised premises by the pet. Upon termination of this lease and delivery of possession of the demised premises back to Lessor, the balance of the pet deposit shall be refunded within forty-five (45) days, together with a notice of an itemized statement showing any charges made against such deposit by Lessor and copies of documents in support thereof.

8. **Quiet Enjoyment**. Lessor covenants that on paying the rent and performing the covenants herein contained, Lessee shall peacefully and quietly have, hold, and enjoy the demised premises for the agreed term. Lessor shall not interfere with the quiet enjoyment of the demised premises by Lessee during the above said period.

9. **Use of Premises**. The demised premises shall be used and occupied by Lessee exclusively as a private single family residence, and neither the demised premises nor any part thereof shall be used at any time during the term of this lease by Lessee for carrying on any business, profession, or trade of any kind, or for any purpose other than as a private single family residence. Lessee shall comply with all the sanitary laws, ordinances, rules, and orders of appropriate governmental authorities affecting the cleanliness, occupancy, and preservation of the demised premises, and the sidewalks connected thereto, during the term of this lease. Lessee shall not utilize any part of the demised premises for any illegal use, occupancy, trade, manufacture or other business. Lessee shall use ordinary care for the preservation of the demised premises in a clean, safe and good condition.

10. **Number of Occupants**. Lessee agrees that the demised premises shall not be occupied by more than two (2) persons, consisting of two (2) adults, and one pet dog, without the written consent of Lessor.

11. **Condition of Premises**. Lessee has examined the demised premises, including the grounds and all buildings and improvements, and stipulates that they are, at the time of this lease, in good order, repair, and in safe, clean, and tenantable condition.

12. **Keys**. Lessee shall be given three (3) keys to the demised premises. If all keys are not returned to Lessor following termination of this lease, Lessee shall be charged Twenty Dollars ($20.00).

13. **Locks**. Lessee agrees not to change locks on any door without first obtaining Lessor's written permission. Having obtained written permission, Lessee agrees to pay for changing the locks and to provide Lessor with one duplicate key per lock.

14. **Cars**. Lessor is not responsible for, nor does Lessor assume any liability for damages caused by fire, theft, casualty or any other cause whatsoever with respect to any car or its contents. Snow removal is the responsibility of the car owner.

15. **Assignment and Subletting**. Without the prior written consent of Lessor, Lessee shall not assign this lease, or sublet or grant any concession or license to use the demised premises or any part thereof. A consent by Lessor to one assignment, subletting, concession, or license shall not be deemed to be consent to any subsequent assignment, subletting, concession, or license. An assignment, subletting, concession, or license without the prior written consent of Lessor, or an assignment or subletting by operation of law, shall be void and shall, at Lessor's option, terminate this lease.

16. **Alterations and Improvements**. Lessee shall make no alterations to the buildings on the demised premises or construct any building or make other improvements on the demised premises without the prior written consent of Lessor. All alterations, changes, and improvements built, constructed, or placed on the demised premises by Lessee, shall, unless otherwise provided by written agreement between Lessor and Lessee, be the property of Lessor and shall remain on the demised premises at the expiration or earlier termination of this lease.

17. **Damage to Premises**. Lessee shall give Lessor immediate notice in case of fire or other damage to the demised premises or any part thereof. If such damage is not due to Lessee's negligence or willful act or that of Lessee's employee, family, agent, or visitor, the demised premises shall be promptly repaired by Lessor and there shall be an abatement of rent corresponding with the time during which, and the extent to which, the demised premises may have been untenantable; but, if the demised premises should be damaged other than by Lessee's negligence or willful act or that of Lessee's employee, family, agent, or visitor, to the extent that Lessor shall decide not to rebuild or repair, the term of this lease shall end and the rent shall be prorated up to the time of the damage.

18. **Dangerous Materials**. Lessee shall not keep or have on the demised premises any article or thing of a dangerous, inflammable, or explosive character that might unreasonably increase the danger of fire on the demised premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

19. **Utilities**. Lessee shall be responsible for arranging for and paying for all utility services required on the demised premises.

20. **Maintenance and Repair**. Lessee shall, at Lessee's sole expense, keep and maintain the demised premises and appurtenances in a good and sanitary condition and repair during the term of this lease and any renewal thereof. Lessee shall, at her own expense, keep the lawn mowed and driveway clear of snow in the winter. In particular, Lessee shall keep the fixtures in the house or on or about the demised premises in good order and repair; keep the furnace clean; keep the electric bells in order; keep the walks free from dirt and debris; and, at Lessee's sole expense, shall make all required repairs to the plumbing, range, heating, apparatus, and electric and gas fixtures whenever damage thereto shall have resulted from Lessee's misuse, waste, or neglect or that of Lessee's employee, family, agent, or visitor. Major maintenance and repair of the demised premises, not due to Lessee's misuse, waste, or neglect or that of Lessee's employee, family, agent, or visitor, shall be the responsibility of Lessor.

21. **Painting**. Lessor reserves the right to determine when the demised premises shall be painted, unless there is any law to the contrary.

22. **Insurance**. Lessor has obtained insurance to cover fire damage to the building itself and liability insurance to cover certain personal injuries occurring as a result of property defects or Lessor's negligence. Lessor's insurance does not cover Lessee's possessions or Lessee's negligence. Lessee should obtain a lessee's insurance policy to cover damage or loss of personal possessions, as well as losses resulting from Lessee's negligence.

23. **Pets**. Lessee hereby has permission to keep one small dog on the premises. Any damage to the premises caused by the pet shall be applied against the Lessee's pet deposit of $1,000, as stated in Paragraph 7.

24. **Right of Inspection**. Lessor reserves the right to enter the demised premises at all reasonable hours for the purpose of inspection, and whenever necessary to make repairs and alterations to the demised premises. Lessee hereby grants permission to Lessor to show the demised premises to workmen and contractors at reasonable hours of the day. Lessor will contact Lessee before such inspection.

25. **Showing Property**. During the last thirty (30) days of this lease, Lessor shall have the privilege of showing the property to prospective purchasers, lessees, tenants or mortgagees during reasonable hours.

26. **Subordination of Lease.** This lease and Lessee's leasehold interest hereunder are and shall be subject, subordinate, and inferior to any liens or encumbrances now or hereafter placed on the demised premises by Lessor, all advances made under any such liens or encumbrances, the interest payable on any such liens or encumbrances, and any and all renewals or extensions of such liens or encumbrances.

27. **Holdover by Lessee.** Should Lessee remain in possession of the demised premises with the consent of Lessor after the natural expiration of this lease, a new month-to-month tenancy shall be created between Lessor and Lessee which shall be subject to all the terms and conditions hereof but shall be terminated on thirty (30) days' written notice served by either Lessor or Lessee on the other party.

28. **Surrender of Premises.** At the expiration of the lease term, Lessee shall quit and surrender the demised premises in as good state and condition as it was at the commencement of this lease, reasonable use and wear thereof and damages by the elements excepted.

29. **Default.** If any default is made in the payment of rent, or any part thereof, at the times hereinbefore specified, or if any default is made in the performance of or compliance with any other term or condition hereof, this lease, at the option of Lessor and to the extent permitted by law, shall terminate and be forfeited, and Lessor may re-enter the demised premises and remove all persons therefrom to the extent permitted by law.

30. **Abandonment.** If at any time during the term of this lease Lessee abandons the demised premises or any part thereof, Lessor may, at Lessor's option, enter the demised premises by any means without being liable for any prosecution therefor, and without becoming liable to Lessee for damages or for any payment of any kind whatever, and may, at Lessor's discretion, as the agent of Lessee, re-let the demised premises, or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such re-letting, and, at Lessor's option, may hold Lessee liable for any difference between the rent that would have been payable under this lease during the balance of the unexpired term, if this lease had continued in force, and the net rent for such period realized by Lessor by means of such re-letting. If Lessor's right of re-entry is exercised following abandonment of the demised premises by Lessee, then Lessor may consider any personal property belonging to Lessee and left on the demised premises to also have been abandoned, in which case Lessor may dispose of all such personal property in any manner Lessor shall deem proper and is hereby relieved of all liability for doing so.

31. **Binding Effect.** The covenants and conditions herein contained shall apply to and bind the heirs, legal representatives, and assigns of the parties hereto, and all covenants are to be construed as conditions of this lease.

32. **Severability.** If any portion of this lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this lease is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision shall be deemed to be written, construed and enforced as so limited.

33. **Entire Agreement.** Lessee has read this lease. All promises made by Lessor and all agreements between Lessor and Lessee are contained in this lease. This lease may be amended only by a written amendment signed by both parties.

34. **Liability**. Lessor shall not be liable for any loss, expense or damage to any person or property, unless it is due to Lessor's negligence. Lessee is responsible for all acts or negligence of Lessee's family, employees, guests or invitees.

35. **Ordinances and Statutes**. Lessee shall comply with all statutes, ordinances and requirements of all municipal, state and federal authorities now in force, and which may hereafter be in force, pertaining to the use of the demised premises.

36. **Notices**. All notices pursuant to this agreement shall be in writing.

37. **Paragraph Headings**. The paragraph headings are for convenience only.

38. **Choice of Law**. This lease shall be governed by the laws of the State of Indiana, and all disputes shall be subject to the jurisdiction of the courts of the State of Indiana.

39. **Disclosure**. Lessor hereby discloses the following information to Lessee, in accordance with law:
Name of the person residing in Indiana who is authorized to manage the demised premises:

Jon Kersey
205 Institute Street, Apartment 1
Valparaiso, Indiana

Name of the person residing in Indiana who is reasonably accessible to Lessee and who is authorized to act as agent for Lessor for purposes of service of process; and receiving and receipting for notices and demands:

Dale Armbruster
6039 N. State Road, Rt. 109
Columbia City, Indiana 46724

IN WITNESS WHEREOF, the parties have executed this lease on the day as indicated by their respective signatures.

Lessee: _Judith K. Rosen_ Date: _9-21-07_

Lessor: _____ Date: _____

**EXHIBIT B**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| JUDITH K. ROGAN, individually and as Trustee of the Judith K. Rogan Revocable Trust, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) | Case No. 2:2007-CV-00280 |
| RM | | |
| THE UNITED STATES OF AMERICA and DEXIA CREDIT LOCAL, f/k/a DEXIA PUBLIC FINANCE and CREDIT BANK and CREDIT LOCAL DE FRANCE, | ) ) ) ) ) | Jury Trial Demanded |
| Defendants. | ) | |

## AFFIDAVIT OF CHRIS DUNLAVY

Christopher O. Dunlavy, being first duly sworn, deposes and states:

1.      I am State Counsel for Ticor Title Insurance Company ("Ticor").

2.      Ticor was hired by Paula E. Neff, Burke Costanza & Cuppy to provide title insurance for the property located at 476 Wexford Road, Valparaiso, Indiana 46395 (the "Wexford Property"), with the Buyers being Allen C. O'Brien and Mary K. O'Brien and the Seller being Judith K. Rogan, Trustee under Trust dated April 19, 1989.

3.      Ticor issued a title commitment for the Wexford Property, a copy of which is attached hereto.

4.      Item Number 17 on Schedule B indicates that the United States has recorded an Abstract of Judgment pertaining to a judgment against Peter Rogan, which serves as a lien and clouds the title to the Wexford Property (the "Lien").

5.      While Peter Rogan is not the owner of the Wexford property, the Lien nevertheless prevents Ticor from issuing a title insurance policy related to the Wexford Property in favor of the Buyers, Allen and Mary O'Brien; free and clear of this Lien.

6.      If the closing were to proceed on November 15, 2007 without any further actions regarding the Lien, the O'Briens would take title to the Wexford Property subject to the Lien.

7.      If Ticor receives a court order granting Ms. Rogan the relief she seeks in her motion for a preliminary injunction and specifically: (1) declaring that the Abstract of Judgment filed by the United States is enjoined from attaching to the Wexford Property and (2) that the sale of the Wexford Property shall proceed free and clear of the Abstract of Judgment of the United States of America, Ticor would be willing to insure over the Lien and issue a title insurance policy in favor of the O'Briens free and clear of the Lien.

8.      Similarly, if Ticor determines that Dexia Credit Local has placed a lien on the Wexford Property related to a judgment it has against Peter Rogan, the closing to Allen and Mary O'Brien could not occur free and clear of that lien. However, Ticor would be willing to insure over that lien if it receives a court order consistent with the terms in paragraph seven above.

Further Affiant Sayeth Not

_____
Christopher O. Dunlavy

2

**EXHIBIT C**

## THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| JUDITH K. ROGAN, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | 2:07CV280RM. |
| | ) | |
| THE UNITED STATES OF AMERICA | ) | |
| AND DEXIA CREDIT LOCAL, | ) | Jury Trial Demand |
| F/K/A DEXIA PUBLIC FINANCE AND | ) | On all issues |
| CREDIT BANK AND CREDIT LOCAL | ) | Triable to a jury |
| DE FRANCE, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## AFFIDAVIT OF TIMOTHY KELLY

Timothy Kelly, being first duly sworn, deposes and states:

1)     Affiant is an attorney authorized to practice law in the State of Indiana.

2)     Affiant represents Mary O'Brien and Allen C. O'Brian purchasers in the real estate transaction involving 476 Wexford Road in Valparaiso, Indiana.

3)     On or about August 27th 2007, Affiant received a letter from Sidley Austin LLP, stating that they represent Dexia Credit Local in the Dexia v.Peter Rogan Case pending in the Northern District of Illinois and that they have recorded a judgment lien against the 476 Wexford property arising out of that case. A true and correct copy of the letter is attached and incorporated as Exhibit A.

Further Affiant Sayeth Not

Timothy Kelly

**SIDLEY AUSTIN LLP**
# SIDLEY

| | |
|---|---|
| SIDLEY AUSTIN LLP | BEIJING | LOS ANGELES |
| ONE SOUTH DEARBORN | BRUSSELS | NEW YORK |
| CHICAGO, IL 60603 | CHICAGO | SAN FRANCISCO |
| (312) 853 7000 | DALLAS | SHANGHAI |
| (312) 853 7036 FAX | FRANKFURT | SINGAPORE |
| | GENEVA | SYDNEY |
| | HONG KONG | TOKYO |
| | LONDON | WASHINGTON, D.C. |
| epruitt@sidley.com | | |
| (312) 853-1093 | FOUNDED 1866 | |

August 27, 2007

**By Facsimile**

Tim Kelly, Esq.
Kelly Law Offices
5521 West Lincoln Highway, Suite 101
Crown Point, Indiana 46307
Fax: 219-791-0707

      Re:    *Dexia v. Rogan* (02 C 8288) (N.D. Ill.) – Sale of 476 Wexford Road

Dear Mr. Kelly:

        Sidley Austin LLP represents Dexia Crédit Local in the above-referenced case. The court entered a judgment against Peter Rogan in the amount of $124,280,712.79 in that case. It is our understanding that you represent a prospective purchaser of the home of Peter and Judith Rogan located at 476 Wexford in Valparaiso, Indiana. While Mrs. Rogan may formally hold title to the property, it is our position that she does so for the benefit and/or as an alter ego of Peter Rogan. The proceeds of any sale of the Indiana property are therefore assets of Peter Rogan, the judgment debtor in the above-referenced case, and should be applied to Dexia Crédit Local's judgment against Mr. Rogan. To secure its judgment, Dexia has recorded a lien against the 476 Wexford property.

        As you know, the United States also has a judgment against Mr. Rogan and also has recorded a lien against 476 Wexford. Dexia requests copies of the following documents to determine our lien position:

        (a) Any recent appraisals of the property;
        (b) A copy of the contract for the sale of the property;
        (c) Title report showing mortgage(s) and priority of liens on the property;
        (d) Draft closing statement; and
        (e) Payoff letters from any superior lien creditors.

        Please fax or email these documents to my attention. Upon review of this information, Dexia may issue an appropriate payoff letter to permit the transaction to proceed to closing with the net proceeds to be held in escrow until we reach an agreement with the Rogans

Sidley Austin LLP is a limited liability partnership practicing in affiliation with other Sidley Austin partnerships



Tim Kelly, Esq.
August 27, 2007
Page 2

or obtain a court order regarding the disposition of the funds.  If you have any questions, please
contact me at 312-853-1093.

Sincerely,

Eric S. Pruitt

cc:    David Short, Esq.
       Michael O'Rourke, Esq.
       Peter Rogan
       AUSA Melissa Childs

CH1 3972589v.1

**EXHIBIT D**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| JUDITH K. ROGAN, individually and as Trustee of the Judith K. Rogan Revocable Trust, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 2:2007-CV-00280 |
| THE UNITED STATES OF AMERICA and DEXIA CREDIT LOCAL, f/k/a DEXIA PUBLIC FINANCE and CREDIT BANK and CREDIT LOCAL DE FRANCE, | ) ) ) ) ) | Jury Trial Demanded |
| Defendants. | ) | |

### AFFIDAVIT OF ALLEN C. O'BRIEN

Allen C. O'Brien, being duly sworn upon his oath, deposes and states:

1.      My name is Allen C. O'Brien and I make this affidavit from personal knowledge.

2.      I am a resident of Porter County, Indiana.

3.      I submit this affidavit in support of Judith Rogan's Motion.

4.      My wife, Mary O'Brien and I, have contracted to purchase the property commonly

known as 476 Wexford Road, Valparaiso, Indiana 46385. A true and correct copy of the

purchase agreement is attached hereto as Exhibit A.

5.      Pursuant to the contract, my wife and I are to close on the purchase of the

Wexford property on November 9, 2007.

6.      Earlier this year, I was in a serious construction accident while building a house.

7.      I suffered multiple, serious injuries, including a severely fractured leg.

8.      To repair the fracture, I have undergone several surgeries. I am scheduled to

undergo additional surgery late this year, or early next year to repair the fracture.

9.     As a result of my severely fractured leg, I was forced to abandon my plans to complete the house and search for a suitable substitute.

10.    When I learned that Ms. Rogan's property was for sale, I immediately became interested because it has many of the features I need to accommodate the limitations I now have from my injuries.

11.    One of the accommodations I now require due to my physical limitations is an elevator. The Wexford property includes plans for an elevator and the shaft has been constructed, but it is not complete.

12.    The closing date of November 9, 2007 is critical because immediately after closing, I plan to have an elevator installed. This project must be completed prior to my next surgery because I will be a wheelchair for some time after the surgery and will have no other way to get around.

13.    There is no other suitable replacement property available at this time that will accommodate my physical limitations.

**FURTHER THE AFFIANT SAITH NOT.**

_____
**ALLEN C. O'BRIEN**

2